# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAUDERLIER & ASSOCIATES, INC.

       Plaintiff

      v.

SERGIO ZAMBRANA

       Defendant

Civil Case No. 1:05CV01653
Judge Ellen Segal Huvelle

## DEFENDANT'S REPLY MEMORANDUM

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     THE "FACTS" CITED BY PLAINTIFF ARE NOT PROVEN . . . . . . . . . . . . . . . . . . . . 4

     JEAN CAUDERLIER IS AN INDISPENSABLE PARTY . . . . . . . . . . . . . . . . . . . . . . . 5

          Divergent Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          Res Judicata and Stare Decisis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          Rule 19 Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     LA RUCHE IS AN INDISPENSABLE PARTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     WHAT PLAINTIFF DOES AND DOES NOT KNOW ABOUT LA RUCHE . . . . . . . 11

     PLAINTIFF'S COUNSEL SHOULD BE REQUIRED TO WITHDRAW
     FROM THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

**CASES:**

*Primax Recoveries, Inc. v. Lee*, 260 F. Supp. 2d 43 (D.D.C. 2003) . . . . . . . . . . . . . . . . . 6, 7, 8

*Provident Tradesmens Bank & Trust v. Patterson*, 390 U.S. 102,
  88 S.Ct. 733 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

*Wilson-Bey v. U.S.*, 871 A.2d 1155 (D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**OTHER AUTHORITIES:**

Fed. R. Civ. P. 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

Fed. R. Civ. P. 19(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

D.C. Rules of Professional Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

\* Cases principally relied upon.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAUDERLIER & ASSOCIATES, INC.

Plaintiff

v.

SERGIO ZAMBRANA

Defendant

Civil Case No. 1:05CV01653
Judge Ellen Segal Huvelle

## DEFENDANT'S REPLY MEMORANDUM

Defendant, Sergio Zambrana, by and through counsel, hereby files this memorandum in reply to "Plaintiff's Memorandum In Opposition to Defendant's Motion to Dismiss the Complaint or, in the Alternative, Motion to Join Indispensable Parties" ("Memorandum in Opposition"), and states as follows:

## DISCUSSION

Plaintiff, Cauderlier & Associates, Inc. ("CAI"), in its Memorandum in Opposition, makes the following (verbatim) assertions during the course of presenting plaintiff's grounds for opposing defendant's Motion to Dismiss the Complaint or, in the Alternative, Motion to Join Indispensable Parties ("Motion"):

    1.     CAI has instituted this lawsuit to confirm that Mr. Caudelier is CAI's sole owner. (MIO[1], p. 2.)

---

[1] References in Plaintiff's Memorandum in Opposition shall be cited as "MIO," followed by the page number.

1

2.    The only issue presented before this Court is whether defendant has any ownership interest in CAI. (MIO, p. 2.)

3.    The portions of the Motion that discuss "Mr. Zambrana's Ownership in La Ruche," and "The Relationship Between CAI and LaRuche" are irrelevant to the determination of CAI's ownership. (MIO, p. 3.)

4.    CAI does not dispute that Mr. Caudelier is its sole shareholder, therefore there is no claim between CAI and Mr. Caudelier. (MIO, p. 6.)

5.    Given that Mr. Cauderlier's interest and CAI's interest are completely in line, Mr. Cauderlier is not at risk. (MIO, p. 6.)

6.    Defendant's unpersuasive rationale is his baseless assertion that the $25,000 he paid to La Ruche on January 21, 2000 was "used by CAI as part of the down payment toward the purchase of the Building [FOOTNOTE OMITTED] . . . by CAI . . . [and] ostensibly, then, La Ruche has claims against CAI, and possibly [Mr.] Cauderlier, for misappropriating of funds, wrongful commingling of funds, constructive trust, unjust enrichment, and for an accounting, among other things." [Citation omitted] (MIO, pp.7-8.)

7.    As stated in the Complaint, La Ruche is a separate and independent entity from CAI. [Reference omitted]. Defendant's relationship with La Ruche is distinct from defendant's relationship with CAI. (MIO, p. 8.)

