IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUDERLIER & ASSOCIATES, INC.<br><br>Plaintiff<br><br>v.<br><br>SERGIO ZAMBRANA<br><br>Defendant/Third-Party Plaintiff<br><br>v.<br><br>JEAN CLAUDE CAUDERLIER<br><br>and<br><br>LA RUCHE, INC.<br><br>Third-Party Defendants | Civil Case No. 1:05CV01653<br>Judge Ellen Segal Huvelle |

## THIRD-PARTY COMPLAINT

### Parties

1. Defendant/counter-plaintiff, Sergio Zambrana ("Mr. Zambrana"), is an adult citizen of the State of Maryland, over the age of eighteen (18) years, and brings this action on his own behalf.

2. Upon information and belief, third-party defendant, La Ruche, Inc. ("La Ruche"), is a corporation created under the laws of the District of Columbia, with its principal place of business being located at 1039 31st Street, N.W., Washington, D.C.

3. Upon information and belief, third-party defendant, Jean Claude Cauderlier ("J. Cauderlier"), is an adult citizen of the Commonwealth of Virginia, over the age of eighteen (18) years, and is sued in his own right and as majority stockholder, director, and chief executive officer of plaintiff Cauderlier & Associates, Inc. ("CAI") and third-party defendant La Ruche.

### Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, inasmuch as this action is between citizens of different states and the amount in controversy exceeds, exclusive of interest and costs, the sum or value of Seventy-Five Thousand Dollars ($75,000.00). In addition, the controversy asserted herein gives rise to the action pursuant to 28 U.S.C. § 2201.

5. Venue is appropriate under 28 U.S.C. § 1391 since a substantial part of the events or omissions giving rise to the claims complained of herein occurred in the District of Columbia, and the corporate third-party defendant, La Ruche, Inc., is situated in the District of Columbia.

### Facts

6. Upon information and belief, third-party defendant La Ruche owns some or all the stock of plaintiff CAI. [*See* Exhibit 3 to Defendant's Reply Memorandum, filed herein.]

7. LaRuche owns Café LaRuche, a restaurant located at 1039 31st Street, N.W., Washington, D.C.

8. Third-party defendant J. Cauderlier operates Café LaRuche.

9. From 1986 to September, 2005, Mr. Zambrana was the general manager of Café LaRuche and was a highly valued employee of LaRuche.

10. Mr. Zambrana and J. Cauderlier had, prior to 2000, worked together for some 15 years, and Mr. Zambrana had developed a high level of trust in J. Cauderlier.

11. Sometime before January 20, 2000, J. Cauderlier advised Mr. Zambrana that CAI would be purchasing the real property and building located at 1035, 1037 1039 31st Street, N.W., Washington, D.C. 20007 ("the Building"), at which location Café LaRuche did (and does) business.

12. During said time frame, J. Cauderlier advised Mr. Zambrana that, if Mr. Zambrana paid the sum of Twenty-Five Thousand Dollars ($25,000.00) to LaRuche, for use by CAI, Mr. Zambrana would be entitled to an ownership interest in CAI and/or the Building.

13. On January 20, 2000, on the eve of settlement on the sale of the Building, Mr. Zambrana paid, at the behest of J. Cauderlier, the sum of $25,000 by personal check payable to LaRuche, for the use of CAI, which check was dated January 21, 2000 and delivered to J. Cauderlier.

14. At all times herein leading up to the purchase of the Building, J. Cauderlier was in control of CAI: J. Cauderlier owned a majority, if not all, of the shares in CAI; he was a director of CAI and its Chief Operating Officer (CEO); and he controlled CAI's bank accounts.

15. At all times herein leading up to the purchase of the Building, J. Cauderlier was in control of La Ruche: J. Cauderlier owned a majority of the shares in LaRuche; he was La Ruche's CEO and sole director; and he controlled La Ruche's bank accounts.

16. At all times herein leading up to the purchase of the Building, J. Cauderlier exerted unfettered control over the books, records, stock ledgers, money and management of both LaRuche and CAI, as majority shareholder and chief executive officer of each corporation.

17. For approximately three (3) years prior to the purchase of the Building, and at the time of the purchase of the Building, Mr. Zambrana owned at least ten percent (10%) of the shares in LaRuche.

18. By virtue of his having contributed funds toward the purchase of the Building by plaintiff CAI, Mr. Zambrana owns shares in CAI, in an amount that must be judicially determined.

