IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUDERLIER & ASSOCIATES, INC.<br><br>Plaintiff<br><br>v.<br><br>SERGIO ZAMBRANA<br><br>Defendant/Third-Party Plaintiff<br><br>v.<br><br>JEAN CLAUDE CAUDERLIER<br><br>and<br><br>LA RUCHE, INC.<br><br>Third-Party Defendants | Civil Action No. 05-1653 (ESH/JMF) |

## MOTION FOR ORDER REQUIRING COUNSEL TO WITHDRAW

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, defendant/third-party plaintiff, Sergio Zambrana, by and through counsel, hereby moves this Court for an Order requiring counsel for plaintiff and third-party defendants to withdraw their representation of all three (3) parties they represent. In support of this motion, defendant respectfully refers this Court to the attached Memorandum of Points and Authorities in Support of said Motion.

WHEREFORE, defendant/counter-plaintiff/third-party plaintiff, Sergio Zambrana, prays (1) that the Court enter an order directing that Robert L. Green, Jr., Esquire, James B. Boles, Esquire, and HOWREY, LLP withdraw their respective appearances from this case; (2) the Court continue this matter until defendant and third-party defendants can each retain new counsel;

(3) the Court award Mr. Zambrana his attorneys' fees and costs associated herewith, and (4) impose sanctions upon Robert L. Green, Jr., Esquire, James B. Boles, Esquire, and HOWREY, LLP , as the Court deems meet and proper.

                Respectfully submitted,

                KASS, MITEK & KASS, PLLC

Dated: May 9, 2006         By: _____
                Jeffrey M. Hamberger (Bar No. 930362)
                1050 17th Street, N.W., #1100
                Washington, D.C.  20036
                (202) 659-6500
                Attorneys for Defendant/Counter-Plaintiff/Third-Party Plaintiff, Sergio Zambrana

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion for Order Requiring Counsel to Withdraw, and accompanying Points and Authorities, were mailed, via first class mail, postage prepaid, and emailed, this ___th day of May, 2006, to:

        Robert L. Green, Jr., Esquire
        James B. Boles, Esquire
        HOWREY, LLP
        1299 Pennsylvania Avenue, N.W.
        Washington, D.C. 20004
        greenr@howrey.com
        bolesj@howrey.com

                _____
                Jeffrey M. Hamberger

F:\WP_FILES\CLIENTS\04300.101\Motion for Order Requiring Counsel to Withdraw.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUDERLIER & ASSOCIATES, INC.<br><br>Plaintiff<br><br>v.<br><br>SERGIO ZAMBRANA<br><br>Defendant/Third-Party Plaintiff<br><br>v.<br><br>JEAN CLAUDE CAUDERLIER<br><br>and<br><br>LA RUCHE, INC.<br><br>Third-Party Defendants | Civil Action No. 05-1653 (ESH/JMF) |

**POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR ORDER REQUIRING COUNSEL TO WITHDRAW**

Defendant/Counter-Plaintiff/Third-Party Plaintiff, Sergio Zambrana ("Mr. Zambrana"), by and through counsel, hereby offers the following points and authorities in support of his Motion for Order Requiring Counsel to Withdraw.

**INTRODUCTION**

This lawsuit involves four (4) parties, two individuals and two corporations, three of whom are represented by the same law firm, HOWREY, LLP ("Howrey"). The fourth party, Mr. Zambrana, has asserted *prima facie* claims against all three of those parties sharing legal

representation. As shown below, Howrey's joint representation is prejudicial to Mr. Zambrana and violates the Rules of Professional Conduct of the District of Columbia.

Mr. Zambrana will, for the most part, dispense with the familiar nomenclature of "plaintiff" and "defendant," since there are also "third-party defendants" and a "third-party plaintiff" (who is also the "defendant/counter-plaintiff" herein). Rather, for clarity's sake, Mr. Zambrana will refer to the parties by name. The plaintiff/counter-defendant, Cauderlier & Associates, Inc., will be referred to as "CAI", and the third-parties defendants, Jean Claude Cauderlier, and La Ruche, Inc., will be referred to, respectively, as "Mr. Cauderlier" and "La Ruche."

Though this lawsuit was initiated by CAI against Mr. Zambrana, this case is impacted by the exceedingly close, if not improper, relationship between the three Howrey clients: CAI, Mr. Cauderlier and La Ruche. Mr. Cauderlier asserts that he is the sole shareholder of CAI and a 90% shareholder in La Ruche. But then, Mr. Zambrana claims an ownership interest in La Ruche of more than 10%, and claims an ownership interest in CAI of an as-yet-undetermined magnitude. It is easy to discern the problem with the same law firm representing Mr. Cauderlier <u>and</u> the two corporations whose ownership is at issue.

