# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CAUDERLIER & ASSOCIATES, INC.**
**Plaintiff**

v.

**SERGIO ZAMBRANA**
        **Defendant/Third-Party**
        **Plaintiff**

v.

**JEAN CLAUDE CAUDERLIER and**
**LA RUCHE, INC.**
        **Third-Party Defendants**

**Civil Action No. 05-1653**
**(ESH/JMF)**

## SERGIO ZAMBRANA'S SUPPLEMENTAL BRIEF REGARDING HIS STANDING TO RAISE CONFLICT OF INTEREST OF OPPOSING COUNSEL

Defendant and third-party plaintiff, Sergio Zambrana ("Mr. Zambrana"), by and through counsel, respectfully submits this Supplemental Brief in accordance with the Memorandum Order of Magistrate Judge John M. Facciola, dated July 12, 2006, in order to provide the Court with substantiation of the fact that Mr. Zambrana "has standing to complain about the conflict of interest that he alleges mandates opposing counsel's withdrawal."[1]

---

[1] Mr. Zambrana's Motion for Order Requiring Counsel to Withdraw [#27] requested that this Court: (1) enter an order directing that Robert L. Green, Jr., Esquire, James B. Boles, Esquire, and HOWREY, LLP withdraw their respective appearances from this case; (2) continue this matter until defendant and third-party defendants can each retain new counsel; (3) award Mr. Zambrana his attorneys' fees and costs associated herewith, and (4) impose sanctions upon Robert L. Green, Jr., Esquire, James B. Boles, Esquire, and HOWREY, LLP , as the Court deems meet and proper.

Argument

A.     Constitutional Standing

Mr. Zambrana recognizes that standing to raise issues before a court must be demonstrated before a party is entitled to proceed.  The minimum Constitutional standard has been clearly expressed.  In *Lujan v. Defenders of Wildlife* 504 U.S. 555, 560-561,112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the Supreme Court said: "Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized [citations omitted] and (b) "actual or imminent, not 'conjectural' or 'hypothetical'" [citations omitted].  Second, there must be a causal connection between the injury and the conduct complained of-- the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court" [citations omitted].  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision' [citations omitted]. *Lujan*, 504 U.S. 560-561.

It is Mr. Zambrana's intention to show in this Supplemental Brief that, because of the representation of all three Joint Parties[2] by HOWREY[3], (1) he has suffered an "injury in fact," (2) the injury is "actual or imminent," and (3) it is "likely" that the injury will be "redressed by a favorable decision."  For those reasons, among others, Mr. Zambrana contends he has standing to bring his Motion for Order Requiring Counsel to Withdraw ("Motion"), previously filed herein.

_____

[2] Collectively, Cauderlier & Associates, Inc. ("CAI"), LaRuche, Inc. ("La Ruche"), and Jean Claude Cauderlier ("Mr. Cauderlier").

[3] Robert L. Green, Jr., Esquire, James B. Boles, Esquire, and the law firm of HOWREY, LLP (sometimes hereinafter collectively referred to as "HOWREY")

B.    Non-Client Standing to Seek Disqualification of Counsel

Mr. Zambrana acknowledges that courts are generally reluctant to allow a party to move to disqualify counsel in a particular case, on the ground of conflict of interest, if the party is not a current or former client of the attorney sought to be removed.  Mr. Zambrana has reviewed the two sources cited by Magistrate Judge Facciola in his Order of July 12, 2006, Ivy Johnson, *Standing to Raise a Conflict of Interest*, 23 N.Ill. U.L. Rev. 1 (2002) and Douglas R. Richmond, *The Rude Question of Standing in Attorney Disqualification Disputes*, 25 Am. J. Trial Advoc. 17 (2001).  Mr. Zambrana notes that a good portion of the cases cited therein are trial court decisions having no precedential value in this court.  There were, however, several cases from higher courts upon which Mr. Zambrana will focus, although not necessarily precedential, either.  Even though these cases would seem to follow the general rule, the cases make clear that, in circumstances such as those prevailing in this case, *exceptions* must be made in the interest of the fairness and the proper administration of justice, by which exceptions standing can be established.  In the interest of efficiency, Mr. Zambrana will cite but a few of the lower court cases, despite the fact that several of the cases cited by the Johnson and Richmond articles stand for the foregoing proposition.

