# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAUDERLIER & ASSOCIATES, INC.

      Plaintiff

      v.

SERGIO ZAMBRANA

      Defendant/Third-Party
      Plaintiff

      v.

JEAN CLAUDE CAUDERLIER

      and

LA RUCHE, INC.

      Third-Party Defendants

Civil Action No. 05-1653 (ESH/JMF)

## SUPPLEMENT TO ZAMBRANA'S MOTION FOR ORDER REQUIRING COUNSEL TO WITHDRAW

With apologies for not having done so when he filed his Motion for Order Requiring Counsel to Withdraw yesterday, defendant/counter-plaintiff/third-party plaintiff, Sergio Zambrana, hereby supplements said Motion by providing the Court with a copy of "La Ruche, Inc.'s Responses to Third-Party Plaintiff's First Set of Interrogatories," attached hereto as Exhibit 2. Mr. Zambrana's counsel overlooked the fact that said discovery document had not previously been filed with the Court.

In his Motion, Mr. Zambrana makes reference to La Ruche's Responses to Interrogatories Nos. 8 and 10, and refers to the fact that the interrogatory answers are not signed by the party

making them.[1]  By providing a copy of La Ruche's interrogatory answers, Mr. Zambrana wishes

to allow the Court to confirm independently his assertions.  Rather than burden the Court with

copies of the Responses to the Interrogatories submitted by the other Howrey clients, Jean Claude

Cauderlier and Cauderlier & Associates, Inc., the undersigned counsel hereby certifies that

neither of those parties complied with the requirements of Rule 33(b)(2), either, as asserted in

said Motion.

                            Respectfully submitted,

                            KASS, MITEK & KASS, PLLC

Dated: May 10, 2006         By:   _____
                                  Jeffrey M. Hamberger (Bar No. 930362)
                                  1050 17th Street, N.W., #1100
                                  Washington, D.C.  20036
                                  (202) 659-6500
                                  Attorneys for Defendant/Counter-Plaintiff/Third-
                                  Party Plaintiff, Sergio Zambrana

                    **CERTIFICATE OF SERVICE**

        I hereby certify that a true copy of the foregoing Supplement to Zambrana's Motion for
Order Requiring Counsel to Withdraw, and accompanying Points and Authorities, were mailed,
via  first class mail, postage prepaid, and emailed, this _10_ th day of May, 2006, to:

                    Robert L. Green, Jr., Esquire
                    James B. Boles, Esquire
                    HOWREY, LLP
                    1299 Pennsylvania Avenue, N.W.
                    Washington, D.C. 20004
                    greenr@howrey.com
                    bolesj@howrey.com

                            _____
                            Jeffrey M. Hamberger

---

    [1]   In the Motion, Mr. Zambrana mistakenly cites Rule 32(b)(2) of the Federal Rules of Civil Procedure,
rather than Rule 33(b)(2), as the basis for his point.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUDERLIER & ASSOCIATES, INC.,   ) | |
|     ) | |
|     Plaintiff,   ) | |
|     ) | |
|     v.   ) | |
|     ) | Civil Case No. 1:05CV01653 |
| SERGIO ZAMBRANA,   ) | Judge Ellen Segal Huvelle |
|     ) | |
|     Defendant/Third-Party   ) | |
|     Plaintiff   ) | |
|     ) | |
|     v.   ) | |
|     ) | |
| JEAN CLAUDE CAUDERLIER   ) | |
|     ) | |
|     And   ) | |
|     ) | |
| LA RUCHE, INC.   ) | |
|     ) | |
|     Third-Party Defendants   ) | |

**LA RUCHE, INC.'S RESPONSES TO THIRD-PARTY PLAINTIFF'S FIRST SET OF
INTERROGATORIES**

Pursuant to Federal Rule of Civil Procedure 33, Third-Party Defendant La Ruche, Inc.

("La Ruche") responds as follows to the First Set of Interrogatories served by Third-Party

Plaintiff Sergio Zambrana ("Mr. Zambrana").

**I.     GENERAL OBJECTIONS**

1.     La Ruche objects to the Definitions that accompanied these interrogatories to the

extent they purport to broaden the scope of discovery beyond that permitted by the Federal Rules

of Civil Procedure, or seek to impose burdens on La Ruche not authorized by those Rules.

2.     La Ruche objects to the discovery requests to the extent they seek information

protected by the attorney-client privilege, work product doctrine, and/or any other applicable

**EXHIBIT 2**

privileges or immunities recognized or provided for under the Federal Rules of Civil Procedure, Federal Rules of Evidence, or at common law.

3.    La Ruche objects to each interrogatory to the extent that it is either unlimited as to any relevant time, requires the description of a broad range of facts or legal conclusions it has reached regarding the case, and consequently is overly broad, seeks information that is irrelevant, and is not reasonably calculated to lead to the discovery of admissible evidence. Please note that based upon the allegations in Mr. Zambrana's Complaint against La Ruche, the earliest time for the purported acts Mr. Zambrana has alleged is 1997.

