# EXHIBIT E

## **CERTIFICATION**

I certify that on May 19, 2006, I received – via hand delivery – a letter dated May 19, 2006 from Robert L. Green to Jeffrey M. Hamberger regarding CAI v. Zambrana – Notice of Fed. R. Civ. P. 11 Motion for Sanctions.  Materials were enclosed with that letter.


_____

Of Kass, Mitek & Kass, PLLC

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

**Robert L. Green, Jr.**
Partner
T 202.383.6506
F 202.383.6610
greenr@howrey.com

File 01314.0002.000000

May 19, 2006

Jeffrey M. Hamberger, Esq.
Kass, Mitek & Kass, PLLC
1050 17th Street, NW, Suite 1100
Washington, DC 20036

Re:    **CAI v. Zambrana - Notice of Fed R. Civ. P. 11
Motion for Sanctions**

Dear Mr. Hamberger:

Your May 9, 2006 disqualification motion contains no supporting citations of law, fails to include citations to well-established law and appears to have been motivated by tactical considerations.

Federal Rule of Civil Procedure 11 authorizes the District Court to impose sanctions on a party who, among other things, makes a written motion that: (1) has been presented for an improper purpose; or (2) contains legal contentions that are not warranted by either existing law, a nonfrivolous argument for the extension, modification or reversal of existing law, or the establishment of new law. The disqualification motion does not meet the requirements of Rule 11(b)(1) or 11(b)(2). Accordingly, we are enclosing a Motion for Sanctions and Memorandum of Points and Authorities that, in accordance with Rule 11(c)(1)(A), will be filed with the Court on June 9, 2006.

We request that the disqualification motion be withdrawn prior to June 9, 2006

Sincerely,

Robert L. Green
*Attorney for Cauderlier & Associates, Inc.,
La Ruche, Inc., and Jean Claude Cauderlier*

# HOWREY LLP

Jeffrey M. Hamberger, Esq.
May 19, 2006
Page 2

RLG:jbb
Enclosures

cc:    James B. Boles, Esq.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAUDERLIER & ASSOCIATES, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) **Civil Action No. 05-1653 (ESH)** | |
| **SERGIO ZAMBRANA,** ) | |
| ) | |
| **Defendant/Third-Party** ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **JEAN CLAUDE CAUDERLIER** ) | |
| ) | |
| **And** ) | |
| ) | |
| **LA RUCHE, INC.** ) | |
| ) | |
| **Third-Party Defendants** ) | |
| ) | |

## MOTION OF CAUDERLIER & ASSOCIATES, INC., LA RUCHE, INC., AND JEAN CLAUDE CAUDERLIER FOR RULE 11 SANCTIONS

Pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") and this Court's inherent powers, Cauderlier & Associates, Inc. ("CAI"), La Ruche, Inc. ("La Ruche"), and Jean Claude Cauderlier ("Mr. Cauderlier") (collectively referred to hereinafter as the "Joint Parties") respectfully moves this Court for an Order granting the Joint Parties fees and costs they incurred in opposing Mr. Sergio Zambrana's Motion for Order Requiring Counsel to Withdraw and pursuing this Motion for Sanctions.

In support of this Motion, the Joint Parties submit: (1) the attached Memorandum; (2) a copy of Sergio Zambrana's Motion for Order Requiring Counsel to Withdraw; (3) a copy of the Supplement to Mr. Zambrana's Motion; (4) the Joint Parties' Memorandum in Opposition to Mr. Zambrana's Motion; (5) a copy of the May 19, 2006

Letter from Robert Green to Jeffrey Hamburger regarding the Joint Parties' intent to seek

Rule 11 sanctions; and (6) a proposed Order.

