# EXHIBIT H

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAUDERLIER & ASSOCIATES, INC.
      **Plaintiff**

    v.

SERGIO ZAMBRANA
      **Defendant/Third-Party**
      **Plaintiff**

    v.

JEAN CLAUDE CAUDERLIER and
LA RUCHE, INC.
      **Third-Party Defendants**

Civil Action No. 05-1653
(ESH/JMF)

## SERGIO ZAMBRANA'S SUPPLEMENTAL BRIEF REGARDING HIS
## STANDING TO RAISE CONFLICT OF INTEREST OF OPPOSING COUNSEL

Defendant and third-party plaintiff, Sergio Zambrana ("Mr. Zambrana"), by and through

counsel, respectfully submits this Supplemental Brief in accordance with the Memorandum Order

of Magistrate Judge John M. Facciola, dated July 12, 2006, in order to provide the Court with

substantiation of the fact that Mr. Zambrana "has standing to complain about the conflict of interest

that he alleges mandates opposing counsel's withdrawal."[1]

---

[1] Mr. Zambrana's Motion for Order Requiring Counsel to Withdraw [#27] requested that this Court: (1) enter an order directing that Robert L. Green, Jr., Esquire, James B. Boles, Esquire, and HOWREY, LLP withdraw their respective appearances from this case; (2) continue this matter until defendant and third-party defendants can each retain new counsel; (3) award Mr. Zambrana his attorneys' fees and costs associated herewith, and (4) impose sanctions upon Robert L. Green, Jr., Esquire, James B. Boles, Esquire, and HOWREY, LLP , as the Court deems meet and proper.

Argument

A.     Constitutional Standing

Mr. Zambrana recognizes that standing to raise issues before a court must be demonstrated before a party is entitled to proceed. The minimum Constitutional standard has been clearly expressed. In *Lujan v. Defenders of Wildlife* 504 U.S. 555, 560-561,112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the Supreme Court said: "Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized [citations omitted] and (b) "actual or imminent, not 'conjectural' or 'hypothetical'" [citations omitted]. Second, there must be a causal connection between the injury and the conduct complained of-- the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court" [citations omitted]. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision' [citations omitted]. *Lujan*, 504 U.S. 560-561.

It is Mr. Zambrana's intention to show in this Supplemental Brief that, because of the representation of all three Joint Parties[2] by HOWREY[3], (1) he has suffered an "injury in fact," (2) the injury is "actual or imminent," and (3) it is "likely" that the injury will be "redressed by a favorable decision." For those reasons, among others, Mr. Zambrana contends he has standing to bring his Motion for Order Requiring Counsel to Withdraw ("Motion"), previously filed herein.

---

[2] Collectively, Cauderlier & Associates, Inc. ("CAI"), LaRuche, Inc. ("La Ruche"), and Jean Claude Cauderlier ("Mr. Cauderlier").

[3] Robert L. Green, Jr., Esquire, James B. Boles, Esquire, and the law firm of HOWREY, LLP (sometimes hereinafter collectively referred to as "HOWREY")

B.     Non-Client Standing to Seek Disqualification of Counsel

Mr. Zambrana acknowledges that courts are generally reluctant to allow a party to move to disqualify counsel in a particular case, on the ground of conflict of interest, if the party is not a current or former client of the attorney sought to be removed. Mr. Zambrana has reviewed the two sources cited by Magistrate Judge Facciola in his Order of July 12, 2006, Ivy Johnson, *Standing to Raise a Conflict of Interest*, 23 N.Ill. U.L. Rev. 1 (2002) and Douglas R. Richmond, *The Rude Question of Standing in Attorney Disqualification Disputes*, 25 Am. J. Trial Advoc. 17 (2001). Mr. Zambrana notes that a good portion of the cases cited therein are trial court decisions having no precedential value in this court. There were, however, several cases from higher courts upon which Mr. Zambrana will focus, although not necessarily precedential, either. Even though these cases would seem to follow the general rule, the cases make clear that, in circumstances such as those prevailing in this case, *exceptions* must be made in the interest of the fairness and the proper administration of justice, by which exceptions standing can be established. In the interest of efficiency, Mr. Zambrana will cite but a few of the lower court cases, despite the fact that several of the cases cited by the Johnson and Richmond articles stand for the foregoing proposition.

In *In re Yarn Processing Patent Validity Litigation v. Leesona Corporation,* 530 F.2d 83 (1976), the Fifth Circuit of the United States Court of Appeals held that a particular defendant lacked standing to seek disqualification of one plaintiff's attorney on the basis of the attorney's conflict of interest, when that defendant relied upon public policy as justification for the motion. In addition, in *Yarn*, the defendant [Lex Tex] had no specific individual interest that might be jeopardized by the alleged conflict of interest of the plaintiff's attorney. "In this motion, Lex Tex *did not assert any*

3

*interest of its own* as to which it could assert a conflict of interest. Instead, Lex Tex maintained that

the court should have disqualified Irons on its own motion." [Emphasis added.] *Id.*, at 87.

Yet, even though the *Yarn* case is considered the seminal case for the proposition that a

nonclient lacks the requisite standing to raise the conflict of interest of counsel, the court in *Yarn* did

acknowledge that decisions of other courts were more flexible.

> The cases relied upon by Lex Tex present what are, in our view, at most,
> *narrow exceptions* to this general rule. In *Emle Industries, Inc. v.
> Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973), the motion to disqualify was
> made by the corporation which the former client controlled. In *Porter v.
> Huber*, 68 F.Supp.132 (W.D.Wash.1946), the inquiry whether counsel
> had a conflict of interest apparently originated with the court, but the
> *unethical* change of sides was *manifest and glaring*. Such was also the
> case in *Empire Linotype School, Inc. v. United States*, 143 F.Supp. 627,
> 631 (S.D.N.Y.1956), where the court in dictum said it would have had to
> take action to disqualify counsel even if the adverse party had not moved.
> And in *Estates Theatres, Inc. v. Columbia Pictures, Inc.*, 345 F.Supp. 93
> (S.D.N.Y.1972), the former client appeared by counsel to argue for the
> disqualification even though he was not the formal moving party. Even
> though former clients did not formally move for the disqualification, the
> *adverse nature of their interests*, relative to the new clients, of their
> attorneys were *open and obvious and confronted the court with a plain
> duty to act*. Such is not the case here. [Emphasis added.] *Id.*, at 89.

