# EXHIBIT 1

## PERTINENT FACTS AND RELATED ISSUES[3]

### CAI

1.      There is a controversy between Mr. Zambrana and J. Cauderlier concerning the ownership of CAI.  (Comp., ¶42.)

2.      CAI contends in the Complaint that J. Cauderlier "is CAI's sole shareholder and 100 percent owner." (Comp., p.1.)

3.      CAI contends in the Complaint that Mr. Zambrana "has no ownership interest in CAI.." (Comp., p.1.)

4.      Mr. Zambrana contends that he is a part owner CAI. (Aff., ¶12[4])

### THE BUILDING

5.      CAI contends that it owns the real property and building located at 1035, 1037 1039 31st Street, N.W., Washington, D.C. 20007 (the "Building"). (Comp., ¶¶20-24.)

6.      CAI admits that closing documents relating to CAI's purchase of the Building were signed by J. Cauderlier on January 21, 2000, purportedly "on behalf of CAI". (Comp., ¶21.)

7.      CAI admits that Mr. Zambrana remitted a check to LaRuche in the amount of $25,000 on January 21, 2000. (Comp., ¶14.)

8.      Mr. Zambrana paid the sum of $25,000 to LaRuche on or about January 20, 2000, by personal check dated January 21, 2000, and said funds were, and always had been, earmarked for the purchase of the Building by CAI. (Aff., ¶¶2,5 and Exhibit A.)

---

[3] Defendant will adopt some of the allegations set forth in the Complaint, for the purposes of this Motion, and contends that the "facts" asserted in such allegations should be taken as admissions by plaintiff, CAI.

[4] Affidavit of Sergio Zambrana, will sometimes be referred to herein as "Aff.," followed by a reference to a numbered paragraph.

9.    Settlement on the purchase of the Building by CAI took place on or about January 21, 2000, at which settlement Mr. Zambrana was present. (Aff., ¶5.)

10.    The seller of the Building was one Mahesh Natthani, who was also present at the settlement. (Aff., ¶¶3,6.)

### MR. ZAMBRANA'S OWNERSHIP IN LARUCHE

11.    J. Cauderlier gave Mr. Zambrana an ownership interest in LaRuche, in recognition of Mr. Zambrana's many years of excellent performance as an employee of LaRuche and as incentive to stay in the employ of LaRuche; this grant was made to Mr. Zambrana long before January, 2000. (Aff., ¶¶7,8.)

12.    The $25,000 check Mr. Zambrana gave to LaRuche on or about January 21, 2000 was not payment for any ownership share in LaRuche and was instead, part of the purchase price of the Building. (Aff., ¶9.)

13.    The 2000 tax return filed by LaRuche indicates that J. Cauderlier owned 100% of its stock as of December 31, 2000 ( Exhibit B), which Mr. Zambrana disputes, but serves to belie J. Cauderlier's contention that Mr. Zambrana's $25,000 check of January 21, 2000 constituted payment for stock in LaRuche. It also shows that J. Cauderlier's position on Mr. Zambrana's ownership interest in LaRuche is inconsistent.

### MR. ZAMBRANA'S OWNERSHIP IN CAI

14.    CAI contends that Mr. Zambrana has no ownership in CAI. (Comp., p.1.)

15.    The aforementioned $25,000 Mr. Zambrana paid to LaRuche was actually used by CAI a part of the down payment toward the purchase of the Building. (Aff., ¶11.)

4

16.    J. Cauderlier stated in the presence of Mahesh Natthani and others, at the settlement table, that Mr. Zambrana was am owner of CAI. (Aff.,¶13.)

17.    J. Cauderlier stated in the presence of Mahesh Natthani and others, before and after settlement, that Mr. Zambrana was an owner of CAI. (Aff., ¶14.)

18.    Mahesh Natthani always recognized Mr. Zambrana as an owner of CAI. (Aff.,¶15.)

19.    Following the purchase of the Building by CAI, Mahesh Natthani called Mr. Zambrana, in his capacity as part-owner of CAI, on many occasions. (Aff.,¶¶15-16.)

20.    As a result of a commingling of funds between LaRuche and CAI, LaRuche either owns CAI or owns all the assets of CAI, including the Building. (Aff.,¶19.)

