IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAUDERLIER & ASSOCIATES, INC.**<br><br>    **Plaintiff**<br><br>    v.<br><br>**SERGIO ZAMBRANA**<br><br>    **Defendant/Third-Party Plaintiff**<br><br>    v.<br><br>**JEAN CLAUDE CAUDERLIER and LA RUCHE, INC.**<br><br>    **Third-Party Defendants** | Civil Action No. 05-1653<br>(ESH/JMF) |

*CORRECTED* OPPOSITION OF MOTION OF
CAUDERLIER & ASSOCIATES, INC., LA RUCHE, INC.,
AND JEAN CLAUDE CAUDERLIER FOR RULE 11 SANCTIONS

    Defendant and third-party plaintiff, Sergio Zambrana ("Mr. Zambrana"), by and through counsel, hereby files this *Corrected* Opposition to Motion of Cauderlier & Associates, Inc., La Ruche, Inc., and Jean Claude Cauderlier for Rule 11 Sanctions, in order to rectify errors that could result in mistaken impressions that were extant in Mr. Zambrana's original Opposition, filed herein on November 10, 2006.

Introduction

    The Motion for Rule 11 Sanctions ("Sanctions Motion") [#42] brought by Cauderlier & Associates, Inc. ("CAI"), La Ruche, Inc. ("La Ruche"), and Jean Claude Cauderlier ("Mr.Cauderlier") (collectively, the "Joint Parties"), argues that Mr. Zambrana's Motion for Order Requiring Counsel to Withdraw ("Disqualification Motion") [#27] was "unsupported by

law and made assertions which were irrelevant to, and inconsistent with, the analytical standards of this and other Courts."[1]  The Joint Parties also allege that "[t]he motion's timing and procedural context suggested that it was motivated by tactical, rather than ethical concerns."[2]

In this Opposition, Mr. Zambrana will demonstrate that his motion to disqualify Howrey, LLP ("Howrey"), as counsel for all three Joint Parties, was motivated by a concern that Howrey's failure to abide by basic ethical tenets "adversely affect[s] the interest of the party seeking disqualification (*i.e.*, Mr. Zambrana)" and "prejudices the fairness of the proceedings, such that it adversely affects the fair and efficient administration of justice." *Hawks v. Lewis*, 586 N.W.2d 430, 454-455, 255 Neb. 447 (1998).  The facts of this case justify Mr. Zambrana's concerns and show that Howrey never should have agreed to represent all the Joint Parties due to obvious conflicts of interest among them.  Moreover, the suggestion that Mr. Zambrana's Disqualification Motion was tactically driven is wholly without merit.

Argument

The primary basis for Mr. Zambrana's Motion for Order Requiring Counsel to Withdraw is his justified concern that when Howrey elected to represent Cauderlier & Associates, Inc., La Ruche, Inc., and Jean Claude Cauderlier in this litigation, Howrey violated Rule 1.7 of the District of Columbia Rules of Professional Conduct,[3] to Mr. Zambrana's detriment.  That violation alone, Mr. Zambrana contends, given the circumstances prevailing in this case, requires that Howrey be disqualified as the attorneys of record for each and every Joint Party.  This is not

---

[1] Memorandum of Cauderlier & Associates, Inc., La Ruche, Inc., and Jean Claude Cauderlier for Rule 11 Sanctions, at 2.

[2] *Id.*, at 2.

[3] *See* Points and Authorities in Support of Motion for Order Requiring Counsel to Withdraw, at 8-10, for Mr. Zambrana's full discussion of the D.C. Rules of Professional Conduct.

a "frivolous legal argument," and the Motion was not "filed for an improper purpose," as asserted by the Joint Parties in the "Preliminary Statement" section of their Motion for Rule 11 Sanctions.[4]  The reason Mr. Zambrana has standing to raise this issue is because he has suffered direct injury as a result of Howrey's formal assertions that are favorable to some of its clients, *at the expense of others*.[5]  In addition, Mr. Zambrana is harmed by Howrey's improperly siding with one CAI shareholder, Mr. Cauderlier, to the detriment of another putative shareholder, Mr. Zambrana.

