## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAUDERLIER & ASSOCIATES, INC.,** )<br><br>Plaintiff, )<br><br>v. )<br><br>**SERGIO ZAMBRANA,** )<br><br>Defendant/Third-Party )<br>Plaintiff )<br><br>v. )<br><br>**JEAN CLAUDE CAUDERLIER** )<br><br>And )<br><br>**LA RUCHE, INC.** )<br><br>Third-Party Defendants ) | Civil Action No. 05-1653 (ESH) |

## MEMORANDUM OF CAUDERLIER & ASSOCIATES, INC., LA RUCHE, INC., AND JEAN CLAUDE CAUDERLIER IN OPPOSITION TO SERGIO ZAMBRANA'S MOTION IN *LIMINE* FOR ACCOUNTING BY COURT-APPOINTED ACCOUNTANT OR AN AUDITOR-MASTER

Cauderlier & Associates, Inc. ("CAI"), La Ruche, Inc. ("La Ruche"), and Jean Claude Cauderlier ("Mr. Cauderlier") (collectively referred to hereinafter as the "Joint Parties") respectfully submit this Memorandum in Opposition to Sergio Zambrana's Motion in *Limine* for Accounting by Court-Appointed Accountant or an Auditor-Master ("Motion").

### PRELIMINARY STATEMENT

CAI filed its complaint on August 17, 2005. The Court denied Mr. Zambrana's Fed. R. Civ. P. 19 motion on October 4, 2005. Mr. Zambrana filed counterclaims against CAI on

October 24, 2005 and a third-party complaint against La Ruche and Mr. Cauderlier on November 29, 2005. Mediation began in early 2006.

After mediation concluded, Mr. Zambrana moved for a protective order (May 3, 2006) and to disqualify the Joint Parties' counsel (May 9, 2006). The Joint Parties produced sixteen boxes of La Ruche and CAI documents on May 25 and 26, 2006. The document production procedures are described in the Declaration of Marcia Hancock, attached to this Opposition as Exhibit A.

Mr. Zambrana moved for a stay on July 11, 2006. On July 12, 2006 Judge Facciola stayed discovery and requested additional briefing on the disqualification motion. Judge Facciola denied Mr. Zambrana's motion to disqualify counsel for the Joint Parties on October 6, 2006. Mr. Zambrana appealed and filed objections to Judge Facciola's order on October 20, 2006. The Joint Parties moved for sanctions on October 31, 2006.

The Court denied the Joint Parties' motion for sanctions and overruled Mr. Zambrana's objections at a December 12, 2006 pretrial hearing. The Court then set deadlines for expert disclosures as well as the end of discovery. Mr. Zambrana's expert disclosure and written report were due on January 31, 2007. The Joint Parties were required to submit any rebuttal reports on February 28, 2007.

During the December 12, 2006 pretrial hearing, counsel for Mr. Zambrana noted that he had "objections" regarding written discovery. However, between December 12, 2006 and January 31, 2007, counsel for Mr. Zambrana made no attempt to either raise his objections or seek a meet and confer regarding those objections with counsel for the Joint Parties. The first counsel for the Joint Parties heard of Mr. Zambrana's alleged difficulties with expert review was in his Statement Pursuant to Civil Procedure Rule 26(a)(2) ("Rule 26 Statement"), which he filed on January 31, 2007.

Mr. Zambrana's Rule 26 Statement described, in relevant part, the anticipated testimony of Mr. Bert Swain – Certified Public Accountant and Fraud Examiner. Rule 26 Statement at 2. Mr. Zambrana specified that Mr. Swain: (1) "will testify that he has reviewed the financial

2

records and tax returns made available to Mr. Zambrana by said opposing parties"; (2) "is of the opinion that said records and tax returns reveal an apparent intermingling of funds of the corporations, and apparent payment for some of Mr. Cauderlier's personal needs by La Ruche, Inc."; and (3) "concludes that there is a clear need for an accounting of the financial transactions of [the Joint Parties], to determine the appropriate accounting for each party …." *Id.* However, Mr. Zambrana's Rule 26 Statement contained no written report as required by Fed. R. Civ. P. 26(a)(2)(B). It contained neither a statement recounting the bases for Mr. Swain's opinions nor a description of the data supporting those opinions. The Rule 26 Statement did not contain exhibits and did not describe the compensation Mr. Swain was to receive for his analysis and testimony.

