IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUDERLIER & ASSOCIATES, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-1653 (JMF) |
| SERGIO ZAMBRANA, | ) |
| Defendant/Third-Party Plaintiff | ) |
| v. | ) |
| JEAN CLAUDE CAUDERLIER | ) |
| And | ) |
| LA RUCHE, INC. | ) |
| Third-Party Defendants | ) |

## MOTION OF CAUDERLIER & ASSOCIATES, INC. FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Cauderlier & Associates, Inc. ("CAI") respectfully moves this Court for a declaratory judgment that Jean Claude Cauderlier is the sole shareholder of CAI and Sergio Zambrana has no ownership interest in CAI. CAI also moves that this Court summarily deny Mr. Zambrana's counterclaims. Summary relief is appropriate because the undisputed facts demonstrate that: (1) Mr. Zambrana's counterclaims against CAI have been extinguished by the District of Columbia's applicable statute of limitations;
(2) Mr. Zambrana has no ownership interest in CAI; and (3) Mr. Zambrana has no right to either an accounting or monetary judgment from CAI.

In support of this Motion, CAI submits: (1) the attached memorandum in support; (2) the declaration of Mr. Cauderlier (Exhibit 1); (3) transcript excerpts from the January 30, 2007 deposition of Mr. Zambrana (Exhibit 2); and (4) transcript excerpts from the March 3, 2006 deposition of James Powers (Exhibit 3). CAI also submits a proposed Order (Exhibit 4).

Dated: May 16, 2007

Respectfully submitted,

Robert L. Green, Jr. (D.C. Bar No. 935775)
James B. Boles (D.C. Bar No. 471818)
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 783-0800
(202) 383-6610 – facsimile
greenr@howrey.com
bolesj@howrey.com

Attorneys for Cauderlier & Associates, Inc.,
Jean Claude Cauderlier, and La Ruche, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUDERLIER & ASSOCIATES, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| SERGIO ZAMBRANA, | ) Civil Action No. 05-1653 (JMF)<br>)<br>) |
| Defendant/Third-Party Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| JEAN CLAUDE CAUDERLIER | )<br>) |
| And | )<br>) |
| LA RUCHE, INC. | )<br>) |
| Third-Party Defendants | )<br>) |

### MEMORANDUM OF CAUDERLIER & ASSOCIATES, INC. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Cauderlier & Associates, Inc. ("CAI") respectfully moves this Court for summary judgment pursuant to Fed. R. Civ. P. 56. The undisputed facts demonstrate that CAI is entitled to a declaratory judgment holding that: (1) Sergio Zambrana's counterclaims against CAI have been extinguished by the District of Columbia's statute of limitations; (2) Mr. Zambrana has no ownership interest in CAI; and (3) Mr. Zambrana has no right to either an accounting or monetary judgment from CAI.

## STATEMENT OF UNDISPUTED FACTS

Jean Claude Cauderlier, with the assistance of counsel, formed CAI on August 19, 1999. Cauderlier Declaration ("Decl.")[1] at 2. In its August 19, 1999 Unanimous Written Consent in Lieu of the Organizational Meeting of the Board of Directors, CAI resolved, in part, to: (1) approve and accept its Articles of Incorporation and Bylaws; (2) elect Mr. Cauderlier President and Treasurer; (3) elect James "Jamie" Powers[2] Secretary; (4) elect Mr. Zambrana as Vice President and Assistant Secretary; and (5) issue five hundred shares of common stock to Mr. Cauderlier in exchange for $60,000. Cauderlier Decl., Ex. D at 1-3. The August 1999 Consent also resolved that "the President of the Corporation be and hereby is authorized to enter into an agreement for the purchase of 1035-1039 31st Street, N.W., at a purchase price of $1,100,001.00." *Id.*

Mr. Cauderlier began negotiating the details of the property purchase with Yes Inc. – the former owner of the property – on behalf of CAI in September 1999. Ex. 1, Cauderlier Decl. at 2. CAI closed the purchase from Yes Inc. on January 21, 2000. *Id.* at 3. While present at the closing, Mr. Zambrana played no substantive role in that transaction. *E.g.*, Zambrana Transcript ("Tr.")[3] at 58-63. Although the parties disagree whether it took place either a day prior to or the

---

[1] Attached hereto as Exhibit 1.

