# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAUDERLIER & ASSOCIATES, INC., )
 )
   Plaintiff, )
 )
 v. )
 ) **Civil Action No. 05-1653 (JMF)**
SERGIO ZAMBRANA, )
 )
   Defendant/Third-Party )
   Plaintiff )
 )
 v. )
 )
JEAN CLAUDE CAUDERLIER )
 )
   And )
 )
LA RUCHE, INC. )
 )
   Third-Party Defendants )
 )

## DECLARATION OF JEAN CLAUDE CAUDERLIER

I, Jean Claude Cauderlier, hereby depose and state the following:

1. I am currently President, Vice President, Secretary, sole board member, and sole shareholder of Cauderlier & Associates, Inc. ("CAI").

2. CAI is a corporation incorporated under the laws of the District of Columbia with its principal place of business at 1039 31st Street, N.W., Washington D.C., 20007. CAI owns the real property and buildings located at 1035, 1037, and 1039 31st Street, N.W., Washington D.C. 2007 (the "Property").

3. I am also currently President, Secretary, Treasurer, sole board member, and majority shareholder of La Ruche, Inc. ("La Ruche"). La Ruche operates the restaurant Café

La Ruche at 1039 31st Street, N.W., Washington D.C., 20007 and is a corporation incorporated under the laws of the District of Columbia.

4.     I purchased La Ruche in stages for a combined price of $250,000.  On February 21, 1987, I became the sole La Ruche shareholder by purchasing all outstanding La Ruche shares. *See* Exhibit A.

5.     In early 1999, I became aware of an opportunity to purchase the Property, which La Ruche was leasing for its restaurant operations.  At that time, I remained La Ruche's sole shareholder.  With the assistance of counsel, I incorporated CAI to purchase the Property.  I capitalized CAI with my investment of $60,000.  I borrowed that money from La Ruche.  *See* Exhibits B and C (La Ruche corporate resolution approving the loan and the promissory note setting the terms of that loan).

6.     On August 19, 1999 (the date on which CAI was incorporated), CAI issued 500 shares to me in exchange for the $60,000.  *See* Exhibit D (CAI resolution issuing common stock to me); Exhibit E (resolution electing me as sole board member); and Exhibit F (CAI bank statement reflecting the August 25, 1999 deposit for $60,000).  To this day, those are the only shares that CAI has ever issued.

7.     On August 19, 1999 Mr. Zambrana had no ownership interest in CAI.  On August 19, 1999, Mr. Zambrana was not an owner or shareholder in La Ruche.  I was the sole shareholder of La Ruche on that date.

8.     I began negotiating the purchase of the Property from Yes, Inc. on behalf of CAI in September 1999.  The total purchase price was $1,100,000.  See Exhibit D.  CAI provided a deposit of $55,000 to be applied towards the purchase on November 19, 1999.  See Exhibit G. The deposit was made from the CAI checking account that I had funded on August 25, 1999. Mr. Zambrana did not provide, directly or indirectly, any portion of the deposit.

9.     Later in 1999, Sergio Zambrana, then a La Ruche employee, and I discussed the possibility of his becoming a co-owner of La Ruche.  I said that he could buy 10 percent of

La Ruche for $25,000. That amount was based on the $250,000 purchase price I paid for La Ruche in the mid-1980s.

10.    CAI closed the purchase of the Property on January 21, 2000.

11.    To complete the purchase, I obtained a Small Business Administration ("SBA") loan for $965,000. Exhibit H. The purchase price was reduced to $1,020,000. At closing, CAI provided a bank check dated January 21, 2000 for $42,171 – the balance due from CAI. Exhibit L. To complete the transaction, the seller's owner agreed to an $80,000 note. Exhibit I. None of Mr. Zambrana's funds were used to close on the property.

12.    Although Mr. Zambrana was present at the closing, I am the only person that signed documents on behalf of CAI. I executed a personal guarantee for the full amount of the SBA loan. *See* Exhibit J. Mr. Zambrana did not execute any documents related to the purchase of the property. Mr. Zambrana did not execute a personal guarantee of the SBA loan.

13.    On January 21, 2000, Mr. Zambrana gave me a check, payable to La Ruche, for $25,000. Mr. Zambrana's check was deposited in La Ruche's corporate bank account on January 21, 2000. As the chronology of events establishes, Mr. Zambrana's $25,000 check played no part in CAI's purchase of the Property. CAI was required to have bank-certified funds at the closing, which occurred before Mr. Zambrana's personal check could have cleared.

14.    I understood that Mr. Zambrana had given me his check to purchase 10 percent of La Ruche. I arranged for La Ruche to issue stock certificate No. 9 for 10 shares to Mr. Zambrana later in January 2000. *See* Exhibit K.

15.    In either February or March 2000, I met with James Powers (counsel for myself, La Ruche, and CAI) and Mr. Zambrana in the shell of the bookstore located on the Property. At the end of that meeting, Mr. Zambrana asked what he was getting for his $25,000 check.

16.    I told Mr. Zambrana that he had 10 percent of La Ruche. The 10 percent I was talking about had already been issued in La Ruche Certificate No. 9 in January 2000. This was not an offer of an additional 10 percent in La Ruche.

