IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUDERLIER & ASSOCIATES, INC.<br><br>Plaintiff<br><br>v.<br><br>SERGIO ZAMBRANA<br><br>Defendant/Third-Party Plaintiff<br><br>v.<br><br>JEAN CLAUDE CAUDERLIER and LA RUCHE, INC.<br><br>Third-Party Defendants | Civil Action No. 05-1653<br>Magistrate Judge John M. Facciola<br>(JMF) |

## AFFIDAVIT OF MAHESH NAITHANI

I, Mahesh Naithani, do hereby affirm and swear as true, the following:

1. I am over the age of 18 and competent to testify to the matters contained herein.

2. At all times referred to herein, was the general partner of Yes! 1035 Limited Partnership ("Yes!").

3. Beginning some time in 1993 or 1994, and continuing until January 21, 2000, Yes! 1035 Limited Partnership was the owner of the property located at 1035-1039 31st Street, N.W., Washington, D.C. (the "Property").

4. In the summer or fall of 1999, I was approached by the owners of Café LaRuche, Jean Claude Cauderlier and Sergio Zambrana, about the possibility of their purchasing the Property, wherein their restaurant, Café LaRuche, was located.

5. After a series of discussions and negotiations, I agreed, as general partner of, and on behalf of, Yes! 1035 Limited Partnership, to sell the property to Messrs. Cauderlier and Zambrana.

6. They told me that they would be forming a new corporation, Cauderlier & Associates, Inc. ("CAI"), will be established by Messrs. Cauderlier and Zambrana for the purpose of purchasing the Property.

7. Settlement on the purchase of the Property by CAI took place on or about January 21, 2000, at which settlement I was present.

8. Present at settlement were Mr. Cauderlier, Mr. Zambrana and Jamie Powers, Esq., Mr. Cauderlier's attorney. Mr. Powers conducted the settlement.

9. On many occasions during the negotiations preceding the sale of the Property, and at the settlement table, Mr. Cauderlier stated that Mr. Zambrana was his partner in the transaction.

10. Two weeks prior to settlement, Mr. Cauderlier advised me that he could not raise the full amount of the loan necessary to consummate the purchase of the Property, and he asked me if I would be willing to "take back" a note for $80,000.

11. Ordinarily, as an experienced businessman, I would not have acceded to Mr. Cauderlier's request that I take back paper instead of cash at the table.

12. I was reluctant to do so in this instance, too, especially since Mr. Cauderlier appeared to be a person rough around the edges, and he did not strike me as a decent businessman. Simply put, I did not like how he acted.

13. My constant impression of Mr. Zambrana was that he was more of a decent man and business-like.

14. My decision to accept Mr. Cauderlier's request and take back the $80,000 note was based on the comfort I had knowing that Mr. Zambrana was Mr. Cauderlier's business partner in CAI.

15. I would not have made the $80,000 loan had Mr. Cauderlier been the only principal in CAI.

16. I was also comforted by the fact that Jamie Powers, Esq., was representing the purchasers in this transaction.

17. I thought that, since Mr. Zambrana would be responsible, along with Mr. Cauderlier and with Mr. Powers assisting with the transaction, I should be alright loaning the $80,000.

18. No one else could have gotten me to make the loan except for Messrs. Zambrana and Powers.

19. There were times when the note was in arrears. When I called to inquire about the late payments, I almost always spoke to Mr. Zambrana about the problem, rather than Mr. Cauderlier.

20. When I made the inquiries of Mr. Zambrana about the late payments, he was straightforward with me and said he would take care of it.

21. I initially and consistently was told by Mr. Cauderlier and Mr. Zambrana were purchasing the Property together, and it is the only reason I took back the note. If Mr. Cauderlier had been the sole purchaser, or the sole owner of CAI, I would not have made the loan.

The foregoing statements are true and correct to the best of my information, knowledge and belief.

*Mahesh Naithan* (signature)
Mahesh Naithani

City of New York ) ss:
State of New York )

I, __VANESSA RAMAI__, a Notary Public in and for the __N.Y__ of New York, do hereby state that on this __29__ day of May, 2007, before me did personally appear Mahesh Naithani, who, being well known to me, executed the within document as his act and deed.

GIVEN under my hand and official seal this __29__ day of May, 2007.

__Vanessa Ramai__
Notary Public

*Vanessa Ramai*
*Notary Public State of New York*
*No. 01RA6150184*
*Qualified in Queens County*
*Commission Expires 07/24/2010*
Vanessa Ramai