February 17, 2004

Mr. Sergio Zambrana
1039 31st Street, NW
Washington, DC 20007

    Re: <u>Purchase of Café LaRuche</u>

Dear Sergio:

    Over the past months, we have discussed your purchase of the restaurant. More specifically, we have discussed your purchase of all of my shares of common stock of the Corporation. At this time, I own 90 shares and you own 10 shares. With that purchase, you would become the sole shareholder of all of the outstanding shares of the Corporation.

    This letter of intent is a good faith continuation of those discussions. I believe that it reflects our most recent discussions and is fair. For ease of reference, I will be referred to as Seller and you will be referred to as Buyer.

    The parties recognize that the transaction will require further documentation and approvals, including the preparation and approval of a formal agreement setting forth the terms and conditions of the proposed purchase ("Purchase Agreement"); nevertheless, they execute this letter to evidence their intention to proceed in mutual good faith to complete work required to negotiate terms of a Purchase Agreement that are consistent with this letter.

    The proposed terms and conditions include, but are not limited to, the following:

**Sale of Shares:** The Buyers will purchase all of the Seller's shares of the corporation.

**Price:** $350,000.00 is the purchase price to be paid as follows: $200,000.00 in cash, to the Seller to be paid at Closing; and $150,000.00 Note payable in three (3) years at 6% interest in equal monthly installments of $ _____, secured by a pledge of all the stock then owned by Buyer.

**Lease:** Seller is the sole shareholder in Cauderlier & Associates, Inc., a DC corporation, which owns the building at 1035, 1037 and 1039 31st Street and leases it to LaRuche, Inc. for restaurant use. Seller will cause Cauderlier & Associates, Inc. to enter into a ten (10) year lease at $15,000.00 per month, plus utilities, licenses, taxes, insurance, and maintenance. In addition, the lease will contain annual escalators of 3% per year.

**Purchase Agreement:** The transaction contemplated by this Letter of Intent will be subject to the negotiation and execution of a definitive Purchase Agreement with terms satisfactory to Seller and Buyer. The Purchase Agreement will contain representations,

warranties, covenants, conditions, and indemnification provisions customary in transactions of this size and type. The parties shall execute the Purchase Agreement on or before May 1, 2004, subject to the extension contemplated by the section entitled "Exclusivity" herein.

Closing: The Closing shall occur 30 days after the date of full execution of the Purchase Agreement.

Access: To permit the Buyer to conduct their due diligence investigation, as long as this Letter of Intent remains in effect, the Seller will cause the Corporation to permit the Buyer and his agents to have reasonable access to the premises in which the Corporation conducts its business and to all of its books, records, and personnel files and will cause the Corporation to furnish to the Buyer such financial data, operating data, and other information as the Buyer shall reasonably request. The Buyer agrees to retain all such information on a confidential basis. Upon the termination of this Letter of Intent for any reason, the Buyer shall return promptly to the Seller and/or the Corporation all printed information received by the Buyers from the Sellers or the Corporation in connection with the transaction contemplated by this Letter of Intent.

Ordinary Course of Business: The parties agree that the Corporation will be operated from this date through the date of Closing in the ordinary course of its business, consistent with past practices. Without limiting the foregoing, there shall be no change in accounting policies applied on a consistent basis. There shall not be any change or restrictions placed on the payment of ordinary course payments through the Closing Date. There shall not be any change in the method by which bonuses or other payments are made to officers and directors of the Corporation.

Exclusivity: The parties agree to use their best efforts to enter into the Purchase Agreement not later than April 1, 2004 ("Exclusivity Period"). The Buyer shall have the right to request the consent of the Seller to a thirty (30) day extension, and such consent shall not be unreasonably withheld. The parties agree that during such period that the Buyer shall have the exclusive right to negotiate with the Seller for the purchase of the Shares, and during such period the Seller agrees not to directly or through intermediaries solicit, entertain or otherwise discuss with any person any offers to purchase (i) all or any portion of the Shares, or (ii) all or any portion of the assets of the Corporation.

·Reimbursement of Expenses of Selling Shareholder: In the event that all of the contingencies set forth herein have been satisfied as to the Buyer, but the Buyer is unable to sign the Purchase Agreement or close the transaction due to the inability of the Buyer to pay the purchase price in full, the Buyer agrees to reimburse the Seller for all of his out-of-pocket expenses (up to a maximum of $15,000) incurred in connection with the transactions contemplated herein.

This offer is contingent upon the completion by the Buyer, to his reasonable satisfaction, of due diligence on the Corporation.

If the foregoing is acceptable to you, kindly execute a copy of this letter in the place set forth below and return it me.

Very truly yours,

Jean Claude Canderlier

ACCEPTED AND AGREED TO:

_____
Sergio Zambrana