IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUDERLIER & ASSOCIATES, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) Civil Action No. 05-1653 (JMF) |
| SERGIO ZAMBRANA, | )<br>) |
| Defendant/Third-Party Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| JEAN CLAUDE CAUDERLIER | )<br>) |
| And | )<br>) |
| LA RUCHE, INC. | )<br>) |
| Third-Party Defendants | )<br>) |

### CAUDERLIER & ASSOCIATES, INC. REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Cauderlier & Associates, Inc. ("CAI") respectfully submits this Reply in Support of its Motion for Summary Judgment.

### DISCUSSION

Mr. Zambrana states in his Opposition that CAI's summary judgment motion "demonstrate[s] that … there are genuine issues regarding nearly every material fact relied upon by CAI" and that CAI is not "entitled to a [judgment] as a matter of law." Opposition at 1. However, Mr. Zambrana's Opposition entirely fails to either address or refute the legal and factual support that CAI cited in its motion. The Opposition instead seizes on – and in some

cases misapprehends – facts largely immaterial to CAI's motion.[1] In short, the material, undisputed facts (taken in a light most favorable to Mr. Zambrana), coupled with well-established precedent, require summary judgment for CAI. Mr. Zambrana's Opposition fails to identify a disputed issue of material fact.

Mr. Zambrana is unable to describe any agreement concerning the shares in CAI he claims to own. Nor is Mr. Zambrana able to identify any material issue that explains away his failure to act after Mr. Cauderlier rejected a demand for ownership in CAI and Mr. Zambrana was told by CAI's lawyer to retain his own counsel. Either ground fully supports entry of summary judgment for CAI and against Mr. Zambrana.

### I. MR. ZAMBRANA'S TESTIMONY AND THE LACK OF ANY EVIDENTIARY SUPPORT ESTABLISHES THAT THERE WAS NO AGREEMENT REGARDING OWNERSHIP OF CAI

There was no agreement between Mr. Cauderlier and Mr. Zambrana regarding CAI ownership. They never agreed on the essential terms. A mere discussion between parties that lacks agreement on key terms is not an enforceable agreement under the law of the District of Columbia.[2] Mr. Zambrana's Opposition fails to cite any facts establishing that the parties agreed

---

[1] For instance, Mr. Zambrana argues that the 10 shares of La Ruche, Inc. ("La Ruche") in certificate No. 9 were issued contemporaneously with transfers that occurred much earlier than 2000. Opposition at 13-14. However, this contention is demonstrably false. Mr. Cauderlier became the sole shareholder of La Ruche through the operation of agreements signed in the late 1980s and early 1990s which culminated in the May 1992 transfer of shares from the Levinson family – the prior owners – back to La Ruche. See Sum. Jud. Mot. Ex.1, Cauderlier Decl. Ex. A. The Levinson family no longer owned shares in La Ruche by the time certificate Nos. 9 was issued in 2000. E.g., id., Ex. K. The stock ledger does not contain an earlier date for certificate No. 9. And the October 2001 Consent in Lieu of a Meeting of the Board of Directors of La Ruche describes the 1992 Levinson stock transfer only because the corporate minutes since 1992 were "lost, stolen, destroyed or removed from the corporate minute book ..." and the La Ruche Board had decided to re-approve all actions taken during the lost period. Id., Ex. B. However, none of these miscast facts are actually material support for CAI's motion for summary judgment.

[2] See, e.g., Georgetown Entertainment Corp. v. District of Columbia, 496 A.2d 587, 590 (D.C. 1985) ("For an enforceable contract to exist, there must be both (1) agreement as to all material terms; and (2) intention of the parties to be bound"); Hollywood Credit Clothing Co., Inc. v. Gibson, 188 A.2d 348, 349 (D.C. 1963) (Court concluded that because the parties did not reach an agreement on the price term, "the minds of the parties did not meet 'honestly and fairly, without mistake or mutual misunderstanding, upon all the essential points involved' ..."); Anderco, Inc. v. Buildex Design, Inc., 538 F. Supp. 1139, 1142 (D.D.C. 1982) ("[T]he record demonstrates that at least up until the time [the construction company] abandoned the job the parties either had a mutual misunderstanding concerning or were actively disputing both the total contract price and the nature of the

on any ownership percentage of either the property or CAI. At some point during the February/March 2000 meeting, Mr. Zambrana asked:

> Words to the effect, J.C. [Mr. Cauderlier] what do I get? What am I getting here? When are you going to give me my shares?

