IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUDERLIER & ASSOCIATES, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-1653 (JMF) |
| SERGIO ZAMBRANA, | ) |
| Defendant/Third-Party Plaintiff | ) |
| v. | ) |
| JEAN CLAUDE CAUDERLIER | ) |
| and | ) |
| LA RUCHE, INC. | ) |
| Third-Party Defendants | ) |

## SUPPLEMENTAL MEMORANDUM OF CAUDERLIER & ASSOCIATES, INC. SUBMITTED PURSUANT TO THIS COURT'S ORDER REGARDING SUMMARY JUDGMENT

Cauderlier & Associates, Inc. ("CAI") respectfully submits this Supplemental Memorandum pursuant to the Court's December 28, 2007 Order ("Order"). The Order instructed CAI and Sergio Zambrana ("Mr. Zambrana") to file memoranda of law addressing the following questions: (1) "Is [Mr. Zambrana] entitled to a jury trial on his remaining counterclaim for unjust enrichment?"; and (2) "What is the proper measure of damages under District of Columbia law for unjust enrichment?" CAI's responses are as follows.

## IS MR. ZAMBRANA ENTITLED TO A JURY TRIAL ON HIS REMAINING COUNTERCLAIM FOR UNJUST ENRICHMENT?

Mr. Zambrana is not entitled to a jury trial on his unjust enrichment claims. None of the parties in this litigation requested a jury trial on any of the claims, counterclaims, or crossclaims.

CAI did not request a jury trial in its August 17, 2005 complaint (document 001) against Mr. Zambrana. Mr. Zambrana did not request a jury trial in his October 24, 2005 Answer and Counterclaim against CAI (document 009) or his November 29, 2005 Third-Party Complaint against Jean-Claude Cauderlier ("Mr. Cauderlier") and La Ruche, Inc. ("La Ruche") (document 018). Mr. Cauderlier and La Ruche did not request a jury trial in their December 19, 2005 Answers (documents 020 & 021).

As a result, the Court need not decide whether the unjust enrichment claim should be tried to a jury because Mr. Zambrana waived any right to jury trial under Fed. R. Civ. P. 38 ("The failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury").[1]

## WHAT IS THE PROPER MEASURE OF DAMAGES IN THE DISTRICT OF COLUMBIA FOR UNJUST ENRICHMENT?

In the District of Columbia, the proper measure of unjust enrichment "damages" stemming from the inequitable retention of money is restitution in the form of the money's return plus interest.[2] However, the facts peculiar to this case must be addressed to properly qualify this

---

[1] Nor is there an untimely jury request from Mr. Zambrana pending before this Court. *Cf. BCCI Holdings (Lux.), S.A. v. Khalil*, 214 F.3d 168, 172-73 (D.C. Cir. 2000) (Affirming the rejection of an untimely jury trial request).

[2] *4934, Inc. v. District of Columbia Dep't of Employ. Svcs.*, 605 A.2d 50, 55-56 (D.C. 1992) ("Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another. In such a case, the recipient of the benefit has a duty to make restitution to the other person 'if the circumstances of its receipt and retention are such that, as between the two persons, it is unjust for [the recipient] to retain it'"); *In re Huber*, 708 A.2d 259, 260 (D.C. 1998) (Court noted that the obligation to pay interest is "intertwined" with the obligation to make restitution).

restitution standard. The key facts are that:

1.    On January 20, 2000, Mr. Zambrana wrote a $25,000 check payable to La Ruche believing he was buying some portion of CAI or the land, but not an interest in La Ruche;

2.    Mr. Cauderlier accepted Mr. Zambrana's $25,000 believing Mr. Zambrana was buying an interest in La Ruche, but no part of CAI or the land; and

3.    CAI did not receive funds either directly or indirectly from Mr. Zambrana.

As a result, CAI was not unjustly enriched – it has never held Mr. Zambrana's money. It is apparent that there can be no unjust enrichment if the party so accused was not "enriched." Consequently, Mr. Zambrana's remaining unjust enrichment counterclaim cannot be brought against CAI. To the extent there has been any unjust enrichment, it is because La Ruche accepted Mr. Zambrana's $25,000 check in the absence of an agreement.

