## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CAUDERLIER & ASSOCIATES, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Civil Action No. 05-1653 (JMF)** |
| **SERGIO ZAMBRANA,** | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **JEAN CLAUDE CAUDERLIER** | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **LA RUCHE, INC.** | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

---

### MOTION OF LA RUCHE, INC. AND JEAN CLAUDE CAUDERLIER
### FOR SUMMARY JUDGMENT

La Ruche, Inc. ("La Ruche") and Jean Claude Cauderlier move for entry of summary judgment on Mr. Zambrana's Third-Party Complaint. Summary judgment is appropriate because the undisputed facts demonstrate that Mr. Zambrana's accounting, usurpation of corporate opportunity, constructive trust, and unjust enrichment claims fail because they (1) are dependent upon his being an owner of La Ruche or, in the alternative, (2) have been extinguished by the District of Columbia's applicable statute of limitations. The appropriate resolution of this case is for La Ruche to return to Mr. Zambrana his $25,000, plus six percent interest, and for Mr. Zambrana to return the 10 shares of La Ruche he was issued.

In support of this Motion, La Ruche and Mr. Cauderlier submit: (1) the attached memorandum in support; (2) the declaration of Mr. Cauderlier (Exhibit 1); (3) transcript excerpts from the January 30, 2007 deposition of Mr. Zambrana (Exhibit 2); (4) transcript excerpts from

the March 3, 2006 deposition of James Powers (Exhibit 3); and (4) a copy of a Delaware

Chancery Court case (*i.e., McKee v. McKee,* 2007 Del. Ch. LEXIS 59 (Del. Ch. May 3, 2007))

(Exhibit 4) cited in the supporting memorandum.  La Ruche and Mr. Cauderlier also submit a

proposed Order (Exhibit 5).


Dated:  February 6, 2008                    Respectfully submitted,

                                            Robert L. Green, Jr. (D.C. Bar No. 935775)
                                            James B. Boles (D.C. Bar No. 471818)
                                            HOWREY LLP
                                            1299 Pennsylvania Ave., N.W.
                                            Washington, D.C.  20004
                                            (202) 783-0800
                                            (202) 383-6610 – facsimile
                                            greenr@howrey.com
                                            bolesj@howrey.com

                                            Attorneys for Cauderlier & Associates, Inc.,
                                            Jean Claude Cauderlier, and La Ruche, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAUDERLIER & ASSOCIATES, INC.,   )
                )
       Plaintiff,      )
                )
     v.             )
                )   Civil Action No. 05-1653 (JMF)
SERGIO ZAMBRANA,     )
                )
       Defendant/Third-Party Plaintiff,   )
                )
     v.             )
                )
JEAN CLAUDE CAUDERLIER   )
                )
     And          )
                )
LA RUCHE, INC.      )
                )
       Third-Party Defendants.   )
                )

## MEMORANDUM OF LA RUCHE, INC. AND JEAN CLAUDE CAUDERLIER IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

La Ruche, Inc. ("La Ruche") and Jean Claude Cauderlier respectfully move this Court for summary judgment pursuant to Fed. R. Civ. P. 56. The undisputed facts demonstrate that La Ruche and Mr. Cauderlier are entitled to summary judgment on Mr. Zambrana's Third-Party Complaint because (1) Mr. Zambrana holds no ownership interest in La Ruche; and (2) Mr. Zambrana's accounting, usurpation of corporate opportunity, constructive trust, and unjust enrichment claims fail because they are dependent on his being an owner of La Ruche or, in the alternative, have been extinguished by the District of Columbia's applicable statute of limitations.

The appropriate resolution of this case is for La Ruche to return to Mr. Zambrana his $25,000, plus six percent interest, and for Mr. Zambrana to return the 10 shares of La Ruche he was issued.

## STATEMENT OF UNDISPUTED FACTS

La Ruche operates the restaurant, Café La Ruche, at 1039 31st Street, N.W., Washington

D.C., 20007.  Mr. Cauderlier purchased La Ruche for $250,000 from the Levenson family

through a February 20, 1987 agreement (effective June 1, 1986) that granted Mr. Cauderlier the

option to purchase the entirety of La Ruche in twenty-share increments.  Ex. 1, Cauderlier

Declaration ("Decl.")[1] at 2, ¶4; Ex. A. at 1-3.  Mr. Cauderlier became President of La Ruche on

February 21, 1987 and its sole shareholder on May 1, 1992.  *Id.* at 1-4, 6-11.

On September 9, 1986, Mr. Zambrana was hired as a waiter at Café La Ruche.

Mr. Zambrana claims that, in either 1995 or 1996, Mr. Cauderlier offered him "an incentive to be

a partner of La Ruche …. for the ten years of excellent employ-wise" and because he stayed at

La Ruche after declining a partnership in an associate's new restaurant.  Zambrana Transcript

(Tr.")[2] at 52-54.  In exchange for this unquantified partnership in La Ruche, Mr. Zambrana

asserts his salary was cut for four years.  *Id.* at 52, 68.  There are no contemporaneous documents

that describe this claimed "earn-in" arrangement.  *E.g.,* Zambrana Tr. at 74-75.  No shareholder's

agreement, written contract, or e-mail sets forth the terms of the "earn-in" arrangement

Mr. Zambrana claims existed.  Prior to January 2000, no stock certificate was issued to

Mr. Zambrana.  *E.g.,* Cauderlier Decl., Ex. K.

