# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAUDERLIER & ASSOCIATES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 05-1653 (JMF) |
| SERGIO ZAMBRANA, ) | |
| ) | |
| Defendant/Third-Party ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| JEAN CLAUDE CAUDERLIER ) | |
| ) | |
| And ) | |
| ) | |
| LA RUCHE, INC. ) | |
| ) | |
| Third-Party Defendants ) | |
| ) | |

## DECLARATION OF JEAN CLAUDE CAUDERLIER

I, Jean Claude Cauderlier, hereby depose and state the following:

1. I am currently President, Vice President, Secretary, sole board member, and sole shareholder of Cauderlier & Associates, Inc. ("CAI").

2. CAI is a corporation incorporated under the laws of the District of Columbia with its principal place of business at 1039 31st Street, N.W., Washington D.C., 20007. CAI owns the real property and buildings located at 1035, 1037, and 1039 31st Street, N.W., Washington D.C. 2007 (the "Property").

3. I am also currently President, Secretary, Treasurer, sole board member, and majority shareholder of La Ruche, Inc. ("La Ruche"). La Ruche operates the restaurant Café

La Ruche at 1039 31st Street, N.W., Washington D.C., 20007 and is a corporation incorporated under the laws of the District of Columbia.

4. I purchased La Ruche in stages for a combined price of $250,000. On February 21, 1987, I became the sole La Ruche shareholder by purchasing all outstanding La Ruche shares. *See* Exhibit A.

5. In early 1999, I became aware of an opportunity to purchase the Property, which La Ruche was leasing for its restaurant operations. At that time, I remained La Ruche's sole shareholder. With the assistance of counsel, I incorporated CAI to purchase the Property. I capitalized CAI with my investment of $60,000. I borrowed that money from La Ruche. *See* Exhibits B and C (La Ruche corporate resolution approving the loan and the promissory note setting the terms of that loan).

6. On August 19, 1999 (the date on which CAI was incorporated), CAI issued 500 shares to me in exchange for the $60,000. *See* Exhibit D (CAI resolution issuing common stock to me); Exhibit E (resolution electing me as sole board member); and Exhibit F (CAI bank statement reflecting the August 25, 1999 deposit for $60,000). To this day, those are the only shares that CAI has ever issued.

7. On August 19, 1999 Mr. Zambrana had no ownership interest in CAI. On August 19, 1999, Mr. Zambrana was not an owner or shareholder in La Ruche. I was the sole shareholder of La Ruche on that date.

8. I began negotiating the purchase of the Property from Yes, Inc. on behalf of CAI in September 1999. The total purchase price was $1,100,000. See Exhibit D. CAI provided a deposit of $55,000 to be applied towards the purchase on November 19, 1999. See Exhibit G. The deposit was made from the CAI checking account that I had funded on August 25, 1999. Mr. Zambrana did not provide, directly or indirectly, any portion of the deposit.

9. Later in 1999, Sergio Zambrana, then a La Ruche employee, and I discussed the possibility of his becoming a co-owner of La Ruche. I said that he could buy 10 percent of

2

La Ruche for $25,000. That amount was based on the $250,000 purchase price I paid for La Ruche in the mid-1980s.

10. CAI closed the purchase of the Property on January 21, 2000.

11. To complete the purchase, I obtained a Small Business Administration ("SBA") loan for $965,000. Exhibit H. The purchase price was reduced to $1,020,000. At closing, CAI provided a bank check dated January 21, 2000 for $42,171 – the balance due from CAI. Exhibit L. To complete the transaction, the seller's owner agreed to an $80,000 note. Exhibit I. None of Mr. Zambrana's funds were used to close on the property.

12. Although Mr. Zambrana was present at the closing, I am the only person that signed documents on behalf of CAI. I executed a personal guarantee for the full amount of the SBA loan. *See* Exhibit J. Mr. Zambrana did not execute any documents related to the purchase of the property. Mr. Zambrana did not execute a personal guarantee of the SBA loan.

13. On January 21, 2000, Mr. Zambrana gave me a check, payable to La Ruche, for $25,000. Mr. Zambrana's check was deposited in La Ruche's corporate bank account on January 21, 2000. As the chronology of events establishes, Mr. Zambrana's $25,000 check played no part in CAI's purchase of the Property. CAI was required to have bank-certified funds at the closing, which occurred before Mr. Zambrana's personal check could have cleared.

14. I understood that Mr. Zambrana had given me his check to purchase 10 percent of La Ruche. I arranged for La Ruche to issue stock certificate No. 9 for 10 shares to Mr. Zambrana later in January 2000. *See* Exhibit K.

15. In either February or March 2000, I met with James Powers (counsel for myself, La Ruche, and CAI) and Mr. Zambrana in the shell of the bookstore located on the Property. At the end of that meeting, Mr. Zambrana asked what he was getting for his $25,000 check.

16. I told Mr. Zambrana that he had 10 percent of La Ruche. The 10 percent I was talking about had already been issued in La Ruche Certificate No. 9 in January 2000. This was not an offer of an additional 10 percent in La Ruche.

3

17. Mr. Zambrana refused to accept my offer of the 10 percent of La Ruche in exchange for $25,000. Mr. Zambrana instead asked for interest in CAI or the land. I told him no. The February/March 2000 meeting ended without an agreement. Mr. Zambrana did not request the return of his $25,000.

18. During the February/March 2000 meeting, Mr. Powers told Mr. Zambrana that he could not represent him and that Mr. Zambrana needed to hire his own lawyer.

19. At some point in 2004, I became aware that Mr. Zambrana was unable to locate La Ruche Certificate No. 9 and that it was lost. On June 23, 2004, La Ruche issued Certificate No. 10 for 10 shares in La Ruche as a replacement for the missing Certificate No. 9. Certificate No. 9 was then cancelled. Certificate No. 9 and the replacement Certificate No. 10 were, from my perspective, stock issued in exchange for Mr. Zambrana's $25,000 check payable to La Ruche.

20. I am aware of Mr. Zambrana's testimony concerning his claim of ownership in La Ruche based on salary deferral and/or his agreement to remain as a La Ruche employee when he could have left. I deny that any such agreement existed in which Mr. Zambrana was given an ownership interest in La Ruche. While I had discussed selling Mr. Zambrana a 10 percent interest in La Ruche for $25,000 prior to January 2000, there was no agreement in which Mr. Zambrana could, by working at La Ruche, "earn" an ownership interest in La Ruche. Nor was there any agreement in which Mr. Zambrana would be given ownership in La Ruche in exchange for his remaining a La Ruche employee and foregoing some other employment opportunity. Mr. Zambrana's January 21, 2000 $25,000 check was, and remains, consistent with my offer of a 10 percent interest in the restaurant only.

21. The first time I heard Mr. Zambrana's claim that he owned an interest in CAI was in early 2004, after I had offered Mr. Zambrana the opportunity to buy my remaining 90 percent interest in La Ruche.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15 day of May, 2007, in Washington D.C.



Jean Claude Cauderlier

5