8.    Moreover, La Ruche has no ownership interest, nor does it assert an ownership interest in CAI. . . . (MIO, p. 8.)

Interestingly, plaintiff proffers no evidentiary support, by affidavit or otherwise, for any of the factual assertions included among the statements referred to above.  This, even in the face

2

of a 24-paragraph affidavit from defendant, Sergio Zambrana[2], and many authenticated exhibits attached to the Motion, including a plethora of checks[3] drawn on the bank account of La Ruche, some of which were seemingly written to satisfy certain obligations of CAI.  Nor does plaintiff offer any proof to counter defendant's assertion that he gave plaintiff a $25,000 check[4] payable to La Ruche the night before the purchase of the Building[5] by CAI, which funds were "earmarked for the purchase by CAI of [the Building]."[6]  Plaintiff apparently expects this Court to accept his asseverations as "givens," without making any effort to substantiate them.

It is perhaps no wonder that plaintiff denigrates the terms "alter ego," "commingling of funds," and "misappropriation of funds" as "hollow buzz-words." (MIO, p. 2.)  Plaintiff appears not to have a clue as to what defendant's Motion is really about.

## ARGUMENT

The following argument is intended to address what defendant perceives as shortcomings in the arguments set forth in plaintiff's Memorandum in Opposition, and should be considered as a supplement to defendant's original Motion.  Defendant will attempt not to repeat the arguments

--------

[2]  *See* Affidavit of Defendant, Sergio Zambrana, attached to defendant's Motion ("Affidavit").

[3]  In his Motion, defendant neglected to advise the Court that nearly every one of the La Ruche checks included in Exhibit C was obtained from the offices of plaintiff's counsel, and were grouped, not by defendant, as shown in the exhibit.  Not all the checks comprising Exhibit C are deemed by defendant to be pertinent to his Motion.  The checks were provided to defendant because he is a shareholder in La Ruche, Inc., and were selected by him as a representative sample from the many checks he was permitted to inspect and request copies of.

[4]  *See* Motion Exhibit A.

[5]  For the sake of brevity, defendant will continue his use of the terms defined in his Motion, and not redefine them here, unless otherwise noted.

[6]  Affidavit ¶4.  *See also* Affidavit ¶¶2, 5, 9, 10, 11, 18, 19, 21 and 22.

3

he presented therein, but may use some of the "facts" he contends were proved in the Motion, to support his argument here, where appropriate.

## THE "FACTS" CITED BY PLAINTIFF ARE NOT PROVEN

Many of the "facts" upon which plaintiff relies *beg the very questions* that are the subject of the Motion.  They are disputed by defendant and should be incorporated as issues into this lawsuit, once all the proper parties are before the court and all counterclaims and cross-claims have been filed.  For instance, plaintiff asserts,[7] *inter alia*, that (a) CAI does not dispute that Mr. Caudelier is its sole shareholder, therefore there is no claim between CAI and Mr. Caudelier; (b) given that Mr. Cauderlier's interest and CAI's interest are completely in line, Mr. Cauderlier is not at risk; (c) La Ruche is a separate and independent entity from CAI; (d) defendant's relationship with La Ruche is distinct from defendant's relationship with CAI; and (e)  La Ruche has no ownership interest, nor does it assert an ownership interest in CAI.

In essence, the "facts" upon which plaintiff attempts to rely are the basis for defendant's bringing the Motion in the first place.  At page 2 of defendant's Points and Authorities in support of his Motion, defendant states: "There are several important issues entwined with the CAI stock ownership dispute that involve not only Mr. Zambrana, CAI and J. Cauderlier, but another corporation in which both Mr. Zambrana and J. Cauderlier claim to own stock, *i.e.*, LaRuche, Inc. ('LaRuche').  These issues relate to the (a) the respective ownership of shares in LaRuche, (b) the nature of the relationship between LaRuche and CAI, and (c) the question of whether funds of LaRuche and CAI have been so intermingled as to make La Ruche and CAI

---

[7]  Since these assertions are listed above, in the Discussion portion of this Memorandum, citations to plaintiff's Memorandum in Opposition are omitted.