19. By virtue of his having contributed funds toward the purchase of the Building by plaintiff CAI, and by virtue of his ownership of shares in CAI, Mr. Zambrana owns a portion of the Building, in a proportion that must be judicially determined.

20. Both third-party defendants, La Ruche and J. Cauderlier, contend that Mr. Zambrana owns no shares in CAI.

21. Both third-party defendants, La Ruche and J. Cauderlier, contend that Mr. Zambrana has no ownership interest in the Building.

22. Both third-party defendants, La Ruche and J. Cauderlier, contend that La Ruche owns no shares in CAI.

23. Both third-party defendants, La Ruche and J. Cauderlier, contend that La Ruche has no ownership interest in the Building.

24. It is not in La Ruche's best interest to disavow all ownership of shares in CAI.

25. It is not in La Ruche's best interest to disavow all ownership interest in the Building.

26. The $25,000 check Mr. Zambrana gave to J. Cauderlier, payable to LaRuche, on January 20, 2000, which was the eve of the closing on the sale of the Building, was not payment

for any ownership share in LaRuche and was instead used, directly or indirectly, by third-parties defendant, La Ruche and Cauderlier, as part of CAI's purchase price for the Building.

27. Settlement on the purchase of the Building by CAI took place on January 21, 2000, at which settlement J. Cauderlier was present. Mr. Zambrana was also present, at the invitation of J. Cauderlier.

28. Upon information and belief, the $25,000 personal check payable to LaRuche which Mr. Zambrana gave to J. Cauderlier was, in fact, used by CAI, directly or indirectly, toward the down payment CAI paid for the purchase of the Building.

29 Upon information and belief, since January 21, 2000, LaRuche has made many payments directly to the seller of the Building, on behalf of CAI, as payment on the deed of trust note given by CAI to said seller.

30. Upon information and belief, since January 21, 2000, LaRuche has made many payments to First Union Bank, on behalf of CAI, as payment on a note given by CAI to First Union in connection with CAI's purchase of the Building.

31. Upon information and belief, since January 21, 2000, LaRuche has made many payments to Wachovia, on behalf of CAI, as payment on a loan to CAI made by Wachovia Bank.

32. Upon information and belief, since January 21, 2000, LaRuche has made many payments to attorneys, accountants, architects and other vendors, on behalf of CAI, for obligations on which CAI, and not La Ruche, was liable.

33. Upon information and belief, LaRuche continues to this day to make payments to the seller of the Building, as well as to banks, attorneys, accountants, architects and other vendors, on behalf of CAI, for obligations on which CAI, and not La Ruche, is liable.

34. In addition to this commingling of funds, J. Cauderlier has failed to maintain the corporate formalities of both CAI and La Ruche: annual meetings of shareholders were not held, annual meetings of the board of directors were not held, necessary corporate resolutions were not prepared nor executed; stock certificates were not issued; elections of directors and officers were not conducted, corporate reports to the District of Columbia were not filed, and the charters of both La Ruche and CAI were at some time revoked.

35. By virtue of (a) his ownership of stock in La Ruche, (b) La Ruche's ownership of CAI, or the Building, or both, and (c) his capital investment in CAI, Mr. Zambrana is a part owner of CAI, and either owns the stock in CAI, or owns a proportionate share of the Building to which CAI claims ownership.

36. Third-party defendant J. Cauderlier has retained the same law firm and accountant to represent him personally, as well as plaintiff CAI and third-party defendant, La Ruche, enabling J. Cauderlier to manipulate the books, records, stock ledgers and monies of said corporations, to his sole advantage, and to the detriment of third-party plaintiff Mr. Zambrana.

37. Third-party defendant J. Cauderlier has retained the same law firm and accountant to represent him personally, as well as plaintiff CAI and third-party defendant, La Ruche, enabling J. Cauderlier to manipulate the books, records, stock ledgers and monies of said corporations, to his sole advantage, and to the detriment of third-party defendant La Ruche, in which corporation Mr. Zambrana has a substantial interest.

38. Third-party defendant J. Cauderlier has retained the same law firm and accountant to represent him personally, as well as plaintiff CAI and third-party defendant, La Ruche, enabling J. Cauderlier to manipulate the books, records, stock ledgers and monies of said

corporations, to his sole advantage, and to the detriment of plaintiff CAI, in which corporation Mr. Zambrana has a substantial interest.