Mr. Zambrana contends that Howrey cannot ethically continue to represent its three clients in this litigation and that it should withdraw as counsel for each party immediately.[1] Just as the business dealings of Mr. Cauderlier, CAI and La Ruche are inextricably intertwined, the law firm

---

[1] Mr. Zambrana first broached the subject of Howrey's conflict of interest in "Defendant's Reply Memorandum," the second pleading filed by him, at pp. 11-12. Mr. Zambrana has waited until this time to file a formal motion, in the hope that the parties might return to the mediation table and reach an amicable resolution of this case. Since no such resolution is imminent, and Howrey has repeatedly rebuffed his counsel's pleas to rectify the unfair situation caused by Howrey's representation of multiple parties herein, Mr. Zambrana reluctantly directed his counsel to expend the hours necessary to bring this issue before the Court.

of HOWREY, LLP is inextricably conflicted, which conflict cannot be ameliorated by the consent of its clients, given the circumstances of this case.

Among other claims, including ownership in both CAI and La Ruche, Mr. Zambrana contends, alternatively, that (a) LaRuche is the alter ego of CAI, (b) La Ruche owns CAI, (c) La Ruche owns CAI's assets, including valuable real estate (the "Building"), (d) CAI is holding monies in constructive trust for LaRuche, or (e) a combination of (a), (b), (c) and (d). Mr. Zambrana bases his position on facts that suggest the funds of each corporation have been commingled, and possibly misappropriated by Mr. Cauderlier (who controls both corporations), to the detriment of Mr. Zambrana and LaRuche. Documentation of these facts can be found in the first pleadings filed by Mr. Zambrana in response to the Complaint, those being his "Motion to Dismiss the Complaint or, in the Alternative, Motion to Join Indispensable Parties," the "Points and Authorities" in support thereof, and "Defendant's Reply Memorandum," which pleadings shall hereinafter be collectively referred to as the "Motion to Dismiss"[2]

## ARGUMENT

1. <u>The Facts Show That Howrey Must Withdraw as Counsel</u>

One of the pivotal issues in this case is the question of who owns the Building where La Ruche's restaurant, Café La Ruche, is located. Mr. Cauderlier contends that he owns all the shares of CAI and that CAI wholly owns the Building. Mr. Zambrana disputes Mr. Cauderlier on both contentions.

---

[2] The facts alleged here by Mr. Zambrana and their substantiating citations can be found in these initial pleadings. The citations will not be reiterated here. Counsel for Mr. Zambrana certifies that the specific facts asserted in the instant motion are each verified in the Motion to Dismiss, including Mr. Zambrana's Affidavit and the accompanying exhibits, to which the court's attention is respectfully directed.

3

Although CAI was the supposed buyer, there are a large number of checks drawn on the bank account of La Ruche, as well as other evidence, that would suggest that La Ruche, not CAI, was the actual purchaser of the Building, and is its present owner. In addition, the tax returns of CAI and La Ruche indicate a definite but unclear relationship between the companies, raising the possibility that La Ruche actually owns a controlling equitable share of CAI stock. The distinction between CAI and La Ruche is critically significant, since even Mr. Cauderlier concedes that Mr. Zambrana holds an ownership position in La Ruche.

But, there is also a factual basis on which to conclude that Mr. Zambrana owns a portion of CAI and/or the Building, aside from his interest in La Ruche. At Mr. Cauderlier's behest, Mr. Zambrana wrote and delivered to Mr. Cauderlier a $25,000 check payable to La Ruche on the very night before the settlement on the sale of the Building took place. Mr. Zambrana contends that it was understood by everyone concerned, including the seller of the Building, that (a) the proceeds of the $25,000 check were to be put toward the purchase price CAI was paying for the Building, and (b) Mr. Zambrana would be a part owner of CAI, the Building, or both. Upon information and belief, the proceeds of Mr. Zambrana's $25,000 check to La Ruche were, in fact, used as part of the purchase price for the Building.