In *In re Yarn Processing Patent Validity Litigation v. Leesona Corporation,* 530 F.2d 83 (1976), the Fifth Circuit of the United States Court of Appeals held that a particular defendant lacked standing to seek disqualification of one plaintiff's attorney on the basis of the attorney's conflict of interest, when that defendant relied upon public policy as justification for the motion.  In addition, in *Yarn*, the defendant [Lex Tex] had no specific individual interest that might be jeopardized by the alleged conflict of interest of the plaintiff's attorney.  "In this motion, Lex Tex *did not assert any*

3

*interest of its own* as to which it could assert a conflict of interest. Instead, Lex Tex maintained that

the court should have disqualified Irons on its own motion." [Emphasis added.] *Id.*, at 87.

Yet, even though the *Yarn* case is considered the seminal case for the proposition that a

nonclient lacks the requisite standing to raise the conflict of interest of counsel, the court in *Yarn* did

acknowledge that decisions of other courts were more flexible.

> The cases relied upon by Lex Tex present what are, in our view, at most, *narrow exceptions* to this general rule. In *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973), the motion to disqualify was made by the corporation which the former client controlled. In *Porter v. Huber*, 68 F.Supp.132 (W.D.Wash.1946), the inquiry whether counsel had a conflict of interest apparently originated with the court, but the *unethical* change of sides was *manifest and glaring*. Such was also the case in *Empire Linotype School, Inc. v. United States*, 143 F.Supp. 627, 631 (S.D.N.Y.1956), where the court in dictum said it would have had to take action to disqualify counsel even if the adverse party had not moved. And in *Estates Theatres, Inc. v. Columbia Pictures, Inc.*, 345 F.Supp. 93 (S.D.N.Y.1972), the former client appeared by counsel to argue for the disqualification even though he was not the formal moving party. Even though former clients did not formally move for the disqualification, the *adverse nature of their interests*, relative to the new clients, of their attorneys were *open and obvious and confronted the court with a plain duty to act*. Such is not the case here. [Emphasis added.] *Id.*, at 89.

Similarly, the Supreme Court of Nebraska considered the question of whether the plaintiff

"had standing to claim a conflict of interest, which did not directly implicate her interests, against

an attorney of whom she was not a former client," in *Hawks v. Lewis*, 586 N.W.2d 430, 255 Neb.

447 (1998). The *Hawks* court first identified the purpose of a "standing" inquiry, stating that it "is

to determine whether one has a legally protectable interest or right in the controversy that would

benefit by the relief [sought] to be granted." *Id.*, at 452. The court went on to say, "[a]s an aspect

of jurisdiction and justiciability, 'standing' requires that a litigant have such a *personal stake* in the

4

outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial power on the litigant's behalf." [Emphasis added.] *Id.*, at 452.

The court framed the question before it as, "Who has the right to ask the court for disqualification when it seems apparent from the rules stated above that they are intended to protect the confidences and interests, not of a third party, but of the former client?" *Id.*, at 453. It was a question of first impression in Nebraska. *Id.*, at 454.

The Supreme Court of Nebraska ruled against Ms. Hawks, the plaintiff, because she had based her argument "on an ethical rule which is intended to protect former clients," *Id.*, at 454, rather than upon an individual right or interest that was being threatened by the alleged conflict of interest of defendants' counsel.

Nevertheless, the Nebraska Supreme Court did cite some notable exceptions to the general rule: "For instance, it has been held that disqualification may be sought by a party who is not a former client, but is able to show [*455] that the alleged conflict *adversely affected* the interest of the party seeking disqualification." [Citations omitted.] [Emphasis added.] *Id.*, at 454-455. And, "[i]t has been determined in other jurisdictions that a nonclient litigant may have standing to enforce a conflict of interest where 'the challenged conduct *prejudices the fairness of the proceedings, such that it adversely affects the fair and efficient administration of justice.*'" [Citations omitted.] [Emphasis added.] *Id.*, at 454. Mr. Zambrana asserts that the situation in which he finds himself as a result of HOWREY'S conflicts of interest brings him within the "exceptions" contemplated in these and similar decisions; Mr. Zambrana should be found to have standing to seek HOWREY's removal.