4.    La Ruche objects to the interrogatories to the extent that they seek information not in its possession, custody or control, and/or purport to require La Ruche to obtain information or things not in its possession, custody or control from individuals or entities, other than persons within its control. La Ruche's responses to these interrogatories are made in its own behalf.

5.    La Ruche responds to these interrogatories as it understands them, as noted below. If Mr. Zambrana subsequently asserts an interpretation that differs from La Ruche's, La Ruche reserves its right to supplement its responses and objections accordingly.

6.    La Ruche acknowledges its duty to supplement its discovery responses as information becomes available. La Ruche expressly reserves the right to amend or otherwise modify its discovery responses in light of that information.

7.    La Ruche fully incorporates all of the foregoing general objections into each of the following specific objections and responses.

## II.    SPECIFIC OBJECTIONS AND RESPONSES

Interrogatory No. 1:  Please identify the person(s) answering these Interrogatories and state the position with La Ruche held by that person(s).

RESPONSE:  The person answering these Interrogatories is Jean Claude Cauderlier. Mr. Cauderlier is President, Vice-President, and Secretary of La Ruche.

Interrogatory No. 2:  Identify all the persons, employees or agents, who investigated the facts alleged in the Third-Party Complaint filed herein for you.

RESPONSE:  Mr. Cauderlier and his counsel investigated the allegations in the above-captioned action.

Interrogatory No. 3:  Identify any persons, not heretofore mentioned, having personal knowledge of facts material to the case.

RESPONSE:  Jean Claude Cauderlier, Sergio Zambrana, Charles Webb, Mahesh Naithani, James Powers, Pierre LaForce, Loretta Rias, and David Bird.

Interrogatory No. 4:  Identify each person whom you intend to call as an expert at trial; for each such person, state the subject matter on which the expert is expected to testify, and state the substance of facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

RESPONSE:  La Ruche has not identified an expert at this time.  When La Ruche has identified an expert, it will supplement its response to this Interrogatory.

Interrogatory No. 5:  If you deny any or all of the allegations set forth in paragraphs 5-20, 22-26, 28-29, 31-34 or 36 of the Counterclaim filed herein by Mr. Zambrana against Cauderlier and Associates, Inc. ("CAI"), state the facts alleged therein that you deny; identify any documents which support your denial; identify any persons who can substantiate your denial; and identify which persons you intend to call at trial to support such denial.

3

RESPONSE: La Ruche objects to this Interrogatory as overly broad, too general and all-inclusive, vague and indefinite, and not reasonably calculated to lead to the discovery of admissible material in a manner consistent with the Federal Rules of Civil Procedure. Further, La Ruche neither denies nor admits allegations made in a Counterclaim filed against another party. La Ruche refers Mr. Zambrana to its December 19, 2005 Answer to Third-Party Complaint for an understanding of those allegations which La Ruche denies – denials which are plain and speak for themselves.

Interrogatory No. 6: If you deny any or all of the allegations set forth in paragraphs 2-3, 6-38, 40-46, 48-53, 55-57, 59-64, 66- 69, 71-74, 76-82, 84-94, 96, and 97 of the Third-Party Complaint, describe which facts alleged therein that you deny; identify any documents which support your denial; identify any persons who can substantiate your denial; and identify which persons you intend to call at trial to support such denial.

RESPONSE: La Ruche objects to this Interrogatory as overly broad, too general and all-inclusive, vague and indefinite, and not reasonably calculated to lead to the discovery of admissible material in a manner consistent with the Federal Rules of Civil Procedure. La Ruche states that the denials in its December 19, 2005 Answer to Third-Party Complaint are plain and speak for themselves. For documents which support La Ruche's Answer denials, La Ruche refers Mr. Zambrana to the documents produced in response to his First Request for Production of Documents to Third-Party Defendant Jean Claude Cauderlier. Those documents are sufficient to support the denials made in La Ruche's Answer. La Ruche will identify its witnesses in a manner consistent with the Federal Rules of Civil Procedure and the local rules of the Court.

Interrogatory No. 7: If you deny that, between 1996 and 1998, you directed La Ruche to issue to Mr. Zambrana a stock certificate memorializing Mr. Zambrana's ten percent (10%) ownership interest in La Ruche, describe what incentives, if any, that La Ruche offered to Mr. Zambrana at that time, to entice him to agree not to leave La Ruche, when other employees were leaving the employ of La Ruche to establish a new restaurant, and offering equity shares in that new enterprise.

4

RESPONSE: La Ruche objects to this Interrogatory as overly broad, too general and all-inclusive, vague and indefinite (specifically as to the term "incentives"), and not reasonably calculated to lead to the discovery of admissible material in a manner consistent with the Federal Rules of Civil Procedure. Mr. Zambrana did not own any interest in La Ruche before 2000. La Ruche did not issue Mr. Zambrana stock certificates before 2000. Throughout the course of his employment with La Ruche, Mr. Zambrana received compensation in the form of salary, earned tips, and in-kind benefits available to La Ruche employees. At no point did La Ruche grant Mr. Zambrana additional consideration for services rendered.