Dated:  June 9, 2006                         Respectfully submitted,


_____

Robert L. Green, Jr. (D.C. Bar No. 935775)
James B. Boles (D.C. Bar No. 471818)
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 783-0800
(202) 383-6610 – facsimile
greenr@howrey.com
bolesj@howrey.com

Attorneys for Cauderlier & Associates, Inc.,
Jean Claude Cauderlier, and La Ruche, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Motion of Cauderlier &

Associates, Inc., La Ruche, Inc., and Jean Claude Cauderlier for Rule 11 Sanctions was

served by operation of the Court's electronic filing system upon all attorneys of record

registered with the Court's ECF system, and a true and accurate copy of the foregoing

instrument was forwarded by overnight delivery to those attorneys not registered with the

Court's ECF system, this 9th day of June 2006, as indicated below, to:

> Benny L. Kass, Esq.
> Jeffrey M. Hamberger, Esq.
> KASS, MITEK & KASS, PLC
> 1050 17th St., N.W. #1100
> Washington, D.C. 20036
> blkass@kmklawyers.com
> jhamberger@kmklawerys.com
> (202) 659-6500


_____

James B. Boles

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAUDERLIER & ASSOCIATES, INC.,              )
                                             )
          Plaintiff,                         )
                                             )
     v.                                      )
                                             )     Civil Action No. 05-1653 (ESH)
SERGIO ZAMBRANA,                             )
                                             )
          Defendant/Third-Party             )
          Plaintiff                          )
                                             )
     v.                                      )
                                             )
JEAN CLAUDE CAUDERLIER                       )
                                             )
     And                                     )
                                             )
LA RUCHE, INC.                               )
                                             )
          Third-Party Defendants             )
                                             )

## MEMORANDUM OF CAUDERLIER & ASSOCIATES, INC., LA RUCHE, INC., AND JEAN CLAUDE CAUDERLIER FOR RULE 11 SANCTIONS

Cauderlier & Associates, Inc. ("CAI"), La Ruche, Inc. ("La Ruche"), and Jean Claude Cauderlier ("Mr. Cauderlier") (collectively referred to hereinafter as the "Joint Parties") respectfully submit this Memorandum for Federal Rule of Civil Procedure 11 sanctions.

## PRELIMINARY STATEMENT

Sergio Zambrana ("Mr. Zambrana") has moved to disqualify Howrey LLP ("Howrey") from continuing its representation of the Joint Parties. Mr. Zambrana's motion was unsupported by law and made assertions which were irrelevant to, and

- 1 -

inconsistent with, the analytical standards of this and other Courts. The motion demanded that Mr. Cauderlier be ordered to hire at least two separate law firms so that he would direct those firms to sue himself and corporate entities that operate under his sole direction. The motion's timing and procedural context suggested that it was motivated by tactical, rather than ethical concerns. The motion was inconsistent with Rule 11 because: (1) it was not warranted by law and advanced frivolous legal argument; and (2) it was filed for an improper purpose. For the reasons detailed below, sanctions should be granted.

## DISCUSSION

Mr. Zambrana's motion violated Rule 11 because the legal contentions therein are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *See* Fed. R. Civ. P. 11(b)(3). This Court has the discretion to impose sanctions on counsel where minimal research would have established that the arguments advanced have no basis in law.[1] Mr. Zambrana's motion fully merits this Court's exercise of its discretion.

This Court has stated, in well-established and accepted precedent, that "the mere claim of a conflict is not enough; there must be proof" and has expressed the concern that "some motions for disqualification are motivated not by a fine sense of ethics and a well-developed desire to remove from litigation practitioners whose ethics are less acute, but, bluntly, by a desire to achieve a tactical advantage."[2] Disqualification motions are

---

[1] *See, e.g., Sherman Treaters Ltd. v. Ahlbrandt,* 115 F.R.D. 519, 526 (D.D.C. 1987) (Movant sanctioned for filing a motion without basis in law); *Weisman v. Rivlin,* 598 F. Supp. 724, 726-27 (D.D.C. 1984) (Counsel sanctioned for motion based on assumptions rather than investigation and analysis).