Similarly, the Supreme Court of Nebraska considered the question of whether the plaintiff

"had standing to claim a conflict of interest, which did not directly implicate her interests, against

an attorney of whom she was not a former client," in *Hawks v. Lewis*, 586 N.W.2d 430, 255 Neb.

447 (1998). The *Hawks* court first identified the purpose of a "standing" inquiry, stating that it "is

to determine whether one has a legally protectable interest or right in the controversy that would

benefit by the relief [sought] to be granted." *Id.*, at 452. The court went on to say, "[a]s an aspect

of jurisdiction and justiciability, 'standing' requires that a litigant have such a *personal stake* in the

outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial power on the litigant's behalf." [Emphasis added.] *Id.*, at 452.

The court framed the question before it as, "Who has the right to ask the court for disqualification when it seems apparent from the rules stated above that they are intended to protect the confidences and interests, not of a third party, but of the former client?" *Id.*, at 453. It was a question of first impression in Nebraska. *Id.*, at 454.

The Supreme Court of Nebraska ruled against Ms. Hawks, the plaintiff, because she had based her argument "on an ethical rule which is intended to protect former clients," *Id.*, at 454, rather than upon an individual right or interest that was being threatened by the alleged conflict of interest of defendants' counsel.

Nevertheless, the Nebraska Supreme Court did cite some notable exceptions to the general rule: "For instance, it has been held that disqualification may be sought by a party who is not a former client, but is able to show [*455] that the alleged conflict *adversely affected* the interest of the party seeking disqualification." [Citations omitted.] [Emphasis added.] *Id.*, at 454-455. And, "[i]t has been determined in other jurisdictions that a nonclient litigant may have standing to enforce a conflict of interest where 'the challenged conduct *prejudices the fairness of the proceedings, such that it adversely affects the fair and efficient administration of justice.*'" [Citations omitted.] [Emphasis added.] *Id.*, at 454. Mr. Zambrana asserts that the situation in which he finds himself as a result of HOWREY'S conflicts of interest brings him within the "exceptions" contemplated in these and similar decisions; Mr. Zambrana should be found to have standing to seek HOWREY's removal.

Two other cases should be referenced, although they are not controlling here. The first is a case from the United States District Court for the District of Columbia, *Alexander v. FBI*, 186 F.R.D. 21 (1998), involving a very complicated set of facts, including the intervention by the President of the United States to preserve protections afforded by his attorney-client privilege. Mr. Zambrana is citing the case because it is a decision of this Court, however inapposite. Without going into the details of the case, Mr. Zambrana would point out that District Judge Lamberth noted that, "even if plaintiffs had standing to make this assertion as a result of the alleged conflict between counsel and the represented parties, plaintiffs have provided absolutely no evidence that such a conflict exists." *Id.*, at 32. Judge Lamberth also opined that, "Plaintiffs have failed to present this court with any reason to justify excluding Williams & Connolly and Skadden, Arps from representing the President in this matter." *Id.*

The other case worth noting is cited by Mr. Zambrana due to its seeming similarity of facts. In *Brown & Williamson Tobacco Corp. v. Daniel International Corp.*, 563 F.2d 671 (1977), the United States Court of Appeals for the Fifth Circuit considered a case involving two companies that "are closely affiliated, sharing the same corporate officers and substantially the same directors and stockholders." *Id.*, at 673. This Fifth Circuit case was decided some fifteen months after that court rendered its decision *In re Yarn, supra*.

*Brown & Williamson* is easily distinguishable, though, from the facts that prevail in our case. In *Brown*, one of the two corporations in question (Oman Construction Company) contracted to fabricate part of a warehouse for Daniel International, which was the prime contractor selected by Brown & Williamson Tobacco Corporation to build a cigarette manufacturing facility. Oman, in turn, subcontracted its entire operations to a company with which it was closely affiliated (Oak

Contractors, Inc.).  When Brown & Williamson sued Daniel for defective construction, Daniel impleaded Oman.  Oman filed a forth-party complaint against Oak and Pascoe Steel Corporation, the supplier of structured steel to Oak.  Oak then brought a fifth-party action against Pascoe for furnishing defective materials.  Pascoe objected to Oman and Oak's retaining the same counsel and sought to disqualify counsel from representing either party, and to have itself dismissed from the proceeding.

The *Brown & Williamson* court found that "Oman and Oak have substantial identity of interests . . .[and] they have agreed to contend that the fault rests solely with Pascoe.  In fact, the only reason Oman has sued Oak is to make possible the impleader of Pascoe as a fifth-party defendant.  *Id.*, at 673."  The court then said, "While we agree with Pascoe's denunciation of joint legal representation for adverse parties, we find *no conflict of interest* in the present case and thus no reason to disqualify the challenged attorneys." *Id.*, at. 673.

In contrast to the facts in *Brown & Williamson*, Mr. Zambrana contends that he has demonstrated, in his Motion for Order Requiring Counsel to Withdraw and in his Reply to the Joint Parties' Opposition to that motion, that there are obvious conflicts of interest among the Joint Parties, and clear conflicts of interest that arise from HOWREY'S joint legal representation.  Mr. Zambrana will further show below why he should be deemed to have standing in this case.

C.     Mr. Zambrana's is Personally Damaged by HOWREY'S Joint Representation

The crux of Mr. Zambrana's motion to disqualify HOWREY as joint counsel for CAI, La Ruche and Mr. Cauderlier is Mr. Zambrana's contention that his *personal interests* are adversely affected by HOWREY'S representation of all three Joint Parties.  First, there is no dispute that Mr. Zambrana gave a $25,000 check to Mr. Cauderlier the day before CAI went to settlement on the

Building. While there is a dispute in this case about the purpose and use of the proceeds of that check, Mr. Zambrana's interest is not theoretical – he has real money at risk. Second, Mr. Zambrana has colorable, if not proven,[4] claims that he (1) has an interest in La Ruche greater than the 10% interest conceded by the Joint Parties, (2) has an interest in CAI, (3) has an interest in the Building, and (4) is owed monies that should have been paid to him as a result of said ownership.

Among other damages that Mr. Zambrana appears to have sustained include (5) the improper transfer of monies from La Ruche (a company in which Mr. Cauderlier admits Mr. Zambrana owns shares) to CAI (a company in which that Mr. Cauderlier claims 100% ownership), (6) a usurpation of La Ruche's right to purchase the Building in which it is located, (7) the overpayment of rent by La Ruche to CAI, and (8) an appreciation in the value of the Building of which Mr. Zambrana is being deprived. Third, Mr. Zambrana has exhibited an entitlement to an accounting from the Joint Parties to clarify whether monies have been commingled among them, and, if so, whether such commingling has acted to deprive Mr. Zambrana of property to which he is entitled. Finally, Mr. Zambrana contends that the Joint Parties have been unjustly enriched at his expense.