21.    As a result of the commingling of funds between LaRuche and CAI, and by virtue of Mr. Zambrana's partial ownership of LaRuche, Mr. Zambrana either owns an additional share in CAI or owns an additional portion of the assets of CAI, including the Building, aside from the shares he owns in CAI by virtue of having paid the aforementioned $25,000 to LaRuche. (Aff.,¶20.)

**THE RELATIONSHIP BETWEEN CAI AND LARUCHE**

22.    The $25,000 Mr. Zambrana paid to LaRuche the night before the settlement on the Property was paid to Mahesh Natthani as part of the purchase price that CAI was paying for the Building. (Aff.,¶21.)

23.    LaRuche has made many payments directly to Mahesh Natthani, as payment on the note given by CAI to Mr. Nattani in connection with CAI's purchase of the Building. (Aff.,¶22, and Exhibit C.)

5

24.    Upon information and belief, LaRuche has made many payments to First Union Bank, as payment on a note given by CAI to First Union in connection with CAI's purchase of the Building.  (Aff., ¶23, and Exhibit C.)

25.    CAI contends that Mr. Zambrana's "improper assertion of a 10 percent ownership interest in CAI is impeding J. Cauderlier's ability to sell LaRuche, the Property and/or CAI.  (Comp, ¶42).

## ARGUMENT

### JEAN CAUDERLIER IS AN INDISPENSABLE PARTY

Fed. R. Civ. P. 12(b)(7) recognizes the validity of a motion such as this, in lieu of a responsive pleading, in instances, among others, where there has been a "failure to join a party under Rule 19."  Fed. R. Civ. P. 19(a) states, in part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the persons' ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligation by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

The Complaint in this matter should have been filed by J. Cauderlier [*See* fn. 2], if for no other reason than plaintiff CAI's own contention that Mr. Zambrana's claim to ownership of stock in CAI "compromises *Mr. Cauderlier's* ability to sell LaRuche, the Property, and/or CAI." [Emphasis added.][5] (Comp., ¶21.)  Since J. Cauderlier is asserting ownership positions in LaRuche,

---

[5]  It is not obvious to Mr. Zambrana why Mr. Cauderlier's alleged inability to sell LaRuche, or CAI for that matter, is a concern of this plaintiff.  Nor is it J. Cauderlier's place to sell the Property.

6

# EXHIBIT 2

Case 1:05-cv-01653-JMF    Document 45-2    Filed 11/10/2006    Page 7 of 23
Case 1:05-cv-01653-ESH-JMF    Document 42    Filed 10/31/2006    Page 24 of 30

Case 1:05-cv-01653-ESH-JMF    Document 32    Filed 05/19/2006    Page 10 of 13
Case 1:05-cv-01653-ESH    Document 3-1    Filed 09/15/2005    Page 13 of 16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAUDERLIER & ASSOCIATES, INC.

    Plaintiff

    v.

SERGIO ZAMBRANA

    Defendant

Civil Case No. 1:05CV01653
Judge Ellen Segal Huvelle
Deck Type: Contract
Date Stamp: August 17, 2005

## AFFIDAVIT OF DEFENDANT, SERGIO ZAMBRANA

I, Sergio Zambrana, defendant herein, do hereby affirm and swear as true, the following:

1.    I am over the age of 18 and competent to testify to the matters contained herein.

2.    On or about January 20, 2000, I paid the sum of $25,000 to LaRuche by personal check, which check was dated January 21, 2000.

3.    The seller of the Building was Mr. Mahesh Natthani.

4.    At all times, it was understood between Jean Claude Cauderlier ("J. Cauderlier") and me that the $25,000 mentioned in ¶2 above was to be earmarked for the purchase by CAI of the real property and building located at 1035, 1037 1039 31st Street, N.W., Washington, D.C. 20007 (the "Building").

5.    Settlement on the purchase of the Building by CAI took place on or about January 21, 2000, at which settlement I was present.

6.    J. Cauderlier, Mr. Natthani, and others were also present at the settlement.

7.    Long before January, 2000, J. Cauderlier told me that he made me a part owner of LaRuche, Inc. ("LaRuche"), which corporation operated a restaurant called LaRuche in

Case 1:05-cv-01653-JMF    Document 45-2    Filed 11/10/2006    Page 8 of 23
Case 1:05-cv-01653-ESH-JMF    Document 42    Filed 10/31/2006    Page 25 of 30

Case 1:05-cv-01653-ESH-JMF    Document 32    Filed 05/19/2006    Page 11 of 13
Case 1:05-cv-01653-ESH    Document 3-1    Filed 09/15/2005    Page 14 of 16

Georgetown, D.C.; I had worked in the restaurant for many years, and I was the most highly valued employee during that entire time.