### A. THE FACTS OF THIS CASE

Mr. Zambrana based his Disqualification Motion on the same set of facts upon which he relied to support his Motion to Dismiss the Complaint Or, in the Alternative, Motion to Join Indispensable Parties ("Motion to Dismiss") [#3].  A complete recitation of the facts, as set forth in the Points and Authorities in support of Mr. Zambrana's Motion to Dismiss, at pages 3-6, is attached hereto as Exhibit 1, but a synopsis of the facts reads like a law school ethics problem.  The facts used in the following synopsis are gleaned from (a) Exhibit 1's statement the facts; (b) the Affidavit of Defendant, Sergio Zambrana, attached hereto as Exhibit 2; (c) copies of the La Ruche checks included by Mr. Zambrana in an Exhibit to his Motion to Dismiss; (d) copies of La

---

[4] *Id.*, at 2.

[5] As argued in his Supplemental Brief Regarding His Standing to Raise Conflict of Interest of Opposing Counsel [#37], at pages 9-10, "Mr. Zambrana is prejudiced[] by the fact that Howrey represents both CAI and La Ruche.  Inasmuch as there is unrefuted evidence that La Ruche (a) has paid a substantial sum of money to third parties on behalf of CAI, (b) has a claim against CAI that La Ruche owns stock in CAI and the Building of which CAI claims ownership, (c) has a claim that it is paying over-market rent to its detriment, and (d) has a right to an accounting by CAI and Mr. Cauderlier, it is clear that Mr. Zambrana, as an undisputed La Ruche stockholder, is personally harmed by La Ruche's assertions that La Ruche has no ownership of CAI stock or the Building, and is not owed monies by CAI.  La Ruche's averments come directly from the keyboards at Howrey."

Ruche tax returns attached to Mr. Zambrana's Motion to Dismiss, and to his Defendant's Reply Memorandum ("Reply Memorandum") [#5]; and (e) the Complaint filed herein by CAI [#1]:

1. Individual Y decides to purchase a building, through Company A, a corporation in which he owns 100% of the stock, at the time.

2. On or about January 20, 2000, Individual Y asks Individual Z to contribute $25,000 toward the purchase price of the building, and promises to make Individual Z a shareholder in Company A.

3. On the night before settlement on the sale of the building, January 20, 2000, Individual Z tenders the $25,000 in the form of a check made *payable to Company B* at Individual Y's request.

4. Company B is a corporation in which Individual Y owns 90% of the stock and Individual Z owns 10%, at the time.

5. For many years, Individual Z had worked for Company B's restaurant business and was a valued employee.

6. On January 21, 2000, settlement on the sale of the building took place, in which building Company B's restaurant is located.

7. At the settlement table, Individual Y stated, in the presence of seller of the building and others, that Individual Z was an owner of Company A.

8. The $25,000 that Individual Z paid to Company B on January 20, 2000 was, in turn, paid to the seller of the building purchased by Company A, as part of the purchase price, on January 21, 2000.

9. Company B made many other payments directly to the seller of the building, as payment on the note given by Company A to said seller.

10. Company B has made many payments to a certain Bank which, upon information and belief, are payments on a purchase money promissory note given by Company A to said Bank, in connection with Company A's purchase of the building.

11. Company B's tax returns indicate a definite but unclear relationship between Company B and Company A, raising the possibility that Company B actually owns a controlling equitable share of Company A stock.

12. Individual Y repudiates his promise to Individual Z that the latter would be a part-owner of Company A.

13. Instead, Individual Y claims, in a lawsuit *initiated by Company A*, that the $25,000 Individual Z paid to Company B was payment only for Individual Z's 10% interest in Company B, and nothing else.

14. Long before January, 2000, Individual Y had given Individual Z an ownership interest in Company B, in recognition of Individual Z's many years of excellent performance as an employee of Company; Individual Y now claims that that interest, and the 10% interest mentioned in paragraph 13, are one and the same.

15. Individual Y claims that Individual Z (a) owns a total of 10% of the stock in Company B; (b) owns no interest in Company A; and (c) owns no interest in the building purchased by Company A with the funds of Company B.

16. Company B denies that monies are owing to it by Company A or by Individual Y, and Company B further denies owning any interest in Company A or in the building purchased by Company A.

17. There has been no showing that Company A has returned any of the over $92,000 that the Company B checks show were paid on Company A's behalf.