Mr. Zambrana has now requested that this Court appoint "an accountant or auditor-master to perform an accounting … of the financial and other business transactions of [the Joint Parties]." Motion at 1. Mr. Zambrana argues that such a measure is needed for the Court to "restrict itself to determining the various parties' entitlements …." *Id.* at 2. Mr. Zambrana also claims that if his Motion were granted, "[t]he Court would already have the extensive, sometimes contradictory, financial transactional information in hand, in the form of a formal accounting, rather than having the information adduced at trial." *Id.*

## DISCUSSION

Mr. Zambrana's Motion should be denied. First, Mr. Zambrana has wholly failed to identify any law that supports his Motion. Second, the Motion is an impermissible attempt to avoid this Court's unequivocal order setting a discovery cutoff deadline. Third, Mr. Zambrana's Motion attempts to secure relief on the pleadings without meeting the standards for receiving that kind of relief. Fourth, the Motion impermissibly requests that Mr. Zambrana's evidentiary burdens and costs be shifted to the Joint Parties. Finally, the Motion is premature in that Mr. Zambrana has not proven that he has a right to an accounting.

**I.    THE MOTION FAILS TO IDENTIFY ANY SUPPORTING LAW**

Local Civil Rule 7(a) requires, in relevant part, that "[e]ach motion shall include or be accompanied by a statement of the specific points of law and authority that support the motion …." Mr. Zambrana's Motion fails to meet this most basic requirement. The Motion and attached Points and Authorities contain neither case citations nor a description of any authority under which this Court could grant Mr. Zambrana the requested relief. The Motion and the Points and Authorities refer only to Fed. R. Civ. P. 7 and LCvR 7(m). Motion at 1-2; Points and Authorities at 1. However, LCvR 7(m) requires counsel to discuss non-dispositive motions[1] and Fed. R. Civ. P. 7 merely describes the pleadings allowed and the form of motions. Neither rule either pertains to or authorizes motions in *limine* or the appointment of accountants or an "Auditor-Master." Because Mr. Zambrana fails to provide <u>any</u> legal authority in support of his Motion, the Joint Parties have been given neither "notice of the specific bases for [the] motion" nor "adequate or fair opportunity to respond."[2] The Motion should therefore be denied.

**II.    THE MOTION WOULD CIRCUMVENT BOTH THIS COURT'S ORDER AND THE RULES OF PROCEDURE**

Mr. Zambrana's expert reports were due on January 31, 2007. Although Mr. Zambrana filed an expert disclosure, he did not produce a written expert report prepared and signed by his witness. Despite counsel for the Joint Parties bringing this failure to his counsel's attention, Mr. Zambrana has still not complied. This ongoing failure – and the Joint Parties' resultant

---

[1] Despite Mr. Zambrana's citation to LCvR 7(m), counsel for Mr. Zambrana did not discuss the Motion – at least as it was filed – with counsel for the Joint Parties. Counsel for Mr. Zambrana proposed that the parties collectively seek an accounting for which all would share the costs. The Motion, however, demands that the Joint Parties alone bear those accounting costs. The difference between the discussed motion and the motion filed with this Court is, at a minimum, inconsistent with the spirit of LCvR 7(m).

[2] *Washington v. Thurgood Marshall Academy,* 230 F.R.D. 18, 21 (D.D.C. 2005); *see also Steinbuch v. Cutler,* 463 F. Supp. 2d 4, 8-9 (D.D.C. 2006) (Court denies a similarly unsupported motion).

inability to enlist rebuttal expertise – should preclude Mr. Swain's testimony.[3]

Seeking to avoid the problems of proof that stem from his failure, Mr. Zambrana now asks this Court to appoint an accountant to perform the very same analysis Mr. Swain was engaged to perform. Where Mr. Swain was originally slated to testify regarding his analysis of the financial transactions between the Joint Parties (Rule 26 Statement at 2), Mr. Zambrana would have the Court appoint an accountant "for the purpose of conducting an accounting … of the financial and other business transactions of each of the Joint Parties" and "ascertain[ing] the nature of … the relationships among the Joint Parties themselves, including sorting out their respective financial and property holdings …." Motion at 2; Motion Points and Authorities at 1.[4] This Court should deny Mr. Zambrana's attempt to ignore Court deadlines and the Rules of Civil Procedure with impunity.