[2] Mr. Powers served as counsel to Mr. Cauderlier and CAI. Ex. 3, Powers Tr. at 18-19, 22-24. Mr. Powers never represented Mr. Zambrana. *Id.* at 22-24; Ex. 2, Zambrana Tr. at 40-41:

> [Q] Had Mr. Powers ever represented you personally?
> [A] No.
> [Q] He'd never done any legal work for you?
> [A] No.
>    * * *
> [Q] Mr. Powers, have you ever –
> [A] No.
> [Q] – paid Mr. Powers any money?
> [A] No. He was never my lawyer.
> [Q] Did Mr. Powers ever tell you that he couldn't be your lawyer because he represented La Ruche?
> [A] Later on, yes.

[3] Attached hereto as Exhibit 2.

day of the January 21st closing, Mr. Zambrana met with Mr. Powers and Mr. Cauderlier and gave Mr. Cauderlier a $25,000 check made payable to La Ruche. Ex. 2, Zambrana Tr. at 99; Ex. 1, Cauderlier Decl. at 3.

Mr. Zambrana testified he tendered his check because he thought he was "putting in $25,000 as investment to buy a building." Ex. 2, Zambrana Tr. at 34. Although Mr. Zambrana, a corporate officer, understood that "CAI was an instrument to buy the land" (*id.* at 36-37), he believed that his check would allow him to become an individual owner of the land or "partner" in the building ownership. *Id.* at 36-37, 44. Mr. Zambrana concedes that, before writing his check, the parties: (1) never discussed how the land would be titled (*id.* at 37); (2) "never agree[d] on a percentage" of land ownership in exchange for his $25,000 (*id.* at 39); and (3) "never had any written document" describing the transaction (*id.* at 42). Although he was issued stock in La Ruche (*i.e.*, stock certificate No. 9 and replacement stock certificate No. 10), Mr. Zambrana asserts the 10 shares of La Ruche were issued in exchange for a pay cut and his foregoing an opportunity to partially own another restaurant in the early to mid-1990s.[4] Ex. 2, Zambrana Tr. at 65-76; *but see* Ex. 1, Cauderlier Decl. at 3-4; *id.*, Cauderlier Decl. Ex. K. Mr. Zambrana denied that the 10 shares of La Ruche were issued in exchange for his $25,000 check. Ex. 2, Zambrana Tr. at 80-81.

Mr. Powers confirmed that no agreement existed before Mr. Zambrana submitted his check. Mr. Powers testified that "[t]here's no quantification of the interest" that Mr. Zambrana was to receive in exchange of his check and that "[the interest] wasn't allocated between the two [corporations] that was the ambiguity, that was the open issue …. What percent of interest in each entity should be provided in light of the cash that was tendered on the eve of the settlement." Powers Tr.[5] at 52-53.

---

[4] CAI denies this assertion, but the assertion is not a material fact that prevents entry of summary judgment for CAI.

[5] Attached hereto as Exhibit 3.

3

After the January 21, 2000 closing, Cauderlier, Powers and Zambrana met at the restaurant property. Mr. Powers testified that the meeting occurred in February or March 2000. Powers Tr. at 62.[6] At some point during that meeting, Mr. Zambrana asked:

> Words to the effect, J.C. [Mr. Cauderlier] what do I get? What am I getting here? When are you going to give me my shares?

Ex. 3, Powers Tr. at 64. After agreeing that Mr. Zambrana demanded an interest in CAI, Mr. Powers described the following exchange between Mr. Cauderlier and Mr. Zambrana:

> Mr. Cauderlier said words to the effect of, Well, we still have to figure out how you hold this interest, what you get. And J.C. tried to offer Sergio, in this meeting, interest in La Ruche alone. To which Sergio indicated, No, I tendered money for the building, I want a piece of CAI which owns the building and that was my understanding of our deal, or our understanding, J.C. when I came forward and gave you this money, that I was helping you buy the building and therefore I should receive an interest in that building.