17.     Mr. Zambrana refused to accept my offer of the 10 percent of La Ruche in exchange for $25,000. Mr. Zambrana instead asked for interest in CAI or the land. I told him no. The February/March 2000 meeting ended without an agreement. Mr. Zambrana did not request the return of his $25,000.

18.     During the February/March 2000 meeting, Mr. Powers told Mr. Zambrana that he could not represent him and that Mr. Zambrana needed to hire his own lawyer.

19.     At some point in 2004, I became aware that Mr. Zambrana was unable to locate La Ruche Certificate No. 9 and that it was lost. On June 23, 2004, La Ruche issued Certificate No. 10 for 10 shares in La Ruche as a replacement for the missing Certificate No. 9. Certificate No. 9 was then cancelled. Certificate No. 9 and the replacement Certificate No. 10 were, from my perspective, stock issued in exchange for Mr. Zambrana's $25,000 check payable to La Ruche.

20.     I am aware of Mr. Zambrana's testimony concerning his claim of ownership in La Ruche based on salary deferral and/or his agreement to remain as a La Ruche employee when he could have left. I deny that any such agreement existed in which Mr. Zambrana was given an ownership interest in La Ruche. While I had discussed selling Mr. Zambrana a 10 percent interest in La Ruche for $25,000 prior to January 2000, there was no agreement in which Mr. Zambrana could, by working at La Ruche, "earn" an ownership interest in La Ruche. Nor was there any agreement in which Mr. Zambrana would be given ownership in La Ruche in exchange for his remaining a La Ruche employee and foregoing some other employment opportunity. Mr. Zambrana's January 21, 2000 $25,000 check was, and remains, consistent with my offer of a 10 percent interest in the restaurant only.

21.     The first time I heard Mr. Zambrana's claim that he owned an interest in CAI was in early 2004, after I had offered Mr. Zambrana the opportunity to buy my remaining 90 percent interest in La Ruche.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15 day of May, 2007, in Washington D.C.



Jean Claude Cauderlier

5

# EXHIBIT A

INFORMAL WRITTEN ACTIONS
IN LIEU OF SPECIAL MEETING OF
BOARD OF DIRECTORS OF
LA RUCHE, INC.

February 20, 1987


The undersigned, being all the members of the Board of Directors of La Ruche, Inc., a District of Columbia corporation (hereinafter referred to as the "Corporation"), in accordance with Section 29-399.37 of the District of Columbia Business Corporation Act, do hereby take the actions below set forth, and to evidence their waiver of any right to dissent from such action and of any requirement of a meeting or notice do hereby consent as follows:

WHEREAS, Bruce D. Levenson desires to sell and Jean-Claude Cauderlier desires to purchase a series of nontransferable options to purchase not less than one (1) unit of twenty (20) shares of common stock in the Corporation, upon the terms and conditions set forth in the Stock Option and Stockholders Agreement ("Agreement"), and it is

RESOLVED, that the Agreement between Bruce D. Levenson, Jean-Claude P. Cauderlier and La Ruche, Inc. dated February 21, 1987, a copy of which is attached hereto, is hereby approved by the Corporation, and it is further

RESOLVED, that Bruce D. Levenson, President of the Corporation, is hereby directed and authorized to execute the above-mentioned agreement in the name of and on behalf of the Corporation, and it is further

RESOLVED, that Bruce D. Levenson, President of the Corporation, is hereby directed and authorized in the name of and on behalf of the Corporation, to execute the employment agreement between the Corporation and Jean-Claude Cauderlier attached hereto as Exhibit A to the Agreement, and it is further

RESOLVED, that Bruce D. Levenson, President of the Corporation, is hereby directed and authorized in the name of and on behalf of the Corporation, to execute the consulting agreement between the Corporation and Bruce D. Levenson, a copy of which is attached hereto as Exhibit C to the Agreement, and it is further

RESOLVED, that Bruce D. Levenson, President of the Corporation, is hereby authorized and directed to sign in the name of and on behalf of the Corporation as

guarantor for the "Option Purchase Note" in the  amount
of   Twenty-Two    Thousand    Five    Hundred    Dollars
($22,500.00) upon the terms and conditions set forth in
the option purchaser commercial note (secured) attached
hereto as Exhibit D to the Agreement and the  "Exercise
Promissory Note" in such  amounts as  may be  required
under the  Agreement for  the exercise  of any  options
thereunder, upon the terms and conditions set forth  in
the exercise commercial note (secured) attached  hereto
as Exhibit F to the Agreement.

IN WITNESS WHEREOF, we have hereunto set out hands  and
seals effective the date first set forth above.

_____
Bruce D. Levenson, Director

_____
Randy Levenson, Director

_____
A. Howard Metro, Director

22h-ff.



THE DISTRICT OF COLUMBIA

INCORPORATED UNDER THE LAWS OF

## LaRuche, Inc.

This Corporation is authorized to issue 100 shares of stock without par value.