Sum. Jud. Mot. Ex. 3, Powers Tr. at 64.[3] The very nature of the question demonstrates that there was no agreement. While Mr. Zambrana certainly wrote a $25,000 check payable to La Ruche, Mr. Zambrana has yet to articulate the terms, nature, or substance of the agreement he contends gave him ownership in CAI. Mr. Zambrana testified that this and other key terms were never set by the parties and that he has every expectation that "the judge [will] decide that." Memo at 10-11 (quoting Sum. Jud. Mot. Ex. 2, Zambrana Tr. at 43-45). However, Mr. Zambrana cites no precedent that permits this Court to craft contractual terms when the parties themselves did not.[4]

There is no evidentiary support for Mr. Zambrana's claim of ownership in CAI or the property. Mr. Zambrana's Opposition fails to substantively address this failure of proof. Not only is there no contract (Memo at 3), there are also no contemporaneous documents that establish Mr. Zambrana's alleged ownership. There are no corporate records of shares having been issued to Mr. Zambrana and no contemporaneous correspondence or even diary entries. Even the $25,000 check with which Mr. Zambrana claims to have purchased an ownership interest was written to La Ruche and lends no support to Mr. Zambrana's claims in either the property or CAI.[5]

---

performance …. These facts demonstrate an absence of mutual assent and therefore a contract may not be found by implication").

[3] Mr. Zambrana was unable to recall that particular meeting but admitted that "[w]e had a lot of meetings." Ex. 2, Zambrana Dep. Tr. at 46. Mr. Zambrana attended Mr. Powers' deposition and was aware of his testimony. During his deposition, Mr. Zambrana neither disagreed with, nor contradicted, Mr. Powers' account.

[4] In fact, Mr. Zambrana's Opposition neither distinguishes the instant matter from any of the cases cited by CAI nor provides any alternative authority that would support his opposition to summary judgment.

[5] Mr. Zambrana's Opposition attempts to introduce ambiguity where there is none by arguing that other checks were "written on La Ruche's account for the benefit of CAI, including over $48,000 payable to the seller of the Building." Opposition at 15. This attempt at misdirection does not change the facts that Mr. Zambrana's $25,000 was neither included with the funds provided at the January 21, 2000 closing nor deposited to a CAI account. As noted in the

Instead Mr. Zambrana presents the affidavit of Mahesh Naithani. Accepting as true (solely for purposes of summary judgment) Mr. Naithani's claim that Mr. Cauderlier presented Mr. Zambrana as a co-owner or partner "in the transaction" (Opposition, Naithani Affidavit at 2), the claim still lends Mr. Zambrana no support. Mr. Naithani does not state that he: (1) witnessed any partnership negotiations or was privy to a partnership agreement between Mr. Cauderlier and Mr. Zambrana; (2) reviewed or examined any CAI corporate resolutions, correspondence, or other CAI bona fides that could support Mr. Zambrana's claims of ownership[6]; or (3) received any payments on the $80,000 note from Mr. Zambrana. Even if correct, Mr. Naithani's perception of hearsay does not constitute evidence that the parties reached an agreement on CAI or property ownership. This is particularly true given the question Mr. Zambrana posed to Mr. Cauderlier at the meeting in February/March 2000.

None of the property purchase closing documents identify Mr. Zambrana as a co-owner, partner, or property purchaser. The U.S. Small Business Administration/First Union mortgage certifications do not identify Mr. Zambrana as an owner or co-owner of CAI or the property. *See* Sum. Jud. Mot. Ex. 1, Cauderlier Decl. Ex. H. And while Mr. Cauderlier provided a personal guarantee of the significant debt incurred in the property purchase, Mr. Zambrana did not. *Id.* Ex. J; Ex. 2, Zambrana Tr. at 60

Mr. Zambrana's $25,000 check could not have and did not clear before Mr. Cauderlier obtained the bank-guaranteed funds necessary for the closing. The check presented to the seller at the January 21, 2000 closing was a bank check guaranteeing that the funds were good. The bank records indicate that Mr. Zambrana's personal check was deposited in the La Ruche account on January 21, 2000. That check could not have cleared for inclusion amongst the

---

Memo, Mr. Zambrana's claims are not made as part of a derivative action – he is therefore limited to pursuing personal claims against CAI. Having written a check to La Ruche that was not used in closing on the real estate purchase, and having failed to reach an agreement regarding CAI ownership, it is not apparent what personal claims Mr. Zambrana could possibly pursue against CAI.