It is undisputed that Mr. Zambrana wrote the check payable to La Ruche and that La Ruche then deposited those funds into its account. *See, e.g.,* Memorandum of CAI in Support of Motion for Summary Judgment (document 057) at 8-9, 12-13. CAI's complaint alleges that the $25,000 check was payment for a 10 percent interest in La Ruche. CAI Complaint at 3-4. However, Mr. Zambrana denies that the $25,000 check was payment for any ownership interest in La Ruche. *E.g.,* Zambrana Answer and Counterclaim at 8, ¶15.

Thus it is apparent – for the same reasons delineated in the Court's December 28, 2007 opinion – that there was no meeting of the minds on the exchange of $25,000 for ownership in La Ruche. Mr. Cauderlier and La Ruche accepted the $25,000 believing Mr. Zambrana was purchasing an interest in La Ruche. Mr. Zambrana did not intend that his $25,000 check was payment for any interest in La Ruche. As a result, no contract was formed. Mr. Cauderlier and La Ruche deny that there was anything wrongful about their receipt or retention of the $25,000. It was not until Mr. Zambrana filed his answer that the absence of any agreement regarding Mr. Zambrana's purchase of a 10 percent interest in La Ruche in exchange for $25,000 became apparent.[3]

---

[3] Mr. Cauderlier and La Ruche deny that Mr. Zambrana had any ownership interest in La Ruche prior to January 2000. *See* CAI Answer to Counterclaims at 4, ¶ 14; La Ruche Answer to Third-Party Complaint at 5, ¶ 17;

3

The remedy of returning Mr. Zambrana's money plus interest is appropriate because there was no agreement among or between any of the parties regarding the $25,000 check:

> Zambrana states in his Opposition that "[t]here is clearly no set of undisputed facts upon which the court, at this stage of the case, could reach a conclusion as to the terms of the contract, as a matter of law." [....] Zambrana misses the point. CAI is alleging that there were no terms, and thus no contract. In this case, defendant has presented no evidence upon which the finder of fact could predicate the conclusion that the parties were in agreement on any material term – and, in fact, as outlined above, the evidence in the record strongly indicates that they were not.

Order at 15-16 (citations and footnotes omitted). This Court has observed that the facts – as presented by Mr. Zambrana – do not even approach the "meeting of the minds" standard for an enforceable agreement:

> The evidence surrounding the $75,000 payment in [*Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d 247 (D.C. 1990)] is far more indicative of a meeting of the minds than Zambrana's $25,000 payment to La Ruche. First, the parties in Kramer agreed (as substantiated by correspondence and performance) that the $75,000 would trigger efforts by appellant to secure funding for the housing development. In contrast, Zambrana has not provided any evidence of action taken by either party reflecting the rights or obligations that he alleges were to follow his payment to La Ruche. Second, there was a proposed contract in Kramer that might have guided a court in crafting a remedy or ordering specific performance. In the present case, however, there is nothing in the record other than the ambiguous deposition testimony of Powers that would provide the court any guidance in fashioning a remedy.
>
> Finally, in Kramer, the party seeking relief presented the court with a theory of how the alleged contract should be interpreted (the

---

Mr. Cauderlier's Answer to Third-Party Complaint at 5, ¶ 17. Although the Court has noted that "Zambrana now argues that Certificate No. 9 was issued long before January 2000" (Order at 3), Mr. Zambrana signed a document stating that "[i]n January 2000, certificate #9 for 10 [La Ruche] shares was issued to Sergio Zambrana but was never received ... and is lost." *See* Motion of CAI for Summary Judgment ("CAI Sum. Jud. Mot."), Ex. K. Further, the corporate records establish that Mr. Cauderlier was the sole La Ruche stockholder from 1987 until Mr. Zambrana's La Ruche stock was issued in January 2000. *See id.* at Ex. 1 (2, ¶ 4) and Ex. A. Mr. Zambrana's unsubstantiated representation cannot be credited over undisputed written evidence. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("We do not understand [prior case law] to hold that a [non-movant] may defeat a [movant's] properly supported motion ... without offering any concrete evidence ...").