In early 1999, Mr. Cauderlier became aware of an opportunity to purchase the property at

1035, 1037, and 1039 31st Street, N.W., Washington D.C. 20007 (the "Property"), which

includes the Café La Ruche location.  Cauderlier Decl. at 2, ¶5.  On August 19, 1999,

Mr. Cauderlier formed Cauderlier & Associates, Inc. ("CAI") to purchase the Property.  With

$60,000 borrowed from La Ruche, Mr. Cauderlier purchased 500 shares in CAI and thereby

became CAI's sole shareholder.  Cauderlier Decl., Exs. B-F.  Mr. Zambrana and Mr. Cauderlier

both signed a "Unanimous Written Consent in Lieu of the Organizational Meeting of the Board

---

[1] Attached hereto as Exhibit 1.

[2] Attached hereto as Exhibit 2.

of Directors" for CAI which resolved that "the President of the Corporation be and hereby is authorized to enter into an agreement for the purchase of 1035-1039 31st Street, N.W. ...." Cauderlier Decl., Ex. D at 3. Mr. Cauderlier began negotiating the details of the Property purchase with Yes Inc. – the owner – on CAI's behalf in September 1999. Ex. 1, Cauderlier Decl. at 2, ¶8.

Later in 1999, Mr. Cauderlier discussed La Ruche co-ownership with Mr. Zambrana. Cauderlier Decl. at 2-3. Mr. Cauderlier suggested that Mr. Zambrana could buy 10 percent of La Ruche for $25,000 – roughly ten percent of the purchase price Mr. Cauderlier negotiated with the Levensons more than a decade earlier. *Id.* However, Mr. Cauderlier and Mr. Zambrana did not discuss purchase terms or details. *Id.* at 2, 4.

CAI closed the Property purchase from Yes, Inc. on January 21, 2000. *Id.* at 3. While present at the closing, Mr. Zambrana played no substantive role in that transaction. *E.g., id.*; Zambrana Tr. at 58-63. Although the parties disagree whether it took place either a day prior to or the day of the January 21 closing, Mr. Zambrana met with James Powers[3] and Mr. Cauderlier and gave Mr. Cauderlier a $25,000 check made payable to La Ruche. Ex. 2, Zambrana Tr. at 99; Ex. 1, Cauderlier Decl. at 3-4.

Mr. Zambrana has consistently and emphatically denied that the 10 shares of La Ruche he holds were issued in exchange for his $25,000 check. *See, e.g.,* Ex. 2, Zambrana Tr. at 80-81; Zambrana Answer and Counterclaim at 8, ¶15; Zambrana Opposition to Motion for Summary Judgment at 2, ¶ 9. He instead asserts:

> 26. The $25,000 check Mr. Zambrana gave to J. Cauderlier,
> payable to La Ruche, on January 20, 2000 ... was not payment for
> any ownership share in La Ruche ....

Zambrana Third-Party Complaint at 4-5. During his deposition, Mr. Zambrana clarified that he tendered his check because he thought he was "putting in $25,000 as investment to buy a

---

[3] Mr. Powers served as counsel to Mr. Cauderlier, CAI, and La Ruche.

building ...." Ex. 2, Zambrana Tr. at 34, 82-90.  Although Mr. Zambrana, a former corporate officer of CAI, understood that "CAI was an instrument to buy the land" (*id.* at 36-37), he believed that his check would allow him to become an individual owner of the land or "partner" in the building ownership.  *Id.* at 36-37, 44.  As a result, Mr. Zambrana's only claim of ownership in La Ruche stems solely from an alleged pre-2000 "earn-in" arrangement:

> 7.      Long before January, 2000, J. Cauderlier told me that he made me a part owner of La Ruche, Inc. ("La Ruche") ....
>
> 8.      J. Cauderlier gave me part ownership in La Ruche in recognition of my many years of excellent performance as an employee of La Ruche and as incentive to keep me in the employ of La Ruche.

Zambrana Mot. to Dismiss the Complaint, Affidavit of Sergio Zambrana at 1-2.

After the January 21, 2000 closing, Cauderlier, Powers and Zambrana met at the restaurant property.  Mr. Powers testified that the meeting occurred in February or March 2000. Powers Tr. at 62.[4]  At some point during that meeting, Mr. Zambrana demanded interest in CAI in exchange for his $25,000.  *Id.* at 64.  Mr. Cauderlier offered Mr. Zambrana interest in La Ruche.  *Id.* at 65.  No agreement was reached.

La Ruche issued certificate No. 9 – for 10 shares of La Ruche common stock – to Mr. Zambrana in January 2000.  Cauderlier Decl., Ex. K.  Mr. Zambrana believed that certificate No. 9 was issued due to the "earn-in" arrangement he allegedly had with La Ruche.  *E.g.*, Ex. 2, Zambrana Tr. at 65-76.  La Ruche issued certificate No. 9 in exchange for Mr. Zambrana's $25,000 check.  *E.g.*, Ex. 1, Cauderlier Decl. at 3-4.  Mr. Cauderlier and La Ruche deny that any such "earn-in" arrangement ever existed.

On June 23, 2004, Mr. Zambrana, Mr. Cauderlier, and La Ruche counsel met for a La Ruche shareholder's proceeding.  Cauderlier Decl., Ex. K; Ex. 2, Zambrana Tr. at 87-88.

---

[4] Attached hereto as Exhibit 3.  Mr. Zambrana was unable to recall that particular meeting but admitted that "[w]e had a lot of meetings."  Ex. 2, Zambrana Dep. Tr. at 46.  Mr. Zambrana attended Mr. Powers' deposition and was aware of his testimony.  During his deposition, Mr. Zambrana neither disagreed with, nor contradicted, Mr. Powers' account.