4

indistinguishable." It is because these issues are unresolved and pertinent to the instant action that defendant posits, on the same page of his Points and Authorities, that, "J. Cauderlier is an indispensable plaintiff in this case and LaRuche is an indispensable defendant."

Until all these issues are resolved by a fact finder, full relief cannot be afforded the parties, even with respect to the focused relief sought under plaintiff's Complaint as it now stands. This is the whole point of defendant's Motion.

## JEAN CAUDERLIER IS AN INDISPENSABLE PARTY

Plaintiff is correct that the question of whether a party should be joined under Fed. R. Civ. P. 19 is "largely factual, completely with the Court's discretion, and is *determined in the context of a particular litigation*" [Emphasis added].[8] Defendant asserts that it is the very context of the present case that demands the joinder of Jean Cauderlier ("Cauderlier") to these proceedings[9].

Before discussing the cases cited by plaintiff, defendant would like to reiterate a primary contention upon which he bases his Motion: ***Jean Cauderlier is the real party in interest in this case, not CAI.***[10]

### *Divergent Interests*

In its Memorandum in Opposition, plaintiff takes the position that "the fact that Mr. Cauderlier could have brought this lawsuit is immaterial. CAI has a cognizable legal interest in a

---

[8] Memorandum in Opposition, p. 3.

[9] Or similar proceedings in a state court.

[10] As discussed below, it may be that La Ruche, Inc. has a greater claim than even Cauderlier.

5

judicial determination of who its shareholders are."[11, 12] Defendant contends that, even if the latter sentence were supported by citation(s) to case law or statute, there can be no dispute that the *precise* number of shares held by Jean Cauderlier, and the question of whether other persons also have an ownership interest in CAI stock, is of greater importance to Cauderlier, than to CAI.

Had Cauderlier not usurped total control over CAI,[13] CAI would not be concerned with which persons are holders of its stock, or in what proportion. CAI simply would need to have clarity in this regard. On the other hand, Jean Cauderlier has a vested interest in whether he is found to be the sole shareholder, the majority shareholder, or otherwise. He, as does Mr. Zambrana, also has a vested interest in a judicial determination of the dueling shareholders' respective ownership in La Ruche, Inc. ("La Ruche"), and, by possible extension, the Building.

The case most relied upon by plaintiff, *Primax Recoveries, Inc. v. Lee*, 260 F. Supp. 2d 43 (D.D.C. 2003), is informative (but not controlling). In *Primax*, the defendant sought to join the George Washington University Health Plan (the "Plan") as a party to the lawsuit seeking reimbursement for certain monies the Plan had paid to defendant. The District Court found that the Plan had made a valid assignment of its reimbursement rights to Primax, the named plaintiff. With that factual determination in hand, the court ruled that Primax was the real party in interest and the Plan was not an indispensable party.

---

[11] Plaintiff cites no authority establishing that a corporation, rather than its shareholders, even has standing to bring the instant suit.

[12] Memorandum in Opposition, p. 5.

[13] Defendant expects no dispute from plaintiff that Jean Cauderlier controls CAI's every day business concerns and lays claim to 100% of CAI's stock.

What plaintiff fails to recognize is that the "context" of the *Primax* case is readily distinguishable from the case at bar. In *Primax*, there was no dispute that the Plan's rights were properly assigned to Primax, and that Primax "stood in the shoes" of the Plan as its fiduciary. By contrast, ownership questions pervade every aspect of this litigation, and CAI cannot conclusively be said to stand in Jean Cauderlier's shoes.