## Count I: For an Accounting
### (Against Third-Party Defendant La Ruche, Inc.)

39.  The allegations set forth in paragraphs 1 through 38 of the Third-Party Complaint are incorporated herein.

40.  Upon information and belief, LaRuche and CAI do not always distinguish between which company owns which assets.

41.  Upon information and belief, as a result of La Ruche's and CAI's failure to make the proper distinctions between the companies' respective assets, monies of La Ruche have been commingled with monies of CAI.

42.  Since Mr. Zambrana issued a $25,000 payable to La Ruche, and said monies were used by CAI to purchase the Building, Mr. Zambrana is entitled to an accounting of the assets owned by La Ruche.

43.  La Ruche has used its corporate funds to pay for obligations that belong to CAI and not La Ruche.

44.  La Ruche has claimed on its 2004 tax return that it owns 100% of the stock of CAI. [*See* Exhibit 3 to Defendant's Reply Memorandum, filed herein.]

45.  Since Mr. Zambrana (i) owns stock in LaRuche, (ii) LaRuche owns some or all the stock in CAI, and (iii) CAI owns the Building or purchased the Building on behalf of its shareholders, Mr. Zambrana holds an ownership position CAI, and/or the Building.

46.  Mr. Zambrana is entitled to an accounting of the assets owned by La Ruche.

### Count II: For an Accounting
### (Against Third-Party Defendant J. Cauderlier)

47.  The allegations set forth in paragraphs 1 through 46 of the Third-Party Complaint are incorporated herein.

48.  La Ruche has claimed on its 2004 tax return that it owns 100% of the stock of CAI. [*See* Exhibit 3 to Defendant's Reply Memorandum, filed herein.]

49.  J. Cauderlier contends that he is 100% owner of the stock of CAI. [*See* ¶17 of the Complaint filed herein.]

50.  J. Cauderlier exerts complete control over the books, records, stock ledgers, monies, and management of both plaintiff CAI and third-party defendant La Ruche.

51.  J. Cauderlier denies that Mr. Zambrana owns any stock in CAI, and denies that Mr. Zambrana owns more than 10% of the stock of LaRuche.

52.  Since Mr. Zambrana (i) owns at least 10% of the stock in LaRuche, (ii) LaRuche owns some or all the stock in CAI, and (iii) CAI owns the Building or purchased the Building on behalf of its shareholders, Mr. Zambrana holds an ownership position CAI, and/or the Building.

53.  Mr. Zambrana is entitled to an accounting by J. Cauderlier of the assets of La Ruche and CAI.

### Count III: Declaratory Judgment
### (Against Third-Party Defendant J. Cauderlier)

54.  The allegations set forth in paragraphs 1 through 53 of the Third-Party Complaint are incorporated herein.

55.  J. Cauderlier contends that he is 100% owner of the stock of CAI and contends that CAI owns 100% of the Building.

56. Since Mr. Zambrana paid monies that were intended to be used, and were in fact used, to enable CAI to purchase the Building, Mr. Zambrana holds an ownership position in CAI, and/or in the Building.

57. Mr. Zambrana is entitled to a judicial determination of his ownership share in the assets of CAI, and/or in the Building, if separate.

<u><strong>Count IV: Declaratory Judgment</strong></u><br>
<strong>(Against Both Third-Party Defendants)</strong>

58. The allegations set forth in paragraphs 1 through 57 of the Third-Party Complaint are incorporated herein.

59. Several years before Mr. Zambrana gave J. Cauderlier the $25,000 check payable to LaRuche, on behalf of CAI, on January 20, 2000, Mr. Zambrana owned 10% of the stock in LaRuche.

60. In 1997, J. Cauderlier directed La Ruche to issue to Mr. Zambrana a stock certificate memorializing Mr. Zambrana's ownership interest in La Ruche, which stock was issued in recognition of Mr. Zambrana's eleven (11) years of loyal service to La Ruche, and in consideration of Mr. Zambrana's agreeing not to leave La Ruche, at a time when other employees were leaving the employ of La Ruche to establish a new restaurant, and offering equity shares in that new enterprise.

61. By virtue of his giving J. Cauderlier the $25,000 check payable to LaRuche, on January 20, 2000, Mr. Zambrana either obtained a share in CAI and/or the Building, as he contends, or Mr. Zambrana obtained an additional amount of stock in La Ruche.

62. J. Cauderlier denies that Mr. Zambrana owns more than 10% of the stock of LaRuche.

63. J. Cauderlier contends that Mr. Zambrana obtained a 10% share of the stock in La Ruche by virtue of his having given J. Cauderlier the aforementioned $25,000 check payable to La Ruche, on January 20, 2000, and contends that Mr. Zambrana owns no other interest in La Ruche.