It is clear from the foregoing that Mr. Cauderlier, one of Howrey's clients, would benefit most by a finding that CAI is the sole owner of the Building and that he is the sole owner of CAI. Then again, La Ruche's best interests would be best served by Howrey asserting on its behalf an ownership interest in CAI and/or the Building, a position easily justified given the extensive amount of monies that it appears La Ruche has paid toward the Building's purchase price and other CAI expenses. Moreover, La Ruche's ownership of the Building would thwart additional efforts by CAI

4

to raise La Ruche's rent under a putative lease–a benefit to La Ruche and Mr. Zambrana, but harmful to Mr. Cauderlier.

The prejudice to Mr. Zambrana of Howrey's joint representation of its three clients cannot be overstated. Mr. Zambrana is a shareholder in La Ruche, the extent to which is one of the issues being litigated herein, but there is no question that Mr. Zambrana would gain from a judicial finding that La Ruche owns CAI, and/or La Ruche owns the Building. On the other hand, Howrey's clients, Mr. Cauderlier and CAI itself, have every reason to resist such a result.

The two corporations' commingling of monies, which the La Ruche checks seem to demonstrate, also represents a significant potential loss to Mr. Zambrana, since the funds paid by La Ruche on CAI's behalf, if attributed to CAI, would preclude Mr. Zambrana's sharing in the same, unless he is found at trial to be a co-owner of CAI, as well as an owner of La Ruche. Yet, even a finding of his being a part owner in CAI would not sufficiently protect Mr. Zambrana, if the percentage of his ownership in CAI is determined to be less than his ownership in La Ruche.

Were Mr. Cauderlier, La Ruche and CAI each represented by separate, independent counsel, Mr. Zambrana would have the opportunity to stand on equal footing with each of the other parties to this litigation. Each party would be pursuing claims that were in its own best interest. In such a climate, Mr. Zambrana likely not have to contend with such inconsistent positions as La Ruche's outright denial that it owns CAI, or CAI's assets including the Building, or the like. Instead, the parties would be adopting stances that fit the facts as they appear. For instance, it would behoove La Ruche (as well as Mr. Zambrana) to seek an accounting from CAI and Mr. Cauderlier, among other remedies, but, as a Howrey client, La Ruche has exhibited no intention of doing so. It is also likely that La Ruche should be asserting a claim against Mr. Cauderlier for misappropriation of its

5

funds and for usurpation of La Ruche's rightful opportunity to purchase the Building in which its business operates. However, none of Howrey's clients have filed claims against one another, despite the facts of the case virtually begging that it be done.[3]

Instead, La Ruche's and CAI's positions in this case have apparently been dictated solely by their controlling shareholder and only officer, Mr. Cauderlier. For example, Mr. Cauderlier, with the assistance of his Howrey counsel, had CAI file "Plaintiff's Memorandum In Opposition to Defendant's Motion to Dismiss the Complaint or, in the Alternative, Motion to Join Indispensable Parties," in response to Mr. Zambrana's Motion to Dismiss. Therein, on page 8, CAI avers, among other things, that ". . . La Ruche has no ownership interest, nor does it assert an ownership interest in CAI. . . ." It is to be noted right away that CAI should not be presuming to assert any position on behalf of La Ruche, especially one not in La Ruche's best interest, yet there it is, because it serves Mr. Cauderlier's self interest, and CAI's. The allegations in the Complaint filed by CAI are similarly biased. Paragraph 42, for example, alleges that, "[Mr.] Zambrana's improper assertion of a 10 percent ownership interest in CAI is impeding *Mr. Cauderlier's* ability to sell LaRuche, the Property, and/or CAI (emphasis added)."

There are also instances where Howrey has put forth answers on La Ruche's behalf that are counter to La Ruche's own best interests. In its answer to Interrogatory No. 8, La Ruche responds, "La Ruche does not own stock in CAI. No stock in CAI has ever been issued to La Ruche, nor has La Ruche ever purchased or sought to purchase an interest in CAI." In its answer to Interrogatory No. 10, La Ruche likewise eschews from making any claim of ownership in the Building.

---

[3] Among other reasons, it would appear that no claim has been filed by La Ruche against CAI because such an action would serve to destroy diversity jurisdiction [*See* 28 U.S.C. §1332] and require dismissal of the lawsuit. This point is more fully discussed in the Motion to Dismiss and in footnote 4 below.

Specifically, the answer states, "La Ruche has no ownership interest in the property." Notably, all three Howrey clients failed to comply with Rule 32(b)(2) of the Federal Rules of Civil Procedure, in that none of the interrogatory answers are signed by the party making them.