Two other cases should be referenced, although they are not controlling here. The first is a case from the United States District Court for the District of Columbia, *Alexander v. FBI*, 186 F.R.D. 21 (1998), involving a very complicated set of facts, including the intervention by the President of the United States to preserve protections afforded by his attorney-client privilege. Mr. Zambrana is citing the case because it is a decision of this Court, however inapposite. Without going into the details of the case, Mr. Zambrana would point out that District Judge Lamberth noted that, "even if plaintiffs had standing to make this assertion as a result of the alleged conflict between counsel and the represented parties, plaintiffs have provided absolutely no evidence that such a conflict exists." *Id.*, at 32. Judge Lamberth also opined that, "Plaintiffs have failed to present this court with any reason to justify excluding Williams & Connolly and Skadden, Arps from representing the President in this matter." *Id.*

The other case worth noting is cited by Mr. Zambrana due to its seeming similarity of facts. In *Brown & Williamson Tobacco Corp. v. Daniel International Corp.*, 563 F.2d 671 (1977), the United States Court of Appeals for the Fifth Circuit considered a case involving two companies that "are closely affiliated, sharing the same corporate officers and substantially the same directors and stockholders." *Id.*, at 673. This Fifth Circuit case was decided some fifteen months after that court rendered its decision *In re Yarn*, *supra*.

*Brown & Williamson* is easily distinguishable, though, from the facts that prevail in our case. In *Brown*, one of the two corporations in question (Oman Construction Company) contracted to fabricate part of a warehouse for Daniel International, which was the prime contractor selected by Brown & Williamson Tobacco Corporation to build a cigarette manufacturing facility. Oman, in turn, subcontracted its entire operations to a company with which it was closely affiliated (Oak

6

Contractors, Inc.). When Brown & Williamson sued Daniel for defective construction, Daniel impleaded Oman. Oman filed a forth-party complaint against Oak and Pascoe Steel Corporation, the supplier of structured steel to Oak. Oak then brought a fifth-party action against Pascoe for furnishing defective materials. Pascoe objected to Oman and Oak's retaining the same counsel and sought to disqualify counsel from representing either party, and to have itself dismissed from the proceeding.

The *Brown & Williamson* court found that "Oman and Oak have substantial identity of interests . . .[and] they have agreed to contend that the fault rests solely with Pascoe. In fact, the only reason Oman has sued Oak is to make possible the impleader of Pascoe as a fifth-party defendant. *Id.*, at 673." The court then said, "While we agree with Pascoe's denunciation of joint legal representation for adverse parties, we find *no conflict of interest* in the present case and thus no reason to disqualify the challenged attorneys." *Id.*, at. 673.

In contrast to the facts in *Brown & Williamson*, Mr. Zambrana contends that he has demonstrated, in his Motion for Order Requiring Counsel to Withdraw and in his Reply to the Joint Parties' Opposition to that motion, that there are obvious conflicts of interest among the Joint Parties, and clear conflicts of interest that arise from HOWREY'S joint legal representation. Mr. Zambrana will further show below why he should be deemed to have standing in this case.

C.    Mr. Zambrana's is Personally Damaged by HOWREY'S Joint Representation

The crux of Mr. Zambrana's motion to disqualify HOWREY as joint counsel for CAI, La Ruche and Mr. Cauderlier is Mr. Zambrana's contention that his *personal interests* are adversely affected by HOWREY'S representation of all three Joint Parties. First, there is no dispute that Mr. Zambrana gave a $25,000 check to Mr. Cauderlier the day before CAI went to settlement on the

Building.  While there is a dispute in this case about the purpose and use of the proceeds of that check, Mr. Zambrana's interest is not theoretical – he has real money at risk.  Second, Mr. Zambrana has colorable, if not proven,[4] claims that he (1) has an interest in La Ruche greater than the 10% interest conceded by the Joint Parties, (2) has an interest in CAI, (3) has an interest in the Building, and (4) is owed monies that should have been paid to him as a result of said ownership.