Interrogatory No. 8: If you deny that La Ruche owns one hundred percent (100%) of the stock in CAI, describe those facts which support your answer; identify any documents which support your answer; identify any persons who can substantiate your answer; identify which persons you intend to call at trial to support such answer; and describe how it came to be that La Ruche's 2004 federal income tax return Form 1120 indicates that La Ruche owns "100%" of the stock in CAI.

RESPONSE: La Ruche objects to this Interrogatory as overly broad, too general and all-inclusive, vague and indefinite, and not reasonably calculated to lead to the discovery of admissible material in a manner consistent with the Federal Rules of Civil Procedure. La Ruche does not own stock in CAI. No stock in CAI has ever been issued to La Ruche, nor has La Ruche ever purchased or sought to purchase an interest in CAI. Further, the 2004 Form 1120 instructions require both the identification of ownership interests common to separate corporations and the disclosure of employee ownership. The La Ruche 2004 Form 1120 discloses that Mr. Cauderlier owns both 100% of CAI and 90% of La Ruche to comply with those requirements. The La Ruche 2004 Form 1120 does not state that La Ruche owns 100% of CAI. La Ruche refers Mr. Zambrana to the documents produced in response to his First Request for Production of Documents to Third-Party Defendant Jean Claude Cauderlier for documents that – to the extent they exist – would support the determinations requested in this interrogatory.

5

La Ruche will identify its witnesses in a manner consistent with the Federal Rules of Civil Procedure and the local rules of the Court.

Interrogatory No. 9: State the number of shares in La Ruche you contend are owned by [Mr.] Cauderlier, the number of shares in La Ruche owned by Mr. Zambrana, and the number of shares in La Ruche owned by other persons, and describe those facts which support your answer; identify any documents which support your answer; identify any persons who can substantiate your answer; identify which persons you intend to call at trial to support such answer; and identify those other persons you contend hold the shares in La Ruche.

RESPONSE: La Ruche objects to this Interrogatory as overly broad, too general and all-inclusive, vague and indefinite, and not reasonably calculated to lead to the discovery of admissible material in a manner consistent with the Federal Rules of Civil Procedure. Mr. Cauderlier owns 90 shares of common stock in La Ruche. Mr. Zambrana owns 10 shares of common stock in La Ruche. No other party or entity holds shares in La Ruche. La Ruche refers Mr. Zambrana to the documents produced in response to his First Request for Production of Documents to Third-Party Defendant Jean Claude Cauderlier for documents that – to the extent they exist – would support the determinations requested in this interrogatory. La Ruche will identify its witnesses in a manner consistent with the Federal Rules of Civil Procedure and the local rules of the Court.

Interrogatory No. 10: State the percentage interest in the Property you contend is owned by CAI, the percentage interest in the Property owned by La Ruche, the percentage interest in the Property owned by [Mr.] Cauderlier, the percentage interest in the Property owned by Mr. Zambrana, and the percentage interest in the Property owned by other persons, and describe those facts which support your answer; identify any documents which support your answer; identify any persons who can substantiate your answer; identify which persons you intend to call at trial to support such answer; and identify those other persons you contend own a percentage interest in the Property.

RESPONSE: La Ruche objects to this Interrogatory as overly broad, too general and all-inclusive, vague and indefinite (specifically as to the term "incentives"), and not reasonably calculated to lead to the discovery of admissible material in a manner consistent with the Federal Rules of Civil Procedure. La Ruche has no position on the ownership interests that CAI, Mr. Cauderlier, or Mr. Zambrana may or may not hold in the property. La Ruche has no ownership interest in the property. La Ruche refers Mr. Zambrana to the documents produced in response to his First Request for Production of Documents to Third-Party Defendant Jean Claude Cauderlier for documents that – to the extent they exist – would support the determinations requested in this interrogatory. La Ruche will identify its witnesses in a manner consistent with the Federal Rules of Civil Procedure and the local rules of the Court.

Interrogatory No. 11: Describe what you contend to be the purpose of Mr. Zambrana's delivering to [Mr.] Cauderlier, on or about January 20, 2000, a personal check payable to La Ruche in the amount of dated January 21, 2000; describe those facts which support your answer; identify any documents which support your answer; identify any persons who can substantiate your answer; identify which persons you intend to call at trial to support such answer.

RESPONSE: La Ruche objects to this Interrogatory as overly broad, too general and all-inclusive, vague and indefinite, and not reasonably calculated to lead to the discovery of admissible material in a manner consistent with the Federal Rules of Civil Procedure. La Ruche received a check in the amount of $25,000 from Mr. Zambrana. In return, La Ruche issued Mr. Zambrana 10 shares of common stock at a price of $2,500 per share – which is 10% of the price Mr. Cauderlier paid when he purchased La Ruche. La Ruche cannot speak to Mr. Zambrana's intentions in writing the check to La Ruche, but La Ruche understood that the check was for the purchase of La Ruche common stock. La Ruche refers Mr. Zambrana to the documents produced in response to his First Request for Production of Documents to Third-Party Defendant Jean Claude Cauderlier for documents that – to the extent they exist – would support the determinations requested in this interrogatory. La Ruche will identify its witnesses in a manner consistent with the Federal Rules of Civil Procedure and the local rules of the Court.