[2] *Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. 22 at 27-28, 41; *see also Riggs Nat'l Bank v. Calumet-gussin No.1,* 1992 U.S. Dist. LEXIS 16475 at * 11 (D.D.C. October 30, 1992) (noting a concern that disqualification motions may be filed for "vexatious purposes").

viewed with "strong disfavor" and "cautious scrutiny."[3] This Court "balance[s] the need to ensure proper conduct on the part of lawyers appearing before it against the harm to other social interests which may ensue if disqualification is improvidently granted."[4] Precedent also establishes that this Court "is both justified and required to regard [movant's disqualification] arguments through a practical lens, and to assess them in light of those practicalities."[5]

Counsel for Mr. Zambrana clearly did not perform the minimal research required under Rule 11 or take into account the aforementioned precedent prior to filing the motion. Counsel cited none of this Court's precedent on disqualification motions. Counsel neither addressed this Court's standards for such motions nor noted this Court's oft-stated concern that such a motion may be ill-advised or motivated by tactical, rather than ethical, considerations. Counsel instead cited a single District of Columbia Court of Appeals case, which he qualified as "involving a fact pattern that is inapposite here ...."[6] Counsel also failed to cite any applicable precedent from this or any other court that supported his motion.

Counsel failed to address the practical implications of his motion. As noted in the Joint Parties' Opposition:

> As the controlling shareholder of both corporations, Mr. Cauderlier has the authority to select counsel of his choosing. Mr. Zambrana cites no authority for the unusual proposition that the controlling shareholder of sister corporations must retain separate counsel to assert claims on behalf of La Ruche against CAI. Mr. Zambrana would

---

[3] *Klayman & Gurley, P.C. v. Scott,* 1989 U.S. Dist. LEXIS 13638 at *3 (D.D.C. November 15, 1989); *Laker Airways,* 103 F.R.D. at 28.

[4] *Laker Airways,* 103 F.R.D. at 27 (*citing in part Nat'l Souvenir Ctr. Inc. v. Historic Figures, Inc.,* 728 F.2d 503 (D.C. Cir. 1984)).

[5] *Id.* at 42.

[6] Zambrana Motion Memorandum at 10.

- 3 -

have Mr. Cauderlier sue himself.  This is not and cannot be
the law.[7]

The motion demanded an impractical and implausible outcome, and cited no precedent

supporting that outcome.

Mr. Zambrana's Counsel ignored available precedent from other courts which

directly contradicted his argument.  The Joint Parties cited precedent establishing that

control of a closely-held corporation is a key consideration in analyzing whether there

could even be a conflict of interest.[8]

The motion violated Rule 11 because statements made therein suggest that it was

filed for improper purposes.  On September 30, 2005, Mr. Zambrana complained of this

same alleged conflict of interest and asked the Court to disqualify Howrey.[9]

Mr. Zambrana waited seven months before again raising this issue.  Mr. Zambrana stated

that he "waited until this time to file a formal motion, in the hope that the parties might

return to the mediation table and reach an amicable resolution of this case" and filed only

after deciding that "no such resolution [was] imminent."[10]  However, these statements

contradict his claims that Howrey's counsel poses unavoidable prejudice to the Joint

Parties – prejudice that would necessarily taint any settlement negotiations.  These

statements suggest the motion was tactically, rather than ethically, inspired.

This Court has previously exercised its discretion and imposed sanctions on

counsel where a groundless disqualification motion was filed.[11]  In *Klayman & Gurley,*

---

[7] Memorandum in Opposition to Sergio Zambrana's Motion for Order Requiring Counsel to Withdraw at 3.

[8] *Id.* at 4-5.

[9] *See* Defendant's Reply Memorandum at 11, 13 (filed in response to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss the Complaint or, in the Alternative, Motion to Join Indispensable Parties).

[10] Zambrana Motion Memorandum at 2 n.1.

[11] *Klayman,* 1989 U.S. Dist. LEXIS 13638 at *2-*4.

- 4 -

*P.C. v. Scott*,[12] this Court was presented a motion for sanctions after the plaintiff filed and withdrew a motion to disqualify counsel. The Court observed that the disqualification movant had failed to cite a case or other supporting authority for the proposition that counsel for a bank was conflicted out of defending that bank against claims of its customers.[13] The Court also observed that the movant had failed to address contrary precedent.[14] In granting sanctions, the Court stated that the disqualification motion "should never have been filed, given the strong disfavor with which such motions are viewed by this and other courts."[15]

Counsel's filing of the motion is a Rule 11 violation. The frivolous arguments Counsel advances are contradicted by precedent from other courts. Counsel sought an impractical outcome without addressing this Court's precedent which demands practical outcomes. The motion only contains a single cite which Counsel admits is factually inapposite and does not support the presented arguments. Finally, the context and the statements made in the Motion suggest that it was filed for improper purposes.