These personal interests, Mr. Zambrana asserts, are "concrete and particularized, and actual or imminent, rather than conjectural or hypothetical." Mr. Zambrana has standing here to raise the disqualification issue.

D.     How HOWREY'S Representation of the Joint Parties Affects Mr. Zambrana's Interests

In view of the fact that this Court has been presented with a myriad of pleadings setting forth the respective parties's claims against one another, Mr. Zambrana will dispense with a new recitation

_____

[4] The evidence presented in this case by Mr. Zambrana, including his sworn affidavit, and copies of checks and tax returns, have not been refuted in any meaningful way by the Joint Parties.

of same. Mr. Zambrana does, however, feel compelled to highlight those claims that are, in his view, adversely affected by HOWREY'S representation of CAI, La Ruche and Mr. Cauderlier. To begin with, the Complaint that initiated these proceedings was couched by HOWREY in terms of a corporation, CAI, bringing a declaratory judgment action against one of its shareholder (Zambrana) in favor of another shareholder (Mr. Cauderlier). As mentioned in Mr. Zambrana's points and authorities in support of his disqualification motion, the law is clear that an attorney who represents a corporation may not take sides with one shareholder over the other.[5] Making matters worse, Mr. Cauderlier is also a client of HOWREY.

Even though it is CAI's position that Mr. Zambrana does not own any of its stock, Mr. Zambrana should be considered to be a shareholder, just as is the "100%" shareholder, Mr. Cauderlier, for this analysis of the parties' dispute over where the corporation's ownership lies. If CAI had acted properly in its pleadings, it would have *at the least* named all its putative shareholders as co-defendants.[6] Had CAI joined Mr. Cauderlier as a defendant with Mr. Zambrana, it would be readily clear that HOWREY would have a blatant conflict of interest, representing a plaintiff (CAI) against a defendant (Mr. Cauderlier) who is also a client of the firm, in the same litigation.

Mr. Zambrana is prejudiced to an even greater degree by the fact that HOWREY represents both CAI and La Ruche. Inasmuch as there is unrefuted evidence that La Ruche (a) has paid a

---

[5] *Griva v. Davison,* 637 A.2d 830 (D.C.App. 1993), cited approvingly D.C. Bar Legal Ethics Comm.Op. 216 (1991), 119 Daily Wash.L.Rptr. 97 at 1063 (May 20, 1991), in which it was stated, "Throughout the representation [of the corporation], the lawyer must continue to recognize that the interest of the corporation must be paramount *and that he [or she] must take care to remain neutral with respect to the disputes between the present shareholders* (emphasis in original)."

[6] Elsewhere in the pleadings filed in this case, Mr. Zambrana has questioned whether CAI even has standing to bring such an action, and has asserted that Mr. Cauderlier is the real party in interest. For the purposes of this discussion, Mr. Zambrana will proceed as if CAI's complaint against its shareholder(s) would be a valid *prima facie* claim.

9

substantial sum of money to third parties on behalf of CAI, (b) has a claim against CAI that La Ruche owns stock in CAI and the Building of which CAI claims ownership,(c) has a claim that it is paying over-market rent to its detriment, and (d) has a right to an accounting by CAI and Mr. Cauderlier, it is clear that Mr. Zambrana, as an undisputed La Ruche stockholder, is personally harmed by La Ruche's assertions that La Ruche has no ownership of CAI stock or the Building, and is not owed monies by CAI. La Ruche's averments come directly from the keyboards at HOWREY.

Moreover, as the court in *Brown v. Williamson, supra,* noted, "there can be no unshared confidences as between [the two corporations], given the identity of their shareholders, directors and officers." 563 F.2d 671, 674 (5th Cir.1977). Thus, there is little doubt that Mr. Zambrana's interests have been impaired and prejudiced in a way that they would not have been had the three Joint Parties, or at least La Ruche, been represented by separate counsel instead of HOWREY. Mr. Zambrana contends that he has shown "a causal connection between the injury and the conduct complained of, and that the injury is fairly ... traceable to the challenged action of HOWREY, and not the result of the independent action of some third party not before the court." HOWREY must be removed as counsel for any and all of the Joint Parties in this case, and Mr. Zambrana has established the requisite standing to move for such relief.

E.    Misconduct by HOWREY

Mr. Zambrana will save the Court, and his opponents, a recitation of the manners by which he contends that the conduct of Messrs. Green and Boles, and Howrey, LLP, has violated the American Bar Association's Model Rules of Professional Conduct and, in particular Rule 1.7 of the

D.C. Rules of Professional Conduct[7].  Mr. Zambrana refers the Court to his Motion for Order Requiring Counsel to Withdraw, among other pleadings, where he has set forth his view of the impropriety of HOWREY'S actions.  He would simply say, as he did in his Reply to the Joint Parties' Opposition to said Motion, "the possibility of potential conflicts of interest [here] is almost self-evident."

The misconduct of counsel is indeed pertinent, since courts have found that a nonclient party has standing to move to remove conflicted attorneys where "the ethical breach so infects the litigation that it impacts the moving party's interest in a just and lawful determination of its claims."[8] If the individual Joint Parties were represented by separate counsel, Mr. Zambrana would have a fair opportunity to prove the claims he has raised in his Counterclaim and Third-Party Complaint.  Under the present circumstances, where the Joint Parties have ostensibly commingled monies and taken other improper liberties with their respective interests, Mr. Zambrana is being required to overcome the possible collusion, and certain conflicts of interest, of Mr. Cauderlier and HOWREY.

Mr. Zambrana suggests that the standards for piercing the corporate veil, cited by the United States Bankruptcy Court in *In re 1438 Meridian Place*, 15 B.R. 89 (1981), are a good measure against which to judge the activities undertaken by the Joint Parties here:

---

[7] The *Griva* case explains that Rule 1.7 of the D.C. Rules of Professional Conduct "substantially differs" from the American Bar Association's Model Rule 1.7, as the D.C. Rule includes a distinction for "cases in which representation is absolutely forbidden." 637 A.2d 830, at 842-843.