8.      J. Cauderlier gave me part ownership in LaRuche in recognition of my many years of excellent performance as an employee of LaRuche and as incentive to keep me in the employ of LaRuche.

9.      The $25,000 check I gave to LaRuche on or about January 20, 2000 was not payment for any ownership share in LaRuche and was instead, part of CAI's purchase price of the Building.

10.      I wrote the $25,000 check and made it payable to LaRuche at the behest of J. Cauderlier, who told me at the time that I would become a shareholder in CAI.

11.      The $25,000 check which I gave to LaRuche was, in fact, used by CAI a part of the down payment toward the purchase of the Building, to the best of my knowledge.

12.      I am a part owner of Cauderlier & Associates, Inc. ("CAI").

13.      J. Cauderlier stated in the presence of Mr. Natthani and others, at the settlement table, that I am an owner of CAI.

14.      J. Cauderlier stated in the presence of Mr. Natthani and others, before and after settlement, that I am an owner of CAI.

15.      Mr. Natthani has always recognized me as an owner of CAI.

16.      After CAI bought the Building, I received many telephone calls from Mr. Natthani regarding payments from CAI that were past due.

17.      Mr. Natthani addressed his inquiries about the overdue payments to me in my capacity as an owner of CAI.

2

Case 1:05-cv-01653-JMF    Document 45-2    Filed 11/10/2006    Page 9 of 23
Case 1:05-cv-01653-ESH-JMF    Document 42    Filed 10/31/2006    Page 26 of 30

Case 1:05-cv-01653-ESH-JMF    Document 32    Filed 05/19/2006    Page 12 of 13
Case 1:05-cv-01653-ESH    Document 3-1    Filed 09/15/2005    Page 15 of 16

18.     I believe that CAI's use of funds paid through LaRuche means that LaRuche and CAI did not always distinguish between which company owned which monies.

19.     It is my position that, as a result of the commingling of funds between LaRuche and CAI, LaRuche either owns CAI or owns all the assets of CAI, including the Building.

20.     Since I am a part owner in LaRuche, and since CAI is the alter ego of LaRuche, I am the owner of an additional share of CAI or the owner of an additional portion of the assets of CAI, including the Building, aside from the shares I own in CAI by virtue of having paid the aforementioned $25,000 to LaRuche.

21.     The $25,000 check I made payable to LaRuche the night before the settlement on the Property enabled LaRuche to pay Mahesh Natthani $25,000, as part of the purchase price that CAI was paying for the Building.

22.     LaRuche has made many payments directly to Mahesh Natthani, as payment on the note given by CAI to Mr. Nattani in connection with CAI's purchase of the Building.

23.     Upon information and belief, LaRuche has made many payments to First Union Bank, as payment on a note given by CAI to First Union in connection with CAI's purchase of the Building.

24.     To the best of my knowledge, the copies of checks drawn on the account of LaRuche, Inc., and made a part of Exhibit B are true and accurate.

3

Case 1:05-cv-01653-JMF    Document 45-2    Filed 11/10/2006    Page 10 of 23
Case 1:05-cv-01653-ESH-JMF    Document 42    Filed 10/31/2006    Page 27 of 30

Case 1:05-cv-01653-ESH-JMF    Document 32    Filed 05/19/2006    Page 13 of 13
Case 1:05-cv-01653-ESH    Document 3-1    Filed 09/15/2005    Page 16 of 16

The foregoing statements are true and correct to the best of my information, knowledge and belief.

_____
Sergio Zambrana

District of Columbia, ss:

I, _____, a Notary Public in and for the District of Columbia, do hereby state that on this ____ day of September, 2005, before me personally appeared Sergio Zambrana, who, being well known to me executed the within document as his act and deed.

GIVEN under my hand and official seal this _____ day of September, 2005.