Query: Does a potential conflict of interest exist between Company A, Company B and Individual Y?  Mr. Zambrana concluded what most law students would conclude: the answer is "yes."  Mr. Zambrana further concluded that Howrey's representation of all three Joint Parties meant that Howrey would be asserting positions during its representation of La Ruche that would be detrimental to that client's interests.  Mr. Zambrana realized that if La Ruche's interests were not going to be protected by La Ruche's attorney, then Mr. Zambrana himself stood to be injured, as an undisputed minority owner of La Ruche.  After the Complaint was filed, it was also clear to Mr. Zambrana that the possibility existed that Mr. Cauderlier was using La Ruche and CAI as his alter egos.[6]

Since the Joint Parties insist that this case should be viewed through a "practical lens," and assessed "in light of those practicalities," at page 3 of their Sanctions Motion Memorandum, Mr. Zambrana says he has done just that.  There is great potential for Mr. Cauderlier to manipulate La Ruche and CAI for his own benefit, or for the benefit of CAI, of which he claims a 100% interest.  For example, Mr. Cauderlier can, and has, allowed La Ruche to pay the debts of CAI, to the tune of almost $100,000, if not more, without requiring, or at least having shown, that those monies will ever be repaid; Mr. Cauderlier can assert that La Ruche has no ownership in the building, even though it appears that La Ruche has made the bulk of the payment to the seller of the building and to CAI's lender; he can start a new corporation, CAI, to exclude Mr. Zambrana, even though the purchase of the building was a corporate opportunity rightfully

---

[6]  This was evident in the Joint Parties' Opposition to the Disqualification Motion [#31], where they complained that "Mr. Zambrana would have Mr. Cauderlier sue himself," at 2.  This reference, made elsewhere by the Joint Parties, as well, was raised in the context of Mr. Zambrana's contention that La Ruche and CAI might have claims against Mr. Cauderlier that each corporation should be asserting, but are not doing so due to the fact that Mr. Cauderlier has retained Howrey to represent all three Joint Parties.  Mr. Cauderlier thus equates those corporate entities to Mr. Cauderlier himself.

belonged to La Ruche; he can charge La Ruche over-market-rate rent, so that CAI collects more than it reasonably should, and La Ruche's assets are thus wrongfully diminished by the less-than-arm's-length transaction; he can promise Mr. Zambrana an interest in CAI and then go back on his word, even though he had held out Mr. Zambrana as an owner of an interest in CAI, et cetera.

Practically speaking, there is no way to protect La Ruche and CAI, and by extension, Mr. Zambrana, as a stakeholder in one or both of those corporations, except to ensure that the majority stockholder abides by his respective fiduciary duties to the shareholders of each corporation. The evidence thus far suggests that Mr. Cauderlier has failed to do so, and Howrey has taken the position that all the parties can simply waive such misbehavior.

It may be difficult for Mr. Cauderlier to change his "hats" in his different capacities, as argued by the Joint Parties in their Memorandum in Opposition to the Disqualification Motion, at pages 6-7, and act in the best interest of the entity for whom he is acting. But it must be done. Nevertheless, Howrey has been willing to allow Mr. Cauderlier to dictate to his lawyers when to take positions that are obviously detrimental to at least one of Howrey's clients, at a given point in time. (Or, Howrey's attorneys have done so on their own.) Perhaps it is because Howrey was willing to assert in that Memorandum in Opposition, at page 7, that "Mr. Cauderlier's interests are indistinguishable from those of La Ruche and CAI." Through a practical lens, that proposition is obviously flawed.

If the parties were all represented by independent counsel, each of whom recognized that their duty is to act zealously without exception for their respective clients, Mr. Cauderlier's ability to breach his fiduciary duties would be significantly diminished. Besides, under the ethical rules governing lawyers, that is how it must be.

B.  BACKGROUND OF MR. ZAMBRANA'S MOTION FOR ORDER REQUIRING COUNSEL TO WITHDRAW

Counsel for Mr. Zambrana conveyed his concerns about Howrey's conflict of interest very early in the case.  Mr. Zambrana's first formally raised the issue in his Reply Memorandum, in the sections entitled "What Plaintiff Does and Does Not Know about La Ruche" and "Plaintiff's Counsel Should Be Required to Withdraw from this Action," at pages 11-13.  On October 12, 2005, approximately two weeks after the Reply Memorandum brought the issue to the fore in writing, Suzanne Clement, Esquire, Mr. Boles's predecessor in this litigation, advised Mr. Zambrana's undersigned counsel by telephone that the Howrey lawyers "thought about it, and, right now, they are comfortable with their position."

On December 8, 2005, a week before the parties were to appear before Judge Facciola for mediation, and before any discovery requests had been exchanged, the undersigned counsel for Mr. Zambrana sent an email (Exhibit 3) strongly urging Howrey to cease its representation of all three clients.