## III.    MR. ZAMBRANA'S MOTION IS AN ATTEMPT TO OBTAIN DISPOSITIVE RELIEF WITHOUT MEETING THE STANDARDS FOR SAME

Mr. Zambrana seeks, through his "Motion in *Limine*," the very same relief he initially sought in his pleadings. In his Answer and Counterclaim as well as his Third-Party Complaint, Mr. Zambrana sought an order from this Court requiring the Joint Parties account for all monies

---

[3] *See* Fed. R. Civ. P. 26(a)(2)(B) ("Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case … be accompanied by a written report prepared and signed by the witness"); Fed. R. Civ. P. 37(c)(1) ("A party without substantial justification fails to disclose information required by Rule 26(a) … is not, unless such failure is harmless, permitted to use as evidence at a trial …"); *Riddick v. Washington Hospital Center,* 183 F.R.D. 327, 330 (D.D.C. 1998) ("[T]he failure to submit an expert's report ordinarily results in the exclusion of the expert witness' testimony at trial").

[4] Mr. Zambrana claims that an appointment is necessary because "[t]he sheer volume of papers required to sort out the dollars attributable to each transaction among the Joint Parties … would overwhelm any trial court." The Joint Parties submit that the "sorting out" to which Mr. Zambrana refers is precisely what Mr. Zambrana's expert should have done and presented in an expert report. Having failed to obtain the documents his expert wanted through discovery, Mr. Zambrana attempts to avoid the consequences by having the Court appoint an auditor.

Mr. Zambrana was obliged to obtain necessary discovery. To the extent he believed materials had not been produced, Mr. Zambrana should have sought a meet and confer and, if that effort proved unsuccessful, filed a motion to compel. Yet Mr. Zambrana did not raise his concerns with opposing counsel until several days after his expert's report was due and has not filed a motion to compel. Mr. Zambrana now seeks to be rewarded for failing to gather evidence that he believes is necessary for his case.

they have received from one another. *See* Zambrana Answer and Counterclaim at 11-12; Zambrana Third-Party Complaint at 15-17. The pleadings' description of that requested relief matches – nearly word for word – the language Mr. Zambrana has now used in his Motion. *Compare* Answer and Counterclaim at 11-12 to Motion at 2-3.

Although it demands the relief sought in his pleadings, Mr. Zambrana's Motion does not meet the high standards that apply to dispositive motions.[5] The Motion neither establishes that Mr. Zambrana has a right to the requested relief as a matter of law nor that there are no material facts in dispute.[6] Nor does the Motion establish Mr. Zambrana's right to the relief requested despite factual inferences that must be drawn in the Joint Parties' favor.[7] Mr. Zambrana cannot be granted the benefits of a dispositive motion without meeting the associated burdens of proof. The Motion should therefore be denied.

## IV.    THE MOTION IMPERMISSIBLY ATTEMPTS TO SHIFT THE BURDENS AND RISKS OF PROVING MR. ZAMBRANA'S CASE TO THE JOINT PARTIES

It is axiomatic that claimants bear both the burden of proving their claims and "the risk of failing to prove [them]."[8] Further, litigants may not simply shift their litigation fees and costs to their opponents.[9] Yet Mr. Zambrana seeks to shift those burdens and costs in his Motion.

---

[5] In effect, the Motion is analogous to a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings. The Joint Parties will not address whether Mr. Zambrana's Motion would either be considered untimely or converted to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(c).

[6] *E.g., Transworld Products Co., Inc. v. Canteen Corporation,* 908 F. Supp. 1, 1-2 (D.D.C. 1995) ("A court will grant a motion for judgment on the pleadings only if, after the close of the pleadings, no material fact remains in dispute, and the moving party is entitled to judgment as a matter of law. [....] The Court must accept as true all factual allegations and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party") (citations omitted).

[7] *Id.*

[8] *Schaffer v. Weast,* 546 U.S. 49, 126 S. Ct. 528, 534 (2005). *See also id.* citing 2 J. Strong, McCormick on Evidence §337, p.412 (5th ed. 1999) ("The burdens of pleading and proof with regard to most facts have and should be assigned to the plaintiff who generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure or proof of persuasion") and C. Mueller & L. Kirkpatrick, Evidence § 3.1, p.104 (3d ed. 2003) ("Perhaps the broadest and most accepted idea is that the person who seeks court action should justify the request, which means that the plaintiffs bear the burdens on the elements in their claims").