*Id.* at 65. After describing the course of the negotiations, Mr. Powers summarized the meeting's outcome as follows:

> I believe there was an agreement to grant stock, there wasn't quantification of stock to be granted. I believe it was an absolute meeting of the minds. That both parties said you'll get interest in both corporations. The quantum of that interest is not yet fixed. So, if you use comprehensive [agreement], as indicating that both the grant and the quantum of the grant representing comprehensive, there was not a comprehensive agreement reached at that time.

*Id.* at 70. During that meeting and on "many" prior occasions, Mr. Powers told Mr. Zambrana that he did not and could not represent Mr. Zambrana because he was counsel to Mr. Cauderlier, CAI, and La Ruche. Mr. Powers encouraged Mr. Zambrana to obtain separate counsel. Ex. 3,

---

[6] Mr. Zambrana was unable to recall that particular meeting but admitted that "[w]e had a lot of meetings." Ex. 2, Zambrana Dep. Tr. at 46. Mr. Zambrana attended Mr. Powers' deposition and was aware of his testimony. During his deposition, Mr. Zambrana neither disagreed with, nor contradicted, Mr. Powers' account.

4

Powers Tr. at 42-43; 73-75. Despite Mr. Powers' suggestion and admonition, Mr. Zambrana did not retain counsel. *E.g.*, Ex. 2, Zambrana Tr. at 85. No agreement was reached.

Mr. Cauderlier affirms the lack of an agreement between the parties. Mr. Cauderlier states that during the February/March 2000 meeting: (1) Mr. Zambrana asked what he was getting for his $25,000 check; (2) Mr. Cauderlier offered Mr. Zambrana the 10 percent interest in La Ruche that he had already received for the $25,000; (3) Mr. Zambrana refused Mr. Cauderlier's offer and counter-offered with a demand for interest in either CAI or the building; and (4) Mr. Cauderlier rejected Mr. Zambrana's counter-offer. Ex. 1, Cauderlier Decl. at 3-4.

The Zambrana and Powers testimony make clear that, as of February/March 2000, Mr. Zambrana had actual knowledge of a dispute whether he had any ownership interest in CAI. At the meeting, Mr. Cauderlier rejected Mr. Zambrana's demand for shares in CAI or in the land. Ex. 3, Powers Tr. at 65. Mr. Cauderlier's offer of 10 percent of La Ruche was also rejected. *Id.*; Ex. 1, Cauderlier Decl. at 3-4. There was simply no agreement. Mr. Powers advised Mr. Zambrana to retain separate counsel. Ex. 3, Powers Tr. at 42-43; 73-75. Mr. Zambrana did nothing. He did not retain counsel. He did not file suit. Only after Mr. Cauderlier announced in 2004 that he was considering selling La Ruche and CAI did Mr. Zambrana's assertion of ownership in CAI appear. Ex. 1, Cauderlier Decl. at 5.

In January 2000, La Ruche stock certificate No. 9 – granting Mr. Zambrana a 10 percent interest in La Ruche based on the $250,000 purchase price Mr. Cauderlier paid for La Ruche in 1987 – was issued in exchange for the $25,000 check in January 2000. *Id.* at 4; *see also* Cauderlier Decl. Exhibit K (Handwritten, signed corporate consent establishing that Mr. Zambrana had been issued replacement stock certificate No. 10 in June 2004 because the January 2000 certificate No. 9 for 10 shares had been lost).

On June 23, 2004, La Ruche stock certificate No. 10 (for 10 shares) was issued to Mr. Zambrana. *Id.* Certificate No. 10 was issued as a replacement for certificate No. 9 (also for 10 shares), previously issued to Mr. Zambrana but lost. *Id.* Mr. Cauderlier issued certificate No.