**This Certifies that** Jean-Claude Cauderlier _is the owner of_

TWENTY -------------------- _fully paid and non-assessable Shares of_

_the Capital Stock of the above named Corporation transferable only on the books of the_
_Corporation by the holder hereof in person or by duly authorized Attorney upon_
_surrender of this Certificate properly endorsed._

_In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers_
_and its corporate Seal to be hereunto affixed this_  21st  _day of_  February  _A.D. 19_87

_____
SECRETARY-TREASURER

Bruce D. Levenson
_____
PRESIDENT

Nº 5        SHARES 20

INFORMAL WRITTEN ACTION
IN LIEU OF SPECIAL MEETING OF
THE BOARD OF DIRECTORS AND SHAREHOLDERS OF
<u>LA RUCHE, INC.</u>

February 21, 1987

The undersigned, being all the members of the Board of
Directors of La Ruche, Inc., a District of Columbia corporation
(hereinafter referred to as the "Corporation"), in accordance
with Section 29-399.37 of the District of Columbia Business
Corporation Act, do hereby take the actions below set forth, and
to evidence their waiver of any right to dissent from such action
and of any requirement of a meeting or notice do hereby consent
as follows:

RESOLVED, that the following persons be nominated,
qualified and duly elected to act as the Board of
Directors for the Corporation until the next annual
meeting of the stockholders or until their respective
successors are duly elected and qualified:

Bruce D. Levenson
Karen Levenson
Jean-Claude Cauderlier

RESOLVED, that the following persons be appointed to
serve as the officers of the Corporation until their
successors are duly elected and shall qualify:

| Jean Claude Cauderlier | President |
| Bruce Levenson | Vice President/Secretary |
| ~~Randy~~ *KAREN* Levenson | Treasurer |

RESOLVED, that the assignment of all right, title and
interest in the trade name "LaRuche," together with any
variations thereof, to Bruce D. Levenson, individually,
for the consideration of One Hundred Dollars ($100.00),
receipt of which is acknowledged by the Corporation, is
hereby authorized and approved.

This Informal Action of Directors may be executed in
counterparts.

WITNESS the execution hereof the day and year first above written.

Read and Approved:

_____
Bruce Levenson, Director and Shareholder

_____
Randy Levenson, Shareholder

_____
Jean-Claude Cauderlier, Director

_____
Karen Levenson, Director

22h-zzz.

....

-2-

## AGREEMENT

This Agreement ("Agreement") is entered into effective this 1st day of May, 1992, by, between and among Bruce D. Levenson ("Levenson") and Randy Levenson (collectively the "Sellers"), and La Ruche, Inc., a District of Columbia corporation (referred to as both the "Buyer" and the "Corporation").

## RECITALS

WHEREAS, on or about February 20, 1987, Levenson, J.C. Cauderlier ("Cauderlier"), and Corporation entered into a Stock Option and Stockholder Agreement ("Sales Agreement") effective as of June 1, 1986, wherein Levenson on his behalf and on behalf of Randy Levenson agreed to transfer to Cauderlier the remaining issued and outstanding common stock of the Corporation owned by Sellers in units of twenty (20) shares for a total exercise price of Two Hundred Twenty-five Thousand Dollars ($225,000.00); and

WHEREAS, in order to assist Cauderlier in meeting his obligations arising under the Sales Agreement, on or about February 20, 1987, the Corporation and entered an Employment Agreement ("Employment Agreement") wherein the Corporation agreed to employ Cauderlier in the capacity of President and Chief Chef of the Corporation's restaurant business located at 1039 31st Street, N.W., Washington, D.C. ("Premises") commencing on June 28, 196 and subject to the terms and conditions more particularly set forth in said Employment Agreement; and

WHEREAS, contemporaneous with the execution of the Sales Agreement, Levenson and Corporation entered into a Licensing Agreement ("Licensing Agreement") wherein Levenson permitted the Corporation to use the name "La Ruche" in the conduct of its restaurant business upon the terms and conditions more particularly set forth therein; and

WHEREAS, in order for the Corporation to assure itself of the continuing expertise and talent of Levenson on the long term basis to consult with and advise the management of the Corporation, the Corporation and Levenson entered into a certain Consulting Agreement ("Consulting Agreement"); and

WHEREAS, in order to evidence the purchase price to be paid by Cauderlier to Levenson for the options being sold under the Sales Agreement Cauderlier made an Option Purchase Commercial Promissory Note (Secured) to Levenson in the original principal balance of $23,500.00 dated June 28, 1986 ("Option Note"), which Option Noted was guaranteed by the Corporation by a Guaranty of Payment dated June 28, 1986 ("Option Guaranty"); and

WHEREAS, in order to evidence the payment of the price for the purchase of certain shares of common stock of the Corporation under the terms and conditions of the Sales Agreement Cauderlier made two Commercial Promissory Notes (Secured) to

Levenson each in the original principal amount of $45,000 dated June 28, 1986 and June 26, 1987 (collectively "Exercise Notes") each guaranteed by the Corporation (collectively "Exercise Guaranties"); and

WHEREAS, to secure payment of the purchase price under the Sales Agreement as evidenced by the Option Note and Exercise Notes Cauderlier entered into a Pledge Agreement to grant a security interest to Sellers in certain collateral more particularly described therein; and

WHEREAS, the parties acknowledge that Cauderlier has obtained forty percent (40%) of the outstanding shares of stock in the Corporation under the Sales Agreement. The parties hereto wish to enter into this Agreement to terminate the Sales Agreement and other agreements and provide for the sale of all of the remaining stock in the Corporation to the Corporation upon the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the above recitals which are incorporated herein and made a part hereof, the mutual promises set forth hereinbelow, other valuable consideration and Ten Dollars ($10.00), the receipt and sufficiency of which is acknowledged by each of the parties, the parties hereto agree as follows:

I.    Sale of Stock.  Sellers shall sell sixty (60) shares of authorized, issued and outstanding shares of stock to the Buyer under the terms and conditions contained herein.