[6] Mr. Naithani also does not state that he requested any representations or warranties as to Mr. Zambrana's authority or status from CAI.

guaranteed funds presented at a closing scheduled for that same day. Mr. Zambrana's Opposition fails to either address or refute this fact.

## II. THE STATUTE OF LIMITATIONS HAS EXTINGUISHED MR. ZAMBRANA'S CLAIMS AND THE OPPOSITION FAILS TO ESTABLISH OTHERWISE

The District of Columbia's statute of limitations, D.C. Code § 12-301, has extinguished Mr. Zambrana's claim of ownership in CAI. It is undisputed that: (a) Mr. Zambrana presented Mr. Cauderlier and James Powers a $25,000 check payable to La Ruche in January 2000; (b) during a February/March meeting, Mr. Zambrana demanded an ownership interest in CAI in exchange for his check; (c) Mr. Cauderlier declined to offer Mr. Zambrana any interest in CAI and offered only an interest in La Ruche; (d) Mr. Zambrana rejected the offer of ownership in La Ruche but not CAI; (e) during the same meeting, Mr. Powers recommended that Mr. Zambrana obtain counsel; and (f) Mr. Zambrana never received any written or oral statement quantifying his alleged ownership interest in CAI. Sum. Jud. Mot., Ex. 1, Cauderlier Decl. at 4; *id.*, Ex. 2, Zambrana Tr. at 43-45; *id.*, Ex. 3, Powers Tr. at 64.

Mr. Zambrana responds to those undisputed facts by simply citing "his belief [prior to 2004 correspondence with Mr. Cauderlier] that he was a co-owner of CAI" as the cause of the more than five-year delay between the transaction and his filing counterclaims in this matter. Opposition at 17. However, the law "requires only that [Mr. Zambrana] have inquiry notice of the existence of a *cause of action* ...." *Baker v. A.H. Robins Co., Inc.*, 613 F. Supp. 994, 998 (D.D.C. 1985).[7] Mr. Zambrana had such inquiry notice when he demanded a CAI ownership interest for which he allegedly paid $25,000 a month or two before, was cautioned to obtain counsel, and then received no indication of CAI ownership in return. The Opposition makes no

---

[7] As established in the Memo, "a claim accrues when the [claimant] knows of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing." *Cevenini v. Archbishop of Washington*, 707 A.2d 768, 771 (D.C. 1998).

reasonable attempt to explain Mr. Zambrana's failure to either investigate or seek recourse within the limitations period.[8] Mr. Zambrana's claims have been extinguished.

## CONCLUSION

For the foregoing reasons and those reasons described in CAI's Memorandum in Support of Summary Judgment, this Court should issue a declaratory judgment in favor of CAI that:

(1) Mr. Cauderlier is the sole shareholder and has 100 percent ownership of CAI, and

(2) Mr. Zambrana has no ownership interest in CAI or the property. Further, this Court should enter judgment for CAI and against Mr. Zambrana on his counterclaims.

Dated: June 4, 2007

Respectfully submitted,

_____
Robert L. Green, Jr. (D.C. Bar No. 935775)
James B. Boles (D.C. Bar No. 471818)
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 783-0800
(202) 383-6610 – facsimile
greenr@howrey.com
bolesj@howrey.com

Attorneys for Cauderlier & Associates, Inc.,
Jean Claude Cauderlier, and La Ruche, Inc.

---

[8] Mr. Zambrana does not deny that he wrote a $25,000 check, was cautioned to get an attorney, and never received what he demanded. Mr. Zambrana's assertion that he assumed that everything was as he "believed" for four years does not change the fact that Mr. Cauderlier rejected his demand for ownership in CAI and Mr. Powers told him to retain his own counsel. Far from mere inquiry notice, the undisputed facts show that Mr. Zambrana had actual notice of his claim. Despite having actual notice, Mr. Zambrana did nothing to pursue his claim from March 2000 until after CAI filed its declaratory judgment action in August 2005.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Cauderlier & Associates, Inc. Reply in Support of Motion for Summary Judgment was served by operation of the Court's electronic filing system upon all attorneys of record registered with the Court's ECF system, and a true and accurate copy of the foregoing instrument was forwarded by overnight delivery to those attorneys not registered with the Court's ECF system, this 4th day of June 2007, as indicated below, to:

Jeffrey M. Hamberger, Esq.
O'REILLY & MARK, PC
11200 Rockville Pike, Suite 301
N. Bethesda, Maryland 20852
jmh@oreillymark.com
(301) 231-6330

_____
James B. Boles