4

> $75,000 was "seed money" and a "good faith deposit"), and evidence in support thereof (written communication and testimony). The same can hardly be said for Zambrana, who apparently believes this to be the sole responsibility of experts and judges. If there was not an enforceable contract in Kramer, there surely could not have been one here.
>
> Because no reasonable person could find that there was an agreement as to material terms between Zambrana and Cauderlier, the Motion will be granted insofar as it seeks a declaratory judgment that Zambrana did not enter into an enforceable contract for an ownership interest in CAI.

Order at 17-18 (citations and footnotes omitted).

Return of Mr. Zambrana's money plus interest is the correct remedy given Mr. Zambrana's representations regarding his intent in submitting the $25,000 check. In his October 24, 2005 Answer and Counterclaim, Mr. Zambrana stated:

> 15. The $25,000 check Mr. Zambrana gave to La Ruche on or about January 20, 2000 was not payment for any ownership share in LaRuche and was, instead, part of CAI's purchase price of the Building.

Id. at 8, ¶15; see also Zambrana Opposition to Motion for Summary Judgment (document 058), Ex. A at 2, ¶ 9.

As this Court has noted, where a "[d]efendant has wrongfully obtained and retained money ... restitution in the amount plaintiffs 'invested' ... is an appropriate equitable remedy in order to prevent defendant from unjust enrichment." Colletti v. Aina, 1995 U.S. Dist. LEXIS 4114 at *6 (D.D.C. Mar. 29, 1995); see also 4934, Inc., 605 A.2d at 55-56. "The obligation to pay interest is intertwined with the obligation to make restitution." In re Huber, 708 A.2d at 260. Where there is no enforceable agreement establishing a rate of return, the District of Columbia's restitution interest rate is 6 percent:

> Since the interest obligations purportedly fixed by the contracts, like the contracts themselves, are unenforceable, plaintiffs are entitled to interest from the day on which the parties made the so-called "investments," at the rate of 6% per annum, "the rate of

5

> interest in the District upon the loan or forbearance of money, goods, or things in action in the absence of expressed contract."

*Colletti,* 1995 U.S. Dist. LEXIS 4114 at *6 (citing D.C. Code § 28-3302(a)).[4] Thus, if the Court finds that there was no agreement that the $25,000 check was a payment for a 10 percent interest in La Ruche, then La Ruche should return Mr. Zambrana's $25,000 plus interest at 6 percent. This is the proper remedy in the District Columbia.

Dated: January 14, 2008

Respectfully submitted,

_____
Robert L. Green, Jr. (D.C. Bar No. 935775)
James B. Boles (D.C. Bar No. 471818)
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 783-0800
(202) 383-6610 – facsimile
greenr@howrey.com
bolesj@howrey.com

Attorneys for Cauderlier & Associates, Inc.,
Jean Claude Cauderlier, and La Ruche, Inc.

---

[4] *See also District of Columbia v. Pierce Assocs., Inc.,* 527 A.2d 306, 310 (D.C. 1987) ("[W]hen the rate of interest has not been specified in the contract, courts in this jurisdiction have without exception limited it to the statutory rate provided in D.C. Code § 28-3302"); *Riggs Nat'l Bank v. District of Columbia,* 581 A.2d 1229, 1256 (Court rejected a rate of return proposal in an unjust enrichment case because that proposal differed from the 6 percent return set under D.C. Code § 28-3302).

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Supplemental Memorandum of Cauderlier & Associates, Inc. Submitted Pursuant to this Court's Order Regarding Summary Judgment were served by operation of the Court's electronic filing system upon all attorneys of record registered with the Court's ECF system, and a true and accurate copy of the foregoing instrument was forwarded by overnight delivery to those attorneys not registered with the Court's ECF system, this 14th day of January 2008, as indicated below, to:

>Jeffrey M. Hamberger, Esq.
>O'REILLY & MARK P.C.
>11200 Rockville Pike, Suite 301
>North Bethesda, Maryland  20852
>jmh@oreillymark.com
>(301) 231-6330

_____
James B. Boles