4

During that meeting, Mr. Zambrana and Mr. Cauderlier signed a handwritten Consent to Action in Lieu of a Special Meeting of the Shareholders of La Ruche, Inc., which contained the following statement:

> In January 2000, certificate #9 for 10 shares was issued to Sergio Zambrana, but was never received by Mr. Zambrana and is lost. Therefore, the President is authorized to issue certificate #10 to Mr. Zambrana for 10 shares.

Cauderlier Decl., Ex. K. Stock Certificate No. 10 was issued that day. *E.g.,* Zambrana Opposition to Motion for Summary Judgment, Ex. C (photocopy of stock ledger).

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the 'initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions … which [it] believe[s] demonstrate the absence of a genuine issue of material fact."[5] "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party.'"[6] "Thus, when reviewing a motion for summary judgment, a court must view all of the evidence in the light most favorable to the nonmoving party."[7]

## ARGUMENT

Mr. Zambrana claims that the 10 shares of La Ruche he received in January 2000 were issued due to an "earn-in" arrangement created in 1996 and that the $25,000 check he wrote in January 2000 was unrelated to the contemporaneous stock issuance. La Ruche and

---

[5] *Glenn v. Williams,* 2006 U.S. Dist. LEXIS 8687 at *26 (D.D.C. Feb. 21, 2006) (*quoting Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).

[6] *George v. Leavitt,* 407 F.3d 405, 410 (D.C. Cir. 2005) (quoting *Anderson,* 477 U.S. at 248).

[7] *George,* 407 F.3d at 410; *see also Tao v. Freeh,* 27 F.3d 635, 638 (D.C. Cir. 1994).

Mr. Cauderlier maintain that those shares were issued in exchange for Mr. Zambrana's $25,000, and have denied that there was ever an "earn-in" arrangement.  Court precedent and the evidence presented (including Mr. Zambrana's marked lack of documents and stunning inability to recall any material details of the alleged "earn-in" arrangement) establish that there is no dispute of material fact.  Even if the Court found that there was such a dispute, Mr. Zambrana's "earn-in" arrangement claims accrued in 1996, nine years before he filed his Third-Party Complaint.  At the latest, all of Mr. Zambrana's claims accrued in January 2000, more than five years before his Third-Party Complaint.  Mr. Zambrana's claims therefore cannot overcome summary judgment and have been extinguished by the three-year statute of limitations.

## I.    MR. ZAMBRANA'S CLAIMS REGARDING AN ALLEGED "EARN-IN" ARRANGEMENT CANNOT WITHSTAND SUMMARY JUDGMENT

Mr. Zambrana's testimony establishes that his alleged "earn-in" arrangement is unenforceable.  Mr. Zambrana has asserted that his 10 shares of La Ruche were issued in exchange for a pay cut and his foregoing an opportunity to partially own another restaurant, all in the early to mid-1990s.  Ex. 2, Zambrana Tr. at 65-76; *but see* Ex. 1, Cauderlier Decl. at 3-4; *id.,* Cauderlier Decl. Ex. C.[8]  Yet Mr. Zambrana cannot even describe the most general contours of this alleged "earn-in" arrangement with La Ruche:

> Q.      Okay.  Did he say I would like you to become my partner, and it's going to cost you this much amount of money?
>
> A.      So, sir, you're going to become my partner.  You just -- for me to stay, not to leave La Ruche and stay there.  Instead to -- he say that he was very grateful with me, because I was a hard worker, I was a loyal with him and a friend on the bad times he had.  And also we decide that, you know, I'm going to cut my salary.
>
> So for me that's -- and that's – that was the conversation.  I mean, we never went to details.  I never saw any corporation books

---

[8] As noted *supra,* Mr. Zambrana has denied that the 10 shares of La Ruche were issued in exchange for his $25,000 check.  *E.g.,* Ex. 2, Zambrana Tr. at 80-81.

or anything like that. I never thought about that. I trust him
hundred percent.

* * *

Q.  And how much were you to pay?

A.  I -- you know, I -- for me, I – I assume it's, you know, I cut
my salary starting '96. I never had a raise. You know, I stay – I
had a better investments. I mean, somebody offered me to go with
-- the other manager offered me to go with her when this new
restaurant opened. And JC told me to stay with him. And that was
an exchange of. So that for me is value.

Q.  And what were you to get for that value, sir?

A.  A partnership. A partnership.

Q.  How much?

[Interjection from Mr. Zambrana's counsel]

THE WITNESS: I guess it was a 10 percent of -- he give me on
the certificate – my guess is that the certificate I have from La
Ruche. We never discussed percentage. When I saw that
document.

Zambrana Tr. at 66-68. The certificate to which Mr. Zambrana was referring is certificate No. 9

for 10 shares of La Ruche, which was issued in 2000 after Mr. Zambrana gave Mr. Cauderlier

the $25,000 check payable to La Ruche. *E.g.,* Cauderlier Decl., Ex. K. Mr. Cauderlier issued

certificate No. 9 consistent with his offer of a 10 percent interest in La Ruche for a $25,000

payment and did not issue the certificate pursuant to any "earn-in" arrangement. *See* Cauderlier

Decl. at 3-4. Mr. Cauderlier denies that there was any "earn-in" arrangement with

Mr. Zambrana.