### *Res Judicata and Stare Decisis*

The *Primax* case is useful in addressing another of plaintiff's positions. In answer to defendant's contention that he could be exposed to duplicative litigation if Jean Cauderlier is not made a party to this action,[14] plaintiff states, "[c]onsidering the principles of *stare decisis*[15] and *res judicata* that would attach to the determination of CAI's ownership, no matter the Court's ultimate ruling, the chances of defendant facing a 'virtually identical' lawsuit, are slim to none."[16] Since plaintiff provided no citations for this proposition, defendant will point to language in *Primax*, which contradicts plaintiff's assertion. The *Primax* court said:

> Under general principals of *res judicata*, the outcome of a case *cannot be held against those who are not parties to the original suit*, unless the parties are in privity [Citation omitted]. A party is considered to be "in privity" with another where he is "so identified in interest with a party to former litigation that he represents *precisely the same legal right* in respect to the subject matter involved" [Citation omitted]. [Emphasis added.] *Id.*, at 51-52.

---

[14]  *See* Defendant's Points and Authorities, p. 7.

[15]  The principles of *stare decisis* are inapplicable to the instant proceeding, since "[t]he rule of *stare decisis* is never properly invoked unless in the decision put forward as precedent[,] the judicial mind has been applied to and passed upon the precise question." (Citations omitted). *Wilson-Bey v. U.S.*, 871 A.2d 1155, 1166 [fn. 19] (D.C. 2005). No prior decision has been put forward by plaintiff as precedent.

[16]  Memorandum in Opposition, p. 8.

The District Court concluded that there was privity between Primax and the Plan and, because of "the Plan's *complete lack of expressed interest* in this case,"[17] defendant was not subject to any significant risk of a future suit over the claims raised in that case.

The instant case is patently different. Here, as mentioned above, CAI and Jean Cauderlier do not represent "precisely the same legal right in respect to the subject matter." Their interests clearly diverge. Cauderlier has an interest in being declared the owner of 100% of CAI's stock; plaintiff's interest is in having certainty in its shareholder rolls regardless of who the shareholders are. As a result, defendant is exposed to the risk of additional litigation being brought by Cauderlier, should Cauderlier be dissatisfied with the outcome of this case.

Moreover, Jean Cauderlier cannot be said to have a "complete lack of expressed interest in this case." The Complaint itself, as mentioned on page 6 of defendant's Points and Authorities, acknowledges that Cauderlier has more than a rooting interest in how this case turns out. *See, inter alia*, ¶42 of the Complaint. *Primax* is thus inapposite, if for no other reason than Cauderlier's having an unquestionable interest in this case, which interest does not dovetail with plaintiff's.

Additionally, the United States Supreme Court case cited by plaintiff, *Provident Tradesmens Bank & Trust v. Patterson*, 390 U.S. 102, 88 S.Ct. 733 (1968), happens to weigh in on the *res judicata* issue and confirms that Cauderlier would not be bound by a decision in this case were the litigation to proceed to go forward in his absence: "Of course, since the outsider is not before the court, he cannot be bound by the judgment rendered. This means, however, only

---

[17]  *Id.,* at 52. (Emphasis added.)

8

that a judgment is not res judicata as to, or legally enforceable against, a nonparty." 390 U.S. at 106, 88 S.Ct. at 736.

### Rule 19 Considerations

In fairness, it should be noted that plaintiff cites the *Provident* case for other reasons. However, *Provident* involved a complicated and distinguishable set of facts, and an unusual posture, which render it inapposite here. In *Provident*, the Supreme Court had before it a case in which the Court of Appeals for the Third Circuit issued a decision that was based upon two grounds *that had not been raised* in the District Court trial or by the appellant. Moreover, the Court of Appeals relied on its own (erroneous) interpretation of the "newly amended Rule 19," as characterized by the Supreme Court at 390 U.S. at 110, 88 S.Ct. at 739.

According to the Supreme Court, the Court of Appeals

> did not consider whether the fact that a verdict had already been rendered, without objection to the nonjoinder of Dutcher [the party sought to be joined], affected the matter. Nor did it follow the provision of Rule 19 of the Federal Rules of Civil Procedure that findings of 'indispensability' must be based on stated pragmatic consideration. It held, to the contrary, that the right of a person who 'may be affected' by the judgment to be joined is a substantive right, *unaffected by the federal rules. Id.*, 390 U.S. at 106, 88 S.Ct. at 736. [Emphasis added].