64. Mr. Zambrana is entitled to a judicial determination of his ownership share in the assets of LaRuche.

## Count V: Monetary Award
### (Against Third-Party Defendant J. Cauderlier)

65. The allegations set forth in paragraphs 1 through 64 of the Third-Party Complaint are incorporated herein.

66. Antagonistic claims exist between Mr. Zambrana and J. Cauderlier, and the parties are no longer able to conduct business together.

67. Given the antagonism between Mr. Zambrana and J. Cauderlier, Mr. Zambrana contends that his interests in CAI will always be in jeopardy and subject to the whims and questionable judgment of J. Cauderlier, if Mr. Zambrana is required to remain as a minority shareholder CAI.

68. It is not tenable that Mr. Zambrana and J. Cauderlier continue as joint shareholders in CAI, and it would be against the best interests of Mr. Zambrana, as well as of CAI, if Mr. Zambrana were to remain a minority shareholder in CAI.

69. Due to the misconduct of J. Cauderlier in his operation of CAI, as aforesaid, and J. Cauderlier's wrongful inducement of Mr. Zambrana, as described in Count VII below, Mr. Zambrana is entitled to have his shares bought by J. Cauderlier, and to be awarded a monetary

judgment against J. Cauderlier equal to the value of Mr. Zambrana's share in the assets of CAI and/or in the Building, if separate.

### Count VI: Monetary Award
**(Against Both Third-Party Defendants)**

70. The allegations set forth in paragraphs 1 through 69 of the Third-Party Complaint are incorporated herein.

71. Antagonistic claims exist between Mr. Zambrana and J. Cauderlier, and the parties are no longer able to conduct business together.

72. Given the antagonism between Mr. Zambrana and J. Cauderlier, Mr. Zambrana contends that his interests in La Ruche will always be in jeopardy and subject to the whims and honesty of J. Cauderlier, if Mr. Zambrana is required to remain as a minority shareholder in La Ruche.

73. It is not tenable that Mr. Zambrana and J. Cauderlier continue as joint shareholders in La Ruche, and it would be against the best interests of Mr. Zambrana, as well as of La Ruche, if Mr. Zambrana were to remain a minority shareholder in La Ruche.

74. Due to the misconduct of J. Cauderlier in his operation of La Ruche, as aforesaid, and J. Cauderlier's wrongful inducement of Mr. Zambrana, as described in Count VII below, Mr. Zambrana is entitled to have his shares bought by J. Cauderlier, and to be awarded a monetary judgment against J. Cauderlier equal to the value of Mr. Zambrana's share in La Ruche.

### Count VII: Unjust Enrichment
**(Against Both Third-Party Defendants)**

75. The allegations set forth in paragraphs 1 through 74 of the Third-Party Complaint are incorporated herein.

76. Mr. Zambrana was improperly induced by misrepresentations and false promises made by J. Cauderlier when Mr. Zambrana decided to give J. Cauderlier his personal check for $25,000, payable to La Ruche, on January 20, 2000.

77. But for the misrepresentations and improper inducements by J. Cauderlier, Mr. Zambrana would not have issued said personal check.

78. As a result of the misconduct of J. Cauderlier in his operation of La Ruche and CAI, as aforesaid, and his wrongful inducement of Mr. Zambrana, J. Cauderlier has been unjustly enriched at the expense of Mr. Zambrana.

79. As a result of the misconduct of J. Cauderlier in his operation of La Ruche and CAI, as aforesaid, and his wrongful inducement of Mr. Zambrana, La Ruche has been unjustly enriched at the expense of Mr. Zambrana.

80. As a result of La Ruche's receiving Mr. Zambrana's personal check in the amount of $25,000, which check was delivered to its chief executive officer, J. Cauderlier, on January 20, 2000, and as a result Mr. Zambrana receiving no consideration from La Ruche therefor, La Ruche was unjustly enriched at the expense of Mr. Zambrana.

81. As a result of the commingling of the assets of La Ruche and CAI by J. Cauderlier, as aforesaid, J. Cauderlier and La Ruche have each been unjustly enriched at the expense of Mr. Zambrana.

82. Mr. Zambrana is entitled to be awarded a monetary judgment against J. Cauderlier and La Ruche, jointly and severally, in an amount equal to the amounts by which each third-party defendant was unjustly enriched at Mr. Zambrana's expense, as determined by the Court.