Not only is it evident that Mr. Cauderlier is directing his counsel to submit the facts in a manner that is most favorable to his personal interests, rather than acting with the loyalty he owes to La Ruche and (separately) to CAI, but it is clear that Howrey has been required to, willing to, and continues to, denigrate the interests of one of its clients in favor of another. It is transparently not in La Ruche's best interest to disavow any ownership in CAI. This is especially true in light of a possible commingling or misappropriation of La Ruche's funds. Given that Mr. Cauderlier has himself conceded Mr. Zambrana's ownership of at least some portion of La Ruche, can there be any wonder as to why La Ruche, of the three clients represented by Howrey, is the one that is formally adopting self-detrimental positions?

Additionally, La Ruche should have filed a fourth-party complaint against CAI, and a cross-claim against co-third-party defendant Jean Claude Cauderlier, for, among other things, misappropriation of funds, wrongful commingling of funds, constructive trust, unjust enrichment, usurpation of business opportunity, and for (a) an accounting by each, and (b) a declaratory judgment that La Ruche is owner of the Building.[4] It is only because La Ruche does not have its own attorney that such pleadings were not filed.[5]

---

[4] As raised by Mr. Zambrana is his Motion to Dismiss, the most efficient approach would have been for this Court to realign the parties. But, such a realignment would have resulted in the Court having to dismiss the case for lack of diversity jurisdiction.

[5] Of course, such a lawsuit would have had to been filed in D.C. Superior Court, rather than this one, due to the lack of diversity of citizenship between the two D.C. corporations.

Mr. Zambrana is unquestionably prejudiced by Howrey's wrongful multiple representation of La Ruche and stands to be damaged as a direct result thereof.

2. The Rules of Professional Conduct Require Howrey to Withdraw as Counsel

Rule 1.7 of the Rules of Professional Conduct prohibits HOWREY, LLP from representing clients with conflicting interests, especially in the situation that prevails here – where the parties cannot possibly give effective consent. Rules 1.7 reads:

RULE 1.7 CONFLICT OF INTEREST: GENERAL RULE

**(a)** A lawyer shall not advance two or more adverse positions in the same matter.

**(b)** Except as permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if:

(1) That matter involves a specific party or parties, and a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter, even though that client is unrepresented or represented by a different lawyer;

(2) Such representation will be or is likely to be adversely affected by representation of another client;

(3) Representation of another client will be or is likely to be adversely affected by such representation; or

(4) The lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests.

**(c)** A lawyer may represent a client with respect to a matter in the circumstances described in paragraph (b) above if each potentially affected client provides consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation.

**(d)** If a conflict not reasonably foreseeable at the outset of a representation arises under paragraph (b)(1) after the representation commences, and is not waived under paragraph (c), a lawyer need not withdraw from any representation unless the conflict also arises under paragraphs (b)(2), (b)(3), or (b)(4).

[Amended effective November 1, 1996.]

In paragraph [1] of the "Comments" that follow the recitation of the Rule, the distinction between Rule 1.7(a) and Rule 1.7(b) is explained: "The difference between Rule 1.7(a) and Rule 1.7(b) is that in the former, the lawyer is *representing multiple interests in the same matter*, while in the latter the lawyer is representing a single interest, but a client of the lawyer who is represented by different counsel has an interest adverse to that advanced by the lawyer (emphasis added)."

Here, Howrey represents three parties with conflicting interests in one lawsuit.

Even if this matter were to fall under Rule 1.7(b), rather than Rule 1.7(a), where consent from conflicted clients after full disclosure might be an available solution, paragraph [19] of the Comments clarifies that there are times, such as here, where an attorney cannot make full disclosure to each of his clients, thus rendering consent under paragraph (c) impossible. "If a lawyer's obligation to one or another client or to others or some other considerations precludes making such full disclosure to all affected parties, that fact alone precludes undertaking the representation at issue." Here, where La Ruche has made payments arguably on behalf of CAI and where there is a possible improper commingling of funds, among other things, Howrey could not make full disclosure to both CAI and LaRuche – not to mention Mr. Cauderlier – without divulging a confidence of one to the other. Nor is it proper for Howrey to advance a position in favor of one client that is patently harmful to another client, particularly in the same litigation.

The case of *Griva v. Davison,* 637 A.2d 830 (1993), involving a fact pattern that is inapposite here, gives an in-depth analysis of the history and meaning of Rule 1.7, and insight for this Court to consider. While discussing the D.C. Code of Professional Responsibility, the predecessor of the Rules of Professional Conduct, cites approving a case which stated, "Throughout the representation [of the corporation], the lawyer must continue to recognize that the interest of the corporation must be paramount *and that he [or she] must take care to remain neutral with respect to the disputes between the present shareholders* (emphasis in original)." [Citation omitted]. *Id.,* at 840. The *Griva* court goes on to elucidate how Rule 1.7 of the D.C. Rules of Professional Conduct "substantially differs" from the American Bar Association's Model Rule 1.7, specifically to include a distinction for "cases in which representation is absolutely forbidden." *Id.,* at 842, and 843.