Among other damages that Mr. Zambrana appears to have sustained include (5) the improper transfer of monies from La Ruche (a company in which Mr. Cauderlier admits Mr. Zambrana owns shares) to CAI (a company in which that Mr. Cauderlier claims 100% ownership), (6) a usurpation of La Ruche's right to purchase the Building in which it is located, (7) the overpayment of rent by La Ruche to CAI, and (8) an appreciation in the value of the Building of which Mr. Zambrana is being deprived.  Third, Mr. Zambrana has exhibited an entitlement to an accounting from the Joint Parties to clarify whether monies have been commingled among them, and, if so, whether such commingling has acted to deprive Mr. Zambrana of property to which he is entitled. Finally, Mr. Zambrana contends that the Joint Parties have been unjustly enriched at his expense.

These personal interests, Mr. Zambrana asserts, are "concrete and particularized, and actual or imminent, rather than conjectural or hypothetical."  Mr. Zambrana has standing here to raise the disqualification issue.

D.     How HOWREY'S Representation of the Joint Parties Affects Mr. Zambrana's Interests

In view of the fact that this Court has been presented with a myriad of pleadings setting forth the respective parties's claims against one another, Mr. Zambrana will dispense with a new recitation

---

[4]  The evidence presented in this case by Mr. Zambrana, including his sworn affidavit, and copies of checks and tax returns, have not been refuted in any meaningful way by the Joint Parties.

of same. Mr. Zambrana does, however, feel compelled to highlight those claims that are, in his view, adversely affected by HOWREY'S representation of CAI, La Ruche and Mr. Cauderlier. To begin with, the Complaint that initiated these proceedings was couched by HOWREY in terms of a corporation, CAI, bringing a declaratory judgment action against one of its shareholder (Zambrana) in favor of another shareholder (Mr. Cauderlier). As mentioned in Mr. Zambrana's points and authorities in support of his disqualification motion, the law is clear that an attorney who represents a corporation may not take sides with one shareholder over the other.[5] Making matters worse, Mr. Cauderlier is also a client of HOWREY.

Even though it is CAI's position that Mr. Zambrana does not own any of its stock, Mr. Zambrana should be considered to be a shareholder, just as is the "100%" shareholder, Mr. Cauderlier, for this analysis of the parties' dispute over where the corporation's ownership lies. If CAI had acted properly in its pleadings, it would have *at the least* named all its putative shareholders as co-defendants.[6] Had CAI joined Mr. Cauderlier as a defendant with Mr. Zambrana, it would be readily clear that HOWREY would have a blatant conflict of interest, representing a plaintiff (CAI) against a defendant (Mr. Cauderlier) who is also a client of the firm, in the same litigation.

Mr. Zambrana is prejudiced to an even greater degree by the fact that HOWREY represents both CAI and La Ruche. Inasmuch as there is unrefuted evidence that La Ruche (a) has paid a

---

[5] *Griva v. Davison*, 637 A.2d 830 (D.C.App. 1993), cited approvingly D.C. Bar Legal Ethics Comm.Op. 216 (1991), 119 Daily Wash.L.Rptr. 97 at 1063 (May 20, 1991), in which it was stated, "Throughout the representation [of the corporation], the lawyer must continue to recognize that the interest of the corporation must be paramount *and that he [or she] must take care to remain neutral with respect to the disputes between the present shareholders* (emphasis in original)."

[6] Elsewhere in the pleadings filed in this case, Mr. Zambrana has questioned whether CAI even has standing to bring such an action, and has asserted that Mr. Cauderlier is the real party in interest. For the purposes of this discussion, Mr. Zambrana will proceed as if CAI's complaint against its shareholder(s) would be a valid *prima facie* claim.

9

substantial sum of money to third parties on behalf of CAI, (b) has a claim against CAI that La Ruche owns stock in CAI and the Building of which CAI claims ownership,(c) has a claim that it is paying over-market rent to its detriment, and (d) has a right to an accounting by CAI and Mr. Cauderlier, it is clear that Mr. Zambrana, as an undisputed La Ruche stockholder, is personally harmed by La Ruche's assertions that La Ruche has no ownership of CAI stock or the Building, and is not owed monies by CAI. La Ruche's averments come directly from the keyboards at HOWREY.