7

Interrogatory No. 12: State the monthly amount paid by [La Ruche] to CAI to lease the premises located in the Property, for each month since February 2000.

RESPONSE: La Ruche objects to this Interrogatory as overly broad, too general and all-inclusive, vague and indefinite, and not reasonably calculated to lead to the discovery of admissible material in a manner consistent with the Federal Rules of Civil Procedure. La Ruche refers Mr. Zambrana to the documents produced in response to his First Request for Production of Documents to Third-Party Defendant Jean Claude Cauderlier for documents that – to the extent they exist – would support the determinations requested in this interrogatory. La Ruche will identify its witnesses in a manner consistent with the Federal Rules of Civil Procedure and the local rules of the Court.

Dated: March 31, 2006                    Respectfully submitted,

                                         Robert L. Green, Jr. (D.C. Bar No. 935775)
                                         James B. Boles (D.C. Bar No. 471818)
                                         HOWREY LLP
                                         1299 Pennsylvania Ave., N.W.
                                         Washington, D.C. 20004
                                         (202) 783-0800
                                         (202) 383-6610 – facsimile
                                         greenr@howrey.com
                                         bolesj@howrey.com

                                         Attorneys for Cauderlier & Associates, Inc.,
                                         Jean Claude Cauderlier, and La Ruche, Inc.

8

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing La Ruche, Inc.'s Responses to Third-Party Plaintiff's First Set of Interrogatories was sent by hand delivery this 31st day of March 2006 to:

        Benny L. Kass, Esq.
        Jeffrey M. Hamberger, Esq.
        KASS, MITEK & KASS, PLC
        1050 17th St., N.W. #1100
        Washington, D.C. 20036
        blkass@kmklawyers.com
        jhamberger@kmklawerys.com
        (202) 659-6500

                             James B. Boles

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAUDERLIER & ASSOCIATES, INC.,** | )<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | )<br>)<br>) **Civil Action No. 05-1653 (ESH)** |
| **SERGIO ZAMBRANA,** | )<br>) |
| **Defendant/Third-Party<br>Plaintiff** | )<br>)<br>) |
| v. | )<br>)<br>) |
| **JEAN CLAUDE CAUDERLIER** | )<br>) |
| **And** | )<br>) |
| **LA RUCHE, INC.** | )<br>)<br>) |
| **Third-Party Defendants** | )<br>) |

## MEMORANDUM OF CAUDERLIER & ASSOCIATES, INC., LA RUCHE, INC., AND JEAN CLAUDE CAUDERLIER IN OPPOSITION TO SERGIO ZAMBRANA'S MOTION FOR ORDER REQUIRING COUNSEL TO WITHDRAW

Cauderlier & Associates, Inc. ("CAI"), La Ruche, Inc. ("La Ruche"), and Jean Claude Cauderlier ("Mr. Cauderlier") (collectively referred to hereinafter as the "Joint Parties") respectfully submit this Memorandum in Opposition to Sergio Zambrana's Motion for Order Requiring Counsel to Withdraw ("Motion").

### PRELIMINARY STATEMENT

Sergio Zambrana ("Mr. Zambrana") moves to disqualify Howrey LLP ("Howrey") from continuing its representation of the Joint Parties.  Mr. Zambrana claims disqualification is required because:  (1) the funds of CAI and La Ruche have been co-mingled[1]; (2) La Ruche may

---

[1] Motion Memorandum at 3-4, 5.

own "a controlling equitable share of CAI stock"[2]; (3) the proceeds of a check Mr. Zambrana wrote to La Ruche was "put toward the purchase price CAI was paying for the Building"[3]; (4) it would be in La Ruche's best interest to assert an ownership interest in either CAI or the property at issue[4]; (5) Mr. Cauderlier's and CAI's interests conflict with those of La Ruche[5]; (6) Mr. Zambrana has been prejudiced by the Joint Parties sharing counsel[6]; (7) Howrey therefore "represents three parties with conflicting interests in one lawsuit"[7]; and (8) Howrey cannot obtain consent to these conflicts because it would have to divulge the "confidence[s]" of CAI, La Ruche, and Mr. Cauderlier.[8]

　　　Mr. Zambrana does not contend that Howrey should be disqualified because Howrey acted as his counsel. Instead, he asserts that Howrey should be disqualified because La Ruche has not asserted an ownership interest in CAI. Mr. Cauderlier is the sole shareholder of CAI and the majority shareholder of La Ruche. Mr. Cauderlier controls the operations of both corporations. Although Mr. Zambrana asserts an ownership interest in both corporations, Mr. Zambrana does not assert that he is the majority owner of either corporation. Nor can he. As the controlling shareholder of both corporations, Mr. Cauderlier has the authority to select counsel of his choosing. Mr. Zambrana cites no authority for the unusual proposition that the controlling shareholder of sister corporations must retain separate counsel to assert claims asserted by a minority shareholder on behalf of La Ruche against CAI. Mr. Zambrana would have Mr. Cauderlier sue himself. This is not and cannot be the law.