---

[12] *Id.*

[13] *Id.* at *2.

[14] *Id.*

[15] *Id.* at *3.

## **CONCLUSION**

For the foregoing reasons, this Court should sanction Counsel for Mr. Zambrana and require Counsel to pay the fees and costs incurred in the research, drafting, and filing of both this Motion for Sanctions and the Opposition to Sergio Zambrana's Motion for Order Requiring Counsel to Withdraw.

Dated:  June 9, 2006                                   Respectfully submitted,


                                                        _____

Robert L. Green, Jr. (D.C. Bar No. 935775)
James B. Boles (D.C. Bar No. 471818)
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 783-0800
(202) 383-6610 – facsimile
greenr@howrey.com
bolesj@howrey.com

Attorneys for Cauderlier & Associates, Inc.,
Jean Claude Cauderlier, and La Ruche, Inc.

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAUDERLIER & ASSOCIATES, INC.

      Plaintiff

      v.                                Civil Action No. 05-1653 (ESH)

SERGIO ZAMBRANA

      Defendant/Third-Party
      Plaintiff

      v.

JEAN CLAUDE CAUDERLIER

      and

LA RUCHE, INC.

      Third-Party Defendants

---

**SERGIO ZAMBRANA'S REPLY TO JOINT PARTIES' OPPOSITION TO HIS
MOTION FOR ORDER REQUIRING COUNSEL TO WITHDRAW**

      Defendant/Counter-Plaintiff/Third-Party Plaintiff, Sergio Zambrana ("Mr. Zambrana"),

by and through counsel, respectfully submits this Reply to the Memorandum of Cauderlier &

Associates, Inc., La Ruche, Inc., and Jean Claude Cauderlier in Opposition to Sergio Zambrana's

Motion for Order Requiring Counsel to Withdraw ("Opposition").

## PRELIMINARY STATEMENT

The three parties represented by the law firm of Howrey, LLP ("Howrey") in this case, Cauderlier & Associates, Inc. ("CAI"), La Ruche, Inc., ("La Ruche"), and Jean Claude Cauderlier ("Mr. Cauderlier") (collectively, the "Joint Parties"), open their Opposition, at pages 1- 2, by kindly recounting several of the reasons that Mr. Zambrana asserts Howrey must be required to withdraw as counsel for all three Joint Parties.

Rather than address any of the eight (8) recited contentions upon which Mr. Zambrana relies as justification for his Motion, the Opposition follows its recitation with the following statements: "Mr. Zambrana does not contend that Howrey should be disqualified because Howrey acted as his counsel. Instead, he asserts that Howrey should be disqualified because La Ruche has not asserted an ownership interest in CAI."[1] The fact that Howrey does not, and did not, represent Mr. Zambrana has never been an issue in this case and is a curious red herring. The second statement is far from an accurate representation of Mr. Zambrana's stated position, as well.

The Joint Parties do manage to get to the crux of the question regarding the propriety of Howrey's multiple representation, though. Their Opposition asserts, at page 2, that "[a]s the controlling shareholder of both corporations, Mr. Cauderlier has the authority to select counsel of his choosing." Although this is followed by two absurd sentences, the point is made: Mr. Cauderlier believes that he can do as he pleases with the two corporations, because he controls them both. He is in error, however, when he extrapolates that proposition, as he has, to mean that he is not required to avoid conflicts of interest between the corporations or inappropriate dealings between them.

---

[1] Opposition, p. 2.

2

In this case, Mr. Zambrana has put forth proof, by way of his Affidavit, tax returns, and copies of checks drawn on the La Ruche bank account, discussed further below, that Mr. Cauderlier has treated La Ruche and CAI as alter egos; of each other, and of Mr. Cauderlier himself. The proof also demonstrates a commingling of funds, among other corporate wrongdoings. Therefore, while he may be free to "select counsel of his choosing," Mr. Cauderlier is not free to choose the *same* counsel for both corporations (and for himself), in a lawsuit where colorable claims have been made, which, if proven, will demonstrate improper activities on the part of all, or at least two, of the Joint Parties.