[8] "Generally, only the former or current client will have such a stake in a conflict of interest dispute. However, in a case where the ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims, she may have the constitutional standing needed to bring a motion to disqualify based on a third-party conflict of interest or other ethical violation." [Citation and internal citations omitted.] Decaview Distribution Co. v. Decaview Asia Corp., No. C-99- 02555, 2000 WL 1175583, at *9 (N.D. Cal. Aug. 14, 2000).

> Other factors that are emphasized in the application of the [piercing corporate veil] doctrine are failure to observe corporate formalities, non-payment of dividends, . . ., siphoning of funds of the corporation by the dominant stockholder, nonfunctioning of other officers and directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. The conclusion to disregard the corporate entity may not, however, rest on a single factor but must involve a consideration of the aforementioned enumerated factors; in addition, the particular situation must generally present an element of injustice or fundamental unfairness. Undercapitalization, disregard of corporate formalities and the like coupled with an element of injustice, fraud or fundamental unfairness has been regarded fairly uniformly to constitute a basis for an imposition of individual liability under the doctrine. (footnotes omitted)." *Id.*, at 96, citing 1 Fletcher, Cyclopedia of the Law of Private Corporations, Section 41.3 at 43 (Cum.Supp.1981).

The fact that the HOWREY attorneys represented the Joint Parties during these type of activities, if not facilitated them, leaves little doubt that HOWREY'S conflicts of interest have the potential of causing irreparable harm to Mr. Zambrana. It would be "fundamentally unfair" to require Mr. Zambrana to continue to encounter such biased and conflicted opposing counsel for the remainder of this case, and Mr. Zambrana has established that he has standing to object on the basis of HOWREY'S misconduct, in addition to the other theories set forth hereinabove.

F.    No Strategic Advantages are Being Sought by Mr. Zambrana

Mr. Zambrana understands that courts considering motions by nonclients to disqualify counsel need to be convinced that the motion is being brought for proper purposes, as opposed to purposes such as interposing a delay, or causing an increase in litigation costs to the other parties. Mr. Zambrana will leave for his earlier pleading a detailed description of the history of his attempting to have HOWREY obtain separate counsel for La Ruche, and his repeated admonitions

to HOWREY that he was suffering real injuries as a result of HOWREY'S manifest and glaring conflicts of interests.

Mr. Zambrana merely contends that his motives have been pure, and his actions have been timely, in bringing the question to this Court of whether opposing counsel should be disqualified in this case.[9] Moreover, the Joint Parties have not put forth any facts that might lead a reasonable person to conclude that Mr. Zambrana filed the motion for less than honorable reasons.

Conclusion

Mr. Zambrana has demonstrated, by "clear and convincing evidence," that he has standing to move for HOWREY'S removal as counsel for the Joint Parties, as a matter of equity and fairness. Moreover, Mr. Zambrana has shown that it is "likely" that [his] injury will be "redressed by a favorable decision" of this Court. Mr. Zambrana's Motion for Order Requiring Counsel to Withdraw is properly within the purview of this Court, and should be granted.

WHEREFORE, defendant/counter-plaintiff/third-party plaintiff, Sergio Zambrana, prays (1) that the Court enter an order directing that Robert L. Green, Jr., Esquire, James B. Boles, Esquire, and HOWREY, LLP withdraw their respective appearances from this case; (2) the Court continue this matter until defendant and third-party defendants can each retain new counsel; (3) the Court award Mr. Zambrana his attorneys' fees and costs associated herewith, and (4) impose sanctions

---

[9] Despite protestations to the contrary raised by the Joint Parties in their Opposition to Mr. Zambrana's motion to disqualify, Mr. Zambrana acted reasonably in not formally filing his disqualification motion until after the parties had exhausted the Court's attempts to mediate the underlying dispute. Mr. Zambrana recognized that, as a practical matter, it would be Mr. Cauderlier who would be deciding whether to settle the case with Mr. Zambrana, and that Mr. Cauderlier would be speaking for the two corporations, as well. This reality does not alter the fact that, if this case proceeds to trial, as it appears it will, Mr. Zambrana is unduly prejudiced by HOWREY'S joint representation. There was no real need for Mr. Zambrana to interrupt the flow of the case, during its mediation phase, by filing the motion sooner; in fact, it appeared to Mr. Zambrana that it might be counterproductive.

upon Robert L. Green, Jr., Esquire, James B. Boles, Esquire, and HOWREY, LLP , as the Court deems meet and proper.

Respectfully submitted,

KASS, MITEK & KASS, PLLC

Dated: August 1, 2006                    By: _____
                                         Jeffrey M. Hamberger (Bar No. 930362)
                                         1050 17th Street, N.W., #1100
                                         Washington, D.C. 20036
                                         (202) 659-6500
                                         Attorneys for Sergio Zambrana
                                         jhamberger@kmklawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing "Sergio Zambrana's Supplemental Brief Regarding His Standing to Raise Conflict of Interest of Opposing Counsel" was filed electronically through the Court's ECF system, and were mailed, via first class mail, postage prepaid, and emailed, this __1__st day of August, 2006, to:

Robert L. Green, Jr., Esquire
James B. Boles, Esquire
HOWREY, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
greenr@howrey.com
bolesj@howrey.com

_____
Jeffrey M. Hamberger

F:\WP_FILES\CLIENTS\04300.101\Memorandum re Standing to Raise Conflict of Interest.wpd

# EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CAUDERLIER & ASSOCIATES, INC., | ) | |
| **Plaintiff,** | ) | |
| v. | ) | Civil Action No. 05-1653 (ESH/JMF) |
| SERGIO ZAMBRANA, | ) | |
| **Defendant/Third-Party Plaintiff** | ) | |
| v. | ) | |
| JEAN CLAUDE CAUDERLIER | ) | |
| **And** | ) | |
| LA RUCHE, INC. | ) | |
| **Third-Party Defendants** | ) | |

## SUPPLEMENTAL MEMORANDUM OF CAUDERLIER & ASSOCIATES, INC., LA RUCHE, INC., AND JEAN CLAUDE CAUDERLIER IN OPPOSITION TO SERGIO ZAMBRANA'S MOTION FOR ORDER REQUIRING COUNSEL TO WITHDRAW

Cauderlier & Associates, Inc. ("CAI"), La Ruche, Inc. ("La Ruche"), and Jean Claude Cauderlier ("Mr. Cauderlier") (collectively referred to as the "Joint Parties") respectfully submit this Supplemental Memorandum pursuant to the Court's July 12, 2006 Order.