_____    Kris Megna
Notary Public                          Notary Public, District of Columbia
                                              My Commission Expires 10-14-2009

F:\WP_FILES\CLIENTS\04300.101\Affidavit of Sergio Zambrana..wpd

4

# EXHIBIT 3

**From:** Jeffrey M. Hamberger
**Sent:** Thursday, December 08, 2005 4:37 PM
**To:** 'Green, Robert'
**Subject:** RE: La Ruche--FOR SETTLEMENT PURPOSES ONLY

\*\* MATERIAL REDACTED\*\*

Turning to other matters of concern:

(1)  \*\* MATERIAL REDACTED\*\*

**(2)  Does Howrey intend to file responses to the third-party complaint on behalf of La Ruche, Inc. or J.C. Cauderlier, or both?  I have expressed from the beginning my misgivings with Howrey's representation of all three parties, now that suit has been filed. Given that there appears (from my perspective, at least) to be a possible commingling of funds among your clients, and given that La Ruche has purportedly disavowed any ownership interest in CAI while filing a federal tax return indicating that it owns all CAI's stock, can there be any doubt that your clients have diverging interests and will be taking conflicting positions during the litigation?**

Putting aside for a moment the legitimacy of all the other claims Mr. Zambrana has asserted in this case, there is no dispute that he owns at least 10% of the stock in La Ruche, Inc.  Therefore, Mr. Zambrana has a vested interest in ensuring that La Ruche does not assert positions that are counter to the company's best interests (or which constitute a breach of the fiduciary duty La Ruche's directors owe to him as a shareholder).  I request that you convey to Mr. Cauderlier my client's desire that La Ruche, Inc. engage separate legal counsel.

Also, I respectfully suggest that Howrey has a duty to withdraw from this litigation altogether.  I would rather not have to raise this issue formally with the court, because it could lead to embarrassment, or more, for your law firm, should the court find you in violation of Rule 1.7 of the District of Columbia Rules of Professional Conduct, among other possible infringements.  Such a finding would create an unnecessary delay in the proceedings as well.

Please advise me as to who counsel will be for (i) CAI, (ii) La Ruche, and (iii) Mr. Cauderlier as this matter moves forward.

Thank you.

---

\*\* PRIOR EMAIL EXCHANGE REDACTED\*\*

[Text shown in BOLD was originally in normal font]

**EXHIBIT 1**

# EXHIBIT 4

LAW OFFICES

# KASS, MITEK & KASS

A PROFESSIONAL LIMITED LIABILITY COMPANY
SUITE 1100
1050 SEVENTEENTH STREET, N.W.
WASHINGTON, D.C. 20036-5596

OF COUNSEL:
NATHANIEL E. BUTLER (DC, IL, CO)

BENNY L. KASS (DC, MD)
MARK M. MITEK (DC, PA)
BRIAN L. KASS (DC, MD)
LAURIE PYNE O'REILLY (DC, MD & VA)
RICHARD P. SCHMITT (DC, MD)
JEFFREY M. HAMBERGER (DC, MD)
TYLER S. BOBES (DC)
GILLES A. E. STUCKER, JR. (DC, FL)

(202) 659-6500
FAX: (202) 293-2608
www.kmklawyers.com

Writer's E-mail Address: jhamberger@kmklawyers.com

April 28, 2006

**VIA FACSIMILE & U.S. MAIL**
Robert L. Green, Jr., Esquire
James B. Boles, Esquire
Howrey, LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004-2402

Re: *Cauderlier & Assoc. v. Zambrana*

Dear Gentlemen:

In accordance with Rule 37(a)(2) of the Federal Rules of Civil Procedure ("FRCP" or "Rules") this letter is a good faith attempt to confer with you regarding certain of your clients' responses to the Interrogatories and Requests for Production propounded to them by my client, Sergio Zambrana.

With respect to the Interrogatories responses filed by **Cauderlier & Associates, Inc.** (CAI), Mr. Zambrana requests that your client supplement its answers to the following interrogatories, for the reasons set forth immediately following the list:

1. Interrogatory No. 5
2. Interrogatory No. 6
3. Interrogatory No. 7
4. Interrogatory No. 8
5. Interrogatory No. 9
6. Interrogatory No. 10.