>That email said, in part:
>
>> I have expressed from the beginning my misgivings with Howrey's representation of all three parties, now that suit has been filed. Putting aside for a moment the legitimacy of all the other claims Mr. Zambrana has asserted in this case, there is no dispute that he owns at least 10% of the stock in La Ruche, Inc. Therefore, Mr. Zambrana has a vested interest in ensuring that La Ruche does not assert positions that are counter to the company's best interests (or which constitute a breach of the fiduciary duty La Ruche's directors owe to him as a shareholder). I request that you convey to Mr. Cauderlier my client's desire that La Ruche, Inc. engage separate legal counsel.
>>
>> Also, I respectfully suggest that Howrey has a duty to withdraw from this litigation altogether.  I would rather not have to raise this issue formally with the court, because it could lead to embarrassment, or more, for your law firm . . . .

The Joint Parties ascribe a dark motive behind the fact that Mr. Zambrana "waited seven months before again raising this issue," at page 5 of their Sanctions Motion, relying upon a footnote in the Points and Authorities supporting Mr. Zambrana's Disqualification Motion, which was filed on May 9, 2006. The full text of the footnote cited by the Joint Parties, at page 2, was:

> Mr. Zambrana first broached the subject of Howrey's conflict of interest in "Defendant's Reply Memorandum," the second pleading filed by him, at pp. 11-12. Mr. Zambrana has waited until this time to file a formal motion, in the hope that the parties might return to the mediation table and reach an amicable resolution of this case. Since no such resolution is imminent, and Howrey has repeatedly rebuffed his counsel's pleas to rectify the unfair situation caused by Howrey's representation of multiple parties herein, Mr. Zambrana reluctantly directed his counsel to expend the hours necessary to bring this issue before the Court.
> (Footnote 1, at 2.)

The Joint Parties also know, however, that Mr. Zambrana offered a further explanation of the timing of the motion, in his Supplemental Brief Regarding His Standing to Raise Conflict of Interest of Opposing Counsel [#37], in footnote 9, which they neglected to bring to the Court's attention here. That footnote read:

> Despite protestations to the contrary raised by the Joint Parties in their Opposition to Mr. Zambrana's motion to disqualify, Mr. Zambrana acted reasonably in not formally filing his disqualification motion until after the parties had exhausted the Court's attempts to mediate the underlying dispute. Mr. Zambrana recognized that, as a practical matter, it would be Mr. Cauderlier who would be deciding whether to settle the case with Mr. Zambrana, and that Mr. Cauderlier would be speaking for the two corporations, as well. This reality does not alter the fact that, if this case proceeds to trial, as it appears it will, Mr. Zambrana is unduly prejudiced by Howrey's joint representation. There was no real need for Mr. Zambrana to interrupt the flow of the case, during its mediation phase, by filing the motion sooner; in fact, it appeared to Mr. Zambrana that it might be counterproductive.

Mr. Zambrana contends that it was perfectly reasonable to delay filing his Disqualification Motion until it was clear that the case was not going to be settled. Aside from the practical realization that Mr. Cauderlier would be doing "the talking" for all three entities, Mr. Zambrana was in no hurry to press the issue of Howrey's violation of Rule 1.7 of the D.C. Rules of Professional Conduct, after unsuccessfully bringing it to the Court's attention in his Reply Memorandum concerning his initial Motion to Dismiss. At the least, Mr. Zambrana desired to see if the mediation activities would be fruitful, so he could avoid embarrassing the Howrey law firm and its attorneys, if for no other reason.

Mr. Zambrana occasionally raised the withdrawal issue with opposing counsel some time after the first mediation session conducted by Judge Facciola on December 15, 2005. At the mediation, it was agreed by the parties that an appraisal of the value of the subject building was necessary, so that the parties would be negotiating with an agreed-upon value of the most valuable asset in dispute. The parties and Judge Facciola agreed to reconvene settlement discussions once the appraiser's report was in hand. (The appraisal came in at approximately $2.3 million.) The parties waited almost *six months* until the appraisal was submitted by one John Dempsey on May 23, 2006.