[9] *Cf. Citizens Coord. Committee on Friendship Heights, Inc. v. WMATA,* 765 F.2d 1169, 1173-74 (D.C. Cir. 1985) (Court rejects effort to recover fees and litigation costs in common law action); *Fresh Kist Produce, L.L.C. v. Choi*

Mr. Zambrana asks this Court to appoint an expert – at the Joint Parties' expense –so that he may prove his claims while simultaneously shifting the burdens associated with that expert to others.[10]  This Court should reject Mr. Zambrana's attempt to shift the most basic burdens and risks associated with his pursuit of litigation to his opponents.

## V.    MR. ZAMBRANA HAS NOT PROVEN THAT HE HAS A RIGHT TO AN ACCOUNTING

Courts have described an accounting as "a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another."[11]  An accounting "is an extraordinary remedy" and is granted "only when legal remedies are inadequate."[12]  "Such relief may be obtained at the close of a litigation … as long as the [claimant]" meets his burden of proof.[13]

Mr. Zambrana has not met his burden of proof for an accounting.  Sixteen boxes of accounting and other records were made available to Mr. Zambrana through the discovery process.  Other materials had been produced to Mr. Zambrana for review in 2005.  As with the 2006 production, Mr. Zambrana, not his counsel, reviewed the materials and selected certain documents for copying.  Mr. Zambrana cannot claim that other legal remedies are "inadequate" since he had only to enlist already identified expertise – Mr. Swain – to analyze those records and thereby determine how much "money is due him" from the Joint Parties.  Mr. Zambrana would

---

*Corp., Inc.,* 352 F. Supp. 2d 118, 125-26 (D.D.C. 2005) (Court notes that litigants usually bear their own litigation costs).

[10] *See* Section II, *supra*; Motion at 2 (requesting that this Court "order the Joint Parties, jointly and severally, to pay the costs and expenses related to such accounting or accountings …").  Even accepting the express rationale for Mr. Zambrana's Motion – which the Joint Parties have not – Mr. Zambrana's request that the Joint Parties alone bear the costs contradicts that rationale.  If the appointment would truly assist this Court in determining the merits of this case – an enhancement that would presumably benefit all parties – there is no reason for the Joint Parties to exclusively bear the costs.

[11] *Bradshaw v. Thompson,* 454 F.2d 75, 79 (6th Cir. 1972).

[12] *Id.*

[13] *Bates v. Northwestern Human Services, Inc.,* 466 F. Supp. 2d 69, 103 (D.D.C. 2006).

have this already "extraordinary remedy" become even more extraordinary by demanding it prior to the close of litigation and before he could possibly prove it to be necessary. This Court should reject Mr. Zambrana's premature and unsupported accounting demand.

## CONCLUSION

For the reasons set forth above, Sergio Zambrana's Motion in *Limine* for Accounting by Court-Appointed Accountant or an Auditor-Master should be denied.

Dated: March 26, 2007

Respectfully submitted,

Robert L. Green, Jr. (D.C. Bar No. 935775)
James B. Boles (D.C. Bar No. 471818)
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 783-0800
(202) 383-6610 – facsimile
greenr@howrey.com
bolesj@howrey.com

Attorneys for Cauderlier & Associates, Inc.,
Jean Claude Cauderlier, and La Ruche, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CAUDERLIER & ASSOCIATES, INC.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 05-1653 (ESH)** |
| **SERGIO ZAMBRANA,** | ) | |
| | ) | |
| **Defendant/Third-Party** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEAN CLAUDE CAUDERLIER** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **LA RUCHE, INC.** | ) | |
| | ) | |
| **Third-Party Defendants** | ) | |
| | ) | |

## PROPOSED ORDER

Upon consideration of Sergio Zambrana's Motion in *Limine* for Accounting by Court-Appointed Accountant or an Auditor-Master, it is hereby **ORDERED and ADJUDGED** this ____ day of _____, 2006, that Mr. Zambrana's Motion is hereby **DENIED;** and

**SO ORDERED**.

_____
Ellen S. Huvelle
United States District Court Judge

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAUDERLIER & ASSOCIATES, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Civil Action No. 05-1653 (ESH)** |
| **SERGIO ZAMBRANA,** ) | |
| ) | |
| **Defendant/Third-Party** ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **JEAN CLAUDE CAUDERLIER** ) | |
| ) | |
| **And** ) | |
| ) | |
| **LA RUCHE, INC.** ) | |
| ) | |
| **Third-Party Defendants** ) | |
| ) | |

## DECLARATION OF MARCIA HANCOCK

I, Marcia Hancock, hereby depose and state the following:

1.    I reside at 2034 Pawlet Drive in Crofton, Maryland.  The zip code is 21114.

2.    I am a 2001 graduate of Howard University.  I received a Masters of Public Administration degree from American University in 2003.  I also received a certificate of paralegal studies from Georgetown University in August 2003.