5

10 consistent with his offer of 10 percent of La Ruche for Mr. Zambrana's $25,000 check payable to La Ruche. Ex. 1, Cauderlier Decl. at 4. Although he signed the June 23, 2004 Consent to Action in Lieu of a Special Meeting of the Shareholders of La Ruche, Inc. (Ex. 1, Cauderlier Decl. Exhibit K), Mr. Zambrana denied that certificate No. 9 was issued in exchange for his $25,000 check. Ex. 2, Zambrana Tr. at 82-90. Mr. Zambrana testified that certificate No. 10 was stock issued under an earn-in agreement he had with Mr. Cauderlier. *Id.* While not directly relevant to this motion, it is apparent that there was no agreement between Mr. Cauderlier and Mr. Zambrana concerning the ownership of La Ruche.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the 'initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions ... which [it] believe[s] demonstrate the absence of a genuine issue of material fact."[7] "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonably [fact finder] could return a verdict for the nonmoving party.'"[8] "Thus, when reviewing a motion for summary judgment, a court must view all of the evidence in the light most favorable to the nonmoving party." *Id.*; *see also Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

### ARGUMENT

I.   **MR. ZAMBRANA'S COUNTERCLAIMS AGAINST CAI HAVE BEEN EXTINGUISHED BY THE STATUTE OF LIMITATIONS**

The District of Columbia statute of limitations, D.C. Code § 12-301, "extinguishes ... a claimant's remedy by withdrawing from the claimant the privilege of using the courts to enforce a right ...." *Riggs Nat'l Bank v. District of Columbia*, 581 A.2d 1229, 1241 (D.C. 1990). D.C.

---

[7] *Glenn v. Williams*, 2006 U.S. Dist. LEXIS 8687 at *26 (D.D.C. Feb. 21, 2006) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[8] *George v. Leavitt*, 407 F.3d 405, 410 (D.C. Cir. 2005).

6

Code §§ 12-301(2), (7), and (8) extinguishes contract actions, actions for the recovery of personal property, and actions not otherwise specified in the Section three years after those actions have accrued. "[A] claim accrues when the [claimant] knows of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing." *Cevenini v. Archbishop of Washington*, 707 A.2d 768, 771 (D.C. 1998). A claimant need not be "aware of each essential element of his cause of action" to be "charged with inquiry notice of his claims ...." *Id.* The statutory period "will not await [a claimant's] 'leisurely discovery of the full details of the alleged scheme'" and the claimant's "trust may not be blind for purposes of tolling the statute ...."[9]

Mr. Zambrana's unjust enrichment claims have been extinguished by D.C. Code §§ 12-301(7) and (8). This Court has previously held that unjust enrichment claims are subject to a three-year limitations period.[10] Mr. Zambrana's claims that CAI unjustly enriched itself in January 2000 when it obtained the property by allegedly using the $25,000 check made payable to La Ruche focuses on events that occurred five years and nine months before Mr. Zambrana filed his October 24, 2005 counterclaims. Even if Mr. Zambrana's unjust enrichment counterclaim related back to CAI's initial filing for declaratory relief — which it does not[11] — Mr. Zambrana's claims of unjust enrichment are still more than two years outside the three-year limitations period. At the latest, Mr. Zambrana was aware that he had been injured after his $25,000 check had been accepted by La Ruche in January 2000 but his demands for CAI shares were rebuffed in February or March 2000. By the February/March 2000 meeting, Mr. Zambrana had also received 10 shares in La Ruche[12] — shares that he either did not want or did not expect

---

[9] *Filloramo v. Johnston, Lemon & Co., Inc.*, 700 F. Supp. 572, 579 (D.D.C. 1988).

[10] *See, e.g., Perkins v. Nash*, 697 F. Supp. 527, 532 (D.D.C. 1988); *Nwahoa v. Onyeoziri*, 2006 U.S. Dist. LEXIS 84069 at *10-*11 (D.D.C. Nov. 20, 2006).

[11] *See, e.g., Hartford Acc. & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1119 (D.C. Cir. 1997) ("[A] genuine counterclaim, i.e., one going 'beyond matters of defense' ... 'must be viewed as an affirmative cause of action and *should therefore be tested apart from the primary claim in determining whether the statute of limitations would bar the counterclaim*'" (quoting *Sears, Roebuck and Co. v. Goudie*, 290 A.2d 826, 830 (D.C. 1972)) (emphasis in original).

[12] Ex. 1, Cauderlier Decl. Exhibit K.