II.    Terms.

2.1    Payment Price.  Subject to the terms and conditions of this Agreement, Buyer agrees to purchase the Sellers' Stock from the Sellers for a total purchase price of One Hundred Fifty Thousand Dollars ($150,000.00) ("Purchase Price").

2.2    Promissory Note.  The Purchase Price to be paid by Buyer to the Sellers' Stock shall be evidenced by an Unsecured Commercial Promissory Note ("Note") (in the form attached hereto as Exhibit A and made a part hereof) to be executed and delivered by the Buyer to the Sellers contemporaneous with the principal amount of One Hundred Fifty Thousand Dollars ($150,000.00), providing for monthly payments representing principal and interest in the amount of Three Thousand Five Hundred Dollars ($3,500.00) for the months of April, May, June and October and Two Thousand Five Hundred Dollars ($2,500.00) for all other months.  Interest shall accrue on the unpaid principal sum at eight percent (8%) per annum.  It is agreed that the Corporation will procure and maintain a policy of insurance sufficient to repay the promissory note in the event Cauderlier dies or is incapacitated.

2.3    Transfer of Corporate Books and Records.  Contemporaneous with the payment of the Purchase Price and the execution of the promissory note Sellers shall

2

surrender to the Buyer all books and records of the Corporation including but not limited to the Corporation's minute book, stock ledger and all other documents to which the Corporation is entitled.

III.    ABC License.

   3.1 Condition Precedent. The parties' obligation to consummate the sale of said Sellers' Stock is subject to the condition precedent that the Alcohol Beverage Control board of the District of Columbia approve the Buyer's ownership of One Hundred Percent (100%) of the common stock of the Corporation ("ABC Approval") and transfer the license issued to the Seller's ("ABC License"). At such time as the ABC Approval is obtained, and provide the Buyer is not in default under the Note (as hereinafter defined) the Sellers shall deliver to Buyer, duly endorsed, their stock certificates representing the Sellers' Stock. The stock certificates shall be legended to reflect that payment for such shares is being made pursuant to the terms of the Note between Buyer and Sellers and subject to the terms of this Agreement.

   3.2 Responsibility Under ABC License. The parties hereto agree that the Sellers are still responsible under the ABC License as owner of sixty percent (60%) of the stock of the Corporation. In addition, the Buyer acknowledges that Cauderlier also remains responsible under the ABC License as the on-site manager of the business of the Corporation conducted at the Premises. Promptly after execution of this Agreement by all parties, Buyer shall file at its expense an application to transfer the ABC License from the listed applicants to the Buyer, and Levenson agrees to fully cooperate with Buyer and execute all papers or documents as Buyer determines reasonably necessary to secure such ABC License in Buyer's name. The Buyer agrees to diligently pursue at all times the transfer of the ABC License.

   3.3 Payments Under Note During Transfer Progress. The Note shall be effective as of the date of execution of this Agreement and payments shall be made until the earlier of (a) the transfer of the ABC License is denied, or (b) payment in full under the Note. In the even that ABC approval is not obtained, then any payments made under said Note shall be retained by Sellers, and the remaining payments on the Note shall be canceled.

   3.4 Return to Status Quo; Renegotiate. In the event that ABC Approval is not granted, then the parties hereto agree to enter into new stock Sales agreement, employment agreement and consulting agreement which will represent as closely as possible the economic terms and conditions intended and contained herein. The Buyer thereafter agrees to again diligently seek ABC Approval within two (2) years from the date of original denial of same. The Buyer agrees to provide Sellers with copies of any correspondence and decisions made related to the ABC License transfer process.

3

IV.    Termination of Existing Agreements.  Effective as of the date hereof, the undersigned parties agree that the Sales Agreement is hereby terminated and the parties thereto shall have no further obligations or liabilities thereunder or under the documents evidencing or securing same (including but not limited to the Option Note, Option Guaranty, Exercise Notes, Exercise Guarantees and Pledge Agreement) all of which shall be marked void, "paid" or "terminated".  In the event that ABC Approval as is obtained and the sale of Sellers' Stock is consummated, then the Employment Agreement, Licensing Agreement and Consulting Agreement shall also terminate and the parties thereto shall have no further obligations or liabilities.

V.    Trademark Assignment Agreement.  Pursuant to Section IV of this Agreement, Levenson and Sellers hereby terminate any and all licenses between the parties and assign the business name and trademark "La Ruche" and all associated goodwill to the Corporation.  This assignment shall have no effect on Levenson's use of the business name and trademark in Montgomery County, Maryland.  By this assignment, all parties to this agreement acknowledge that the trademark "La Ruche" is a valuable intellectual property asset essential to the success of the Corporation.

VI.    Indemnity.  The Buyer hereby agrees to indemnify Sellers from any and all losses, liabilities, debts, claims, demands, actions, suits damages, judgments, fines, penalties, interests, costs and expenses (including reasonable attorney's fees) resulting from the Buyer's operation of the business at the Premises including but not limited to the operation of the ABC License.  Notwithstanding the foregoing, this indemnification does not operate with regard to a claim by Buyer against Levenson or Sellers relating to breach of this Agreement.