For there to be an enforceable agreement, "the minds of the parties must meet honestly

and fairly, without mistake or mutual misunderstanding, upon all the essential points involved in

the transaction composing the contract."[9] As this Court previously observed, "[t]he devil is

always in the details .... an oral contract may only exist where there is an intent to be bound *and*

an agreement as to all material terms." December 28, 2007 Memorandum Opinion

---

[9] *Cunningham Manufacturing Co. v. Rotograph Co.,* 30 App. D.C. 524, 527 (D.C. 1908)

("Memorandum Opinion") at 11. According to Mr. Zambrana, there was no agreement on the nature of the salary reduction, the amount of shares to be granted over time, or even the partnership percentage goal. There was no meeting of the minds on any material issue. Thus, Mr. Zambrana's "earn-in" theory remains just that, a theory. At best, Mr. Zambrana accepted the La Ruche stock believing it was payment under an "earn-in" arrangement and Mr. Cauderlier issued the stock believing Mr. Zambrana had paid $25,000 for it. This is simply not an enforceable agreement.[10]

The lack of objective evidence is also fatal to Mr. Zambrana's claims of an "earn-in" arrangement. The D.C. Court of Appeals demands more from a plaintiff than his mere belief and subjective expectations:

> [T]he motions judge found … that there was "no jury question on whether defendants promised [the contested employment status.] Plaintiff's evidence presents to the court only the words of an employer who is coloring the future of his business as brightly as possible."
>
> * * *
>
> In sum, the only evidence offered by [Plaintiff] are statements of her own expectations …. An employee's subjective belief … is not controlling because "more than conclusive allegations in the pleadings or appellant['s] belief … are necessary to raise a material issue of fact precluding the grant of summary judgment."

*Simard v. Resolution Trust Corp.,* 639 A.2d 540, 553 (D.C. 1994); *see also* Memorandum Opinion at 12 ("Zambrana, as 'the party asserting the existence of a[n oral] contract[,] has the burden' of demonstrating completeness"); *id.* at 16 ("In this case, defendant has presented no evidence upon which the finder of fact could predicate the conclusion that the parties were in agreement on any material term – and, in fact, as outlined above, the evidence in the record

---

[10] The "earn-in" claim is dubious given Mr. Zambrana's signature on an undisputed corporate document which itself states that La Ruche stock certificate No. 9 was issued contemporaneously with his $25,000 payment to La Ruche. Cauderlier Decl., Ex. K. Mr. Zambrana's argument that his receipt of 10 percent of La Ruche at the same time he paid La Ruche an equivalent sum is mere coincidence – or a misunderstanding that could be cleared up by examining the handwriting in the stock ledger (Zambrana Opposition to CAI Mot. for Sum. Judg. at 13) – strains all credulity.

strongly indicates that they were not"); *New Economy Capital, LLC v. New Markets Capital Group,* 881 A.2d 1087, 1097 (D.C. 2005) (Plaintiff's inability to describe an alleged agreement's material terms were fatal to its claims regarding same); *cf. Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986) ("We do not understand [prior case law] to hold that a [non-movant] may defeat a ... properly supported motion ... without offering any concrete evidence").

Mr. Zambrana's "guess" at his interest in La Ruche is based on his "earn-in" theory falls far short of meeting his evidentiary burden. A "guess," by its very nature, demonstrates that there was no agreement on the critical material term – the percentage of ownership in La Ruche. Even Mr. Zambrana did not know what he was to receive. When viewed through the prism of litigation, Mr. Zambrana's testimony is startling. Given the opportunity to describe the agreement at his deposition, all Mr. Zambrana could do is muster a guess based on his hopes and expectations. Mr. Zambrana's subjective, non-specific, and unsupported "earn-in" claims do not rise to the level of evidence required to withstand summary judgment.

## II.    MR. ZAMBRANA DID NOT ACQUIRE AN OWNERSHIP INTEREST IN LA RUCHE IN EXCHANGE FOR HIS $25,000 CHECK

Contract law principles establish that there can be no agreement if there is a mutual mistake of the contracting parties. "Before there can be a contract, the minds of the parties must meet honestly and fairly, without mistake or mutual misunderstanding, upon all the essential points involved in the transaction composing the contract."[11]  "[W]here there is a mistake that amounts to a mutual misunderstanding ... there is not a meeting of the minds of the parties, and consequently there can be no contract."[12]

The undisputed facts, taken in a light most favorable to the non-movant, establish that there was no agreement concerning what Mr. Zambrana would receive in return for his $25,000

---

[11] *Cunningham Manufacturing,* 30 App. D.C. at 527.

[12] *Id.* at 528; *cf. Bituminous Coal Operators' Assoc. v. Connors,* 867 F.2d 625, 635 (D.D.C. 1989) ("[A] contract may be rescinded if the contracting parties entertained a material mistake of fact that went to the heart of their bargain").

9

check payable to La Ruche.[13]  Mr. Zambrana has testified and stated in his pleadings that his

$25,000 check was meant to purchase an unquantified interest in either CAI or the property and

that certificate Nos. 9 and 10 were stock issued under an alleged "earn-in" arrangement with

La Ruche. *E.g.,* Ex. 2, Zambrana Tr. 32, 82-90; Memorandum Opinion at 9.  Mr. Cauderlier

directed the issuance of La Ruche stock certificate No. 9 and replacement certificate No. 10

granting Mr. Zambrana a 10 percent ownership interest in exchange for Mr. Zambrana's January

2000 $25,000 check.  Ex. 1, Cauderlier Decl. at 4; Cauderlier Decl. Exs. B and K.  There was

simply no meeting of the minds of Mr. Cauderlier and Mr. Zambrana.  Just as there was no

agreement on Mr. Zambrana's "earn-in" theory, there was no agreement on the exchange of

$25,000 for certificate No. 9.  Mr. Zambrana obtained no ownership interest in La Ruche as the

result of his $25,000 payment.