The Supreme Court reached the conclusion "that the inflexible approach adopted by the Court of Appeals in this case exemplifies the kind of reasoning that the Rule was designed to avoid," and reversed the appeals court decision. *Id.*, 390 U.S. at 106, 88 S.Ct. at 736.

Interestingly, the Supreme Court said it was required to view Rule 19(b) "entirely from an appellate perspective since the matter of joinder was not considered in the trial court." *Id.*, 390 U.S. at 109, 88 S.Ct. at 738. One example of how the unique posture of *Provident* distinguishes that case from this was the Supreme Court's observation that, "[b]y the time the case reached the

9

Court of Appeals, however, the problematical preference on efficiency grounds had entirely disappeared; there was no reason then to throw away a valid judgment just because it did not theoretically settle the whole controversy." *Id.*, 390 U.S. at 116, 88 S.Ct. at 741. Thus, not only were the facts far different in *Provident* than those pertinent to the instant Motion, but the Supreme Court's retrospective appraisal of the facts in *Provident* leaves no doubt that that case is distinguishable. *Provident* is not controlling here.

### LA RUCHE IS AN INDISPENSABLE PARTY

Plaintiff CAI takes great pains in its effort to convince the Court that La Ruche, Inc., is not a necessary party to this proceeding. Plaintiff relies upon unproven "facts" to bolster its contention and produces no verifiable evidence. Plaintiff states in its Memorandum in Opposition, "[a]s stated in the Complaint, La Ruche is a separate and independent entity from CAI. Defendant's relationship with La Ruche is distinct from defendant's relationship with CAI."[18] The only apparent "proof" for this proposition is that it was "stated in the Complaint." No other verification is offered. Likewise, plaintiff avers, "La Ruche has no ownership interest, nor does it assert an ownership interest in CAI. . . ."[19] Again, just a bare allegation is proffered; nothing else.

On page ten of its Memorandum in Opposition, plaintiff argues: "Neither La Ruche nor defendant will suffer prejudice if a judgment is render in La Ruche's absence because La Ruche claims no interest in CAI and defendant remains free to raise any claim against La Ruche in a

---

[18] Memorandum in Opposition, p. 8.

[19] Memorandum in Opposition, p. 8.

separate action." Plaintiff repeats this proposition several more times on the same page, attempting to support similar but slightly different arguments.

Despite these averments, the lack of evidence put forward by CAI would lead a reasonable person to ask CAI, "*what is the source of your information*?"

There are also other problems with plaintiff's suggesting that La Ruche claims no interest in CAI. If the facts as laid out in defendant's Affidavit are true, La Ruche **should** be claiming an interest in CAI, and it would not be plaintiff's place to decide otherwise. In fact, if the Affidavit is accurate, CAI should be the *last* "person" to be making such a determination for La Ruche. So, just how does CAI "know" that La Ruche claims no interest in CAI?

### WHAT PLAINTIFF DOES AND DOES NOT KNOW ABOUT LA RUCHE

The "how does CAI know?" question opens a Pandora's Box, it turns out. Unfortunately for everyone involved in this case, it would seem that counsel for CAI actually counts La Ruche, Inc., as one of its clients, too.[20] To make matters worse, plaintiff's counsel represents Jean Cauderlier, as well.[21]

Although defendant's counsel had hoped plaintiff's counsel would act to ensure that any potential conflict of interest would be avoided, it is now evident that that task has not been accomplished. The conflict in the dual representation of CAI and La Ruche is exacerbated by an entry on La Ruche's 2004 tax return, that appears to indicate that *La Ruche, Inc. owns "100%" of*

---

[20] Plaintiff's counsel conveyed La Ruche's 2004 tax returns to counsel for defendant, with a letter dated July 26, 2005. [Exhibit 1]. Although the tax return is not signed, defendant accepts it as an authentic copy, since it was sent to his counsel by La Ruche's counsel.

[21] Plaintiff's counsel advised defendant's counsel by letter dated January 27, 2005, that his firm represented Jean Cauderlier. [Exhibit 2.]