### Count VIII: Usurpation of Corporate Opportunity
### (Against J. Cauderlier)

83. The allegations set forth in paragraphs 1 through 82 of the Third-Party Complaint are incorporated herein.

84. In August 1999, J. Cauderlier began negotiations to purchase the Building, "on behalf of CAI." [*See* ¶¶ 16 and 20 of the Complaint filed herein.]

85. Plaintiff CAI was incorporated on August 19, 1999. [*See* ¶16 of the Complaint filed herein.]

86. Upon information and belief, the monies used to establish and fund CAI were paid entirely out of the funds of La Ruche.

87. When he created CAI, J. Cauderlier was the sole owner of the stock of CAI. [*See* ¶17 of the Complaint filed herein.]

88. J. Cauderlier contends that, on August 19, 1999, he "was authorized" to enter CAI into an agreement to purchase the Building for $1,100,001.00, and that he was authorized to open a bank account for CAI. [*See* ¶18 of the Complaint filed herein.]

89. Any "authorization" received by J. Cauderlier, referred to paragraph 84 above, was given to J. Cauderlier by J. Cauderlier, since he was the sole shareholder of CAI.

90. Since LaRuche occupied the Building and operated Café La Ruche in the Building, the corporate opportunity to purchase the Building, when it arose, rightfully belonged to La Ruche.

91. Since J. Cauderlier knew that Mr. Zambrana was an owner of at least 10% of the stock in LaRuche in 1999, J. Cauderlier elected to create CAI as a corporate vehicle, funded entirely with monies provided by La Ruche, through which to purchase the Building, so as to

13

deprive Mr. Zambrana of any interest in the Building by virtue of his being a shareholder of LaRuche.

92. J. Cauderlier usurped from La Ruche the corporate opportunity to purchase the Building rightfully belonging to it, and, in so doing, wrongfully deprived Mr. Zambrana from a share in the Building to which he should have been entitled.

93. It would be inequitable to permit J. Cauderlier and or CAI to retain ownership interests in the Building, which interests were wrongfully obtained.

94. Mr. Zambrana is entitled to be awarded a monetary judgment against J. Cauderlier and La Ruche, jointly and severally, in an amount equal to Mr. Zambrana's proportionate ownership share in the Building, at its appreciated value, as determined by the Court.

### Count IX: Constructive Trust)
### (Against J. Cauderlier)

95. The allegations set forth in paragraphs 1 through 94 of the Third-Party Complaint are incorporated herein.

96. It would be inequitable to permit J. Cauderlier to retain monies and/or ownership interests in La Ruche, CAI, and/or the Building that were obtained through misrepresentation, wrongful inducement, commingling of corporate funds or usurpation of the corporate opportunity rightfully belonging to La Ruche.

97. The court should impose on J. Cauderlier a constructive trust, comprising the stock in La Ruche, the stock in CAI, and all the ownership interests in the Building, for the benefit of Mr. Zambrana, until such time as the parties' respective interests are determined by the Court.

**WHEREFORE,** third-party plaintiff, Sergio Zambrana, prays that this Honorable Court enter judgment in his favor against third-party defendants, Jean Claude Cauderlier and La Ruche, Inc., jointly and severally, as follows:

1. That the Court enter an order requiring third-party defendant, Jean Claude Cauderlier, to account to Mr. Zambrana for:

     (a)   All monies La Ruche has received from Mr. Zambrana;

     (b)   All monies CAI has received from or through Mr. Zambrana;

     (c)   All monies La Ruche has received from CAI;

     (d)   All monies CAI has received from LaRuche, Inc.;

     (e)   All monies paid to or on behalf of J. Cauderlier by La Ruche;

     (f)   All monies paid to or on behalf of J. Cauderlier by CAI;

     (g)   All monies La Ruche has received from J. Cauderlier;

     (h)   All monies CAI has received from J. Cauderlier;

     (i)   All monies or other assets that J. Cauderlier has paid for stock in La Ruche, giving the amount of monies paid, the date of payment, the number of shares owned by J. Cauderlier, the date(s) of issuance of each share of stock, the date of sale of any such stock by J. Cauderlier; and the current percentage ownership of each shareholder in LaRuche;

     (j)   All monies or other assets that J. Cauderlier has paid for stock in CAI, giving the amount of monies paid, the date of payment, the certificate number(s) and number of shares owned by J. Cauderlier, the date(s) of issuance of each share of stock, the date of sale of any such stock by J. Cauderlier; and the current percentage ownership of each shareholder in CAI;