The court in *Griva* proceeds to espouse the view that ". . . this court's Rule 1.7(a) mandates an *absolute prohibition* of dual or multiple representation when the lawyer would represent clients with "adverse""position[s]" in the "same matter" (emphasis added), at 843.

For the foregoing reasons, the law firm of HOWREY, LLP must be required to withdraw from this case as counsel for all three (3) of the clients it now represents: CAI, Mr. Cauderlier, and La Ruche.

3. <u>Sanctions Must Be Imposed Against Counsel</u>

It is obvious from the foregoing analysis that HOWREY, LLP and its individual attorneys, Robert L. Green, Jr., Esquire and James B. Boles, Esquire, should have recognized from the beginning that they could not ethically represent CAI, Mr. Cauderlier, and La Ruche in the same action. A mere re-reading of the Complaint contains ample evidence that said counsel were fully aware of the conflicting interests of these clients. To begin with, as Mr. Zambrana argued in his

10

initial Motion to Dismiss, the real party in interest is Mr. Cauderlier himself. It is in his name that the lawsuit should have been brought, not CAI's. CAI, as the counsel mentioned in *Griva, supra,* were reminded, should have "take[n] care to remain neutral with respect to the disputes between the present shareholders."

Counsel for Mr. Zambrana conveyed his concerns about Howrey's conflict of interest very early in the case. On October 12, 2005, approximately two weeks after Mr. Zambrana's Defendant's Reply Memorandum brought the issue to the fore in writing, Suzanne Clement, Esquire, Mr. Bole's predecessor in this litigation, advised Mr. Zambrana's counsel by telephone that the Howrey lawyers "thought about it, and, right now, they are comfortable with their position." On December 8, 2005, a week before the parties were to appear before Magistrate Judge Facciola for mediation, and before any discovery requests had been exchanged, counsel for Mr. Zambrana sent an email strongly urging Howrey to cease its representation of all three clients, and specifically requesting that "La Ruche, Inc. engage separate legal counsel." [Exhibit 1.]

Despite being clearly on notice of their violations of Rule 11 of the Federal Rules of Civil Procedure and Rule 1.7 of the Rules of Professional Conduct, Howrey stubbornly persisted in its representation of all three conflicted clients. As a result, (a) all parties, including Mr. Zambrana and the corporation in which he has an undisputed interest, La Ruche, Inc., have spent otherwise-unnecessary hours bringing issues to this Court that never would have arisen had Howrey acted properly; (b) Howrey's clients have refrained from bringing claims against one another that should have been brought; and (c) the discovery responses from Howrey's clients have been distorted and will require rectification.

Worse, if this Court agrees that HOWREY, LLP and its individual lawyers must be required to withdraw from this case, all the parties will be faced with starting the whole case anew, after CAI, Mr. Cauderlier and La Ruche have each engaged new counsel.

Thus, in addition to awarding attorneys' fees and costs to Mr. Zambrana, this Court should require that Howrey refund the fees it has charged CAI and La Ruche, so that their respective shareholders are not harmed by Howrey poor judgment.

This may also be a situation where Rule 11 sanctions should be assessed by the Court against the Howrey firm and its individual attorneys for their "professional misconduct," as defined in Rule 8.4 of the Rules of Professional Conduct. Mr. Zambrana leaves such a determination to the Court's discretion.

                                      Respectfully submitted,

                                      KASS, MITEK & KASS, PLLC

Dated: May 9, 2006                    By: _____
                                      Jeffrey M. Hamberger (Bar No. 930362)
                                      1050 17th Street, N.W., #1100
                                      Washington, D.C. 20036
                                      (202) 659-6500
                                      Attorneys for Defendant/Third-Party Plaintiff,
                                      Sergio Zambrana

F:\WP_FILES\CLIENTS\04300.101\P&A in Support of Motion for Order Requiring Counsel to Withdraw.wpd

**From:** Jeffrey M. Hamberger
**Sent:** Thursday, December 08, 2005 4:37 PM
**To:** 'Green, Robert'
**Subject:** RE: La Ruche--FOR SETTLEMENT PURPOSES ONLY

** MATERIAL REDACTED**

Turning to other matters of concern:

(1) ** MATERIAL REDACTED**

(2) Does Howrey intend to file responses to the third-party complaint on behalf of La Ruche, Inc. or J.C. Cauderlier, or both? I have expressed from the beginning my misgivings with Howrey's representation of all three parties, now that suit has been filed. Given that there appears (from my perspective, at least) to be a possible commingling of funds among your clients, and given that La Ruche has purportedly disavowed any ownership interest in CAI while filing a federal tax return indicating that it owns all CAI's stock, can there be any doubt that your clients have diverging interests and will be taking conflicting positions during the litigation?