Moreover, as the court in *Brown v. Williamson*, *supra*, noted, "there can be no unshared confidences as between [the two corporations], given the identity of their shareholders, directors and officers." 563 F.2d 671, 674 (5th Cir.1977). Thus, there is little doubt that Mr. Zambrana's interests have been impaired and prejudiced in a way that they would not have been had the three Joint Parties, or at least La Ruche, been represented by separate counsel instead of HOWREY. Mr. Zambrana contends that he has shown "a causal connection between the injury and the conduct complained of, and that the injury is fairly ... traceable to the challenged action of HOWREY, and not the result of the independent action of some third party not before the court." HOWREY must be removed as counsel for any and all of the Joint Parties in this case, and Mr. Zambrana has established the requisite standing to move for such relief.

E.    Misconduct by HOWREY

Mr. Zambrana will save the Court, and his opponents, a recitation of the manners by which he contends that the conduct of Messrs. Green and Boles, and Howrey, LLP, has violated the American Bar Association's Model Rules of Professional Conduct and, in particular Rule 1.7 of the

10

D.C. Rules of Professional Conduct[7].  Mr. Zambrana refers the Court to his Motion for Order Requiring Counsel to Withdraw, among other pleadings, where he has set forth his view of the impropriety of HOWREY'S actions.  He would simply say, as he did in his Reply to the Joint Parties' Opposition to said Motion, "the possibility of potential conflicts of interest [here] is almost self-evident."

The misconduct of counsel is indeed pertinent, since courts have found that a nonclient party has standing to move to remove conflicted attorneys where "the ethical breach so infects the litigation that it impacts the moving party's interest in a just and lawful determination of its claims."[8] If the individual Joint Parties were represented by separate counsel, Mr. Zambrana would have a fair opportunity to prove the claims he has raised in his Counterclaim and Third-Party Complaint.  Under the present circumstances, where the Joint Parties have ostensibly commingled monies and taken other improper liberties with their respective interests, Mr. Zambrana is being required to overcome the possible collusion, and certain conflicts of interest, of Mr. Cauderlier and HOWREY.

Mr. Zambrana suggests that the standards for piercing the corporate veil, cited by the United States Bankruptcy Court in *In re 1438 Meridian Place*, 15 B.R. 89 (1981), are a good measure against which to judge the activities undertaken by the Joint Parties here:

---

[7] The *Griva* case explains that Rule 1.7 of the D.C. Rules of Professional Conduct "substantially differs" from the American Bar Association's Model Rule 1.7, as the D.C. Rule includes a distinction for "cases in which representation is absolutely forbidden." 637 A.2d 830, at 842-843.

[8] "Generally, only the former or current client will have such a stake in a conflict of interest dispute. However, in a case where the ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims, she may have the constitutional standing needed to bring a motion to disqualify based on a third-party conflict of interest or other ethical violation." [Citation and internal citations omitted.] Decaview Distribution Co. v. Decaview Asia Corp., No. C-99- 02555, 2000 WL 1175583, at *9 (N.D. Cal. Aug. 14, 2000).

11

> Other factors that are emphasized in the application of the [piercing corporate veil] doctrine are failure to observe corporate formalities, non-payment of dividends, . . ., siphoning of funds of the corporation by the dominant stockholder, nonfunctioning of other officers and directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. The conclusion to disregard the corporate entity may not, however, rest on a single factor but must involve a consideration of the aforementioned enumerated factors; in addition, the particular situation must generally present an element of injustice or fundamental unfairness. Undercapitalization, disregard of corporate formalities and the like coupled with an element of injustice, fraud or fundamental unfairness has been regarded fairly uniformly to constitute a basis for an imposition of individual liability under the doctrine. (footnotes omitted)." *Id.*, at 96, citing 1 Fletcher, Cyclopedia of the Law of Private Corporations, Section 41.3 at 43 (Cum.Supp.1981).

The fact that the HOWREY attorneys represented the Joint Parties during these type of activities, if not facilitated them, leaves little doubt that HOWREY'S conflicts of interest have the potential of causing irreparable harm to Mr. Zambrana. It would be "fundamentally unfair" to require Mr. Zambrana to continue to encounter such biased and conflicted opposing counsel for the remainder of this case, and Mr. Zambrana has established that he has standing to object on the basis of HOWREY'S misconduct, in addition to the other theories set forth hereinabove.