---

[2] Motion Memorandum at 4.

[3] *Id.*

[4] *Id.* at 4-7.

[5] *Id.* at 5-7.

[6] *Id.* at 5.

[7] *Id.* at 9.

[8] *Id.*

Mr. Zambrana's Motion is unsupported by law and makes assertions which are irrelevant to, and inconsistent with, the analytical standards of this and other Courts. Simply put, Mr. Zambrana's Motion is frivolous. It is neither warranted by existing law nor a nonfrivolous argument for the extension, modification, or reversal of existing law.

As set forth more fully below, Mr. Zambrana's Motion for Order Requiring Counsel to Withdraw should be denied.

## DISCUSSION

This Court has held that "the mere claim of a conflict is not enough; there must be proof" and has expressed the concern that "some motions for disqualification are motivated not by a fine sense of ethics and a well-developed desire to remove from litigation practitioners whose ethics are less acute, but, bluntly, by a desire to achieve a tactical advantage."[9] Disqualification motions are viewed with "strong disfavor" and "cautious scrutiny."[10]

On September 30, 2005, Mr. Zambrana complained of this alleged conflict of interest: "Although defendant's counsel had hoped plaintiff's counsel would act to ensure that any potential conflict of interest would be avoided, it is now evident that that task has not been accomplished."[11] Without filing a motion or any supplementary exhibits, Mr. Zambrana requested that this Court "order plaintiff's counsel to withdraw from its representation of any parties in this case, present or future, as required by District of Columbia Rules of Professional Conduct, Rule 1.7."[12] This Court denied Mr. Zambrana's motion to dismiss without discussion

---

[9] *Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. 22 at 27-28, 41; *see also Riggs Nat'l Bank v. Calumet-gussin No.1,* 1992 U.S. Dist. LEXIS 16475 at * 11 (D.D.C. October 30, 1992) (noting a concern that disqualification motions may be filed for "vexatious purposes").

[10] *Klayman & Gurley, P.C. v. Scott,* 1989 U.S. Dist. LEXIS 13638 at *3 (D.D.C. November 15, 1989); *Laker Airways,* 103 F.R.D. at 28.

[11] *See* Defendant's Reply Memorandum at 11 (filed in response to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss the Complaint or, in the Alternative, Motion to Join Indispensable Parties). Exhibit A (excerpts only).

[12] *Id.* at 13.

3

of his disqualification request.[13]  Mr. Zambrana waited seven months to again raise this issue. Mr. Zambrana's statement that he "waited until this time to file a formal motion, in the hope that the parties might return to the mediation table and reach an amicable resolution of this case" and filed only after deciding that "no such resolution [was] imminent,"[14] cannot be reconciled with his current claims of unavoidable prejudice, especially since that claimed prejudice necessarily taints any settlement negotiations.  Mr. Zambrana's statements suggest that his disqualification motion is tactically inspired and does not originate from any "fine sense of ethics and ... desire to remove from litigation practitioners whose ethics are less acute ...."[15]

Disqualification motions are evaluated with careful and detailed considerations of policy and practicality.  "The decision whether to disqualify counsel grows out of the Court's responsibility to supervise the members of its bar, and it is viewed to be discretionary."[16]  In evaluating a disqualification motion, this Court "balance[s] the need to ensure proper conduct on the part of lawyers appearing before it against the harm to other social interests which may ensue if disqualification is improvidently granted."[17]  "The Court is both justified and required to regard [movant's] arguments through a practical lens, and to assess them in light of those practicalities."[18]

Two other courts have looked through such a "practical lens" in holding that control of a closely-held corporation is a key consideration in this analysis.  In *Seifert v. Dumatic Industries,*

---

[13] *See* October 4, 2005 Order.

[14] Disqualification Motion Memorandum at 2 n.1.

[15] *Laker Airways,* 103 F.R.D. at 27-28.

[16] *Id.* at 27 n.4 (D.D.C. 1984) (*citing in part Groper v. Taff,* 717 F.2d 1415 (D.C. Cir. 1983)).

[17] *Laker Airways,* 103 F.R.D. at 27 (*citing in part Nat'l Souvenir Ctr. Inc. v. Historic Figures, Inc.,* 728 F.2d 503 (D.C. Cir. 1984)).  Included in that balancing are considerations of a litigant's right to freely chosen counsel and an attorney's right to practice his profession.  *Laker Airways,* 103 F.R.D. at 27-28.

[18] *Id.* at 42.