## ARGUMENT

Perhaps the single most interesting sentence in the Opposition can be found in the opening of the Discussion, at page 3. The Joint Parties state, without citation, "This Court has held that 'the mere claim of a conflict is not enough; there must be proof . . . .'" What is interesting about this proposition, aside from it being obvious, is that *nowhere* in any of the pleadings filed by them thus far have the Joint Parties offered any proof whatsoever to discredit that which has been proffered by Mr. Zambrana.

This fact was first brought to the Court's attention in Defendant's Reply Memorandum, which Mr. Zambrana refers to in his Motion.[2] In fact, Mr. Zambrana makes this point on the very page of his Reply Memorandum that precedes the pages the Joint Parties elected to copy and attach to their Opposition. In that pleading, Mr. Zambrana asserts that, "Plaintiff relies upon unproven 'facts' to bolster its contention and produces no verifiable evidence. Plaintiff states in its

---

[2] Terms such as "Defendant's Reply Memorandum" and "Building," which are defined in Mr. Zambrana's Motion to Withdraw, will not be redefined here.

3

Memorandum in Opposition,[3] '[a]s stated in the Complaint, La Ruche is a separate and independent entity from CAI. Defendant's relationship with La Ruche is distinct from defendant's relationship with CAI.' The only apparent 'proof' for this proposition is that it was 'stated in the Complaint.' No other verification is offered."[4]

With equal lack of basis, the Joint Parties in their Opposition assert that "[t]he Joint Parties believe that the evidence will establish that corporate form and integrity have been maintained. La Ruche did not purchase the property. Mr. Zambrana's check was to La Ruche and allowed him to purchase a ten percent interest in La Ruche - the only interest he has ever held. The bank and tax records of the two corporations do not suggest or establish that La Ruche owns interest in either CAI or the property. . . The Joint Parties believe that his combined litigation will ultimately affirm their view of the facts."[5]

In stark contrast to the Joint Parties' reliance upon their "view" of the facts, Mr. Zambrana included with his first pleading in this case[6] a 24-paragraph Affidavit setting forth the facts upon which he based that motion to dismiss and upon which he bases the instant Motion. Moreover, Mr. Zambrana included an exhibit (Electronic Case Filing system "Document 3") containing a La Ruche tax return and copies of many dozens of checks drawn on the La Ruche corporate bank account. Since the checks were grouped in 3's when he received them from La Ruche pursuant to a request as a stockholder, some of the checks are not relevant to this dispute, or are ambiguous.

---

[3] Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss the Complaint, or, in the Alternative, to Join Indispensable Parties, p. 8.

[4] Defendant's Reply Memorandum, p. 10.

[5] Opposition, p. 7.

[6] Motion to Dismiss the Complaint or, in the Alternative, Motion to Join Indispensable Parties.

4

But, there are La Ruche checks totaling over $92,000 that are clearly earmarked for CAI expenses. Fourteen checks drawn on the La Ruche account, aggregating more than $48,600, are payable to Yes and to Mahesh Naithani, the sellers of the Building. There are also others: a check to Charles R. Webb, CAI's accountant, in the amount of $9,480; a check for $6,000 payable to Barnard Locraft for a land survey; a check made out to Riggs Bank for $28,000. Not mentioned above are over a dozen checks payable to First Union Bank, which Mr. Zambrana believes may be related to the financing of the Building, and several $10,000 checks payable to CAI for rent under a putative lease.

The Joint Parties are blatantly mistaken when they argue that "their interests in this matter are the same . . . ."[7]  Nor are they correct in their assertions that Mr. Zambrana's Motion is "frivolous" and "tactically inspired."  The Motion is directed to what may well be serious improprieties committed Mr. Cauderlier, the man who appears to have conducted his businesses are if they were part of his fief.

The cases cited by the Joint Parties are no more helpful to them than their dearth of proof. Two cases are primarily relied upon in the Opposition, neither of which supports the Joint Parties' contentions.  In *Seifert v. Dumatic Industries, Inc.*,[8] the facts of the case immediately disqualify the case from being relevant here.  Aside from the fact that the case involved a stockholder derivative suit, in *Seifert* there were two 50% stockholders who each appointed two directors of the corporation. The Supreme Court of Pennsylvania said, "Notwithstanding the lack of precedent, it is clear that

---

[7]  Opposition, at 7.