## PRELIMINARY STATEMENT

Mr. Zambrana is not, and has never been a client of Howrey LLP. As a result, he lacks standing to seek Howrey's disqualification. Despite not being a current or former client of Howrey, Mr. Zambrana, nevertheless, seeks to disqualify Howrey because it represents Mr. Cauderlier and two corporations he controls as their majority shareholder. Mr. Zambrana

seeks disqualification, not because Mr. Zambrana's client confidences will be compromised, but because Howrey advocates positions with which Mr. Zambrana and his counsel disagree.

Unable to identify any client confidences affected by Howrey's representation of the Joint Parties, Mr. Zambrana argues that he has protectable "interests" implicated by Howrey's representation of the Joint Parties. An analysis of these purported interests reveals that none confer standing upon Mr. Zambrana. Each is merely a factual issue where the Joint Parties and Mr. Zambrana disagree. To the extent Mr. Zambrana claims injury, the injury arises from the underlying facts, not from Howrey's representation of the Joint Parties.

Mr. Cauderlier is the controlling majority owner, sole shareholder, and only corporate officer of CAI. Mr. Cauderlier is the controlling majority owner and only corporate officer of La Ruche. Mr. Cauderlier is solely responsible for the operations of La Ruche and CAI. Mr. Zambrana does not and cannot contend otherwise.

Mr. Cauderlier is entitled to choose his own counsel and to direct the prosecution of this case. Mr. Zambrana contends that separate counsel is required for each of the Joint Parties. Mr. Zambrana imagines that, if separately represented, CAI and La Ruche would abandon positions previously asserted and amend their pleadings to sue Mr. Cauderlier. Mr. Cauderlier is not obligated to sue himself. Mr. Zambrana has not identified or established law to the contrary.

Mr. Zambrana cites neither law nor fact that supports his position. Mr. Zambrana's Motion and Supplemental Brief are frivolous. They are neither warranted by existing law nor advance nonfrivolous arguments for the extension, modification, or reversal of existing law. As set forth in both the prior Opposition and below, Mr. Zambrana's Motion for Order Requiring Counsel to Withdraw should be denied.

**DISCUSSION**

As noted in the Joint Parties' Opposition, this Court has held that "the mere claim of a conflict is not enough; there must be proof" and has expressed the concern that "some motions for disqualification are motivated not by a fine sense of ethics and a well-developed desire to

2

remove from litigation practitioners whose ethics are less acute, but, bluntly, by a desire to achieve a tactical advantage."[1]  Disqualification motions are therefore viewed with "strong disfavor" and "cautious scrutiny."[2]

Claimants or movants must demonstrate "constitutional and prudential standing in order to seek federal judicial review."[3]  "Standing must be proven with respect to *each* claim."[4]  A claimant must show the following to meet the constitutional requirement for standing:

> (1) he has suffered an injury which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the alleged injury and conduct that is fairly traceable to the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[5]

A claimant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."[6]  Movants for disqualification are not excepted from this constitutional requirement – they too must establish standing to pursue their disqualification claims.[7]

---

[1] *Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. 22 at 27, 41 (D.D.C. 1984); *see also Riggs Nat'l Bank v. Calumet-gussin,* No.91-1583J, 1992 U.S. Dist. LEXIS 16475 at *11 (D.D.C. Oct. 30, 1992) (noting a concern that disqualification motions may be filed for "vexatious purposes").

[2] *Klayman & Gurley, P.C. v. Scott,* No. 88-0373(RCL), 1989 U.S. Dist. LEXIS 13638 at *3 (D.D.C. Nov. 15, 1989); *Laker Airways,* 103 F.R.D. at 28.

[3] *E.g., Communities for a Great Northwest, Ltd. v. Clinton,* 112 F. Supp. 2d 29, 32-33 (D.D.C. 2000) (citing *Mountain States Legal Foundation v. Glickman,* 92 F.3d 1228, 1232 (D.C. Cir. 1996)); *Pigford v. Veneman,* 355 F. Supp. 2d 148, 156-57 (D.D.C. 2005).

[4] *Communities,* 112 F. Supp. 2d at 33 (emphasis added) (citing *Warth v. Seldin,* 422 U.S. 490, 500 (1975)).

[5] *Natural Law Party v. FEC,* 111 F. Supp. 2d 33, 41 (D.D.C. 2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

[6] *Johnson v. Holway,* No. 03-2513 (ESH), 2005 U.S. Dist. LEXIS 34787 at *83 (D.D.C. Dec. 6, 2005) (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 474 (1982)).

[7] *E.g., Pigford,* 355 F. Supp. 2d at 156-57 ("Since the motion to disqualify class counsel effectively sets forth a new claim, movants must demonstrate separate standing – personal and individual injury to them as a result of class counsel's conduct – in order to pursue it.")

Mr. Zambrana does not meet the constitutional requirements for standing. First, Mr. Zambrana has not demonstrated an actual "concrete individual injury" arising from Howrey's representation of the Joint Parties.[8] Black's Law Dictionary (at 785 (6th ed. 1990)) defines an "injury" as "any wrong or damage done to another, either in his person, rights, reputation, or property." Mr. Zambrana cites a list of "interests" which he claims are "concrete and particularized, and actual or imminent, rather than conjectural or hypothetical." Supp. Brf. at 8. However, a $25,000 check, an alleged ownership interest in La Ruche, and litigating against parties with adverse positions in court are not injuries arising from Howrey's representation of its clients in this case. *Id.*; Zambrana Points and Authorities in Support of Motion at 5. These "interests" are not the injuries required for standing.

Nor has Mr. Zambrana suffered a particularized and concrete injury due to the Joint Parties' litigation decisions. Mr. Zambrana takes issue with the terms and relief requested in CAI's declaratory judgment complaint. Supp. Brf. at 9-10. However, litigation typically results from a plaintiff taking positions adverse to a defendant. CAI's failure to tailor its lawsuit to suit Mr. Zambrana's needs is not a particularized injury to Mr. Zambrana sufficient to confer standing. Mr. Zambrana has not suffered a particularized and concrete injury because La Ruche and Mr. Cauderlier – parties whom Mr. Zambrana sued and thereby brought into this litigation – have taken positions which are inconsistent with Mr. Zambrana's view of the facts.[9] As noted in

---

[8] *Pigford,* 355 F. Supp. 2d. at 156.