The foregoing interrogatories each requested, among other things, that CAI "identify any persons who can substantiate your answer [or 'denial']." Your client's answer that it "will identify its witnesses in a manner consistent with the Federal Rules of Civil Procedure and the local rules of the Court" is non-responsive and apparently refers to another part of each interrogatory. For each of the interrogatories listed above, please provide the identify, as that term is defined in paragraph 3 of the Definitions section of the Interrogatories, those persons who can "substantiate your [client's] answer" or who can "substantiate your [client's] denial," as the case may be.



KASS, MITEK & KASS

A PROFESSIONAL LIMITED LIABILITY COMPANY

Robert L. Green, Jr., Esquire
James B. Boles, Esquire
April 28, 2006
Page 2

      With respect to Interrogatory No. 8, the interrogatory specifically requests, among other things, that your client describe, as that term is defined in paragraph 6 of the Definitions section of the Interrogatories, "those facts which support [its] answer." In its response, CAI fails to describe the supporting facts, as requested, and merely puts forward the alleged facts themselves.

      Interrogatory No. 8 also requests that CAI identify, as that term is defined in paragraph 3 of the Definitions section of the Interrogatories, any documents which support [its] answer. CAI altogether fails to identify the documents which support its answer. Instead, your client asserts that Mr. Zambrana should refer to the documents produced by Mr. Cauderlier in response to my client's First Request for Production of Documents. This assertion is wholly misplaced under the circumstances, given, among other reasons, that Mr. Cauderlier's response to the First Request provides only a general reference to all the non-privileged documents in Mr. Cauderlier's possession, custody and control that might be responsive to the request made by Mr. Zambrana. That response is far too general, particularly in the context of responding to interrogatories. I think it is clear that "the burden of deriving or ascertaining the answer[s]" to these specific items is *not* here "substantially the same for the party serving the interrogatory as for the party served," as contemplated by Rule 33(d) of the FRCP. Even if the burden were the same for both parties, your client has failed "to specify the records from which the answer may be derived or ascertained." Mr. Zambrana requests that CAI supplement its response to Interrogatory No. 8 in accordance with the Rules.

      With respect to Interrogatory No. 9, your client's response fails to describe the supporting facts, as requested, and merely puts forward the alleged facts themselves. CAI should supplement its answer so as to provide the facts that support the contentions set forth in its response to Interrogatory No. 9. Also, my comments in the second preceding paragraph, regarding your client's failure to identify the documents with specificity, apply equally to Interrogatory No. 9. Mr. Zambrana requests that CAI supplement its response to Interrogatory No. 9 in accordance with the Rules.

      Interrogatory No. 10, rather than being too broad and "not reasonably calculated to lead to the discovery of admissible material" in accordance with the Rules, as contended by CAI, is, instead, very specific and addresses one of the key issues in this case. Interrogatory No. 10 requests that your client describe what [it] contends "to be the purpose of Mr. Zambrana's delivering to Cauderlier, on or about January 20, 2000, a personal check payable to La Ruche in the amount of $25,000.00, dated January 21, 2000." It does not ask your client to "speak to Mr. Zambrana's intentions in writing the check to La Ruche;" it seeks to ascertain what CAI contends to be the purpose of Mr. Zambrana's delivering the check to "Cauderlier." For the purpose of these interrogatories addressed to CAI, your client may respond as if "Cauderlier" had been



**KASS, MITEK & KASS**
A PROFESSIONAL LIMITED LIABILITY COMPANY

Robert L. Green, Jr., Esquire
James B. Boles, Esquire
April 28, 2006
Page 3

formally defined as "Jean Claude Cauderlier." Since CAI contends that Mr. Cauderlier owns
100% of CAI and contends that "Mr. Cauderlier is President, Vice-President and Secretary of
CAI," it is hardly unreasonable to ask this question of CAI. Please have your client provide the
information requested or offer a specific objection why it refuses to do so. In the alternative, Mr.
Zambrana will accept a response stipulating that CAI agrees with Mr. Zambrana's description of
the purpose of his delivering the personal check to Mr. Cauderlier, whatever that may be.

My comments in the second paragraph on page 2, regarding your client's failure to
identify the documents with specificity, apply equally to Interrogatory No. 10. Mr. Zambrana
requests that CAI supplement its response to Interrogatory No. 10 in accordance with the Rules.