In the meantime, the undersigned had a telephone conversation with Robert Green, Esquire, of Howrey, LLP, on May 2, 2006.[7] The primary subjects of that conversation were the Joint Parties' desire to take Mr. Zambrana's deposition, Mr. Zambrana's request for consent to a

---

[7] The undersigned certifies that the description of the conversation which follows is in accordance with his concomitant type-written notes memorializing the conversation (a practice performed routinely by counsel for virtually all his conversations with his clients or opponents), and with his best recollection.

motion for a stay in the discovery process (which request was denied)[8], and the undersigned's eight-page letter to opposing counsel dated April 28, 2006, regarding Mr. Zambrana's objections to the discovery responses from the Joint Parties. The letter, Exhibit 4 hereof, stated, among other things, "Mr. Zambrana contends that a major point to be litigated in this case is whether CAI and La Ruche and CAI [*sic*] have failed to make the proper distinctions between the companies' respective assets, and whether monies of La Ruche have been commingled with monies of CAI," at page 7.

During the course of said conversation, the undersigned alluded to the conflict of interest which he perceived Howrey to still be subject to. Mr. Green stated, "Go ahead with the motion to disqualify this firm, and stop threatening it." (This may not be verbatim, but is a direct quote from counsel's written notes). One week later, on May 9, 2006, Mr. Zambrana filed his Motion for Order Requiring Counsel to Withdraw.

Given this history, it is hard to understand the Joint Parties' assertion that "[t]he motion's timing and procedural context suggested that it was motivated by tactical, rather than ethical concerns," as mentioned above. Not only did Mr. Zambrana's counsel give Howrey more than ample notice of that law firm's conflicts of interest, but Mr. Zambrana held off, hoping that it would not be necessary to file the Disqualification Motion at all. Finally, the Motion was filed at the time requested by the Joint Parties' counsel. This is further confirmed by the undersigned's email to opposing counsel, also dated May 9, 2006, conveying the Disqualification Motion, which bore in the subject line, "As you requested" and contained no other message (Exhibit 5).

---

[8] Mr. Zambrana filed a Motion for Protective Order [#26] the following day, May 3, 2006.

C.  THE BASES OF MR. ZAMBRANA'S DISQUALIFICATION MOTION

Rule 1.7 of the Rules of Professional Conduct reads:

RULE 1.7 CONFLICT OF INTEREST: GENERAL RULE

**(a)** *A lawyer shall not advance two or more adverse positions in the same matter.*

**(b)** Except as permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if:

(1) That matter involves a specific party or parties, and a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter, even though that client is unrepresented or represented by a different lawyer;

(2) Such representation will be or is likely to be adversely affected by representation of another client;

(3) Representation of another client will be or is likely to be adversely affected by such representation; or

(4) The lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests.

**(c)** A lawyer may represent a client with respect to a matter in the circumstances described in paragraph (b) above if each potentially affected client provides consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation.

**(d)** If a conflict not reasonably foreseeable at the outset of a representation arises under paragraph (b)(1) after the representation commences, and is not waived under paragraph (c), a lawyer need not withdraw from any representation unless the conflict also arises

under paragraphs (b)(2), (b)(3), or (b)(4). (Emphasis added.)

[Amended effective November 1, 1996.]

The Joint Parties complain that Mr. Zambrana cited only one case in his Points and Authorities in Support of Motion for Order Requiring Counsel to Withdraw. Mr. Zambrana believed that for the purposes of his Disqualification Motion, that single case should suffice. At page 10 of those Points and Authorities, Mr. Zambrana looked to *Griva v. Davison,* 637 A.2d 830 (1993), which case "gives an in-depth analysis of the history and meaning of Rule 1.7, and insight for this Court to consider." Mr. Zambrana stated further that:

> The *Griva* court goes on to elucidate how Rule 1.7 of the D.C. Rules of Professional Conduct "substantially differs" from the American Bar Association's Model Rule 1.7, specifically to include a distinction for *"cases in which representation is absolutely forbidden."* *Id*., at 842, and 843. [Emphasis added.]
>
> The court in *Griva* proceeds to espouse the view that ". . . this court's Rule 1.7(a) mandates an *absolute prohibition* of dual or multiple representation when the lawyer would represent clients with "adverse""position[s]" in the "same matter" (emphasis added), at 843.

The "absolute prohibition" is where Howrey has gone wrong, and Mr. Zambrana contends that he had every right to raise the issue, since the violation of Rule 1.7(a) has adversely affected his personal interests. The Disqualification Motion was based on the prevailing facts and the obvious conflicts of interest plaguing Howrey.

In his Memorandum Order, Judge Facciola ignores Mr. Zambrana's citation of Rule 1.7(a) and focuses on Rule 17(b). Mr. Zambrana concedes that he might have been overzealous in arguing that there were clients confidences that might be divulged, since Mr. Cauderlier's controlled all the Joint Parties, and he could keep no confidences from himself. But, Mr. Zambrana does not concede that, under the circumstances, it would be proper for all the parties

13

to "waive" their rights under Rule 1.7(b), as Mr. Zambrana argued in his Disqualification Motion, at page 8-9 of the accompanying Memorandum.  There are situations here where Howrey did not actually advance adverse positions, but the law firm should have, had it acted in each client's best interest.