3.    I worked as a paralegal at Howrey LLP between July 5, 2005 and June 23, 2006.  I left Howrey to pursue other employment opportunities.

4.    While at Howrey, I was assigned to work on the above-captioned matter.

5.    I maintained the pleading file, obtained and stored client documents, and worked with litigation support vendors as needed.

6.    In mid-May 2006, Mr. Boles told me that Mr. Zambrana and his attorney, Mr. Hamberger, would review documents produced by the client in Howrey's offices. I arranged the conference space for the document review and made sure that the sixteen boxes of documents were transferred to that space at the appropriate time.

7.    Mr. Zambrana came to the office on May 24 and 25, 2006 and reviewed the client documents. Mr. Zambrana reviewed the documents by himself. Mr. Zambrana was not accompanied by his attorney or anyone from his lawyer's firm.

8.    While Mr. Zambrana was in the office, I was identified as the contact if he had any questions or requests. Mr. Zambrana and I discussed the supplies he needed and how he could arrange for photocopying. Mr. Zambrana and I agreed that he would flag the documents he wished to copy and then mark those flags with the number "1" if he wanted a single page copied and mark them with the words "whole document" if he wanted the entire document copied. (See Exhibit 1). When he was done, Mr. Zambrana and I discussed the flags and the markings that he used.

9.    I informed Mr. Boles that Mr. Zambrana had completed the document review and had selected a small portion of the documents for copying. I arranged for Encore Legal Solutions, a copy vendor Howrey frequently uses, to pick up the boxes with flags in them. I explained the flags and the markings to Encore's representative at pick up and asked that Encore copy documents consistently with the flagging done by Mr. Zambrana.

10.    After the vendor delivered the originals and the copies to me, Mr. Boles asked that I spot check the copies. I did so by checking a number of the copied documents against those that Mr. Zambrana had flagged. I confirmed that the vendor had accurately copied the flagged documents. I did not identify any instances where the copy vendor had either failed to copy a flagged document or had copied more than Mr. Zambrana had requested. I reported the results of my check to Mr. Boles and also gave him Encore's invoice.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24 day of March, 2007, in Crofton, Maryland.

_____
Marcia Hancock

# EXHIBIT 1



## Commercial Money Market Investment

01          2030000982662  072  130          0    32          6,531

CAUDERLIER & ASSOCIATES, INC.
1039 31ST STREET NW
WASHINGTON DC   20007                          CB

---

## Commercial Money Market Investment                     8/25/1999 thru 8/31/1999

Account number:          2030000982662
Account holder(s):       CAUDERLIER & ASSOCIATES, INC.

Taxpayer ID Number:

### Account Summary

| | |
|---|---|
| Opening balance 8/25 | $0.00 |
| Deposits and other credits | 60,000.00 + |
| Interest paid | 27.72 + |
| **Closing balance 8/31** | **$60,027.72** |

### Deposits and Other Credits

| Date | Amount | Description |
|---|---|---|
| 8/25 | 60,000.00 | DEPOSIT |
| 8/31 | 27.72 | INTEREST FROM 08/25/1999 THROUGH 08/31/1999 |
| **Total** | **$60,027.72** | |

### Interest

| | |
|---|---|
| Number of days this statement period | 7 |
| Annual percentage yield earned | 2.85% |
| Interest earned this statement period | $27.72 |
| Interest paid this statement period | $27.72 |
| Interest paid this year | $27.72 |

### Daily Balance Summary

| Dates | Amount | Dates | Amount | Dates | Amount |
|---|---|---|---|---|---|
| 8/25 | 60,000.00 | 8/31 | 60,027.72 | | |



# FIRST UNION
*SMALL BUSINESS CAPITAL*

January 11, 2000

*AMENDED INSTRUCTIONS*

Kimberly Leaman, Esq.
7501 Greenway Center Drive
Suite 21
Greenbelt, MD  20770
(301) 474-7774