7

to be the sum total of the interest he would gain in exchange for his check. Certainly at the point in the February/March 2000 meeting when Mr. Powers recommended that Mr. Zambrana obtain counsel, the action had accrued. From that point in 2000, Mr. Zambrana could not simply conclude that he "trust[ed] [Mr. Cauderlier one] hundred percent" and make absolutely no inquiry regarding his alleged interest in CAI until June 2004.[13]

Mr. Zambrana's claim for an accounting must fail because "courts customarily follow the statute of limitations even in equity cases where essentially legal relief, such as damages *or an accounting*, is sought."[14] Mr. Zambrana's demand for an accounting is nearly three years out of time. Mr. Zambrana has neither pled nor stated in his deposition testimony any rationale for the unreasonably long delay and lack of inquiry.

Because the events underlying Mr. Zambrana's non-declaratory relief counterclaims pertain to events that occurred more than five years ago – events which placed Mr. Zambrana on inquiry notice and evidenced the alleged injuries for which he seeks relief – those counterclaims have been extinguished by operation of D.C. Code § 12-301.

## II. THE UNDISPUTED FACTS ESTABLISH THAT MR. ZAMBRANA DOES NOT HOLD AN INTEREST IN EITHER CAI OR THE PROPERTY

The undisputed facts, taken in a light most favorable to Mr. Zambrana, establish that Mr. Zambrana does not hold an ownership interest in CAI or the property. CAI's undisputed corporate records – some of which bear Mr. Zambrana's signature – establish that CAI has issued only five hundred shares of common stock, all of which were purchased by Mr. Cauderlier on August 19, 1999 for $60,000. Ex. 1, Cauderlier Decl. Ex. D at 2. Mr. Zambrana does not claim

---

[13] Ex. 3, Zambrana Tr. at 55, 57-58; *Filloramo,* 700 F. Supp. at 579 (Injured party on inquiry notice could not rely on blind trust in the other party to toll the statute of limitations). In light of the sheer volume of meetings suggested by Mr. Zambrana (Zambrana Tr. at 46), he had many opportunities within the limitations period to inquire into the status of his alleged interest in CAI, thereby gauge the full extent of his apparent injury, and seek out counsel as Mr. Powers recommended in 2000.

[14] *Blankenship v. Boyle,* 329 F. Supp. 1089, 1112 (D.D.C. 1971) (citing *Columbian University v. Taylor,* 25 App. D.C. 124, 131 (1905)) (emphasis added).

to have been issued common stock in CAI. Mr. Zambrana has also produced no contract, diary entry, contemporaneous writing, or other written evidence suggesting that he either owns or was owed stock in CAI. Although present at the closing, Mr. Zambrana signed no documents identifying himself as a purchaser of the property, as an owner of CAI, or as either a debtor or guarantor to the bank that was financing the purchase.[15]

Mr. Zambrana now claims his $25,000 check was meant to purchase an unquantified interest in either CAI or the property itself despite the check having been made payable to La Ruche. Zambrana Dep. Tr. at 32. Mr. Zambrana, Vice President of CAI at the corporation's inception, knew that La Ruche and CAI were two separate corporations and that CAI was created specifically to purchase the property. Having signed the August 1999 Unanimous Consent, Mr. Zambrana also knew that La Ruche neither owned nor purchased shares in CAI. There is no factual support for Mr. Zambrana's alleged belief that a check written to La Ruche could somehow enable him to purchase either CAI shares or an interest in property purchased by CAI.

Basic principles of contract law lend no support to Mr. Zambrana's claims. In the District of Columbia, while "parties may enter into enforceable oral contracts," those parties must "agree to all material terms and intend to be bound ...."[16] "The failure to agree on or even discuss an essential term of a contract may indicate that the mutual assent required to make or modify a contract is lacking."[17] "To be final, contract negotiations must include all of the terms which the parties intended to resolve; material terms cannot be left to future settlement."[18]

---

[15] Ex. 1, Cauderlier Decl. at 3. This is in marked contrast to Mr. Cauderlier, whose signatures are found throughout the closing documentation and who also signed a personal guarantee of the seven-figure debt that CAI incurred in purchasing the property. *See id.*, Cauderlier Decl., Exhibits H and J; *see also* Ex. 2, Zambrana Tr. at 60 ("[Q.] Now, with that understanding, did you execute a personal guarantee for the purchase price of the land when CAI bought the land in January of 2000? [A.] No.")