VII.    Notices.  All notices or other communications by either parties to this Agreement shall be in writing and either mailed by registered or certified mail, postage pre-paid, return receipt requested or hand delivered to the following addresses:

    If to Sellers:

    Bruce D. Levenson
    11529 Twining Lane
    Potomac, Maryland  20854

    Randy Levenson
    c/o Bruce D. Levenson
    11529 Twining Lane
    Potomac, Maryland  20854

4

If to Buyer:

La Ruche, Inc.
c/o Jean-Claude P. Cauderlier
1039 31st Street
Washington, D.C.

VIII. <u>Attorney and Representation</u>.

8.1.    <u>Consultation</u>.  By their execution, each of the undersigned parties represents that they have had the opportunity to consult with an attorney prior to execution of this Agreement and have done so, or by their signature, acknowledge that they waive that right.

8.2    <u>Previous Employment of Counsel</u>.  The parties acknowledge that the law firm of Stein, Sperling, Bennett, De Jong, Driscoll, Greenfeig & Metro, P.A. represents the Corporation in this transaction and has in the past represented individually each of the Sellers.

8.3    <u>Fees</u>.  In the event of any legal action by either party to enforce the terms and provisions of this Agreement as against the other, the prevailing party shall be entitled to reasonable attorney's fees and other costs and expenses as may be incurred by him in enforcing the terms and conditions of this Agreement.

IX.    <u>Miscellaneous</u>.  This Agreement and any exhibits attached and incorporated by reference contain the entire integrated understanding of the parties, and there are no other warranties or representations, whether oral or written, other than as set forth in this Agreement and the attached exhibits supersede and cancel all prior agreements, communications and understandings with respect to the subject matter hereof.  No modification to this Agreement or attached exhibits shall be valid unless in writing signed by each party hereto.  Any and all representations, warranties and transactions set forth herein shall survive execution of this Agreement and closing of the transactions contemplated hereby shall be binding upon and inure to the benefit of the respected heirs, next of kin, personal representatives and successors of the parties hereto, provided that Buyer shall not be entitled to assign this Agreement or any of its duties or obligations hereunder without the prior written consent of Sellers.  This Agreement is executed in and shall be governed by and construed in accordance with the laws of the State of Maryland.

IN WITNESS WHEREOF, the undersigned parties have hereunto set their hands and seals on the date first set above.

WITNESS:                                      SELLERS:

_____                       _____ (SEAL)
                                              Bruce D. Levenson

_____                       _____ (SEAL)
                                              Randy Levenson

                                              BUYER:

                                              LA RUCHE, INC.

_Kathryn M. Brown_                            By: _____ (SEAL)
                                                  Jean Claude P. Cauderlier
                                                  President

071ruche.agm (bf)

6

ATTACHMENT A

## COMMERCIAL PROMISSORY NOTE (Unsecured) WITH GUARANTY

$150,000.00                    Rockville, Maryland      Effective May 1 _____, 199 2

**Promise to Pay.** FOR VALUE RECEIVED, LA RUCHE, INC. (the "Borrower"), unconditionally promises to pay to the order of BRUCE D. LEVENSON and RANDY LEVENSON, Tenants in Common (collectively the "Holders"), the principal sum of One Hundred Fifty Thousand Dollars ($150,000.00), in proportion to the amounts of shares of stock to be purchased from each individual, with interest thereon from the date hereof at eight percent (8%) per annum, payable as follows: monthly payments in the amount of Three Thousand Five Hundred Dollars ($3,500.00) for the months of April, May, June and October and Two Thousand Five Hundred Dollars ($2,500.00) for all other months.

**Late Fees.** In the event that any installment of principal and/or interest hereunder is not received by the Holders when due, the Borrower agrees to pay as a late charge, in addition to the amount of the delinquent installment, a sum equal to five percent (5%) of the total amount of any such delinquent or late installment. Acceptance by the Holders of any delinquent or late payment and/or late fee is not and shall not be deemed a waiver of any rights and remedies of Holders with respect to such delinquency. All payments received hereunder shall be applied first to collection expenses incurred by Holders, late fees, then to accrued but unpaid interest, and the balance, if any, to principal. The principal and interest represented by this Note shall be payable in immediately available funds in lawful money of the United States which shall be legal tender for public and private debts at the time of payment. All payments hereunder shall be payable to the order of Holders at the address set forth below or to such person as shall be designated in writing from time to time by Holders.

**Prepayment.** Borrower may prepay without penalty all or any portion of the principal balance of this Note, provided that any partial prepayment shall not postpone the due date of any subsequent installments due under this Note.

**Costs.** Borrower and each Obligor (as hereafter defined) promise to pay all costs incurred by Holders in the collection or enforcement of this Note, whether or not suit is filed hereon, including but not limited to expert witness fees and attorney's fees not to exceed twenty percent (20%) of the total amount due and owing under this Note if referred to any attorney for collection. Such costs of collection shall include, but not be limited to, all reasonable costs and expenses incurred in connection with the protection of or realization upon the collateral security this Note or for the enforcement of any guaranty hereof.