### III.    MR. ZAMBRANA'S LACK OF AN OWNERSHIP INTEREST IN LA RUCHE IS FATAL TO HIS CLAIMS

#### A.    Mr. Zambrana Has No Right To An Accounting

Mr. Zambrana's claim for an accounting fails because it is predicated on his having an

ownership position with La Ruche.[14]  As established in Sections I and II, *supra*, Mr. Zambrana is

not an owner of La Ruche under either his "earn-in" theory or in exchange for his $25,000

payment.  Mr. Zambrana does not have an ownership interest in La Ruche and therefore lacks the

self-identified basis for his accounting claim.

Mr. Zambrana also has no right to an accounting from La Ruche or Mr. Cauderlier

because he cannot meet the requisite burden of proof.  An accounting is "a species of disclosure,

---

[13] The "interest" Mr. Zambrana was to receive in exchange for his check remained an "open issue" even after the close of the February/March 2000 meeting between the parties. Ex. 3, Powers Tr. at 64-70. During the meeting, the parties traded offers with neither agreeing on the nature (*i.e.,* which corporation) or amount of the interest to be exchanged for the $25,000 check to La Ruche. *Id.* The meeting closed without "quantification of stock to be granted" and without "a comprehensive agreement reached at that time." *Id.* at 70; *see also* Cauderlier Decl. at 4 (Mr. Cauderlier left the meeting without agreeing to Mr. Zambrana's request for stock in CAI).

[14] *See, e.g.,* Zambrana Third Party Complaint at 7, ¶¶45-46 ("Since Mr. Zambrana (i) owns stock in La Ruche .... Mr. Zambrana is entitled to an accounting of the assets owned by La Ruche").

predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another."[15]  An accounting "is an extraordinary remedy" and is granted "only when legal remedies are inadequate."[16]  "Such relief may be obtained at the close of a litigation … as long as the [claimant]" meets his burden of proof.[17]  This Court has noted that "Zambrana has not alleged that the accounts between CAI and La Ruche are so complicated … that an accounting is appropriate." Memorandum Opinion at 19.  Further, Mr. Zambrana cannot either make "any showing that he was unable to obtain sufficient information during discovery" or "explain[ ] why a derivative or private shareholder suit would not adequately protect his interests." *Id.*

### B.      Mr. Zambrana Has No Constructive Trust Claim

Mr. Zambrana's has no constructive trust claim because his lack of ownership is clear. There is nothing unjust in this result; there was simply no agreement between Mr. Zambrana and Mr. Cauderlier regarding an interest in La Ruche.  "Under D.C. law, a constructive trust exists where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if permitted to retain it."[18]  While "restitution by way of constructive trust may be appropriate … where the transfer of property was induced by mistake of fact,"[19] there was no unjust enrichment in this instance because the mistaken transaction was two-sided (*i.e.,* $25,000 in cash paid and 10 percent ownership interest in a restaurant granted).  Ex. 1, Cauderlier Decl. at 2-3; *see also* Section III(E), *infra.*  Further, there was no "earn-in" arrangement – Mr. Zambrana's theory is unsupported by any evidence and

---

[15] *Bradshaw v. Thompson,* 454 F.2d 75, 79 (6th Cir. 1972).

[16] *Id.*

[17] *Bates v. Northwestern Human Services, Inc.,* 466 F. Supp. 2d 69, 103 (D.D.C. 2006).

[18] *Ferman Patterson v. America's Voice, Inc.,* 2000 U.S. Dist. LEXIS 14761 at *4-*5 (D.D.C. Oct. 4, 2000) (internal quotation marks omitted).

[19] *Cf. Hertz v. Klavan,* 374 A.2d 871, 873 (D.C. 1977).

lacks the level of detail required of enforceable agreements. As long as Mr. Zambrana continues to hold La Ruche stock certificate No. 10 – despite the mutual errors – then there can be no constructive trust or inequity arising from La Ruche keeping the $25,000.

The manner in which the Delaware Chancery Court recently disposed of a constructive trust claim which parallels that made by Mr. Zambrana is instructive. In *McKee v. McKee*,[20] the decedent worked with the defendant for several years operating and maintaining a marina. The decedent's estate: (1) alleged defendant promised a full partnership for the defendant's key role in the business; (2) produced loan materials and correspondence the defendant drafted which described the decedent as a marina partner or co-owner; and (3) presented details of a negotiated – but ultimately unsigned – partnership agreement.[21] Despite this evidence, the Court rejected the estate's demands for a constructive trust:

> [T]he evidence does not demonstrate that JoAnn and George ever intended that George would have an equal ownership interest. The testimony of George's son and the ambiguous comment by JoAnn in the presence of George's lawyer-friend, even when all of the instances in which the husband and wife referred to their "own" business, do not provide the necessary evidentiary heft.
>
> *     *     *
>
> If George had an enforceable contract – either by written agreement or through *quasi*-contract, such as promissory estoppel – resort to amorphous equitable notions would not have been necessary. The marina belonged to JoAnn. There must be, in order for the Estate to prevail, some reason to divest a portion of her interest for the benefit of the Estate.[22]

Mr. Zambrana's statements regarding an "earn-in" arrangement and the intended disposition of the $25,000 lack the "evidentiary heft" needed to support his claims of a constructive trust. Borrowing a turn of phrase from this Court, if there was no constructive trust

---

[20] 2007 Del. Ch. LEXIS 59 (Del. Ch. May 3, 2007) (attached as Exhibit 4).

[21] *Id.* at *4-*7.

[22] *Id.* at *16-*17.

in *McKee*, where documents suggested the contours of an "earn-in" arrangement, then "there surely could not have been one here." Memorandum Opinion at 18.