11

*the stock in CAI.*[22]  Absent an explanation from CAI, showing that La Ruche's tax return is erroneous (assuming CAI admits that it is privy to such information), or proving that defendant has wrongly interpreted the Statement 4's meaning or import, there is raised a greater issue than plaintiff's counsel's divided loyalties: the entire basis of CAI's claim, and everything asserted in the Complaint, are thrown into question.

Equally troubling is plaintiff's counsel's dual representation of Jean Cauderlier. The only person who would benefit from a finding that (a) CAI and La Ruche are separate entities, (b) Jean Cauderlier is the sole shareholder in CAI, (c) there has been no commingling of funds, (d) La Ruche makes no claim to an interest in CAI, (e) CAI alone owns the Building, and (f) Mr. Zambrana owns only a 10% share in La Ruche and no share in CAI, is Jean Cauderlier.  He is the only person who could presume to speak for both corporate entities and could dictate their purported positions on the issues at bar.  No one else could have, or would have wanted to, approve the allegations in the Complaint or put forward the arguments contained in plaintiff's Memorandum in Opposition.

### PLAINTIFF'S COUNSEL SHOULD BE REQUIRED TO WITHDRAW FROM THIS ACTION

These circumstances make it apparent that plaintiff's counsel cannot continue in that role, by virtue of 1.7 of the District of Columbia Rules of Professional Conduct.  There is no conceivable way that plaintiff's counsel could obtain meaningful consents to its representation of

---

[22] La Ruche's 2004 federal income tax is marked "Exhibit 3" and attached hereto.  The page entitled "Statement(s) 4, 5, 6, 7" at the bottom right of the page displays a top-of-the page entry, captioned Statement 4 ("50% or More Ownership Question"), indicating that La Ruche possesses a 100% share of CAI's stock.  This information only came to defendant's attention yesterday evening, after the bulk of this Reply had been drafted, or it would have been raised earlier.  In fact, it would have been raised in the original Motion.  Defendant would also point out to the Court that, unlike its 2000 tax return, part of which was attached to the Motion as Exhibit B, La Ruche's 2004 tax return indicates that Jean Cauderlier is the owner of 90% of its shares, rather than 100%.

12

these three clients, or any one of them, given their conflicting interests in the outcome of the Motion and this case.

Worse, one wonders how counsel for La Ruche could have advanced in writing the proposition that "La Ruche asserts no interest in CAI." It is transparently not in La Ruche's best interest to disavow its ownership in CAI. This is especially true in light of a possible commingling or misappropriation of La Ruche's funds, and CAI's claim to ownership of the Building.

The same concerns arise when one considers what would be in Jean Cauderlier's best interest. His "ideal" outcome in this case obviously does not necessarily coincide with either CAI's or La Ruche's respective "best results."

Reluctantly, defendant must respectfully request that this Court order plaintiff's counsel to withdraw from its representation of any parties in this case, present or future, as required by District of Columbia Rules of Professional Conduct, Rule 1.7.

Finally, defendant requests that this Court enter an Order dismissing the Complaint filed herein and awarding defendant all his attorneys' fees.

Respectfully submitted,

KASS, MITEK & KASS, PLLC

Dated: September 30, 2005          By: _____

Benny L. Kass  (D.C. Bar No. #025155)
Jeffrey M. Hamberger (D.C. Bar No. 930362)
1050 17th Street, N.W., #1100
Washington, D.C. 20036
blkass@kmklawyers.com
jhamberger@kmklawyers.com
(202) 659-6500
Attorneys for Defendant

13

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Defendant's Reply Memorandum and proposed Order were served, via U.S. mail postage prepaid, and by email, this 30th day of September, 2005, to:

> Robert L. Green, Jr., Esquire
> Suzanne R. Clement, Esquire
> HOWREY, LLP
> 1299 Pennsylvania Avenue, N.W.
> Washington, D.C. 20004
> greenr@howrey.com
> clements@howrey.com

_____
Jeffrey M. Hamberger

F:\WP_FILES\CLIENTS\04300.101\Reply Memorandum.final.wpd

14