(k) All monies and other assets received by J. Cauderlier from La Ruche, from the date of LaRuche's inception to the present, including the amounts described in subsection (e), showing the amount of each payment or receipt, from whom received, the date of payment, into what accounts (or other form of investment) were the monies placed, and the purpose of each such payment or receipt;

(l) All monies and other assets received by J. Cauderlier from CAI, from the date of CAI's inception to the present, including the amounts described in subsection (f), showing the amount of each payment or receipt, from whom received, the date of payment, into what accounts (or other form of investment) were the monies placed, and the purpose of each such payment or receipt;

(m) All monies and other assets paid out by J. Cauderlier to or on behalf of La Ruche, from the date of LaRuche's inception to the present, including the amounts described in subsection (g), showing the amount of each payment, from whom received, the date of payment, from which accounts (or other form of investment) were the monies taken, and the purpose of each such payment;

(n) All monies and other assets paid out by J. Cauderlier to or on behalf of CAI, from the date of CAI's inception to the present, including the amounts described in subsection (h), showing the amount of each payment, from whom received, the date of payment, from which accounts (or other form of investment) were the monies taken, and the purpose of each such payment.

2. That the Court enter an order requiring third-party defendant, La Ruche, Inc., to account to Mr. Zambrana for:

(a) All monies La Ruche has received from Mr. Zambrana;

(b) All monies La Ruche has received from CAI;

(c) All monies La Ruche has paid to CAI;

(d) All monies La Ruche has paid to J. Cauderlier;

(e) All monies La Ruche has received from J. Cauderlier;

(f) All monies that have been paid for stock in La Ruche, giving the name of each shareholder, the amount of monies paid, the date of payment, the number of shares owned, the date(s) of issuance of each share of stock, the date of sale of any such stock; and the current percentage ownership of each shareholder;

(g) All monies and other assets received by La Ruche, from the date of its inception to the present, including the amounts described in subsections (a), (b), (e), and (f), showing the amount of each payment or receipt, from whom received, the date of payment, into what accounts (or other form of investment) were the monies placed, and the purpose of each such payment or receipt;

(h) All monies and other assets paid out by La Ruche, from the date of its inception to the present, including the amounts described in subsections (c), and (d), showing the amount of each payment, from whom received, the date of payment, from which accounts (or other form of investment) were the monies taken, and the purpose of each such payment.

3. That the Court grant a declaratory judgment determining (a) the number and value of the shares Mr. Zambrana owns in La Ruche; (b) the number and value the shares Mr. Zambrana owns in CAI; and (c) the value of Mr. Zambrana's ownership in the Building, and (d) the number and value of shares LaRuche, Inc. owns in CAI.

4. That the Court enter an order requiring J. Cauderlier to purchase Mr. Zambrana's shares in CAI, and enter an award granting a money judgment against J. Cauderlier in an amount equal to the value of Mr. Zambrana's share in the assets of CAI and/or in the Building, if separate.

5. That the Court enter an order requiring J. Cauderlier to purchase Mr. Zambrana's shares in La Ruche, and enter an award granting a money judgment against J. Cauderlier in an amount equal to the value of Mr. Zambrana's share in the assets of La Ruche.

6. That the Court enter a monetary judgment in favor of Mr. Zambrana against J. Cauderlier, for the amounts by which J. Cauderlier has been unjustly enriched, at the expense of Mr. Zambrana.

7. That the Court enter a monetary judgment in favor of Mr. Zambrana against La Ruche, for the amounts by which La Ruche has been unjustly enriched, at the expense of Mr. Zambrana.

8. That the Court impose on J. Cauderlier a constructive trust, comprising the stock in La Ruche, the stock in CAI, and all the ownership interests in the Building, for the benefit of Mr. Zambrana, until such time as the parties' respective interests are determined by the Court.

Respectfully submitted,

KASS, MITEK & KASS, PLLC

Dated: November 28, 2005

By: _____
Benny L. Kass  (D.C. Bar No. #025155)
Jeffrey M. Hamberger (D.C. Bar No. 930362)
1050 17th Street, N.W., #1100
Washington, D.C.  20036
blkass@kmklawyers.com
jhamberger@kmklawyers.com
(202) 659-6500
Attorneys for Third-Party Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Third-Party Complaint were served, via U.S. mail postage prepaid, and by email, this 28th day of November, 2005, to:

Robert L. Green, Jr., Esquire
Suzanne R. Clement, Esquire
HOWREY, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
greenr@howrey.com
clements@howrey.com

_____
Jeffrey M. Hamberger