Putting aside for a moment the legitimacy of all the other claims Mr. Zambrana has asserted in this case, there is no dispute that he owns at least 10% of the stock in La Ruche, Inc. Therefore, Mr. Zambrana has a vested interest in ensuring that La Ruche does not assert positions that are counter to the company's best interests (or which constitute a breach of the fiduciary duty La Ruche's directors owe to him as a shareholder). I request that you convey to Mr. Cauderlier my client's desire that La Ruche, Inc. engage separate legal counsel.

Also, I respectfully suggest that Howrey has a duty to withdraw from this litigation altogether. I would rather not have to raise this issue formally with the court, because it could lead to embarrassment, or more, for your law firm, should the court find you in violation of Rule 1.7 of the District of Columbia Rules of Professional Conduct, among other possible infringements. Such a finding would create an unnecessary delay in the proceedings as well.

Please advise me as to who counsel will be for (i) CAI, (ii) La Ruche, and (iii) Mr. Cauderlier as this matter moves forward.

Thank you.

---

** PRIOR EMAIL EXCHANGE REDACTED**


[Text shown in BOLD was originally in normal font]

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAUDERLIER & ASSOCIATES, INC.**<br><br>Plaintiff<br><br>v.<br><br>**SERGIO ZAMBRANA**<br><br>Defendant/Third-Party Plaintiff<br><br>v.<br><br>**JEAN CLAUDE CAUDERLIER**<br><br>and<br><br>**LA RUCHE, INC.**<br><br>Third-Party Defendants | Civil Action No. 05-1653 (ESH/JMF) |

**ORDER**

Upon consideration of Sergio Zambrana's Motion for Order Requiring Counsel to Withdraw, and the Opposition(s) filed thereto, it is this ____ day of _____, 2006, hereby

ORDERED that defendant's Motion for Order Requiring Counsel to Withdraw be, and hereby is, GRANTED; and it is further

ORDERED that HOWREY LLP, Robert L. Green, Jr., Esquire and James B. Boles, Esquire shall each file a Praecipe withdrawing their appearance as counsel in this matter within ten (10) days of the entry of this Order ; and further

ORDERED that Cauderlier & Associates, Inc., Jean Claude Cauderlier, and La Ruche, Inc. shall each engage new counsel within thirty (30) days of the entry of this Order; and it is further

ORDERED that said new counsel shall each enter their respective appearance in this case within forty-five (45) days of the entry of this Order; and further

ORDERED that all proceedings herein shall be suspended until the entry of the appearances of counsel for Cauderlier & Associates, Inc., Jean Claude Cauderlier, and La Ruche, Inc., respectively; and further

ORDERED that the parties and their counsel shall appear before the Court for a Status Conference on _____; and further

ORDERED that HOWREY LLP, Robert L. Green, Jr., Esquire and James B. Boles, Esquire, jointly and severally, shall pay the sum of $_____ in legal fees and costs to Mr. Zambrana; shall refund the sum of $_____ in legal fees and costs to Cauderlier & Associates, Inc.; and shall refund the sum of $_____ in legal fees and costs to La Ruche, Inc., and further

ORDERED that HOWREY LLP, Robert L. Green, Jr., Esquire and James B. Boles, Esquire, and each of them, be sanctioned as follows:

_____

_____

_____

_____.

_____
Judge Ellen Segal Huvelle

2

COPIES TO:

Robert L. Green, Jr., Esquire
James B. Boles, Esquire
HOWREY, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
greenr@howrey.com
clements@howrey.com

Benny L. Kass, Esquire
Jeffrey M. Hamberger, Esquire
1050 17th Street, N.W., #1100
Washington, D.C. 20036
blkass@kmklawyers.com
jhamberger@kmklawyers.com

F:\WP_FILES\CLIENTS\04300.101\Order Granting Motion for Order Requiring Counsel to Withdraw.proposed.wpd