F.    No Strategic Advantages are Being Sought by Mr. Zambrana

Mr. Zambrana understands that courts considering motions by nonclients to disqualify counsel need to be convinced that the motion is being brought for proper purposes, as opposed to purposes such as interposing a delay, or causing an increase in litigation costs to the other parties. Mr. Zambrana will leave for his earlier pleading a detailed description of the history of his attempting to have HOWREY obtain separate counsel for La Ruche, and his repeated admonitions

to HOWREY that he was suffering real injuries as a result of HOWREY'S manifest and glaring conflicts of interests.

Mr. Zambrana merely contends that his motives have been pure, and his actions have been timely, in bringing the question to this Court of whether opposing counsel should be disqualified in this case.[9]  Moreover, the Joint Parties have not put forth any facts that might lead a reasonable person to conclude that Mr. Zambrana filed the motion for less than honorable reasons.

Conclusion

Mr. Zambrana has demonstrated, by "clear and convincing evidence," that he has standing to move for HOWREY'S removal as counsel for the Joint Parties, as a matter of equity and fairness. Moreover, Mr. Zambrana has shown that it is "likely" that [his] injury will be "redressed by a favorable decision" of this Court.  Mr. Zambrana's Motion for Order Requiring Counsel to Withdraw is properly within the purview of this Court, and should be granted.

WHEREFORE, defendant/counter-plaintiff/third-party plaintiff, Sergio Zambrana, prays (1) that the Court enter an order directing that Robert L. Green, Jr., Esquire, James B. Boles, Esquire, and HOWREY, LLP withdraw their respective appearances from this case; (2) the Court continue this matter until defendant and third-party defendants can each retain new counsel; (3) the Court award Mr. Zambrana his attorneys' fees and costs associated herewith, and (4) impose sanctions

---

[9]  Despite protestations to the contrary raised by the Joint Parties in their Opposition to Mr. Zambrana's motion to disqualify, Mr. Zambrana acted reasonably in not formally filing his disqualification motion until after the parties had exhausted the Court's attempts to mediate the underlying dispute.  Mr. Zambrana recognized that, as a practical matter, it would be Mr. Cauderlier who would be deciding whether to settle the case with Mr. Zambrana, and that Mr. Cauderlier would be speaking for the two corporations, as well.  This reality does not alter the fact that, if this case proceeds to trial, as it appears it will, Mr. Zambrana is unduly prejudiced by HOWREY'S joint representation.  There was no real need for Mr. Zambrana to interrupt the flow of the case, during its mediation phase, by filing the motion sooner; in fact, it appeared to Mr. Zambrana that it might be counterproductive.

13

upon  Robert L. Green, Jr., Esquire, James B. Boles, Esquire, and HOWREY, LLP , as the Court

deems meet and proper.

<div style="margin-left: 40%;">

Respectfully submitted,

KASS, MITEK & KASS, PLLC

</div>

Dated: August 1, 2006                          By:    _JM Humberger_

<div style="margin-left: 45%;">

Jeffrey M. Hamberger (Bar No. 930362)
1050 17th Street, N.W., #1100
Washington, D.C.  20036
(202) 659-6500
Attorneys for Sergio Zambrana
jhamberger@kmklawyers.com

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing "Sergio Zambrana's Supplemental Brief

Regarding His Standing to Raise Conflict of Interest of Opposing Counsel" was filed

electronically through the Court's ECF system, and were mailed, via  first class mail, postage

prepaid, and emailed, this  1 st day of August, 2006, to:

<div style="margin-left: 30%;">

Robert L. Green, Jr., Esquire
James B. Boles, Esquire
HOWREY, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
greenr@howrey.com
bolesj@howrey.com

</div>

<div style="margin-left: 45%;">

_MHamberger_
Jeffrey M. Hamberger

</div>

F:\WP_FILES\CLIENTS\04300.101\Memorandum re Standing to Raise Conflict of Interest.wpd

<div style="text-align: center;">14</div>