*Inc.,*[19] the Pennsylvania Supreme Court noted that the even split of control between two owners of a closely-held corporation made a conflict of interest between the shareholder and the corporation impossible.[20] The *Seifert* Court rejected the assumption "that a corporate interest always accompanie[s] the corporate form" and found that the closely-held corporate form is ignored when issues of control preclude a conflicting corporate interest.[21] For purposes of interest conflict analysis, the lawsuit is regarded as being between the controlling party – rather than the corporation – and the other litigants.[22]

The conclusion that control must be examined in determining conflicts associated with closely-held corporations was also reached by the Oregon Supreme Court in *In re Banks.*[23] The Court observed that the closely-held corporation at issue was "substantially controlled and operated by one person" and that the corporation's counsel personally represented that same person.[24] Despite corporate ownership being split among family members, the *Banks* Court found that the controlling party's interests were inseparable from that of the corporation:

> [T]he individual interests would really dictate what was done because the corporate form would be only a method of doing business chosen by the individual for the purpose of promoting his private interests. In such a situation, as in many other fields, common sense dictates that the corporate entity should be ignored.
>
> \* \* \*
>
> *[T]here is no real reason for [the controlling individual] to differentiate in his mind between his own and corporate interests. In such a situation all the reasons are in existence which give rise to the rule against conflicts of interest because there is no basis for*

---

[19] 197 A.2d 454 (Pa. 1964).

[20] *Id.* at 456.

[21] *Id.*

[22] *Id.*

[23] 584 P.2d 284 (Ore. 1978).

[24] *Id.* at 290.

the [controlling] individual to believe that the attorney has or ever
will have other than his individual interest at heart.[25]

The *Banks* Court held that only after the controlling individual loses control of the corporation
would counsel be conflicted out of representing both the individual and the corporation.[26]

Mr. Zambrana's Motion does not consider the practical concerns and control issues.[27]
Mr. Cauderlier is the sole owner and sole officer of CAI. Mr. Cauderlier is the controlling owner
and sole officer of La Ruche. Although Mr. Cauderlier respects the corporate form as required
under the law, he is clearly and unequivocally the controlling individual since the operational
responsibilities and obligations for both corporations are Mr. Cauderlier's alone.[28]
Mr. Zambrana has every expectation that if his Motion were granted, CAI, La Ruche, and Mr.
Cauderlier would quickly bring lawsuits against one another.[29] Mr. Cauderlier would therefore
be expected to: (1) direct his attorney to sue a corporation for whose operations he is solely
responsible; (2) put on his CAI "hat" and then direct separate CAI counsel to sue himself and La
Ruche; and (3) put on his La Ruche "hat" and then direct separate La Ruche counsel to sue
himself and CAI. Mr. Zambrana does not cite a single authority that supports his motion.[30] As

---

[25] *Id.* at 290, 292 (emphasis in original).

[26] *Id.* at 292.

[27] Mr. Zambrana's contention that the parties "failed to comply with Rule 32(b)(2) of the Federal Rules of Civil Procedure" is incorrect. Mr. Cauderlier's verification of the interrogatory answers – submitted in compliance with Federal Rule of Civil Procedure 33(b)(2) – were sent to Counsel for Mr. Zambrana under separate cover two business days after the answers themselves. *See* Exhibit B. Mr. Zambrana's contention is irrelevant to his Motion.

[28] Although Mr. Zambrana claims "an ownership interest in La Ruche of more than 10% ... and an ownership interest in CAI of an as-yet-undetermined magnitude," (Motion Memorandum at 2), at no point has Mr. Zambrana alleged that he holds a controlling interest in either corporation or a current role in the direction or operations of same.

[29] *Id.* at 6.

[30] Mr. Zambrana cites only a single case – *Griva v. Davison,* 637 A.2d 830 (D.C. 1993) – which he qualifies as "involving a fact pattern that is inapposite here ...." Motion Memorandum at 10. *Griva* is factually inapposite. Howrey has never represented Mr. Zambrana and was retained after Mr. Zambrana had obtained counsel.

discussed above, *Banks* and *Seifert* establish that Mr. Cauderlier's interests are indistinguishable from those of La Ruche and CAI.[31] There is no conflict between the interests of the Joint Parties.

If this Motion were granted, CAI would be deprived of counsel of its choice. Mr. Zambrana's express desire to dispense with the terms "plaintiff," "defendant," "third-party defendants," and "third-party plaintiff" is a subtle reminder that Mr. Zambrana has manufactured this alleged conflict of interest. After his motion to dismiss was denied, Mr. Zambrana sued La Ruche and Mr. Cauderlier. A holding that CAI's counsel be disqualified is a holding that a defendant may, at his discretion, opt to double or triple the litigation costs for the owner of a small business by suing affiliated businesses and preventing those businesses from engaging joint counsel.

CAI, La Ruche, and Mr. Cauderlier do not subscribe to Mr. Zambrana's view of the evidence. The Joint Parties believe that the evidence will establish that corporate form and integrity have been maintained. La Ruche did not purchase the property. Mr. Zambrana's check was to La Ruche and allowed him to purchase a ten percent interest in La Ruche – the only interest he has ever held. The bank and tax records of the two corporations do not suggest or establish that La Ruche owns interest in either CAI or the property. Mr. Zambrana's wish that La Ruche and CAI adopt a Zambrana-friendly position will not suffice to change their view of the facts.

The Joint Parties have not sued each other because their interests in this matter are the same and opposed to those of Mr. Zambrana. The Joint Parties believe that this combined litigation will ultimately affirm their view of the facts. Withdrawal of current counsel will not change that belief.