[8]  197 A.2d 454 (Pa. 1964).

5

under the unique circumstances of this case there exists no possibility of a conflict of interest."[9]  On

the other hand, in the instant case, based upon the facts thus far adduced, the possibility of potential

conflicts of interest is almost self-evident.

The *Seifert* case is also distinguishable because the court found that the closely held

corporation, Dumatic Industries, Inc., is "nothing more than a conduit for the reception of patents

from Seifert on the one hand and working capital from Globe on the other.  As such, it is *merely an*

*appendage* to the separate businesses of these two stockholders[10] (emphasis added).  The court

concluded, several pages later:

> In consonance with the broad equitable powers possess by courts in
> stockholders' derivative actions, we reject the result which would
> issue in the instant case were we to assume that a corporate interest
> always accompanied the corporate form.  Instead, for purposes of
> representation by counsel, *we regard the principal lawsuits as simply*
> *between Seifert and Globe*" (emphasis added).[11]

The court completely ignored the entity that was the closely held corporation, thus obviating

the possibility of a conflict of interest.  *Seifert* is inapposite.

The Joint Parties' reliance upon *In re Banks*,[12] a case where the defendant attorneys warranted

reprimands, is equally puzzling.  To begin with, the complicated set of facts render the case

inapplicable to the situation that prevails here.  The case contains pertinent language, however, to

all cases where an attorney encounters a conflict of interests between his clients, even if

---

[9]  *Id.*, at 456.

[10]  *Id.*

[11]  *Id.*

[12]  584 P.2d 284 (Ore. 1978).

6

unanticipated at first.[13] "The ethical consideration implies that if a corporate officer is represented by a corporate attorney at a time when no conflict exists as we believe was the fact in the present case, and then a conflict arises between the officer and the corporation about the subject of the representation, the attorney is in an untenable position if he represents either one."[14]

Furthermore, the language cited by the Joint Parties in their Opposition, on pages 5-6, implies the exact opposite principle than it is being offered for. This, Mr. Zambrana contends, is because the Joint Parties left out the final sentence of the *Banks* court's train of thought. The point of the court's saying "there is no basis for the individual to believe that the attorney has or ever will have other than his individual interest at heart," is that the controlling stockholder has lulled himself into believing that he and the corporation are one and the same. That is why, earlier in the paragraph, the court says, "it seems to us that the balance should be struck the other way," in weighing the interests of the corporation and the desirability of avoiding conflict of interest.[15]

The critical language the Joint Parties ignored is: "It is our conclusion that the only ethical position for an attorney to adopt when substantially identical interests which he represented become divergent is to represent neither the individual nor the corporation."[16] How the Joint Parties could cite so much of that paragraph and stop short of the conclusion is as hard to comprehend as is Howrey's stubborn refusal to acknowledge that it never should have presumed to represent more

---

[13]  As he pointed out in his Motion, Mr. Zambrana contends that the potentiality for serious conflicts among the Howrey clients was obvious from the outset. *See* the Points and Authorities that supported the Motion, at pp. 10-12.

[14]  *Id.*, at 292.

[15]  *Id.*

[16]  *Id.*

7

than one of the Joint Parties in the first place. Moreover, Howrey did not elect to represent just one corporation and a controlling individual, it is representing *two* corporations, whose interests are patently divergent. Now that all three Joint Parties have been thrown into the same roiling pot, it is up to the Court to take Howrey to task for putting all four parties to this litigation in the position they find themselves.

Mr. Zambrana's Motion should be granted, and the Howrey firm and its attorneys should be disqualified and sanctioned.