[9] It is important to note that the interest protected in D.C. Rule of Professional Conduct 1.7(b) is the confidence of a client that can be used to that client's detriment by another client being represented by the same attorney: "The underlying premise is that disclosure and consent are required before assuming a representation if there is any reason to doubt the lawyer's ability to provide wholehearted and zealous representation of a client or if a client might reasonably consider the representation of its interests to be adversely affected by the lawyer's assumption of the other representation in question." *Id.* at Comment 7. "The fact that two clients are business competitors, standing alone, is usually not a bar to simultaneous representation." *Id.* at Comment 10. As for Rule 1.7(a), "[t]he absolute prohibition of paragraph (a) applies only to situations in which a lawyer would be called upon to espouse adverse positions for different clients in the same matter." *Id.* at Comment 4. Further, "[i]f no actual conflict of positions exists with respect to a matter, the absolute prohibition of paragraph (a) does not come into play." *Id.* at Comment 6. These Comments do not suggest that a third-party's interests are to be protected under the Rules.

4

*Colyer v. Smith,* 50 F. Supp. 2d 966, 973 (C.D. Cal. 1999):

> [T]o the extent [movant] argues that he has standing to complain of a breach ... because any such breach will increase his chances of losing this lawsuit, his abstract interest in winning or losing this litigation is not legally cognizable. All plaintiffs have a stake in winning the cases they file, but this tactical "interest" cannot independently satisfy Article III.

Second, Mr. Zambrana's bid for standing fails because the few "interests" that he has identified that ***could*** be considered injuries (*e.g.,* his allegations of unjust enrichment, improper transfers, and opportunity usurpations, Supp. Brf. at 8) are not attributable to the actions of counsel.[10] Neither Howrey nor its attorneys stand accused of being unjustly enriched, engaging in improper transfers, usurping any corporate opportunities, or facilitating same. There is no causal link between Mr. Zambrana's alleged injuries and Howrey's representation of the Joint Parties.

Third, Mr. Zambrana lacks standing because his "injuries" are unlikely to be redressed through disqualification. If Howrey were disqualified, Mr. Cauderlier – uncontested majority and controlling shareholder of CAI and La Ruche – would still have the right to engage and instruct his new counsel. If the hypothetical new counsel adopted positions previously asserted, the new counsel would be in precisely the same place Howrey now finds itself – facing a disqualification motion because it did not agree with Mr. Zambrana's or his counsel's view of the facts. It is unlikely that Mr. Cauderlier will instruct or allow any new counsel to sue himself. Frankly, it is more likely that granting Mr. Zambrana's disqualification motion and requiring the involvement of multiple firms would double or treble the Joint Parties' legal costs without any change in position by Mr. Cauderlier, CAI, and La Ruche. However, litigation is not an "injury" that should be redressed by grant of Mr. Zambrana's disqualification motion.[11]

---

[10] *Pigford,* 355 F. Supp. 2d at 156-57.

[11] *Colyer,* 50 F. Supp. 2d at 973.

Mr. Zambrana's argument that he "would have a fair opportunity to prove the claims he has raised in his Counterclaim and Third-Party Complaint" if his motion were granted is wholly illusory. Supp. Brf. at 11. The Joint Parties have answered Mr. Zambrana's document, interrogatory, and admission requests. Had Mr. Zambrana not resisted depositions, he would have also had an opportunity to obtain testimony from the Joint Parties. The Federal Rules of Civil Procedure allow Mr. Zambrana every opportunity to prove his claims. Forcing the Joint Parties to obtain separate counsel does not affect that right.

Finally, Mr. Zambrana fails to cite a single case which actually supports his assertion of standing. Although he cites to *Celanese Corp. v. Leesona Corp.*, 530 F.2d 83 (5th Cir. 1976) (a.k.a. *In re Yarn Processing*), and *Hawkes v. Lewis*, 225 Neb. 447, 586 N.W.2d 430 (1998), Mr. Zambrana admits that "*Yarn* ... is considered the seminal case for the proposition that a nonclient lacks the requisite standing to raise the conflict of interest of counsel" and that "[t]he Supreme Court of Nebraska ruled against [the movant] because she had based her argument 'on an ethical rule which is intended to protect former clients' ... rather than upon an individual right or interest ....'" Supp. Brf. at 4-5. And although Mr. Zambrana relies heavily on dicta contained in those two cases, he completely fails to argue the application of that dicta. Conspicuously absent from Mr. Zambrana's brief is a description of "an unethical change of sides ... manifest and glaring," or the "open and obvious" and "adverse nature of [counsel's] interests, relative to the new clients" in this case.[12] Mr. Zambrana's filing, from caption to signature page, does not describe how Howrey's conduct "prejudices the fairness of the proceedings, such that it adversely affects the fair and efficient administration of justice."[13]

Further, the facts in *Hawkes* and *Celanese Corp.* demonstrate that Mr. Zambrana's claims of standing are without merit. In *Hawkes*, the movant sought disqualification despite a waiver

---

[12] Supp. Brf. at 4 (citing *Celanese Corp.*, 530 F.2d at 89).

[13] Supp. Brf. at 5 (citing *Hawkes*, 586 N.W.2d at 435, 255 Neb. at 454).

6

from the former client whose interests were affected by the alleged conflict.[14]  In *Celanese Corp.*, the movant sought disqualification based on a conflict that affected the interest of a litigant with whom the movant was aligned, but who was voluntarily dismissed from the case.[15]  Both the *Hawkes* and *Celanese Corp.* courts found that the movants could not press for disqualification if their interests were unaffected and the allegedly affected third parties made no complaint.[16]  Since Mr. Zambrana also seeks disqualification in the absence of an affected interest, and on behalf of third parties who themselves have no objection, Mr. Zambrana's claims to standing are also without merit.

Mr. Zambrana's citation to *Decaview Distrib. Co., Inc. v. Decaview Asia Corp.*, No. C99-02555(MJJ), 2000 WL 1175583 (N.D. Cal. Aug. 14, 2000), is similarly unavailing.  The movant in *Decaview* — Decaview Asia Corporation ("DAC") — was the corporate parent of the entity whose client confidences were being compromised.  *Id.* at *1-*2.  The plaintiffs' counsel represented individuals and a corporation whose interests were adverse to both DAC and its subsidiary.  *Id.* at *2.  However, plaintiffs' counsel had previously represented DAC's subsidiary in a related matter.  *Id.*  The *Decaview* Court found that DAC had a "substantially close" relationship with, and exerted "significant control over," its bankrupt subsidiary and that the subsidiary "had under its control a substantial portion of confidential information that was at least partially owned by DAC."  *Id.* *10.  The *Decaview* Court concluded that "DAC has established a personal stake in the motion to disqualify sufficient to satisfy the 'irreducible constitutional minimum' of Article III and that the ethical breach significantly impacts DAC's interest in a just and lawful determination of its claims."  *Id.* at *12.