With respect to Interrogatory No. 11, the interrogatory specifically requests, among other
things, that your client describe, as that term is defined in paragraph 6 of the Definitions section
of the Interrogatories, (a) the down payment required; (b) the name(s) of the Seller; (c) the
name(s) of the Purchaser; (d) the name(s) of any guarantors, (e) the names of the signatories, and
(f) the date the contract was signed, relating to the sales agreement entered into by CAI to
purchase the subject property. These facts should have been provided by CAI in response to
Interrogatory No. 11, in addition to the information that CAI elected to spell out. I mention the
"name(s) of the seller" and "name(s) of the purchaser" because it is not clear from your client's
response whether Yes Limited Partnership was the sole seller, and CAI was the sole purchaser.
Please have CAI either confirm that Yes and CAI were the only parties shown on the contract, as
seller and purchaser respectively, or provide all other names that fit that description.

My comments in the second paragraph on page 2, regarding your client's failure to
identify the documents with specificity, apply equally to Interrogatory No. 11. Mr. Zambrana
requests that CAI supplement its response to Interrogatory No. 11 in accordance with the Rules.

With respect to Interrogatory No. 12, the interrogatory specifically requests, among other
things, that your client describe, as that term is defined in paragraph 6 of the Definitions section
of the Interrogatories, (a) all the monies that have been paid to the Seller of the Property, or on
the Seller's behalf, by CAI or on CAI's behalf, from the date the sales agreement was signed to
the present, including any deposits, earnest money, or payments on any seller take-back
promissory note, showing (b) the amount of each payment, (c) the identity of the payor, (d) the
identity of the payee; (e) the method of payment, (f) the date payment was made, and (g) the
purpose of each such payment. The interrogatory itself is very specific, and certainly not "vague
and indefinite." Unless you can demonstrate that there were so many transactions that fall within
the purview of this interrogatory so as to make it overly broad, it is Mr. Zambrana's contention
that the information requested should have been provided by CAI. There can be no question that
the interrogatory is "reasonably calculated to lead to the discovery of admissible material" in



**KASS, MITEK & KASS**
A PROFESSIONAL LIMITED LIABILITY COMPANY

Robert L. Green, Jr., Esquire
James B. Boles, Esquire
April 28, 2006
Page 4

accordance with the Rules, especially given the allegations set forth in Mr. Zambrana's counterclaim and third party complaint.

My comments in the second paragraph on page 2, regarding your client's failure to identify the documents with specificity, apply equally to Interrogatory No. 12. Mr. Zambrana requests that CAI supplement its response to Interrogatory No. 12 in accordance with the Rules.

With respect to Interrogatory No. 13, the interrogatory specifically requests, among other things, that your client describe, as that term is defined in paragraph 6 of the Definitions section of the Interrogatories, (a) all the monies that have been paid to the First Union Bank, or on the First Union Bank's behalf, by CAI or on CAI's behalf, from the date of settlement to the present, showing (b) the amount of each payment, (c) the identity of the payor, (d) the identity of the payee; (e) the method of payment, (f) the date payment was made, and (g) the purpose of each such payment. The interrogatory itself is very specific, and certainly not "vague and indefinite." Unless you can demonstrate that there were so many transactions that fall within the purview of this interrogatory so as to make it overly broad, it is Mr. Zambrana's contention that the information requested should have been provided by CAI. There can be no question that the interrogatory is "reasonably calculated to lead to the discovery of admissible material" in accordance with the Rules, especially given the allegations set forth in Mr. Zambrana's counterclaim and third party complaint.

My comments in the second paragraph on page 2, regarding your client's failure to identify the documents with specificity, apply equally to Interrogatory No. 13. Mr. Zambrana requests that CAI supplement its response to Interrogatory No. 13 in accordance with the Rules.

Your client's response to Interrogatory No. 14, that "other persons were also in attendance" is blatantly nonresponsive to the question raised in Interrogatory 14. The answer does not even identify the person who conducted the settlement. Nor is the location of the settlement given. Mr. Zambrana requests that CAI supplement its response to Interrogatory 14 by identifying, as that term is defined in paragraph 3 of the Definitions section of the Interrogatories, the "other persons" who were in attendance at the settlement, and specify where the settlement took place.

My comments in the second paragraph on page 2, regarding your client's failure to identify the documents with specificity, apply equally to Interrogatory No. 14. Mr. Zambrana requests that CAI supplement its response to Interrogatory No. 14 in accordance with the Rules.