     Mr. Zambrana also cited *Griva* for the proposition that: "Throughout the representation [of the corporation], the lawyer must continue to recognize that the interest of the corporation must be paramount *and that he [or she] must take care to remain neutral with respect to the disputes between the present shareholders* (emphasis in original)." [Citation omitted]. *Id*., at 840. Howrey has failed to abide by that admonition, too, throughout this case, to the detriment of La Ruche, CAI, and, derivatively, to Mr. Zambrana.

### D.  JUDGE FACCIOLA'S MEMORANDUM ORDER

     While Mr. Zambrana filed Objections to Judge Facciola's Memorandum Order [#39], he did not raise a few other issues he has with that Order.  Since the Joint Parties are relying upon the Court's findings, Mr. Zambrana will air those differences now.  On pages 3 and 4 of the Memorandum Order, Judge Facciola discusses the case of *Koller v. Richardson-Merrell, Inc*., 737 F.2d 1038 (D.C. Cir 1984), *vacated on other grounds,* 472 U.S. 424 (1985).  From that case, the judge brings down a finding that "Zambrana cannot argue that these criteria are met," at page 4.  The criteria of which Judge Facciola speaks arise from his citation of certain language from that case, at page 3.  The opening sentence of that quoted section says, "We agree that disqualification is warranted only rarely in cases where there is neither a serious question as to counsel's ability to act as a zealous and effective advocate for the client, nor. . . ."

     With all due respect, the problem is, that premise does not hold in the instant case.  Mr. Zambrana contends that he has shown convincingly that, while Howrey may have represented

Mr. Cauderlier zealously, it cannot be said that Howrey has represented *La Ruche* zealously, or has even guarded La Ruche's interests.  That being the case, the Court is, ironically, correct in stating, at page 4 that, "Indeed, these criteria are obviously inapplicable."  Since Howrey has clearly not represented La Ruche zealously, the remainder of the argument falls away.

      Also, the Memorandum Order cites approvingly the notion that "disqualification may be ordered only when the conduct is in violation of the rules of professional conduct to the point of undermining the court's confidence in the *vigor* of counsel's representation," at page 3 (emphasis added).  The judge's opinion then says, "Thus, unless the attorney's conduct will tend to taint the trial and actually have potential to affect is outcome, disqualification is impermissible," at page 3.  Mr. Zambrana respectfully asserts that this case does meet these criteria, since Mr. Zambrana has shown that Howrey has *not* been vigorous in its representation of at least one of its clients, to the benefit of its other clients, and Howrey's remaining as counsel for the Joint Parties will, or has the potential to, taint the trial and affect its outcome.  Even if this Court disagrees with Mr. Zambrana's characterization of Howrey's actions, it must be said that Howrey's behavior falls within the purview of the cited language.  That being the case, Mr. Zambrana's Disqualification Motion was not frivolous and was based of solid legal concepts.  Nor has there been any showing that Mr. Zambrana's Disqualification Motion was brought for vexatious or other improper purposes.

WHEREFORE, the Motion of Cauderlier & Associates, Inc., La Ruche, Inc., and Jean Claude Cauderlier for Rule 11 Sanctions should be denied.

Respectfully submitted,

KASS, MITEK & KASS, PLLC

Dated: November 13, 2006    By: *Jeffrey M. Hamberger*
    Jeffrey M. Hamberger (Bar No. 930362)
    1050 17th Street, N.W., #1100
    Washington, D.C. 20036
    (202) 659-6500
    jhamberger@kmklawyers.com
    Attorneys for Sergio Zambrana

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Corrected* Opposition of Motion of Cauderlier & Associates, Inc., La Ruche, Inc., and Jean Claude Cauderlier for Rule 11 Sanctions was filed electronically through the Court's ECF system, and was emailed this 13th day of November, 2006, to:

Robert L. Green, Jr., Esquire
James B. Boles, Esquire
HOWREY, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
greenr@howrey.com
bolesj@howrey.com

*Jeffrey M. Hamberger*
Jeffrey M. Hamberger

F:\WP_FILES\CLIENTS\04300.101\Opposition to Motion for Rule 11 Sanctions Corrected.wpd