Commercial Settlements, Inc.
Nancy Piel, Escrow Officer


RE:     **LENDER'S INSTRUCTIONS TO CLOSING ATTORNEY**

|  |  |
|---|---|
| **Your Commitment No.:** | **99-1634** |
| **Borrower:** | **Cauderlier & Associates, Inc. and La Ruche, Inc.** |
| **Lender:** | **The Money Store Investment Corporation** |
| **Lender Loan Number:** | **110354560** |
| **SBA Loan Number:** | **PLP 334-164-4001** |

Dear Kim: (hereafter referred to as "Closing Agent"):

**PRIOR TO FUNDING BORROWER'S LOAN IN THE AMOUNT OF $965,000.00,
THE MONEY STORE INVESTMENT CORPORATION (hereafter referred to as "Lender") WILL
REQUIRE:**

1.     "Lender" must be in receipt of the following items 24 hours prior to requesting a wire.  Your
        wire instructions, Grant Deed (draft acceptable), Estimated Closing Statement, fully executed
        escrow instructions, a signed copy of these instructions, **and** the following miscellaneous
        conditions:  If not applicable, insert "None". We will not fund our loan until we receive a fax copy
        to the undersigned at (800) 485-0240.

2.     In connection with the above-referenced transaction, the documents checked below are hereby
        enclosed:
        ☒  SBA National Authorization (with Borrower Certification and Loan Agreement attachments)
        ☐  Business Loan Agreement
        ☐  Construction Loan Agreement (including Exhibits A and B)
        ☒  Promissory Note(# originals sent: 1)
        ☒  Settlement Sheet
        ☒  Compensation Agreement (# originals sent:  5)
        ☐  Mortgage (# originals sent:  0)
        ☒  Deed of Trust (# originals sent:  1)
        ☐  Security Deed for Georgia (# originals sent:  1)
        ☐  Deed of Trust  in the amount of $  0.00 to be in **first lien position** relative to Lender's
             Deed of Trust  in the amount of $  0.00 (504 option)
        ☐  Commercial Guaranty (# originals sent:  1)
        ☒  SBA Unconditional Guaranty (# originals sent:  1)
        ☐  Resolution to Borrow/Guaranty (# originals sent:  1)

☐ Commercial Security Agreement
☐ Standby Agreement (# originals sent: 1)
☒ Hazardous Substances Certificate and Indemnity *(do not record)*
☐ Seller Certification for Environmental Questionnaire
☒ Borrower Compliance Agreement
☐ Assignment of Lease and Rents    (# originals sent: 1)
☒ Subordination Agreement (# originals sent: 1)
☒ Sublessor's Consent (# originals sent: 1)
☐ Certificate of Borrower's Non-Encumbrance (# originals sent: 1)
☐ Compliance Agreement *(obtain Borrower's signature only)*
☐ Assignment of Construction Contract
☐ Contractor Agreement
☐ Escrow Acceptance Letter
☐ Seller Certification *(to be executed by Seller)*
☐ Personal Financial Statement (# originals sent: 1)
☒ Miscellaneous Documents for Signature (e.g., tax returns, financials, W-9s):
  W-9 form, 1120's for 1996-1998

Our Loan Documents are to be signed and dated in the presence of the Closing Agent, and after execution are not to be removed from the custody and control of Closing Agent, except for overnight delivery to Lender. Closing Agent is specifically requested to refrain from inserting *any* date on the Settlement Sheet *and* the disbursement date within the first paragraph of the Promissory Note, which shall reflect the date of disbursement of loan proceeds. Other than these two exceptions, all Loan Documents are to *reflect the date the document was executed*.