[16] *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995); *see also Georgetown Entertainment Corp. v. District of Columbia*, 496 A.2d 587, 590 (D.C. 1985) ("For an enforceable contract to exist, there must be both (1) agreement as to all material terms; and (2) intention of the parties to be bound").

[17] *Owen v. Owen*, 427 A.2d 933, 937 (D.C. 1981).

[18] *Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 547 (D.C. 1981); *cf. D.C. Area Community Council, Inc. v. Jackson*, 385 A.2d 185, 187 (D.C. 1978) ("If the document or contract that the parties agree to make is to contain

Applying those contract law principles to the instant matter and accepting Mr. Zambrana's account as true (only for the purposes of this motion), Mr. Zambrana never had an agreement concerning any ownership in CAI. Prior to his writing the check to La Ruche, there was no discussion on how the land would be titled to reflect Mr. Zambrana's alleged ownership interest and no discussion regarding the percentage of land ownership planned for Mr. Zambrana. *Supra.* at 3. Mr. Powers testified that there had been no "quantification of the interest" that Mr. Zambrana was to receive in exchange for his check and that the interest "wasn't allocated between the two [corporations] ...." *Id.* Instead, that interest remained an "open issue ...." *Id.* By his testimony, Mr. Zambrana admits that there was no contract between the parties when he wrote the check.

Nor did the parties create an enforceable contract afterwards. At the February/March 2000 meeting that followed the January 2000 closing, the parties traded offers with neither agreeing on the nature (*i.e.,* which corporation) or amount of the interest to be exchanged for the $25,000 check to La Ruche. Ex. 3, Powers Tr. at 64-70. The meeting closed without "quantification of stock to be granted" and without "a comprehensive agreement reached at that time." *Id.* at 70; *see also* Cauderlier Decl. at 4 (Mr. Cauderlier left the meeting without agreeing to Mr. Zambrana's request for stock in CAI). During his deposition, Mr. Zambrana conceded that no agreement was ever reached on the nature of the ownership interest he was to receive in exchange for the $25,000 check:

> [Q.]   What percentage of CAI do you believe that you purchased for the $25,000?
> [A.]   That's why I'm here. I guess the judge have to decide that.
> [Q.]   No, no. I'm asking you. I want to know what you think you own.
> [A.]   I'm not an expert.
> [Q.]   Well, you're the one who wrote the check, sir.
> [A.]   I wrote a check as an investment to buy a building, and a partner.

---

any material term that is not already agreed on, no contract has yet been made; and the so-called 'contract' to make a contract is not a contract at all").

> [Q.] But you have no understanding of what percentage of CAI you were to get for that $25,000?
> [A.] Can you repeat the question?
> [Q.] You don't have any understanding of what percentage of CAI you were to get for that $25,000?
> [A.] Not right now.
> [Q.] Have you had at any time an understanding?
> [A.] I guess it's very complicated. That's why we here.
>
> * * *
>
> [Q.] Okay. Is it correct, sir, that you cannot, as you sit here today, tell me what percentage of CAI you were to own?
> [A.] I can tell you at least 10 percent.
> [Q.] Of CAI?
> [A.] Yes.
> [Q.] And what's the basis for that, sir?
> [A.] My $25,000 investment.
> [Q.] And how did you calculate the 10 percent?
> [A.] I didn't calculate.

Zambrana Tr. at 43-45. Taking the evidence in a light most favorable to Mr. Zambrana, the parties left "material terms ... to future settlement" and therefore did not reach any enforceable agreement.[19] Absent an enforceable agreement, Mr. Zambrana has no right in contract to claim an interest in either CAI or the property.

The undisputed facts, viewed in a light most favorable to Mr. Zambrana, demonstrate that Mr. Cauderlier is, and always has been, the sole shareholder and that Mr. Zambrana holds no ownership interest in either CAI or the property. Mr. Zambrana's check was written to La Ruche, not CAI. Although the parties did discuss a number of options, the parties did not set material terms which would grant Mr. Zambrana a supportable and enforceable interest in either CAI or the property. CAI is entitled to a summary declaratory judgment that Mr. Zambrana has no ownership interest in CAI or the property.