<u>Default</u>. Borrower shall be in default under this Note on the occurrence of any of the following: (a) Non-payment when due of any installment or payment under this Note; (b) Any warranty, representation, statement, schedule or information (including financial statements) made or furnished to the Holders by or on behalf of the Borrower providing to have been incorrect when made or furnished or failing to include or state any material fact so as not to be misleading or incorrect; (c) The existence of any event of default under the terms of any other promissory note or other instrument evidencing a debt of the Borrower to the Holders; (d) Uninsured loss, theft, substantial damage, destruction, or transfer or encumbrance without fair value in return of any of the Borrower's assets; (e) Borrower or any Obligor (as hereafter defined) (i) admitting in writing insolvency or inability to pay its debts as they mature, (ii) making a general assignment for the benefit of creditors, (iii) commencing a case under or otherwise seeking to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law, statue or proceeding, (iv) by any act indicating insolvency, readjustment of debt, dissolution or liquidation law, statute or proceeding, (iv) by any act indicating its consent, approval of or acquiescence in any such proceeding or the appointment of any receiver of or trustee for it or a substantial part of its property, or suffering any such receivership, trusteeship or proceeding to continue undismissed for a period of thirty (30) days, or (v) becoming a debtor in any case under any chapter of the United States Bankruptcy Code; (f) Judgment against, or attachment of any property of Borrower or any Obligor which is not dismissed of discharged within thirty (30) days of entry; (g) The occurrence of a materially adverse change in any Borrower's or Obligor's financial condition; (h) Death of Borrower or any Obligor who is a natural person; (i) The existence of any event of default under the terms of the Agreement (as hereinafter defined); or (j) The sale, transfer or other change in control of any of the capital stock of La Ruche, Inc. or the sale or transfer of substantially all of its assets to anyone other than the Borrowers or Holders. Upon the occurrence of any event of default, the Holders, at their sole option, may accelerate the due date of and declare the unpaid balance of this Note to be immediately due and payable without notice, presentation, demand of payment or protest, which are hereby expressly waived by Borrower.

<u>Remedies</u>. The Borrower and Obligor hereby authorizes any attorney at law to appear in any court of record in the United States if the balance due provided for herein is not paid at maturity, including any acceleration thereof as provided herein, and on behalf of the Borrower in favor of the Holders hereof for the amount of this Note as may be due and unpaid hereon, with interest, costs of suit, plus attorneys fees as provided above, waiving all right to appeal, stay of execution, errors, and all exemption laws of any state of the United States (to the extent permitted by law), and ratifying all that said attorney may do. The authority and power to appear for and enter judgment against Borrower or Obligor shall not be exhausted by one or more exercises thereof, or by any imperfect exercise thereof, and shall not be extinguished by any judgment entered pursuant thereto. Such authority and power may be exercised on one or more occasions, from time to time, in the same or different jurisdictions, as often as the Holders shall

*[handwritten margin notes: "confess judgment", "LaRuche Inc.", "pre", "by", "JC Caudebec"]*

deem necessary or desirable, for all of which this Note shall be a sufficient warrant. Borrower and Obligor specifically consent to the filing of and maintenance of a confessed judgment action in any court of record in the United States, Borrower expressly waiving any objection or defense as to insufficiency of process, lack of personal jurisdiction by any said court over the person, proper venue, and specifically consent to the registration or enrollment of the judgment by confession once granted in any other court of record in the United States. Borrower and Obligor hereby expressly waive any right to a trial by jury in connection with any suit brought under this Note by Holders.

The delay or failure of Holders to exercise their option to accelerate this Note as provided above, or to exercise any other option or remedy granted to Holders hereunder or under the Agreement, in any one or more instances, or the acceptance by Holders of partial payments or partial performance, shall not constitute a waiver of any default by Borrower, and all such options and remedies shall remain continuously in force. Acceleration of maturity, once claimed hereunder by Holders, may at Holder's option to rescinded by written acknowledgement to that effect, but the tender and acceptance of partial payment or partial performance alone shall not in any way affect or rescind such acceleration of maturity. All remedies granted to Holders hereunder, under the Agreement or by law shall be deemed cumulative. The authorities contained herein are deemed coupled with an interest and are irrevocable by Borrower and Obligor.

Borrower and all others who may become liable as makers, endorsers, guarantors or accommodation parties for all or any part of this Note ("Obligor(s)") agree hereby to be jointly and severally bound, and jointly and severally (i) waive and renounce day and all homestead exemption rights and the benefits of all valuation and appraisement privileges as against this debt or any renewal or execution hereof; (ii) waive any and all lack of difference or delays in the collection or enforcement hereof; (iii) expressly consent to the release or substitution of any of the collateral securing this Note or any party liable hereunder; and (iv) expressly consent to any extension of time for payment of this Note and any other indulgence or forbearance by Holders. Any such extension, release, substitution, or forbearance may be made without notice to any party and without notice to any party and without in any way affecting the personal liability of any party liable hereon.

Notice. Any notice or legal process or summons to Borrower, where provided for in this Note shall be given by mailing such notice by certified mail, return receipt requested, to Borrower at 1039 31st Street, Washington, D.C. or to such other address Borrower may designate by written notice to Holders hereof. Any notice to the Holders hereof shall be given by mailing such notice by certified mail, return receipt requested, to the Holders at 11529 Twining Lane, Potomac, Maryland 20854 or at such other address as may have been designated by written notice to Borrower.