### C.    Mr. Zambrana Has No Right To A Monetary Judgment

"Monetary judgment" is not a cause of action for which relief may be granted – it is merely a request for relief.[23]   However, Mr. Zambrana's "claim" for monetary judgment relief fails due to his lack of ownership.  In his complaint, Mr. Zambrana states that he "is entitled to have his shares bought by J. Cauderlier, and to be awarded a monetary judgment against J. Cauderlier equal to the value of Mr. Zambrana's share in La Ruche." Zambrana Third-Party Complaint at 11, ¶74.  Mr. Zambrana has made his demand for monetary judgment dependent on his owning an actual ownership interest in La Ruche.  Absent that interest, Mr. Zambrana's monetary judgment demand must fail.

### D.    There Was No Usurpation of Corporate Opportunity

Usurpation of corporate opportunity cases depend on "whether the line of endeavor undertaken by the directors 'was so closely associated with the existing and prospective activities of the corporation that the defendants should fairly have acquired that business for or made it available to the corporation.'"[24]  Because the corporate opportunity doctrine "is a rule of disclosure ... application of the rule is inapposite where an action taken by [a corporation's sole shareholder, director, and president] necessarily involves the knowledge and assent of the

---

[23] Mr. Zambrana's monetary judgment demand is not relief authorized under either the common law or the code of the District of Columbia.  Mr. Zambrana demands, in essence, that the Court order Mr. Cauderlier to buy Mr. Zambrana's shares in La Ruche.  Aside from the fact that Mr. Zambrana does not, in fact, own shares in La Ruche, no law authorizes the forced buy-out of a shareholder in a District of Columbia closely-held corporation. *Cf.* Memorandum Opinion at 20 ("There is no basis in law or equity for a court to force divestiture of a corporate asset and to transfer that asset to an individual because the funds used to buy it came from another corporation in which that individual is a minority stockholder").  If the Court were to find that Mr. Zambrana purchased 10 shares of La Ruche for $25,000, then Mr. Zambrana will retain those shares and remain a minority shareholder in La Ruche.  He will not be entitled to the return of his $25,000.  While neither La Ruche nor Mr. Cauderlier believe this is the appropriate result, in the absence of a shareholder agreement provision providing for a mandatory redemption, there is simply no mechanism for Mr. Zambrana to cash out of any interest in La Ruche.

[24] *Goodman v. Perpetual Building Assoc.*, 320 F. Supp. 20, 37 (D.D.C. 1970).

corporation."[25]  A sole shareholder and officer of a closely held corporation "cannot be accused of defrauding or concealing information from himself in his role as sole corporate director."[26]

Mr. Cauderlier did not usurp any corporate opportunity from La Ruche.  On January 21, 2000, Mr. Cauderlier was the sole shareholder and officer of La Ruche.  Mr. Cauderlier, the shareholder, necessarily approved the actions that Mr. Cauderlier, the officer, took in incorporating CAI and independently pursuing the opportunity to purchase the property. Mr. Cauderlier could not, in effect, cheat himself out of the opportunity to purchase, own, and maintain real property – a "line of endeavor" in which La Ruche was not previously engaged.[27]

Even accepting (solely for the purposes of this summary judgment motion) Mr. Zambrana's contention that he owned an interest in La Ruche prior to January 2000, his usurpation of corporate opportunity claims fail.  In August 1999, Mr. Zambrana was one of CAI's incorporators.  Mr. Zambrana signed the CAI resolution that authorized Mr. Cauderlier to enter into an agreement for the property purchase.  Ex. 1, Cauderlier Decl. Ex. D at 3, 9.  If Mr. Zambrana were a La Ruche shareholder in August 1999 – which he was not – then he necessarily approved and ratified the transaction being allocated to, and pursued by, CAI.[28]  This was no secret transaction.  CAI's acquisition of the Property was the specific purpose for which CAI was formed.  Mr. Zambrana's claim that a corporate opportunity for La Ruche was usurped is both unsupported by precedent and wholly belied by Mr. Zambrana's conduct.

### E.    Neither La Ruche Nor Mr. Cauderlier Were Unjustly Enriched

"Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another."  *4934, Inc. v. District of Columbia Dept. of Employment*

---

[25] *Tufts Radio & Electronics, Inc. v. Kagan,* 746 F.2d 915, 917 (1st Cir. 1984).

[26] *Id.*

[27] *Id.*

[28] *Cf. Tufts Radio,* 746 F.2d at 917; *The Mediators, Inc. v. Manney,* 190 B.R. 515, 528 (Bankr. S.D.N.Y. 1995) ("[T]he corporation's sole shareholder has, through his participation, impliedly consented to the transactions that form the basis of plaintiff's ... claim").

*Services,* 605 A.2d 50, 55 (D.C. 1992).  District of Columbia courts have further held that "the doctrine of unjust enrichment depends on whether it is fair and just for the recipient to retain the benefit, not on whether the person or persons who bestowed the benefit had any duty to do so." *Id.* at 56.  Restitution to remedy unjust enrichment is appropriate when the plaintiff has established that "(1) he had a reasonable expectation of payment, (2) the defendant should have reasonably expected to pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment." *Heller v. Fortis Benefits Ins. Co.,* 142 F.3d 487, 495 (D.C. Cir. 1998).

Mr. Cauderlier was not unjustly enriched since he did not personally receive – or benefit from – Mr. Zambrana's funds.[29]  Mr. Zambrana's $25,000 check was payable to La Ruche.  Mr. Cauderlier, acting as an officer of La Ruche, deposited the check into the La Ruche account.  Cauderlier Decl. at 3, ¶ 13.  Mr. Cauderlier did not personally receive or retain any benefit.  Since "[u]njust enrichment occurs when a person retains a benefit", Mr. Cauderlier was not unjustly enriched.