---

[31] *Seifert*, 197 A.2d at 456; *Banks*, 584 P.2d at 290, 292.

## **CONCLUSION**

For the reasons set forth above, Sergio Zambrana's Motion for Order Requiring Counsel to Withdraw should be denied.

Dated:  May 18, 2006                    Respectfully submitted,

Robert L. Green, Jr. (D.C. Bar No. 935775)
James B. Boles (D.C. Bar No. 471818)
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 783-0800
(202) 383-6610 – facsimile
greenr@howrey.com
bolesj@howrey.com

Attorneys for Cauderlier & Associates, Inc.,
Jean Claude Cauderlier, and La Ruche, Inc.

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAUDERLIER & ASSOCIATES, INC.

        Plaintiff

    v.

SERGIO ZAMBRANA

        Defendant

Civil Case No. 1:05CV01653
Judge Ellen Segal Huvelle

## DEFENDANT'S REPLY MEMORANDUM

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    THE "FACTS" CITED BY PLAINTIFF ARE NOT PROVEN . . . . . . . . . . . . . . . . . . 4

    JEAN CAUDERLIER IS AN INDISPENSABLE PARTY . . . . . . . . . . . . . . . . . . . . . . 5

        Divergent Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        Res Judicata and Stare Decisis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        Rule 19 Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    LA RUCHE IS AN INDISPENSABLE PARTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    WHAT PLAINTIFF DOES AND DOES NOT KNOW ABOUT LA RUCHE . . . . . . . 11

    PLAINTIFF'S COUNSEL SHOULD BE REQUIRED TO WITHDRAW
    FROM THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

separate action." Plaintiff repeats this proposition several more times on the same page, attempting to support similar but slightly different arguments.

Despite these averments, the lack of evidence put forward by CAI would lead a reasonable person to ask CAI, "*what is the source of your information*?"

There are also other problems with plaintiff's suggesting that La Ruche claims no interest in CAI. If the facts as laid out in defendant's Affidavit are true, La Ruche *should* be claiming an interest in CAI, and it would not be plaintiff's place to decide otherwise. In fact, if the Affidavit is accurate, CAI should be the *last* "person" to be making such a determination for La Ruche. So, just how does CAI "know" that La Ruche claims no interest in CAI?

### WHAT PLAINTIFF DOES AND DOES NOT KNOW ABOUT LA RUCHE

The "how does CAI know?" question opens a Pandora's Box, it turns out. Unfortunately for everyone involved in this case, it would seem that counsel for CAI actually counts La Ruche, Inc., as one of its clients, too.[20] To make matters worse, plaintiff's counsel represents Jean Cauderlier, as well.[21]

Although defendant's counsel had hoped plaintiff's counsel would act to ensure that any potential conflict of interest would be avoided, it is now evident that that task has not been accomplished. The conflict in the dual representation of CAI and La Ruche is exacerbated by an entry on La Ruche's 2004 tax return, that appears to indicate that *La Ruche, Inc. owns "100%" of*

---

[20] Plaintiff's counsel conveyed La Ruche's 2004 tax returns to counsel for defendant, with a letter dated July 26, 2005. [Exhibit 1]. Although the tax return is not signed, defendant accepts it as an authentic copy, since it was sent to his counsel by La Ruche's counsel.

[21] Plaintiff's counsel advised defendant's counsel by letter dated January 27, 2005, that his firm represented Jean Cauderlier. [Exhibit 2.]

11

*the stock in CAI.*[22]  Absent an explanation from CAI, showing that La Ruche's tax return is

erroneous (assuming CAI admits that it is privy to such information), or proving that defendant

has wrongly interpreted the Statement 4's meaning or import, there is raised a greater issue than

plaintiff's counsel's divided loyalties: the entire basis of CAI's claim, and everything asserted in

the Complaint, are thrown into question.

Equally troubling is plaintiff's counsel's dual representation of Jean Cauderlier. The only

person who would benefit from a finding that (a) CAI and La Ruche are separate entities, (b) Jean

Cauderlier is the sole shareholder in CAI, (c) there has been no commingling of funds, (d) La

Ruche makes no claim to an interest in CAI, (e) CAI alone owns the Building, and (f) Mr.

Zambrana owns only a 10% share in La Ruche and no share in CAI, is Jean Cauderlier. He is the

only person who could presume to speak for both corporate entities and could dictate their

purported positions on the issues at bar.  No one else could have, or would have wanted to,

approve the allegations in the Complaint or put forward the arguments contained in plaintiff's

Memorandum in Opposition.