Respectfully submitted,

KASS, MITEK & KASS, PLLC

Dated: May 19, 2006

By:_____
Jeffrey M. Hamberger (Bar No. 930362)
1050 17th Street, N.W., #1100
Washington, D.C. 20036
(202) 659-6500
Attorneys for Defendant/Counter-Plaintiff/
Third-Party Plaintiff

8

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Sergio Zambrana's Reply to Joint Parties'

Opposition to His Motion for Order Requiring Counsel to Withdraw was mailed, via first class mail,

postage prepaid, and emailed, this 19th day of May, 2006, to

> Robert L. Green, Jr., Esquire
> James B. Boles, Esquire
> HOWREY, LLP
> 1299 Pennsylvania Avenue, N.W.
> Washington, D.C. 20004

Jeffrey M. Hamberger

F:\WP_FILES\CLIENTS\04300.101\Reply to Opposition.wpd

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

CAUDERLIER & ASSOCIATES, INC.

Plaintiff

v.

SERGIO ZAMBRANA

Defendant

Civil Case No. 1:05CV01653
Judge Ellen Segal Huvelle
Deck Type: Contract
Date Stamp: August 17, 2005

### AFFIDAVIT OF DEFENDANT, SERGIO ZAMBRANA

I, Sergio Zambrana, defendant herein, do hereby affirm and swear as true, the following:

1. I am over the age of 18 and competent to testify to the matters contained herein.

2. On or about January 20, 2000, I paid the sum of $25,000 to LaRuche by personal check, which check was dated January 21, 2000.

3. The seller of the Building was Mr. Mahesh Natthani.

4. At all times, it was understood between Jean Claude Cauderlier ("J. Cauderlier") and me that the $25,000 mentioned in ¶2 above was to be earmarked for the purchase by CAI of the real property and building located at 1035, 1037 1039 31st Street, N.W., Washington, D.C. 20007 (the "Building").

5. Settlement on the purchase of the Building by CAI took place on or about January 21, 2000, at which settlement I was present.

6. J. Cauderlier, Mr. Natthani, and others were also present at the settlement.

7. Long before January, 2000, J. Cauderlier told me that he made me a part owner of LaRuche, Inc. ("LaRuche"), which corporation operated a restaurant called LaRuche in

Georgetown, D.C.; I had worked in the restaurant for many years, and I was the most highly valued employee during that entire time.

8.     J. Cauderlier gave me part ownership in LaRuche in recognition of my many years of excellent performance as an employee of LaRuche and as incentive to keep me in the employ of LaRuche.

9.     The $25,000 check I gave to LaRuche on or about January 20, 2000 was not payment for any ownership share in LaRuche and was instead, part of CAI's purchase price of the Building.

10.     I wrote the $25,000 check and made it payable to LaRuche at the behest of J. Cauderlier, who told me at the time that I would become a shareholder in CAI.

11.     The $25,000 check which I gave to LaRuche was, in fact, used by CAI a part of the down payment toward the purchase of the Building, to the best of my knowledge.

12.     I am a part owner of Cauderlier & Associates, Inc. ("CAI").

13.     J. Cauderlier stated in the presence of Mr. Natthani and others, at the settlement table, that I am an owner of CAI.

14.     J. Cauderlier stated in the presence of Mr. Natthani and others, before and after settlement, that I am an owner of CAI.

15.     Mr. Natthani has always recognized me as an owner of CAI.

16.     After CAI bought the Building, I received many telephone calls from Mr. Natthani regarding payments from CAI that were past due.

17.     Mr. Natthani addressed his inquiries about the overdue payments to me in my capacity as an owner of CAI.

2

18.    I believe that CAI's use of funds paid through LaRuche means that LaRuche and CAI did not always distinguish between which company owned which monies.

19.    It is my position that, as a result of the commingling of funds between LaRuche and CAI, LaRuche either owns CAI or owns all the assets of CAI, including the Building.

20.    Since I am a part owner in LaRuche, and since CAI is the alter ego of LaRuche, I am the owner of an additional share of CAI or the owner of an additional portion of the assets of CAI, including the Building, aside from the shares I own in CAI by virtue of having paid the aforementioned $25,000 to LaRuche.

21.    The $25,000 check I made payable to LaRuche the night before the settlement on the Property enabled LaRuche to pay Mahesh Natthani $25,000, as part of the purchase price that CAI was paying for the Building.

22.    LaRuche has made many payments directly to Mahesh Natthani, as payment on the note given by CAI to Mr. Nattani in connection with CAI's purchase of the Building.