Unlike DAC in *Decaview*, Mr. Zambrana has identified no confidential information which he holds in tandem with one of the Joint Parties, the disclosure of which could

---

[14] *Hawkes*, 255 Neb. at 454, 586 N.W.2d at 436.

[15] *Celanese Corp.*, 530 F.2d at 87-88.

[16] *Hawkes*, 255 Neb. at 454, 586 N.W.2d at 436; *Celanese Corp.*, 530 F.2d at 87-88.

7

compromise either his litigation position or the information's value. Nor has Mr. Zambrana argued that he has a close, controlling relationship with one of the Joint Parties. Mr. Zambrana has not identified a "personal stake" that could support his standing claims. *Decaview* therefore lends Mr. Zambrana absolutely no support.

## CONCLUSION

For the reasons set forth above, Sergio Zambrana's Motion for Order Requiring Counsel to Withdraw should be denied.

Dated:  August 14, 2006

Respectfully submitted,

Robert L. Green, Jr. (D.C. Bar No. 935775)
James B. Boles (D.C. Bar No. 471818)
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 783-0800
(202) 383-6610 – facsimile
greenr@howrey.com
bolesj@howrey.com

Attorneys for Cauderlier & Associates, Inc.,
Jean Claude Cauderlier, and La Ruche, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Supplemental Memorandum of

Cauderlier & Associates, Inc., La Ruche, Inc., and Jean Claude Cauderlier in Opposition to

Sergio Zambrana's Motion for Order Requiring Counsel to Withdraw were served by operation

of the Court's electronic filing system upon all attorneys of record registered with the Court's

ECF system, and a true and accurate copy of the foregoing instrument was forwarded by

overnight delivery to those attorneys not registered with the Court's ECF system, this 14th day of

August 2006, as indicated below, to:

> Benny L. Kass, Esq.
> Jeffrey M. Hamberger, Esq.
> KASS, MITEK & KASS, PLC
> 1050 17th St., N.W. #1100
> Washington, D.C. 20036
> blkass@kmklawyers.com
> jhamberger@kmklawerys.com
> (202) 659-6500

_____
James B. Boles

# EXHIBIT J

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CAUDERLIER & ASSOCIATES, INC.,
      **Plaintiff,**

      v.

SERGIO ZAMBRANA,
      **Defendant/Third-Party**
      **Plaintiff,**

      v.

JEAN CLAUDE CAUDERLIER and
LA RUCHE, INC.,
      **Third-Party Defendants.**

**Civil Action No. 05-1653**
**(ESH/JMF)**

## MEMORANDUM ORDER

This case was referred to me for the resolution of all discovery disputes as well as the defendant and third-party plaintiff Sergio Zambrana's ("Zambrana") Motion For Order Requiring Counsel to Withdraw [#27]. In his motion, Zambrana seeks an order compelling counsel for the opposing parties, Cauderlier & Associates, Inc., Jean Claude Cauderlier, and La Ruche, Inc., to withdraw from this case. Following additional briefing at my request regarding Zambrana's standing to raise this request, I deny his motion for the following reasons.

## INTRODUCTION

It is not disputed that the night before the then-owners of the Georgetown restaurant now known as La Ruche was sold to its present owner[s], the defendant and third-party plaintiff, Sergio Zambrana, wrote a check for $25,000 payable to La Ruche.

The significance of that check is the gravamen of the dispute. Was it intended to give Zambrana nothing more than a minority interest in La Ruche? Jean Claude Cauderlier ("Cauderlier") and Cauderlier & Associates, Inc. ("CAI"), say so but Zambrana insists that the proceeds of the check were to be put toward CAI's purchase of the building in which La Ruche is housed, and therefore he is a partial owner of CAI, the building or both. See Points and Authorities in Support of Motion for Order Requiring Counsel to Withdraw at 4. Zambrana also indicates he has discovered these funds were in fact used for the expenses CAI incurred in its purchase of the building. He insists that, if he prevails in showing that it was intended that he be a partial owner of CAI, CAI may be due an accounting from La Ruche. Zambrana argues he would gain from such a determination that La Ruche, in which Zambrana has an admitted part ownership, owns CAI in part or owns the building in part. Likewise, he insists La Ruche should argue, as he is, that La Ruche, not CAI, owns the building and that La Ruche should demand an accounting, and then reimbursement, for any of the La Ruche funds used to pay any of CAI's expenses or debts. Since Cauderlier, CAI and La Ruche are all represented by the same firm, HOWREY LLP ("Howrey"), Zambrana contends the advancement of each of these arguments is impossible. He therefore demands that Howrey be disqualified from its representation of Cauderlier and the other two entities so that each can secure counsel who can assert the claims Zambrana insists that La Ruche has against Cauderlier and CAI.

## ANALYSIS

**I.     Disqualification of Howrey is Unwarranted.**

Since Howrey has never represented Zambrana, the only premise for Howrey's disqualification would be a prophylactic application of District of Columbia Rule of Professional Conduct 1.7(b), which prohibits a lawyer from representing a party if a position to be taken by that client is adverse to a position taken by another client in the same matter.  According to Zambrana, this Court should intervene to prevent Howrey from declining to take a position that would, for example, disfavor Cauderlier and CAI at the expense of La Ruche.

Any motion to disqualify faces the extraordinarily high burden articulated by the Court of Appeals in <u>Koller v. Richardson-Merrell Inc.</u>, 737 F.2d 1038, 1056 (D.C. Cir. 1984), <u>vacated on other grounds,</u> 472 U.S. 424 (1985).[1]  In that case, the court aligned itself with the Second Circuit's conclusions that disqualification may be ordered only when the conduct is in violation of the rules of professional conduct to the point of undermining the court's confidence in the vigor of counsel's representation of her client or where the attorney is in a position to use confidential information concerning her client's opponent gained from a prior representation.  Thus, unless the attorney's conduct will tend to taint the trial and actually have the potential to affect its outcome, disqualification is impermissible. The D.C. Circuit then stated:

> We agree that disqualification is warranted only rarely in cases where there is neither a serious question as to counsel's ability to act as a zealous and effective advocate for the client, nor a substantial possibility of an unfair advantage to the current client because of counsel's prior representation of the opposing party, or prior responsibility as a government official.  Except in cases of truly egregious misconduct likely to infect future proceedings, other means less prejudicial to the

---

[1] Note that, although the decision was vacated, it retains its precedential value as to the holdings unaffected by the vacatur.  <u>Action Alliance of Senior Citizens v. Sullivan</u>, 930 F.2d 77, 83 (D.C. Cir. 1991).

client's interest than disqualifying the counsel of her choice are ordinarily available to deal with ethical improprieties by counsel.