**KASS, MITEK & KASS**
A PROFESSIONAL LIMITED LIABILITY COMPANY

Robert L. Green, Jr., Esquire
James B. Boles, Esquire
April 28, 2006
Page 5

With respect to Interrogatory No. 15, the interrogatory specifically requests, among other things, that your client identify, as that term is defined in paragraph 3 of the Definitions section of the Interrogatories, (a) all documents in the possession of CAI bearing dates that are different from the dates the respective documents were actually executed; (b) showing the date borne by each document,(c) the date each document was executed, (d) the identity of the person(s) who executed each document, and (e) the current location of each document. The interrogatory itself is very specific, and certainly not "vague and indefinite." Unless you can demonstrate that there were so many transactions that fall within the purview of this interrogatory so as to make it overly broad, it is Mr. Zambrana's contention that the information requested should have been provided by CAI. There can be no question that the interrogatory is "reasonably calculated to lead to the discovery of admissible material" in accordance with the Rules, especially given the allegations set forth in Mr. Zambrana's counterclaim and third party complaint.

My comments in the second paragraph on page 2, regarding your client's failure to identify the documents with specificity, apply equally to Interrogatory No. 15. Mr. Zambrana requests that CAI supplement its response to Interrogatory No. 15 in accordance with the Rules.

With respect to Interrogatory No. 16, the interrogatory specifically requests, among other things, that your client describe, as that term is defined in paragraph 6 of the Definitions section of the Interrogatories, (a) all payments to CAI, or on behalf of CAI, since its inception, for amounts in excess of $500, showing (b) the amount of each such payment, (c) the identity of the payor,(d) the identity of the payee, (e) the method of payment; (f) the date payment was made, and (g) the purpose of each such payment. Since your client finds this request to be overly broad, my client will accept a response that refers only to payments in excess of $2,500, rather than $500. However, my comments in the second paragraph on page 2, regarding your client's failure to identify the documents with specificity, apply equally to Interrogatory No. 16. Mr. Zambrana requests that CAI supplement its response to Interrogatory No. 16 in accordance with the Rules, with the modification to the amount set forth above.

With respect to the Interrogatories responses filed by **Jean Claude Cauderlier**, Mr. Zambrana requests that your client supplement his answers to the interrogatories listed below (items 7-13), for the same reasons I explicated above relating to CAI's answers to Interrogatories Nos. 5, 6, 7, 8, 9, and 10.

| | |
|---|---|
| 7. | Interrogatory 5 |
| 8. | Interrogatory 6 |
| 9. | Interrogatory 8 |
| 10. | Interrogatory 9 |



**KASS, MITEK & KASS**
A PROFESSIONAL LIMITED LIABILITY COMPANY

Robert L. Green, Jr., Esquire
James B. Boles, Esquire
April 28, 2006
Page 6

      11.     Interrogatory 10
      12.     Interrogatory 11
      13.     Interrogatory 12.

With respect to Interrogatory Nos. 8, 9, 10, and 11, each interrogatory specifically requests, among other things, that your client describe, as that term is defined in paragraph 6 of the Definitions section of the Interrogatories, "those facts which support [his] answer." In his response, Mr. Cauderlier fails to describe the supporting facts, as requested, and merely puts forward the alleged facts themselves. Moreover, my comments in the second paragraph on page 2, regarding your client's failure to identify the documents with specificity, apply equally to Interrogatory Nos. 8, 9, 10, and 11. Mr. Zambrana requests that Mr. Cauderlier supplement its response to Interrogatory Nos. 8, 9, 10, and 11 in accordance with the Rules.

With respect to the Interrogatories responses filed by **La Ruche, Inc.** (La Ruche), Mr. Zambrana requests that your client supplement its answers to the interrogatories listed below (items 14-19), for the same reasons I explicated above relating to CAI's answers to Interrogatories Nos. 5, 6, 7, 8, 9, and 10.

      14.     Interrogatory 5
      15.     Interrogatory 6
      16.     Interrogatory 8
      17.     Interrogatory 9
      18.     Interrogatory 10
      19.     Interrogatory 11.