3. **GENERAL REQUIREMENTS**

   a) Lender is to be at no expense in this transaction.
   b) No loan proceeds may be used to satisfy any outstanding tax liens.
   c) Do not alter or modify (by use of corrective tape, fluid or any other means) any of Lender's documents without the *Undersigned's* express written authorization.
   d) Lender reserves the right to modify, amend or withdraw these instructions and/or Lender's loan proceeds at any time prior to the recording of Lender's Documents.
   e) Any deviation from the instructions without Lender's express authorization will be at your own risk.
   f) Lender will **not** accept any document which has been executed with a Power of Attorney.
   g) The use of Lender's funds and/or documents is your warrant to Lender that you have complied or will comply with the IRS 1099 reporting requirements, if applicable.
   h) Please return all documents fully executed along with certified copies of all recorded documents to the undersigned. Closing Agent is responsible for also including a copy of the final escrow closing statement reflecting Borrower's cash injection requirement of **$107,421.00**. **If applicable, Title Policy is to be issued immediately upon recordation of our documents.** Title Policy and all original recorded documents are to be forwarded to Lender at: P.O. Box 15143, Sacramento, CA 95851.
   i) Please return all documents (signed and dated where indicated) and checks within 48 hours to Lender at: 707 3rd Street, Mail Code M–05236, West Sacramento, CA 95605 Attn.: Sheryl A. Cluck.
   j) Closing Agent is to provide copies of **all** signed documents to Borrower.
   
   _____ **[Borrower(s) Initials]**
   
   k) If checked ☒, Closing Agent is to provide copies of the enclosed SBA Forms (722) Equal Employment Opportunity Poster and SBA Form (793) Notice to New SBA Borrowers.
   
   _____ **[Borrower(s) Initials]**

4. **MISCELLANEOUS REQUIREMENTS:**

2

Vers. 08/30/99

a) Closing Agent to prepare the following documents and attach to Deed of Trust for recording:

(1) Department of Finance and Revenue Claim for Exemption from Real Property Recordation Tax or Real Property Transfer Tax (Form FP5).  *N/A*
(2) Department of Finance and Revenue, Office of Real Property Taxes combined Real Property Deed Recordation Tax and Real Property Transfer Tax Return (Form FP7).
(3) Affidavit regarding Class 1 Property or Class 2 Property. *N/A*

b)  Closing date to be extended on purchase contract.

c)  Borrower needs to execute Lease Agreement between Cauderlier & Associates, Inc. and La Ruche, Inc.  Said lease needs to have term complete date January          , 2025.

5.  **UPON COMPLIANCE WITH THE ABOVE REQUIREMENTS, FUNDS ARE TO BE DISBURSED AS FOLLOWS:**  Loan proceeds in the amount of $940,079.00 for credit to Borrower will be transferred via wire to your account upon your demand and compliance with Lender's instructions.  PLEASE ALLOW 24 HOURS from the time funds are requested to be received.  These funds are to be disbursed as follows:

| | |
|---|---|
| **Land (and/or Building) Purchase** | **$918,000.00** |
| **(Yes! 1035 Limited Partnership)** | |
| **Soft Costs** | **$22,079.00** |
| **Made Payable to Kimberly Leaman, Esq.** | |
| **TOTAL WIRE TRANSFER** | **$940,079.00** |

The remaining loan proceeds ($24,921.00) will be disbursed by Lender.

6.  **CLOSING AGENT TO COLLECT FROM BORROWER FUNDS IN AT LEAST THE AMOUNT OF $107,421.00.**  These funds are to be disbursed as follows:

a) Closing Agent to collect from Borrower funds in at least the amount of $107,421.00 These funds are to be disbursed as follows:

| | |
|---|---|
| **Borrower Cash Injection Toward Purchase of Land (and/or Building)** | **$102,000.00** |
| **(Yes! 1035 Limited Partnership )** | |
| **Soft costs** | **$5,421.00** |
| **TOTAL** | **$107,421.00** |

b) Closing Agent to collect additional funds from Borrower, as necessary, to pay costs related to this transaction.

c) Escrow is responsible for collecting from Borrower and remitting payment of $2,479.50 to Lender as interest from the date of loan closing to first day of the following month.  Interest is calculated on a 360 day year, 30 day month, plus the day of closing.  Interest per diem is $247.95. If this loan does not close on January 21, 2000, Closing Agent must call for updated figures.

Vers. 08/30/99

7.  You are hereby authorized to record Lender's Purchase Money Deed of Trust, Lessee's Assignment of Lease and Subordination and Sublessor's Consent, (hereinafter "Recordable Documents") when you are in a position to comply with the instructions contained herein and cause issuance of the following:

   a) ALTA Extended Policy of Title Insurance as indicated below insuring Lender in the amount of $965,000.00 as follows:
   Property Address: 1035, 1037, 1039 31st. NW , Washington, DC 20007
   Lien Position:  First
   Trustor:Cauderlier & Associates, Inc.
   County:District of Columbia