---

[19] *Edmund J. Flynn,* 431 A.2d at 547 (Court held that no enforceable contract was created due in part to the parties' failure to agree on compensation); *see also Rosenthal v. National Produce Co.,* 573 A.2d 365 (D.C. 1990) (Court holds the alleged contract unenforceable because, in part, it failed to address price or quantity).

11

### III. THE UNDISPUTED FACTS ESTABLISH THAT MR. ZAMBRANA HAS NO RIGHT TO EITHER AN ACCOUNTING OR A MONEY JUDGMENT FROM CAI

Mr. Zambrana has no right to an accounting from CAI because he cannot meet the requisite burden of proof. An accounting is "a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another."[20] An accounting "is an extraordinary remedy" and is granted "only when legal remedies are inadequate."[21] "Such relief may be obtained at the close of a litigation ... as long as the [claimant]" meets his burden of proof.[22]

Mr. Zambrana's claim for an accounting fails because it is predicated on his holding an ownership position on behalf of CAI.[23] As established in Section II, *supra*, Mr. Cauderlier is the sole shareholder in CAI. Mr. Zambrana does not have any ownership interest in CAI. Mr. Zambrana's check was *not* made payable to CAI, the Bank that financed the purchase, or even the former owner of the property. CAI has received no money from Mr. Zambrana and therefore no money is "due him" from CAI.

Finally, Mr. Zambrana is not due a money judgment from CAI because a shareholder "cannot rely on his shareholder status to advance a claim for wrongs committed against ... [the] corporation."[24] Mr. Zambrana's claims were not brought in CAI's name on behalf of the

---

[20] *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972).

[21] *Id.*

[22] *Bates v. Northwestern Human Services, Inc.*, 466 F. Supp. 2d 69, 103 (D.D.C. 2006).

[23] *See, e.g.*, Zambrana Answer and Counterclaim at 9 ¶¶24-26 ("Since Mr. Zambrana paid $25,000 on behalf of CAI, which monies enabled CAI to purchase the Building, Mr. Zambrana holds an ownership position in CAI .... Since Mr. Zambrana (i) owns stock in [La Ruche], (ii) [La Ruche] owns some [or] all of the stock in CAI, and (iii) CAI owns the Building or purchased the Building on behalf of its shareholders, Mr. Zambrana holds an ownership position [in] CAI .... Mr. Zambrana is entitled to an accounting of the assets owned by CAI").

[24] *Laufer v. Westminster Brokers, Ltd.*, 532 A.2d 130, 135 n.14 (D.C. 1987); *see also United States v. Palmer*, 578 F.2d 144, 145-46 (5th Cir. 1978) ("The law is clear that only a corporation and not its shareholders, not even a sole shareholder, can complain of an injury sustained by, or a wrong done to, the corporation"); *Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir. 1981) ("An action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation").

corporation; he must claim a personal injury to have standing.[25]  Yet as established in Section II, *supra*, CAI neither had a contract with, nor received funds from, Mr. Zambrana.  Because Mr. Zambrana cannot claim any personal injury caused by personal or direct dealings with CAI, he cannot claim to be due any money judgment from CAI.

## CONCLUSION

For the reasons set forth above, this Court should issue a declaratory judgment that:

(1) Mr. Cauderlier is the sole shareholder and has 100 percent ownership of CAI and

(2) Mr. Zambrana has no ownership interest in CAI.  Further, this Court should enter judgment for CAI regarding Mr. Zambrana's counterclaims.

Dated:  May 16, 2007                                    Respectfully submitted,

                                                        _____
                                                        Robert L. Green, Jr. (D.C. Bar No. 935775)
                                                        James B. Boles (D.C. Bar No. 471818)
                                                        HOWREY LLP
                                                        1299 Pennsylvania Ave., N.W.
                                                        Washington, D.C.  20004
                                                        (202) 783-0800
                                                        (202) 383-6610 – facsimile
                                                        greenr@howrey.com
                                                        bolesj@howrey.com

                                                        Attorneys for Cauderlier & Associates, Inc.,
                                                        Jean Claude Cauderlier, and La Ruche, Inc.

---

[25] *Laufer*, 532 A.2d at 135.