Miscellaneous. Borrower hereby represents and warrants that the indebtedness evidenced by this Note is being obtained for the purpose of carrying on a business or

3

commercial enterprise (excluding agricultural), and all proceeds of such indebtedness will be used solely in connection with such business or commercial enterprise.

This Note arises out of that certain Agreement between and among Borrower, the Holders named herein, and La Ruche, Inc., a District of Columbia corporation, dated May 1, 1992 (the "Agreement") and is the Commercial Promissory Note referred therein.

This Note shall be binding upon the Borrower and his or its heirs, personal representatives and successors and shall inure to the benefit of Holders and his, its or their successors, personal representatives and assigns. Any modification of this Note shall be in writing and signed by the Holders. This Note is executed and delivered in and shall be governed by and construed in accordance with the laws of the State of Maryland. In the event that any particular provision contained herein is determined to be invalid, whether in whole or in part, the remaining provisions hereof otherwise not invalid and any partially valid provision to the extent valid or enforceable shall continue in full force and effect. Any reference herein to the singular shall include the plural, any reference to the masculine shall include the feminine gender, and any reference to "it" shall include "his," or vice versa, as the case may be.

IN WITNESS WHEREOF, the undersigned, with full power and authorizing to do so, has caused these presents to be executed, delivered, and sealed on the day and year first above written.

Dated:        Effective May 1, 1992        BORROWER:

LA RUCHE, INC.


By: _____ (SEAL)
        Jean Claude Cauderlier, President


## GUARANTY OF PAYMENT


FOR VALUE RECEIVED, and other consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned, jointly and severally in more than one, as primary obligor and not as surety merely upon Borrower acquiring fifty percent (50%) or greater ownership interest in the undersigned guarantor, unconditionally and irrevocably guarantee to the Holders of this Note, the prompt payment of this Note when due, at maturity, by acceleration, or otherwise, together with all costs incurred by

Holders in obtaining or enforcing payment of the Note or this Guaranty as provided in the Note.

The undersigned hereby expressly waives diligence, presentment, demand, protest, notice of dishonor or protect or other notice of any kind whatsoever, and any requirement that any person exhaust any remedy or take any action against the Borrower or any security or take or pursue any other remedy whatsoever, it being expressly understood that the Holders of the Note may proceed against the undersigned (or any of them) without first proceeding against the Borrower or any of its property or assets. The undersigned authorize the Holders to confess judgment against them (or any of them), jointly and severally, as provided int he Commercial Promissory Note. The undersigned hereby consent, without requirement of notice, to any extension of the time for payment or other modification of the terms of the Note, or with respect to any waiver, exchange or surrender of any security therefore, and hereby waive any defense or invalidity or unenforceability of, the obligations guaranteed, and also waive any other circumstance which might in any manner constitute legal or equitable discharge or a guarantor or surety, it being the intent hereof that the obligations of the undersigned hereunder shall be absolute and unconditional under any and all circumstances and shall not be discharged except by the full and irrevocable payment of the sums hereunder guaranteed in the manner provided herein. No delay on the part of the Holders of the Note on exercising any right or remedy hereunder shall preclude the Holder's exercise hereof. Each of the undersigned waives any right to a trial by jury in any proceeding brought by Holders to enforce this Guaranty.

Dated:  Effective May 1, 1992          GUARANTOR:


                                        JEAN CLAUDE CAUDERLIER


                                        _____ (SEAL)
                                        Jean Claude Cauderlier, President

# EXHIBIT B

## CONSENT IN LIEU OF A MEETING

### OF

## THE BOARD OF DIRECTORS

### OF

## LA RUCHE, INC.

Pursuant to the provisions of Section 29-399.37 of the Business Corporation Act of the District of Columbia of a District of Columbia, the Board of Directors of La Ruche, Inc., a District of Columbia corporation (the "Corporation"), unanimously adopts the following preambles and resolutions:

WHEREAS, It has come to the attention of the Board of Directors of the Corporation that the minutes of meetings, or consents in lieu thereof, of the Board of Directors of the Corporation since May 1, 1992, have been lost, stolen, destroyed or removed from the corporate minute book of the Corporation; and

WHEREAS, actual meetings of the Board of Directors were properly held and the actions taken by the Corporation's officers were approved and authorized at such meetings; and

WHEREAS, The Board of Directors deems it advisable and in the best interest of the Corporation to ratify, confirm and approve all actions heretofore taken by the Board of Directors and the officers of the Corporation, as the case may be, in the conduct of the Corporation's affairs during the period for which the records of the Corporation have been lost, stolen, destroyed or removed from the corporate minute book.

NOW THEREFORE, BE IT RESOLVED, The Board of Directors deems it advisable and in the best interest of the Corporation to ratify, confirm and approve all actions heretofore taken by the Board of Directors and the officers of the Corporation, as the case may be, in the conduct of the Corporation's affairs during the period for which the records of the Corporation have been lost, stolen, destroyed or removed from the corporate minute book, including, without limitation:

1.  the election of officers of the Corporation, as reflected on the Corporation's Two-Year Report for Domestic Business Corporations that have been filed with the District of Columbia Department of Consumer and Regulatory Affairs (the "Reports"); and

2.  the election of other officers of the Corporation not reflected on the Returns but reflected elsewhere in the Corporation's records.