But La Ruche had the money – it believed that Mr. Zambrana intended to buy a 10 percent in the corporation.  Mr. Zambrana now denies that was his intention.  Accepting this as true, Mr. Zambrana should receive his $25,000 payment plus interest at 6 percent – not because there was unjust enrichment, but because instead there was simply no agreement.  In return, La Ruche should receive certificate No. 10.

> **F.     In The Absence Of An Enforceable Agreement Regarding The Disposition Of The $25,000, The Proper Resolution Of This Case Is The Return Of The Money Plus Interest**

While the facts establish that La Ruche and Mr. Cauderlier were not unjustly enriched, those facts also demonstrate that there was no meeting of the minds between the parties. *See, e.g.,* Section II, *supra.*  As noted in the supplemental briefing CAI recently submitted to this

---

[29] The same is equally true for CAI.  It too received no benefit from Mr. Zambrana's $25,000 check.  *See* CAI 1/14/08 Supplemental Memorandum (Document No. 62) at 3.

Court, in the absence of an enforceable agreement establishing "the rate of interest in the District upon the loan or forbearance of money, goods, or things in action", the District of Columbia's requires a restitution interest rate of 6 percent. *Colletti v. Aina,* 1995 U.S. Dist. LEXIS 4114 at *6 (D.D.C. Mar. 29, 1995) (citing D.C. Code § 28-3302(a)).[30] Thus, because there was no enforceable agreement regarding the $25,000 check's disposition, La Ruche should return Mr. Zambrana's $25,000 plus interest set at the 6 percent. Mr. Zambrana is obligated to return Certificate No. 10.

### IV.    MR. ZAMBRANA'S CLAIMS HAVE BEEN EXTINGUISHED BY THE STATUTE OF LIMITATIONS

Mr. Zambrana claims that the 10 shares of La Ruche he received in January 2000 were issued due to an "earn-in" arrangement created in 1996 and that the $25,000 check he wrote in January 2000 was unrelated to the contemporaneous stock issuance. Ex. 2, Zambrana Tr. at 52-54, 80-81. La Ruche and Mr. Cauderlier maintain that those shares were issued in exchange for Mr. Zambrana's $25,000, and have denied that there was ever an "earn-in" arrangement. Ex. 1, Cauderlier Decl. at 3-4. Mr. Zambrana's "earn-in" arrangement claims necessarily accrued in 1996, nine years before he filed his Third-Party Complaint. At the latest, all of Mr. Zambrana's claims accrued in January 2000, more than five years before his Third-Party Complaint. Mr. Zambrana's claims have therefore been extinguished by the three-year statute of limitations.

The District of Columbia statute of limitations, D.C. Code § 12-301, "extinguishes ... a claimant's remedy by withdrawing from the claimant the privilege of using the courts to enforce a right ...." *Riggs Nat'l Bank v. District of Columbia,* 581 A.2d 1229, 1241 (D.C. 1990).[31] D.C. Code §§ 12-301(2), (7), and (8) extinguishes contract actions, actions for the recovery of

---

[30] *See also District of Columbia v. Pierce Assocs., Inc.,* 527 A.2d 306, 310 (D.C. 1987); *Riggs Nat'l Bank v. District of Columbia,* 581 A.2d 1229, 1256 (D.C. 1990).

[31] As noted in the Memorandum Opinion (at 4 n.1), Mr. Zambrana has already conceded the applicability of D.C. Code § 12-301 in his case against CAI. For limitations purposes, there is no distinction between the counterclaims Mr. Zambrana has brought against CAI and his claims against La Ruche and Mr. Cauderlier. *Cf. Berkow v. Hayes,* 841 A.2d 776, 781 (D.C. 2004) (Court concludes that plaintiff's limitations inquiry notice as to one defendant was applicable to other defendants).

personal property, and actions not otherwise specified in the Section three years after those actions have accrued. "[A] claim accrues when the [claimant] knows of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing." *Cevenini v. Archbishop of Washington,* 707 A.2d 768, 771 (D.C. 1998); *see also Filloramo v. Johnston, Lemon & Co., Inc.,* 700 F. Supp. 572, 579 (D.D.C. 1988).

D.C. Code § 12-301 extinguished Mr. Zambrana's claims against La Ruche and Mr. Cauderlier. Mr. Zambrana's accounting, constructive trust[32], unjust enrichment, and "earn-in" claims accrued when Mr. Zambrana wrote his $25,000 check to La Ruche in January 2000, a full five years and eight months before he filed his November 2005 complaint. As this Court has already observed:

> Zambrana claims he "made [the Check] payable to La Ruche at the behest of J. Cauderlier, who told [him] at the time that [he] would become a shareholder in CAI." At this moment Zambrana was reasonably put on notice that there may be "commingl[ing]" of assets between the two corporations. Zambrana claims he was an owner of La Ruche before this occurred. As an owner of La Ruche, then, Zambrana could reasonably have inquired at that time about the use of La Ruche to fund CAI and/or the Property.

Memorandum Opinion at 7 (citations omitted).[33] Because Mr. Zambrana was on inquiry notice as to CAI, he was also on notice as to La Ruche and Mr. Cauderlier:

---

[32] Mr. Zambrana's constructive trust claims are subject to the statute because "courts customarily follow the statute of limitations even in equity cases where essentially legal relief ... is sought." *Blankenship v. Boyle,* 329 F. Supp. 1089, 1112 (D.D.C. 1971) (citing *Columbian University v. Taylor,* 25 App. D.C. 124, 131 (1905)); *Stewart v. O'Malley,* 1998 U.S. Dist. LEXIS 940 at *13-*15 (D.D.C. Jan. 21, 1998) (Court states that "the plaintiff waited more than five years before claiming any wrongdoing .... This unreasonable and unexplained delay in bringing this action defeats any equitable claim that the plaintiff may have had" before dismissing the plaintiff's constructive trust claims as untimely). Mr. Zambrana has neither pled nor stated in his deposition testimony any plausible rationale for the unreasonably long delay and utter lack of inquiry.