### PLAINTIFF'S COUNSEL SHOULD BE REQUIRED TO WITHDRAW FROM THIS ACTION

These circumstances make it apparent that plaintiff's counsel cannot continue in that role,

by virtue of 1.7 of the District of Columbia Rules of Professional Conduct.  There is no

conceivable way that plaintiff's counsel could obtain meaningful consents to its representation of

---

[22]  La Ruche's 2004 federal income tax is marked "Exhibit 3" and attached hereto.  The page entitled "Statement(s) 4, 5, 6, 7" at the bottom right of the page displays a top-of-the page entry, captioned Statement 4 ("50% or More Ownership Question"), indicating that La Ruche possesses a 100% share of CAI's stock.  This information only came to defendant's attention yesterday evening, after the bulk of this Reply had been drafted, or it would have been raised earlier.  In fact, it would have been raised in the original Motion.  Defendant would also point out to the Court that, unlike its 2000 tax return, part of which was attached to the Motion as Exhibit B, La Ruche's 2004 tax return indicates that Jean Cauderlier is the owner of 90% of its shares, rather than 100%.

these three clients, or any one of them, given their conflicting interests in the outcome of the Motion and this case.

Worse, one wonders how counsel for La Ruche could have advanced in writing the proposition that "La Ruche asserts no interest in CAI." It is transparently not in La Ruche's best interest to disavow its ownership in CAI. This is especially true in light of a possible commingling or misappropriation of La Ruche's funds, and CAI's claim to ownership of the Building.

The same concerns arise when one considers what would be in Jean Cauderlier's best interest. His "ideal" outcome in this case obviously does not necessarily coincide with either CAI's or La Ruche's respective "best results."

Reluctantly, defendant must respectfully request that this Court order plaintiff's counsel to withdraw from its representation of any parties in this case, present or future, as required by District of Columbia Rules of Professional Conduct, Rule 1.7.

Finally, defendant requests that this Court enter an Order dismissing the Complaint filed herein and awarding defendant all his attorneys' fees.

Respectfully submitted,

KASS, MITEK & KASS, PLLC

Dated: September 30, 2005

By: _____
Benny L. Kass (D.C. Bar No. #025155)
Jeffrey M. Hamberger (D.C. Bar No. 930362)
1050 17th Street, N.W., #1100
Washington, D.C.  20036
blkass@kmklawyers.com
jhamberger@kmklawyers.com
(202) 659-6500
Attorneys for Defendant

13

# EXHIBIT B

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

Direct Dial 202.383.7312
File 01314.0002.000000

April 4, 2006

Jeffrey M. Hamberger, Esq.
Kass, Mitek & Kass, PLC
1050 17th Street, N.W.
Washington, D.C. 20036

Dear Mr. Hamberger:

   Enclosed please find the verifications for the interrogatory responses we filed last week.
If you should have any questions, please feel free to contact me.

Sincerely,

James B. Boles
*Attorney for Cauderlier & Associates, Inc.*

Enclosures

## VERIFICATION

I have read the foregoing Cauderlier & Associates, Inc.'s Responses to Defendant's First Set of Interrogatories and know its contents.

I am authorized to make this verification for and on the behalf of Cauderlier & Associates, Inc., and I make this verification for that reason. The matters stated in the foregoing document are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.


_____
Jean Claude Cauderlier


Executed: April 4, 2006

## VERIFICATION

I have read the foregoing La Ruche, Inc.'s Responses to Third-Party Plaintiff's First Set of Interrogatories and know its contents.

I am authorized to make this verification for and on the behalf of La Ruche, Inc., and I make this verification for that reason. The matters stated in the foregoing document are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Jean Claude Cauderlier

Executed: April 4, 2006

## <u>VERIFICATION</u>

I have read the foregoing Jean Claude Cauderlier's Responses to Third-Party Plaintiff's First Set of Interrogatories and know its contents. The matters stated in the foregoing document are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.


_____
Jean Claude Cauderlier


Executed:  April 4, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Memorandum of Cauderlier &

Associates, Inc., La Ruche, Inc., and Jean Claude Cauderlier in Opposition to Sergio Zambrana's

Motion for Order Requiring Counsel to Withdraw and Exhibits were served by operation of the

Court's electronic filing system upon all attorneys of record registered with the Court's ECF

system, and a true and accurate copy of the foregoing instrument was forwarded by overnight

delivery to those attorneys not registered with the Court's ECF system, this 18th day of May

2006, as indicated below, to:

Benny L. Kass, Esq.
Jeffrey M. Hamberger, Esq.
KASS, MITEK & KASS, PLC
1050 17th St., N.W.  #1100
Washington, D.C.  20036
blkass@kmklawyers.com
jhamberger@kmklawerys.com
(202) 659-6500

James B. Boles

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CAUDERLIER & ASSOCIATES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 05-1653 (ESH/JMF)** |
| **SERGIO ZAMBRANA,** | ) | |
| | ) | |
| **Defendant/Third-Party** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEAN CLAUDE CAUDERLIER** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **LA RUCHE, INC.** | ) | |
| | ) | |
| **Third-Party Defendants** | ) | |

## PROPOSED ORDER

Upon consideration of Sergio Zambrana's Motion for Order Requiring Counsel to

Withdraw, it is hereby **ORDERED and ADJUDGED** this _____ day of _____, 2006, that

Mr. Zambrana's Motion is hereby **DENIED;** and

**SO ORDERED**.

_____
Ellen S. Huvelle
United States District Court Judge