23.    Upon information and belief, LaRuche has made many payments to First Union Bank, as payment on a note given by CAI to First Union in connection with CAI's purchase of the Building.

24.    To the best of my knowledge, the copies of checks drawn on the account of LaRuche, Inc., and made a part of Exhibit B are true and accurate.

3

The foregoing statements are true and correct to the best of my information, knowledge and belief.

_____
Sergio Zambrana

District of Columbia, ss:

I, _____, a Notary Public in and for the District of Columbia, do hereby state that on this _____ day of September, 2005, before me personally appeared Sergio Zambrana, who, being well known to me executed the within document as his act and deed.

GIVEN under my hand and official seal this _____ day of September, 2005.

_____
Notary Public

Kris Megna
Notary Public, District of Columbia
My Commission Expires 10-14-2009

F:\WP_FILES\CLIENTS\04300.101\Affidavit of Sergio Zambrana..wpd

4

# EXHIBIT G

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CAUDERLIER & ASSOCIATES, INC.,**
**Plaintiff,**

v.

**SERGIO ZAMBRANA,**
        **Defendant/Third-Party**
**Plaintiff,**

v.

**JEAN CLAUDE CAUDERLIER and**
**LA RUCHE, INC.,**
        **Third-Party Defendants.**

**Civil Action No. 05-1653 (ESH/JMF)**

### MEMORANDUM ORDER

    This case was referred to me for the resolution of all discovery disputes and the defendant and third party plaintiff Sergio Zambrana's ("Zambrana") <u>Motion For Order Requiring Counsel to Withdraw</u> [#27].  Currently pending before me for resolution are the following four motions: (1) Zambrana's <u>Motion For Order Requiring Counsel to Withdraw</u>; (2) <u>Motion for Protective Order of Defendant/Third-Party Plaintiff, Sergio Zambrana</u> [#26]; (3) <u>Zambrana's Motion for Stay of Proceedings, Motion to Extend Discovery Deadline, and Motion for Sanctions</u> [#34]; and (4) Zambrana's <u>Amended Motion for Stay of Proceedings, Motion to Extend Discovery Deadline, and Motion for Sanctions</u> [#35].

    In his <u>Motion For Order Requiring Counsel to Withdraw</u>, Zambrana seeks a order compelling counsel for the opposing parties, Cauderlier & Associates, Inc., Jean Claude Cauderlier, and La Ruche, Inc., to withdraw.  While the parties have addressed aspects of this

issue in their briefs, neither has considered the question whether Zambrana, who is neither a

present nor former client of opposing counsel, has standing to complain about the conflict of

interest that he alleges mandates opposing counsel's withdrawal.  This question of standing is a

significant one because it goes the Court's jurisdiction to consider the matter.  See Ivy Johnson,

Standing to Raise a Conflict of Interest, 23 N.Ill. U. L. Rev. 1 (2002); Douglas R. Richmond, The

Rude Question of Standing in Attorney Disaqualification Disputes, 25 Am. J. Trial Advoc. 17

(2001).  I, therefore, **ORDER** counsel to file supplemental briefs addressed to that issue

according to the following schedule:

| | |
|---|---|
| August 1, 2006 | Defendant/third-party plaintiff's supplemental brief due |
| August 15, 2006 | Plaintiff and third-party defendants' supplemental brief due. |

In the meanwhile, as requested in the remaining three motions, all discovery is **STAYED**

pending resolution of Zambrana's Motion for Order Requiring Counsel to Withdraw and, with

the permission of Judge Huvelle, the status conference set for August 8, 2006 is **CANCELLED**.

With the exception of Zambrana's request that discovery be stayed, all other requests

made in the Motion for Protective Order of Defendant/Third-Party Plaintiff, Sergio Zambrana,

Zambrana's Motion for Stay of Proceedings, Motion to Extend Discovery Deadline, and Motion

for Sanctions, and the Amended Motion for Stay of Proceedings, Motion to Extend Discovery

Deadline, and Motion for Sanctions are **DENIED**.

**SO ORDERED.**


Dated:                                    _____
                                          JOHN M. FACCIOLA
                                          UNITED STATES MAGISTRATE JUDGE


2