Id. at 1056 (citations omitted). Zambrana cannot argue that these criteria are met. Indeed, these criteria are obviously inapplicable. Zambrana cannot complain that Howrey has not been sufficiently zealous in the representation of its client; to the contrary, his complaint seems to be that they have been too zealous in representing Cauderlier.

Moreover, no matter what the controlling standard, Zambrana faces an equally insuperable hurdle. He is not now nor has he ever been Howrey's client. "As a general rule courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." In re Yarn Processing Patent Validity Litigation, 530 F.2d 83, 88-89 (5th Cir. 1976).[2] Narrow exceptions exist where the violation of the Rules of Professional Responsibility is manifest and glaring or where the adverse nature of the present or former client's interest to the client the attorney is representing is so obvious that it confronts the court with a duty to act and to exercise its inherent power to act. Id.

Zambrana cannot meet these exceptions any more than he could show, under the Koller case from this Circuit, that Howrey's continued representation of Cauderlier, CAI and La Ruche is an egregious violation of ethical rules. To the contrary, the conflict that may arise under Rule of Professional Conduct 1.7(b), when a lawyer takes or may have to take a position that is adverse to a present or former's position, may be waived by the potentially affected client provided the lawyer makes full disclosure. District of Columbia Rule of Professional Conduct 1.7(c). Obviously, CAI, Cauderlier and La

---

[2] Accord Doe v. Lee, 178 F. Supp. 2d 1239, 1243 (M.D. Ala. 2001).

4

Ruche can waive any potential conflict and, once they do, Howrey's representation of all

of them will not violate any Rule of Professional Conduct, let alone constitute an

egregious or obvious violation of any such rule.  Zambrana tries to escape by pointing to

situations where the lawyer cannot make full disclosure because it would require him to

breach a confidence so that he has to break one rule to obey another.  But, Cauderlier

controls La Ruche and CAI, and I cannot imagine how Howrey learned anything during

its representation of any of them that it cannot disclose to all of them.

**II.    Zambrana Lacks Standing.**

Influenced by the Supreme Court's standing jurisprudence, modern courts have

approached the power of non-clients to disqualify opposing counsel from a different

perspective.  They insist that the non-client establish standing to move to disqualify

counsel by showing that the continued representation by opposing counsel threatens the

non-client with immediate and actual harm by creating the substantial risk to her right to

a fair and just determination of her claims.  While no Circuit court has yet spoken to the

issue, district courts in the Ninth Circuit have found the decision in Colyer v. Smith, 50

F. Supp. 2d 966, 968 (C.D. Cal. 1999), articulates this principle persuasively and applies

this decision's logic when the non-client moves to disqualify opposing counsel.  See, e.g.,

FMC Technologies v. Edwards, 420 F. Supp. 2d 1153, 1156 (W.D. Wash. 2006);  United

States v. Walker River Irrigation District, No. 3:73CV127, 2006 WL 618823, *3 (D.

Nev. Mar. 10, 2006);  Decaview Distribution Co., Inc. v Decaview Asia Corp., No. CIV.

A. 99-02555, 2000 WL 1175583, *4-5 (N.D. Cal. Aug. 14, 2000).  I also find Colyer

persuasive.  It rightly applies the standing obligation to the motion by the non-client, and

the admittedly demanding burden it imposes is perfectly consistent with this Circuit's view of such motions, *i.e.*, that they are close to anathema.

By this standard too, Zambrana's motion obviously fails. He cannot possibly claim that his right to a fair resolution of his claims will be affected by what law firm represents his opponents. His complaint is that his opponents should be taking positions similar to his own but his ability to make his case and convince Judge Huvelle of the correctness of his contentions is a function of his proof and his own counsel's abilities. It has nothing whatsoever to do with and cannot be affected by who represents his opponent.

I conclude, therefore, that his motion is **DENIED**.

**SO ORDERED.**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated:

6

# EXHIBIT K

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |   |
|---|---|---|
| **CAUDERLIER & ASSOCIATES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 05-1653 (ESH/JMF)** |
| **SERGIO ZAMBRANA,** | ) | |
| | ) | |
| **Defendant/Third-Party** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEAN CLAUDE CAUDERLIER** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **LA RUCHE, INC.** | ) | |
| | ) | |
| **Third-Party Defendants** | ) | |

**ORDER**

Upon consideration of the Joint Motion of Cauderlier & Associates, Inc. ("CAI"), La Ruche, Inc. ("La Ruche"), and Jean Claude Cauderlier ("Mr. Cauderlier") for Rule 11 Sanctions, it is hereby **ORDERED and ADJUDGED** this _____ day of _____, 2006, that the Joint Motion is hereby **GRANTED;** and it is further

**ORDERED** that Kass, Mitek & Kass, PLLC and Jeffrey M. Hamberger, Esquire shall pay attorney's fees, expenses, and costs incurred by CAI, La Ruche, and Mr. Cauderlier in opposing the disqualification motion and in preparing their motion for sanctions; and it is further

**ORDERED** that Counsel for CAI, La Ruche, and Mr. Cauderlier shall submit to the Court a statement detailing their attorney's fees, expenses, and costs within ten (10) days of this Order's issuance.

**SO ORDERED**.

_____

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Memorandum of Cauderlier &

Associates, Inc., La Ruche, Inc., and Jean Claude Cauderlier for Rule 11 Sanctions and

Exhibits were served by operation of the Court's electronic filing system upon all

attorneys of record registered with the Court's ECF system, and a true and accurate copy

of the foregoing instrument was forwarded by overnight delivery to those attorneys not

registered with the Court's ECF system, this 31st day of October 2006, as indicated

below, to:

Benny L. Kass, Esq.
Jeffrey M. Hamberger, Esq.
KASS, MITEK & KASS, PLC
1050 17th St., N.W.  #1100
Washington, D.C.  20036
blkass@kmklawyers.com
jhamberger@kmklawerys.com
(202) 659-6500



James B. Boles