With respect to Interrogatory Nos. 8, 9, 10, and 11, each interrogatory specifically requests, among other things, that your client describe, as that term is defined in paragraph 6 of the Definitions section of the Interrogatories, "those facts which support [its] answer." In its response, La Ruche fails to describe the supporting facts, as requested, and merely puts forward the alleged facts themselves. Moreover, my comments in the second paragraph on page 2, regarding your client's failure to identify the documents with specificity, apply equally to Interrogatory Nos. 8, 9, 10, and 11. Mr. Zambrana requests that La Ruche supplement its response to Interrogatory Nos. 8, 9, 10, and 11 in accordance with the Rules.

With respect to Interrogatory No. 12, I cannot fathom why you contend that the interrogatory is "overly broad, too general and all-inclusive, vague and indefinite, and not reasonably calculated to lead to the discovery of admissible evidence." Mr. Zambrana is a shareholder in La Ruche. He is entitled to this information as such, aside from the fact that the



**KASS, MITEK & KASS**
A PROFESSIONAL LIMITED LIABILITY COMPANY

Robert L. Green, Jr., Esquire
James B. Boles, Esquire
April 28, 2006
Page 7

response to this interrogatory is crucial to many aspects of the pending litigation, among those being Mr. Zambrana's entitlement to an accounting from La Ruche. The amounts of rent can't have changed that often, and Mr. Zambrana is willing to receive an answer that groups by months the different amounts of rent that La Ruche has paid to CAI, since 2000.

My comments in the second paragraph on page 2, regarding your client's failure to identify the documents with specificity, apply equally to Interrogatory No. 12. Mr. Zambrana requests that CAI supplement its response to Interrogatory No. 12 in accordance with the Rules.

Regarding the responses from **all three of the parties** who responses to interrogatories are the subject of this letter, Mr. Zambrana requests that the parties provide all the information regarding the witnesses and other persons named in their respective answers, that is required under the definition of "identify" in paragraph 3 of the Definitions section of the Interrogatories.

With respect to all of **Jean Claude Cauderlier's Responses** to my client's First Request for Production of Documents, except for Request No. 19, my comments in the second paragraph on page 2, regarding your client's failure to identify the documents with specificity, are equally applicable. Mr. Zambrana requests that Mr. Cauderlier supplement each such response in accordance with the Rules.

Request for Production No. 19, asks for "[a]ll documents, including, but not limited to, correspondence, notes, memoranda, financial statements, bank statements, personal checks, stock certificates, and other business records, which relate to, describe, summarize, or memorialize facts and circumstances that establish that there are no conflicts in the interests of CAI and La Ruche." Mr. Zambrana contends that a major point to be litigated in this case is whether CAI and La Ruche and CAI have failed to make the proper distinctions between the companies' respective assets, and whether monies of La Ruche have been commingled with monies of CAI. [*See*, for example, paragraph 41 of the Third Party Complaint]. Therefore, Request No. 19 is not "vague and ambiguous," nor "outside the scope of these proceedings," and *is* "reasonably designed to lead to the discovery of admissible information or material." Your client's objections are completely unfounded. Mr. Zambrana requests that Mr. Cauderlier comply in full with Request No. 19.



**KASS, MITEK & KASS**
A PROFESSIONAL LIMITED LIABILITY COMPANY

Robert L. Green, Jr., Esquire
James B. Boles, Esquire
April 28, 2006
Page 8

Please let me know when the documents being produced will be organized in a manner that comports with the Rules. My and I would like to arrange to view the documents soon thereafter.

Very truly yours,

Jeffrey M. Hamberger

JMH:rmz
cc: Sergio Zambrana

F:\WP_FILES\CLIENTS\04300.101\Counsel.1.02.wpd

# EXHIBIT 5

## Jeffrey M. Hamberger

**From:**     Jeffrey M. Hamberger
**Sent:**     Tuesday, May 09, 2006 1:39 PM
**To:**        'Green, Robert'; 'Boles, James'
**Subject:** As you requested


Jeffrey M. Hamberger, Esq.
Kass, Mitek & Kass, PLLC
1050 17th Street, NW, Suite 1100
Washington, DC 20036
202.659.6500
202.293.2608 fax
jhamberger@kmklawyers.com
www.kmklawyers.com

This message contains information from the law firm Kass, Mitek & Kass, PLLC, that may be confidential or privileged. The information is intended solely for the recipient, and use by any other party is not authorized.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.  If you have received this message in error, please notify us immediately by telephone (202-659-6500) or by electronic mail (jhamberger@kmklawyers.com).  Thank you.