   (1) Schedule B-Section 1 Requirements of Title Commitment No. 99-1634, dated October 22, 1999, for the above-referenced transaction are to be complied with and removed from Title Policy. Item C) (b) to be terminated.
   (2) Schedule B-Section 2 Exceptions, Numbers 1, 2, 3, 4 and 4 are to be removed.
   (3) Schedule B-Section 2 Exceptions, Numbers 5 is to be paid current and/or show as a lien not yet due or payable. 5, 9, 10, and 11
   (4) Schedule B-Section 2 Exception, Number 7 is approved to remain on Title policy. with affirmative coverage as shown.
   (5) All taxes, assessments and bonds, if any, are to be paid current, and Borrower not subject to any "roll-back" taxes.

8.  **Closing Agent is hereby instructed to collect sufficient funds to prepay for the endorsements checked below. All funds collected from the Borrower are to appear on the escrow closing settlement statement.** Lender requires the endorsements checked below (*or the local equivalents*) to be included with Lender's Policy of Title Insurance. With respect to any funds to be held by Closing Agent on behalf of Borrower (for example, funds necessary for Foundation or Date-Down endorsements), Closing Agent to provide Lender with a copy of its "Funds Held Letter" or equivalent.

   ☒ CCRs–Comprehensive, Restrictions, Encroachments, Minerals*(ALTA 9, CLTA 100, or the local equivalent)*
   ☒ Unlocated Easements – waived per Sheryl Cluck 1/20/00    CSI By nnp 1/21/00
   ☒ Variable Rate *(ALTA 6, CLTA 111.5, or the local equivalent)*
   ☐ Address, Improvement Type, Location *(CLTA 116 or the local equivalent)*
   ☐ Environmental if available for commercial property *(ALTA 8 or the local equivalent)*
   ☐ Condominium
   ☐ Planned Unit Development
   ☐ Zoning
   ☐ Survey
   ☐ Water Rights
   ☐ Modification to Deed of Trust
   ☐ Additional Advance
   ☐ Foundation *(CLTA 102.5 or the local equivalent)*
   ☐ Approximately        Date-Down endorsements at $  0.00 each for a total of $  0.00.
   ☐ Additional Endorsements:

Please acknowledge your receipt and acceptance of these instructions by executing a copy of this letter and returning it to the attention of the undersigned.

Sincerely,

4                                    Vers. 08/30/99

THE MONEY STORE INVESTMENT CORPORATION


By: _____
     Sheryl Cluck, Senior Loan Processor

enc.

---

### CLOSING AGENT AGREEMENT:

**We acknowledge receipt of the loan documents described above and we agree to act strictly in accordance with the foregoing instructions.**

Dated: _1/21/00_          Received By:  Kimberly Leaman, Esq.

                            By: _____
                                ☐ **Escrow Officer**
                                ☒ **Attorney**

Commercial Settlement, Inc.

By: _____
   Nancy Pie, Escrow Officer

*First Union Small Business Capital is comprised of The Money Store Investment Corporation (TMSIC), The Money Store Commercial Mortgage, Inc. (TMSCMI) and The Money Store of New York, Inc., all subsidiaries of The Money Store, Inc. and First Union National Bank. Loan terms and conditions may vary based upon lending program, subsidiary and applicant qualification. Loans made by TMSIC and TMSCMI will be made pursuant to a Department of Corporations California Finance Lenders License. TMSIC and TMSCMI hold Arizona Licenses BK 7991 and BK 14330, respectively, and are Georgia Residential Mortgage Licensees. ©1999 First Union Corporation.*

Vers. 08/30/99

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Memorandum of Cauderlier &

Associates, Inc., La Ruche, Inc., and Jean Claude Cauderlier in Opposition to Sergio Zambrana's

Motion in *Limine* for Accounting by Court-Appointed Accountant or an Auditor-Master were

served by operation of the Court's electronic filing system upon all attorneys of record registered

with the Court's ECF system, and a true and accurate copy of the foregoing instrument was

forwarded by overnight delivery to those attorneys not registered with the Court's ECF system,

this 26th day of March 2007, as indicated below, to:

> Benny L. Kass, Esq.
> Jeffrey M. Hamberger, Esq.
> KASS, MITEK & KASS, PLC
> 1050 17th St., N.W. #1100
> Washington, D.C. 20036
> blkass@kmklawyers.com
> jhamberger@kmklawerys.com
> (202) 659-6500

James B. Boles