FURTHER RESOLVED, That the Articles of Incorporation of the Corporation approved and accepted by the Office of Recorder of Deeds, D.C., Corporation Division on March 24, 1975, be and the same hereby is ratified and accepted, and ordered to be made a part of the official records of the Corporation, and it is directed that a copy thereof be inserted in the Minute Book of the Corporation.

FURTHER RESOLVED, That pursuant to Article II, Section 1 of the Bylaws, the Annual Meeting of the Shareholders be and hereby is set for the month of January, on a date and at a time to be chosen by the Board of Directors.

FURTHER RESOLVED, That pursuant to Article III, Section 2 of the Bylaws, the number of Directors be and hereby is set at one (1).

FURTHER RESOLVED, That the name and address of the resident agent of the Corporation is Ct Corporation System, 1025 Vermont Avenue, N.W, Washington, D.C. 20005.

FURTHER RESOLVED, That the principal office of the Corporation is located at 1039 31st Street, N.W., Washington, D.C. 20007.

FURTHER RESOLVED, That the following persons be and hereby are elected officers of the Corporation to hold their respective positions until the next Annual Meeting of the Board of Directors and until their respective successors have been duly elected and qualified or until their earlier resignation, removal from office or death:

| President | Jean-Claude Cauderlier |
| Secretary | Jean-Claude Cauderlier |
| Treasurer | Jean-Claude Cauderlier |

FURTHER RESOLVED, That the seal, an impression of which is herewith affixed, be and hereby is adopted as the official corporate seal of the Corporation.

FURTHER RESOLVED, That the form of stock certificate to be used by the Corporation, a copy of which has been presented to the Board of Directors, be and hereby is approved and adopted, and it is directed that a specimen copy thereof be inserted in the Minute Book of the Corporation.

FURTHER RESOLVED, That the Secretary be and hereby is authorized and directed to procure the necessary and proper corporate books.

FURTHER RESOLVED, That the Treasurer be and hereby is authorized, empowered and directed to open such account or accounts with such banks or other financial institutions as may be necessary and that until otherwise ordered, such banks or other financial institutions be and hereby are authorized to make payments from the funds of the Corporation deposited with them upon and according to the check of the Corporation signed by the President or the Treasurer, and that resolutions in such forms as said banks or other financial institutions may require shall be executed by the Secretary of the Corporation and the same shall be incorporated herein by this reference.

FURTHER RESOLVED, That the proper officers of the Corporation be and they hereby are authorized and directed on behalf of the Corporation to make and file such certificate, report or other instrument as may be required by law to be filed in any state, territory or other political subdivision of the United States in which said officers shall find it necessary or expedient to file the same to authorize the Corporation to transact business in such state, territory, or other subdivision of the United States.

FURTHER RESOLVED, That the Corporation confirms and ratifies the transfer of the stock ownership as follows:

1.    Stock Certificate No. 1, for 88 shares was issued to Bruce Levenson. From those shares, twenty (20) shares were transferred to Certificate No. 5 issued to Jean-Claude Cauderlier and 68 Shares were transferred to Certificate No. 4 to Bruce Levenson. Certificate No. 1 was then canceled.

2.    Stock Certificate No. 2, for 6 shares was issued to Bruce Levenson and then transferred to Certificate No. 8. Certificate No. 2 was then canceled.

3.    Stock Certificate No. 3, for 6 shares was issued to Randy Levenson and then transferred to Certificate No. 9. Certificate No. 3 was then canceled.

4.    Of the 68 shares of Stock Certificate No. 4, 48 shares were transferred to Certificate No. 6, issued to Bruce Levenson, and 20 shares were transferred to Jean-Claude Cauderlier with Certificate No. 7. Certificate No. 4 was then canceled.

5.    Stock Certificate No. 8, for 50 shares, transferred from Certificate Nos. 2 and 6, was issued to Jean-Claude Cauderlier.

6.    Stock Certificate No. 9, for 10 shares, was issued to Sergio Zambrana.

As of this date, the following are the only outstanding Stock Certificates:

Certificate No. 5, for 20 shares, issued to Jean-Claude Cauderlier.

-3-

Certificate No. 7, for 20 shares, issued to Jean-Claude Cauderlier.
Certificate No. 8, for 50 shares, issued to Jean-Claude Cauderlier.
Certificate No. 9, for 10 shares, issued to Sergio Zambrana.

FURTHER RESOLVED, That the Corporation confirms and ratifies that, as of this date, the stock ownership of the Corporation is as follows:

| | |
|---|---|
| Jean-Claude Cauderlier | 90 Shares |
| Sergio Zambrana | 10 Shares |

FURTHER RESOLVED, The proper officers of the Corporation are hereby authorized, empowered and directed to pay, as expenses of the Corporation, all charges and expenses incident to or arising out of its organization and to reimburse any person who has made any disbursement therefor.

FURTHER RESOLVED, That the fiscal year of the Corporation shall be January 1 through December 31.

FURTHER RESOLVED, That the officers of the Corporation, or any of them, hereby are authorized and directed to take any and all other action which may be necessary and desirable to effectuate the transactions approved by the foregoing resolutions, and their acts and deeds in so doing shall be conclusively presumed to be the acts and deeds of the Corporation.

Dated:  As of October        , 2001

Jean-Claude Cauderlier

....

-4-

# EXHIBIT C