[33] From that point in 2000, Mr. Zambrana could not simply conclude that he "trust[ed] [Mr. Cauderlier one] hundred percent" and make absolutely no inquiry regarding his money or status until 2004. Ex. 2, Zambrana Tr. at 55, 57-58; *Filloramo,* 700 F. Supp. at 579 (Injured claimant on inquiry notice could not rely on blind trust in the other party to toll the statute of limitations). In light of the sheer volume of meetings suggested by Mr. Zambrana (Zambrana Tr. at 46), he had many opportunities within the limitations period to inquire into the status of his alleged interest in CAI and La Ruche, gauge the full extent of his claimed injury, and seek out counsel as Mr. Powers recommended in 2000.

> [A] plaintiff's knowledge of one defendant's misconduct will
> "create inquiry notice of claims against a potential co-defendant ...
> if (1) a reasonable plaintiff would have conducted an investigation
> as to the co-defendant, and (2) such an investigation would have
> revealed some evidence of wrongdoing."

*Berkow v. Hayes,* 841 A.2d 776, 781 (D.C. 2004) (quoting *Cevenini v. Archbishop of Washington,* 707 A.2d 768, 771 (D.C. 1998)). Because all of Mr. Zambrana's claims either regard or directly relate to Mr. Cauderlier's "complete control over the books, records, stock ledgers, monies, and management of both plaintiff CAI and third-party defendant La Ruche" (Zambrana Third Party Complaint at 8, ¶ 50), Mr. Zambrana's inquiry notice as to CAI would necessarily require an investigation into La Ruche and Mr. Cauderlier. Thus, Mr. Zambrana's accounting, constructive trust, unjust enrichment, and earn-in[34] claims against La Ruche and Mr. Cauderlier began to accrue in 2000 and have been extinguished for the same reasons that his CAI claims were extinguished.

Mr. Zambrana's corporate opportunity usurpation claims have also been extinguished. For statute of limitations purposes, this cause of action accrued when La Ruche – the entity that Mr. Zambrana alleges should have been allowed to purchase the property (*id.* at 13, ¶90) – could no longer take advantage of the opportunity.[35] Since La Ruche could no longer purchase the Property from Yes, Inc. following the January 21, 2000 closing, Mr. Zambrana's corporate opportunity usurpation claim also accrued in January 2000 and was necessarily extinguished in January 2003.

Because Mr. Zambrana's accounting, usurpation of corporate opportunity, constructive trust, earn-in, and unjust enrichment claims all pertain to events that put Mr. Zambrana on

---

[34] As noted *supra,* Mr. Zambrana claims that he had an earn-in arrangement with La Ruche as early as 1996. Zambrana Tr. at 52-54. Yet by January 2000, Mr. Zambrana had received no shares or documentation pursuant to his alleged arrangement. *E.g.,* Cauderlier Decl., Ex. K. Even if a reasonable person could assume the existence of an "earn-in" arrangement for four years without receiving or demanding a single document, Mr. Zambrana's January 2000 knowledge of alleged misconduct put him on inquiry notice; any reasonable investigation would have quickly established that Mr. Zambrana had not been issued La Ruche shares prior to January 2000.

[35] *E.g., Primedical, Inc. v. Allied Investment Corp.,* 1994 U.S. Dist. LEXIS 4517 at *6-*8 (D.D.C. Mar. 31, 1994).

inquiry notice at least five years prior to his initial pleadings, his claims have been extinguished by operation of D.C. Code § 12-301.

## **CONCLUSION**

For the reasons set forth above, this Court should enter judgment for La Ruche, Inc. and Jean Claude Cauderlier on Mr. Zambrana's Third-Party Complaint and hold that:

(1) Mr. Zambrana holds no ownership interest in La Ruche; and (2) Mr. Zambrana's accounting, usurpation of corporate opportunity, constructive trust, and unjust enrichment claims fail because they are dependent on his being an owner of La Ruche or, in the alternative, have been extinguished by the District of Columbia's applicable statute of limitations. The appropriate resolution of this case is for La Ruche to return to Mr. Zambrana the $25,000, plus six percent interest, and for Mr. Zambrana to return the 10 shares of La Ruche he was issued.

Dated:  February 6, 2008                              Respectfully submitted,

Robert L. Green, Jr. (D.C. Bar No. 935775)
James B. Boles (D.C. Bar No. 471818)
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 783-0800
(202) 383-6610 – facsimile
greenr@howrey.com
bolesj@howrey.com

Attorneys for Cauderlier & Associates, Inc.,
Jean Claude Cauderlier, and La Ruche, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Motion of La Ruche, Inc. and Jean

Claude Cauderlier for Summary Judgment, Memorandum in Support of Motion for Summary

Judgment, and Exhibits were served by operation of the Court's electronic filing system upon all

attorneys of record registered with the Court's ECF system, and a true and accurate copy of the

foregoing instrument was forwarded by overnight delivery to those attorneys not registered with

the Court's ECF system, this 6th day of February 2008, as indicated below, to:

Jeffrey M. Hamberger, Esq.
O'REILLY & MARK P.C.
11200 Rockville Pike, Suite 301
North Bethesda, Maryland  20852
jmh@oreillymark.com
(301) 231-6330

James B. Boles