IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAUDERLIER & ASSOCIATES, INC.**<br><br>    Plaintiff<br><br>    v.<br><br>**SERGIO ZAMBRANA**<br><br>    Defendant/Third-Party<br>    Plaintiff<br><br>    v.<br><br>**JEAN CLAUDE CAUDERLIER and<br>LA RUCHE, INC.**<br><br>    Third-Party Defendants | Civil Action No. 05-1653 (JMF) |

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
OF LA RUCHE, INC. AND JEAN CLAUDE CAUDERLIER**

COMES NOW, defendant and third-party plaintiff, Sergio Zambrana, by and through counsel, and, in opposition to the Motion of La Ruche, Inc. and Jean Claude Cauderlier for Summary Judgment, states:

1.      That a genuine issue of material fact exists with respect to whether Mr. Zambrana is an owner of stock in La Ruche.

2.      That a genuine issue of material fact exists with respect to the number of shares in La Ruche owned by Mr. Zambrana, if any.

3.      That a genuine issue of material fact exists with respect to whether Mr. Zambrana obtained any ownership interest in La Ruche prior to 2000.

4. That a genuine issue of material fact exists with respect to whether Mr. Zambrana obtained any interest in La Ruche by virtue of an "earn-in" agreement he had with Mr. Cauderlier.

5. That a genuine issue of material fact exists with respect to whether Stock Certificate No. 9 was issued to Mr. Zambrana pursuant to an "earn-in" agreement, or for some other reason.

6. That a genuine issue of material fact exists with respect to whether Mr. Cauderlier was, at any time, the sole owner of La Ruche.

7. That a genuine issue of material fact exists with respect to whether La Ruche Stock Certificate No. 10 was a replacement for Stock Certificate No. 9.

8. That a genuine issue of material fact exists with respect to whether there was a "mutual mistake" between Mr. Zambrana and Mr. Cauderlier regarding the issuance of Stock Certificate No. 10.

9. That genuine issues of material fact exist with respect to whether all the statements set forth in Mr. Cauderlier's Declaration dated May 15, 2007, are true and factual.

10. That a genuine issue of material fact exists with respect to whether Stock Certificate No. 9 was issued in exchange for Mr. Zambrana's $25,000 check dated January 20, 2000.

11. That a genuine issue of material fact exists with respect to whether the $25,000 check Mr. Zambrana gave to La Ruche afforded Mr. Zambrana an ownership interest in La Ruche, aside from the interest represented by Stock Certificate No. 9.

12. That a genuine issue of material fact exists whether any of Mr. Zambrana's claims are extinguished by the applicable statute of limitations.

13. That a genuine issue of material fact exists whether La Ruche's claim for a return of its Stock Certificate No. 10 is extinguished by the applicable statute of limitations, or otherwise invalid.

14 That a genuine issue of material fact exists whether Mr. Zambrana is entitled to an accounting.

15. That a genuine issue of material fact exists whether Mr. Zambrana has a viable claim for constructive trust.

16. That a genuine issue of material fact exists Mr. Zambrana has a viable claim for a monetary judgment.

17. That a genuine issue of material fact exists whether Mr. Cauderlier usurped a corporate opportunity of La Ruche, to Mr. Zambrana's detriment.

18. That a genuine issue of material fact exists whether La Ruche and Mr. Cauderlier, or either of them, was unjustly enriched.

19. That a genuine issue of material fact exists whether Mr. Cauderlier ever repaid the $60,000 loaned to him by La Ruche, and, if not, whether the statute of limitations has expired on La Ruche's claim for repayment.

WHEREFORE, the Motion of La Ruche, Inc. and Jean Claude Cauderlier for Summary Judgment should be denied, and Mr. Zambrana should be awarded his attorneys' fees, costs and expenses associated herewith.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | O'REILLY & MARK, P.C. |
| Dated: February 14, 2008 | By: *Jeffrey M. Hamberger*<br>    11200 Rockville Pike<br>    Suite 301<br>    N. Bethesda, MD 20852<br>    301-231-6330<br>    *jmh@oreillymark.com*<br>    Attorneys for Sergio Zambrana |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAUDERLIER & ASSOCIATES, INC.**<br><br>　　　Plaintiff<br><br>　　v.<br><br>**SERGIO ZAMBRANA**<br><br>　　　Defendant/Third-Party<br>　　　Plaintiff<br><br>　　v.<br><br>**JEAN CLAUDE CAUDERLIER and<br>LA RUCHE, INC.**<br><br>　　　Third-Party Defendants | Civil Action No. 05-1653 (JMF) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION OF LA RUCHE, INC. AND JEAN CLAUDE CAUDERLIER
FOR SUMMARY JUDGMENT**

**Introduction**

The memorandum filed by third-party defendants, La Ruche Inc, ("La Ruche") and Jean Claude Cauderlier ("Cauderlier"), in support of their motion for summary judgment ("Motion"), and the statements put forth by Mr. Cauderlier in his accompanying "declaration," demonstrate that the Motion should fail, because there are genuine issues regarding nearly every material fact relied upon by La Ruche and Cauderlier. Moreover, even if the facts asserted by La Ruche and Cauderlier were, in actuality, undisputed and true, La Ruche would not be entitled to a return of its stock certificate No. 10, the valid issuance of which is not in dispute.

1

Since there are many material facts in dispute, there is no justification for La Ruche and Cauderlier to have filed their Motion for Summary Judgment. Therefore, the Motion must not only be denied, but said parties and their counsel should be sanctioned for wasting this Honorable Court's time, and for causing Mr. Zambrana to defend against this unmerited filing.

**Argument**

    A.    THE MATERIAL FACTS OF THIS CASE ARE DISPUTED

In his Declaration,[1] third-party defendant, Jean Claude Cauderlier, asserts, among other things, that he became the *sole shareholder* of La Ruche, Inc. *in 1987*, by purchasing all outstanding La Ruche shares (Decl., ¶4). Mr. Cauderlier states that Mr. Zambrana held no interest in La Ruche prior to the year 2000 (Decl. ¶¶7, 16). He avers that Mr. Zambrana's $25,000 check of January 2000 paid for a 10% interest in La Ruche, which interest was represented by La Ruche stock certificate No. 9 (Decl. ¶¶14, 16). Mr. Cauderlier contends that La Ruche stock certificate No. 10 was issued as a replacement for stock certificate No. 9 (Decl. ¶19). Mr. Cauderlier denies that there was ever an "earn-in" agreement between himself and Mr. Zambrana, whereby Mr. Zambrana would obtain an ownership in La Ruche by working at La Ruche (Decl. ¶20). And, Mr. Cauderlier states that "Mr. Zambrana's January 21, 2000 $25,000 check was, and remains, consistent with my offer of a 10 percent interest in [LaRuche] only" (Decl. ¶20).

On the other hand, the Memorandum acknowledges several of Mr. Zambrana's contentions that are in direct conflict with Mr. Cauderlier's declared facts, or are otherwise in

---

[1] "Declaration of Jean Claude Cauderlier," attached to the Motion as Exhibit 1. References to Mr. Cauderlier's declaration shall be designated by "Decl.," followed by the appropriate paragraph number.

stark contrast to the positions taken by Mr. Cauderlier is this matter. Additionally, the Memorandum also contradicts several of the facts conceded by Mr. Cauderlier in his Declaration. Clearly, there can be no doubt that the question of whether Mr. Zambrana owns shares in La Ruche is earnestly disputed, and is a material fact.

Specifically, La Ruche and Cauderlier assert that:

(a) Mr. Cauderlier became La Ruche's "sole shareholder on May 1, *1992*." [Memo., p. 2];

(b) "Mr. Zambrana holds no ownership interest in La Ruche." [Memo., p. 1];

(c) "La Ruche issued certificate No. 9 – for 10 shares of La Ruche common stock – to Mr. Zambrana in January 2000." [Memo., p. 4];

(d) "Mr. Zambrana claims that the 10 shares of La Ruche he received in January 2000 were issued due to an 'earn-in' arrangement created in 1996 and that the $25,000 check he wrote in January 2000 was unrelated to the contemporaneous stock issuance." [Memo., p. 5];

(e) "Prior to January, 2000, no stock certificate was issued to Mr. Zambrana." [Memo., p. 2];

(f) "Mr. Zambrana's only claim of ownership in La Ruche stems solely from an alleged pre-2000 'earn-in' arrangement" [Memo., p. 4];

(g) "There are no contemporaneous documents that describe this claimed 'earn-in' arrangement." [Memo., p. 2];

(h) "La Ruche and Mr. Cauderlier maintain that those shares were issued in exchange for Mr. Zambrana's $25,000, and have denied that there was ever an 'earn-in' arrangement." [Memo., pp. 5-6].

3

B.     Mr. Zambrana Owns No Less Than 10% of La Ruche, Inc.

The gravamen of the entire Memorandum[2] in support of the motion for summary judgment filed by La Ruche and Cauderlier is, as mentioned above, that "Mr. Zambrana holds no ownership interest in La Ruche." Amazingly, the movants reach their conclusion by effectively trying the case, reaching a finding, and issuing a judgment, all within the four corners of their Memorandum. La Ruche and Cauderlier cynically attempt to accomplish this feat through misdirection, mischaracterization, revisionism, and dubious conclusions.

La Ruche and Cauderlier ignore the undisputed fact that Mr. Zambrana possesses La Ruche stock certificate No. 10, which was duly issued by him. Furthermore, La Ruche and Cauderlier ignore the undisputed fact that the Complaint which initiated this entire proceeding alleges[3] that: (1) "Mr. Cauderlier is [] the owner and majority shareholder of LaRuche, owning 90 percent of the outstanding shares" [Complaint, ¶1]; (2) Mr. Zambrana owns "10 percent of the outstanding shares of LaRuche" [Complaint, ¶2]; (3) Mr. Cauderlier "owned 100 percent of the outstanding shares of LaRuche – i.e., 100 shares" [Complaint, ¶12]; (4) "On or about January, 2000, Mr. Cauderlier transferred LaRuche stock certificate No. 9 for 10 shares, i.e. 10 percent of the outstanding shares, to Zambrana for $25,000" [Complaint, ¶13]; (5) "On January 21, 2000, Zambrana remitted a check to LaRuche in the amount of $25,000 for the 10 shares" [Complaint, ¶14]; (6) "On or about June 23, 2004, . . . , Mr. Cauderlier authorized the issuance

---

[2] "Memorandum of La Ruche, Inc. and Jean Claude Cauderlier in Support of Motion for Summary Judgment." References to the Memorandum shall be designated by "Memo.," followed by the appropriate page number.

[3] Since Mr. Cauderlier claims to be the sole shareholder of CAI, and thus its sole decision-maker, and since the same attorneys represent CAI as well as La Ruche and Cauderlier in this matter, the allegations in the Complaint should be considered to be judicial admissions by all Cauderlier parties.

of a replacement certificate for 10 shares of LaRuche stock to Zambrana because the original certificate could not be located" [Complaint, ¶15]; (7) "Mr Cauderlier . . . maintains that Zambrana only has a 10 percent interest in LaRuche" [Complaint, ¶30]; and (8) "Zambrana is the minority shareholder and 10 percent owner of LaRuche" [Complaint, ¶39].

It is inconceivable that La Ruche and Mr. Cauderlier would bring the instant motion for summary judgment on the basis that Mr. Zambrana has no ownership interest in La Ruche, in the face of Mr. Cauderlier's own admissions as set forth in the Complaint, not to mention the existence of the stock certificate issued in Mr. Zambrana's name. Moreover, there is considerable evidence that Mr. Zambrana's 10 percent share in La Ruche was obtained long before he issued the $25,000 check in 2000, leaving in question the purpose and treatment of that payment.

        C.     Mr. Zambrana's Ownership in La Ruche, Inc.

In support of his contention that Mr. Cauderlier gave Mr. Zambrana an interest in La Ruche years before he tendered the $25,000 check in January, 2000, Mr. Zambrana asserts that La Ruche's corporate records and stock ledger reveal that Mr. Cauderlier never owned 100% of the shares of La Ruche, Inc. Rather, when Mr. Cauderlier obtained the remainder of his shares from the Levenson family (the prior owners of La Ruche, Inc.), certificate number 9 (transferring 10 shares to Mr. Zambrana) was apparently issued at or around the same time as stock certificate number 8 (transferring 50 shares to Mr. Cauderlier). This is confirmed by a letter from La Ruche's then-attorney, James M. Hoffman, who wrote to Mr. Cauderlier, as the President of the Corporation," on September 21, 2001, asking for confirmation that "Messrs. Rudy and Bruce Levenson both transferred all of their stock to you and Mr. Zambrana, so that you own 90 shares and Mr. Zambrana owns 10 shares." Mr. Hoffman's letter is attached hereto as Exhibit A.

5

This fact is also confirmed by a perusal of the La Ruche stock ledger, which is attached hereto as Exhibit B.  Unfortunately, the certificate numbers were obliterated when the copies were made, but one need only work backwards, starting with certificate number 10 (clearly designated as a "replacement" for number 9), to ascertain which stock certificates are which.

The Motion offers no evidence that Mr. Zambrana's 10 shares were issued from shares owned by Mr. Cauderlier rather than the Levensons.  To the contrary, since no other stock certificates were issued (except for certificate number 10, which later replaced certificate number 9), one can only conclude that the source of Mr. Zambrana's shares was the result of a direct transfer from the Levensons.  Mr. Cauderlier can point to no cumulation of stock certificates that demonstrate he ever owned 100% of La Ruche's shares.  Presumably, had "Mr. Cauderlier transferred LaRuche stock certificate No. 9 for 10 shares," as alleged in the Complaint, that Certificate No. 9 would have reflected the purported transfer from Mr. Cauderlier, as other certificates reflected such transactions when the Levensons transferred their respective shares, *e.g.*, certificates nos. 4, 5, 7, and 8.

Moreover, the Consent in Lieu of a Meeting of the Board of Directors of La Ruche, Inc. (the "Consent in Lieu"), dated "[a]s of October, 2001," recites the history of the stock transfers from the Levensons.  This document was included as Exhibit B to Exhibit 1 of La Ruche's and Cauderlier's Memorandum.  Indisputably, according to the Consent in Lieu signed by Mr. Cauderlier, Mr. Cauderlier received his interest in La Ruche through Certificate No. 5 (20 shares), Certificate No. 7 (20 shares), and Certificate No. 8 (50 shares).  The remaining 10 shares (represented by Certificate No. 9) were issued directly to Mr. Zambrana.

Mr. Cauderlier's position that he "became the sole La Ruche shareholder," by purchasing all outstanding La Ruche shares, strains all credulity, to borrow a phrase. (Decl., ¶4).  Mr.

6

Cauderlier may have purchased all the shares, but 10 shares were always earmarked for, and were issued directly to, Mr. Zambrana, thus rendering Mr. Cauderlier a 90% shareholder at best, as evidenced by the stock ledger, the Consent in Lieu, and Mr. Hoffman's letter.  It is troubling that Mr. Cauderlier would declare under oath that Mr. Zambrana did not become entitled to an interest in La Ruche until Mr. Zambrana tendered his $25,000 check in 2000, or that Mr. Cauderlier owned 100% of La Ruche's stock at one time.

La Ruche and Cauderlier offer another alleged reason Mr. Zambrana's asserted "earn-in" arrangement is "unenforceable" (Memo., p. 6).  In support of this contention, movants cite examples of Mr. Zambrana's prior testimony and then proceed to issue a ruling on its weight and verity.  Yet, from the excerpts found on pages 6 and 7 of the Memorandum, it is clear that Mr. Zambrana testified that: (a) Mr. Cauderlier told him "you're going to become my partner" (Memo., p. 6); (b) "we decide[d] that, you know, I'm going to cut my salary (Memo., p. 6); (c) "I cut my salary starting ´96. I never had a raise" (Memo., p. 7); and (d) "I guess it was a 10 percent [interest]" (Memo, p. 7).  These facts, if proven true, could well support a claim that Mr. Zambrana was, indeed, promised a 10% "earn-in" interest in La Ruche, and that he detrimentally allowed his salary to be reduced in exchange therefor.

There is hardly justification for La Ruche and Cauderlier to proffer the conclusion, as if it is unquestionably true, that "Mr. Cauderlier issued certificate No. 9 consistent with his offer of a 10 percent interest in La Ruche and did not issue the certificate pursuant to any 'earn-in' arrangement" (Memo., p.7).

To summarize, the arguments of La Ruche and Cauderlier, that there is no "objective evidence" of an "earn-in" arrangement (Memo., p. 8), and that Mr. Zambrana "falls far short of meeting his evidentiary burden" (Memo., p. 9), collapse under the weight of stock certificate No.

7

10. That being the case, one thing is certain: there can be no doubt that Mr. Zambrana owns at least 10% of La Ruche's stock.[4]

        D.      THE EFFECT OF MR. ZAMBRANA'S $25,000 PAYMENT

Mr. Zambrana acknowledges that it was his understanding that the $25,000 check he made payable to La Ruche in January 2000 was to obtain a interest in CAI. He further acknowledges that he has been heard to say that the $25,000 was not intended to purchase an interest in La Ruche. Mr. Zambrana contends, however, that his misunderstanding of what Mr. Cauderlier intended the $25,000 to be applied to, *i.e.*, the purchase of a 10% share in La Ruche, can not be used against him any more forcefully than Mr. Cauderlier's repeated assertions that the $25,000 bought Mr. Zambrana a 10% ownership interest can be used against Mr. Cauderlier. The question nevertheless remains whether Mr. Zambrana's <u>unilateral</u> mistake on the subject, if that is what the Court finds it to be, precludes him from obtaining the 10% interest that Mr. Cauderlier thought Mr. Zambrana was purchasing. In addition, a factual question remains whether the 10% share in La Ruche represented by Mr. Zambrana's $25,000 payment was the *only* interest to which Mr. Zambrana is entitled, or was a second 10% interest, over and above that represented by stock certificate No. 10.

---

[4] Inexplicably, La Ruche and Cauderlier rely upon *McKee v. McKee,* 2007 Del. Ch. LEXIS 59 (2007), despite its not having yet been released for publication. *McKee* is a mere "letter opinion set[ting] forth the [trial] Court's post-trial findings," (*Id.,* at 1), and has no probative value in this Court. Moreover, the opinion is rendered wholly inapposite by the heft of Mr. Zambrana's ownership of Certificate No. 10, if for no other reason.

     E.     THE STATUTE OF LIMITATIONS

          1.     <u>Mr. Zambrana's Entitlement to Stock Certificate No. 10</u>

La Ruche and Cauderlier argue, at page 6 of their Memorandum, that, "[e]ven if the Court found that there was such a dispute, Mr. Zambrana's 'earn-in' arrangement claims arose in 1996, nine years before he filed his Third-Party Complaint" (and would thus be defeated by statute of limitations). What movants fail to recognize is that Mr. Zambrana's claim regarding the "earn-in" arrangement, if proven, has already been perfected by the issuance of La Ruche stock certificate No. 10. The passage of time does not preclude Mr. Zambrana from offering his explanation regarding the issuance of the stock, but it is specious to argue that the statute of limitations "extinguished" Mr. Zambrana's claim – he already has the stock.

          2.     <u>La Ruche's Entitlement to Stock Certificate No. 10</u>

On page 15 of their Memorandum, La Ruche and Cauderlier argue that, since "Mr. Zambrana now denies that it was his intention" [to purchase a 10 percent interest in La Ruche when he tendered the $25,000 check in January, 2000], "Mr. Zambrana should receive his $25,000 payment plus interest at 6 percent. . . . *In return, La Ruche should receive certificate No. 10.*" [Emphasis added.] Similarly, on page 16 of their Memorandum, movants assert, without citation to any authority, that "Mr. Zambrana is *obligated* to return Certificate No. 10." [Emphasis added.]

If La Ruche and Cauderlier intended to challenge Mr. Zambrana's entitlement to stock certificate No. 10, they should have formally done so within three years of the date the later-replaced certificate 9 was issued, *i.e.*, no later than January 2003. Several more than three years have passed since then, but counsel for La Ruche and Cauderlier are now seeking to obtain this

9

extraordinary relief, through unsupportable legal arguments, when they know their clients are not entitled to such.

### 3. Mr. Zambrana's Other Claims

Mr. Zambrana contends that it is a disputed factual issue, to be determined by the fact-finder after trial, as to whether any of his claims have been extinguished by the statute of limitations, which he concedes is three (3) years. For example, Mr. Zambrana asserts that, as a shareholder of La Ruche, he is entitled to an accounting of the corporation's operations, at least for the period dating three years prior to the filing of the Third-Party Complaint to the present.[5] The accounting may well reveal that the $60,000 loan La Ruche made to Mr. Cauderlier is still extant, and the funds remain recoverable by La Ruche, in the absence of a showing that the monies have been repaid, or, alternatively, that (i) La Ruche wrote off the debt more than three years prior to November, 2005, and (ii) Mr. Cauderlier reported the un-repaid loan as income on his personal tax returns.

There is also the matter of the $92,000 in checks La Ruche paid on behalf of CAI. There may exist a promissory note or other evidence of CAI's promise to repay La Ruche that dates back no further than December 1, 2005. Or, the Court may find that such commingling, if any, was not discovered or discoverable by Mr. Zambrana until after November 2002, less than three years before he filed the Third-Party Complaint.

Finally, the accounting may reveal that Mr. Cauderlier has taken distributions from La Ruche, on the pretext of being the sole shareholder, which sums, if any, would need to be paid, partially, to Mr. Zambrana, to the extent of his ownership interest.

---

[5] The Third-Party Complaint was filed electronically on November 29, 2005.

As for the $25,000 Mr. Zambrana paid to La Ruche in January, 2000, these sums (or their equivalent) have been admitted by La Ruche and Cauderlier to be currently due and owing to Mr. Zambrana.  As conceded by the movants (although not necessarily accepted by Mr. Zambrana as the proper disposition of his monies[6]), "La Ruche should return Mr. Zambrana's $25,000 plus interest a 6 percent" [Memo., p. 16].  Indeed, La Ruche and Cauderlier's final conclusion is, "The appropriate resolution of this case is for La Ruche to return to Mr. Zambrana the $25,000, plus six percent interest, and for Mr. Zambrana to return to the 10 shares of La Ruche he was issued" [Memo., p. 19].  Although Mr. Zambrana disputes the assertion that he should be required to return *any* shares in La Ruche, as argued above, it is evident that La Ruche and Cauderlier cannot be heard to argue that Mr. Zambrana's claim for due compensation for, or restitution of, the $25,000 is no longer viable.

F.   OTHER MATTERS

The Memorandum filed by La Ruche and Cauderlier attempts to dispense quickly with Mr. Zambrana's claims for an Accounting [Memo., p. 10], a Constructive Trust [Memo., p. 11], a Monetary Judgment [Memo., p. 13], and for Usurpation of Corporate Opportunity [Memo, p. 13] on the grounds, in each instance, that Mr. Zambrana has no ownership interest in La Ruche.[7]

---

[6] Mr. Zambrana contends that the evidence is sufficient to show that, since the $25,000 has been ruled by the Court not to have entitled him an interest in CAI, despite his intention, and, in light of Mr. Cauderlier's admissions that the $25,000 was always intended to purchase for Mr. Zambrana a 10 percent interest in La Ruche, Mr. Zambrana is entitled, by virtue of his $25,000 payment, to an *additional* 10 percent interest in La Ruche, over and above the interest represented by certificate No. 10.  Of course, these are factual issues to be determined by the Court.

[7] "Mr. Zambrana's claim for an accounting fails because it is predicated on his having an ownership position with La Ruche." [Memo., p. 10].

"Mr. Zambrana's [sic] has no constructive trust claim because his lack of ownership is

11

Since stock certificate No. 10 is irrefutable evidence of Mr. Zambrana's having at least a 10% interest in La Ruche, all of La Ruche's and Cauderlier's arguments fall away.

### Conclusion

In view of the fact that Mr. Zambrana was issued, and possesses, a stock certificate proving his ownership of no less than ten percent of La Ruche, Inc., and considering the numerous material facts still is dispute, there can be little doubt that the Motion of La Ruche, Inc. and Jean Claude Cauderlier For Summary Judgment is wholly frivolous, unjustifiable, and should never have been filed.  The act of bringing the motion constitutes blatant violation of Fed. R. Civ. P. 11, by the parties to the Motion and the attorneys who burdened the Court (and Mr. Zambrana) by filing it.  Under the circumstances, this Honorable Court, on its own initiative, should impose sanctions upon said persons pursuant to Rule 11(c).

WHEREFORE, the Motion of La Ruche, Inc. and Jean Claude Cauderlier for Summary Judgment should be denied, Mr. Zambrana should be awarded his attorneys' fees, costs and expenses associated herewith, and the Court should assess any other penalties against the movants as it deems just and proper.

---

clear." [Memo., p. 11].

"However, Mr. Zambrana's 'claim' for monetary judgment relief fails due to his lack of ownership." [Memo., p. 13].

"A *sole* shareholder and officer of a closely held corporation 'cannot be accused of defrauding or concealing information from himself in his role as sole corporate director.'  Mr. Cauderlier did not usurp any corporate opportunity from La Ruche.  On January 21, 2000, Mr. Cauderlier was the sole shareholder and officer of La Ruche." [Memo., p. 14]. [Emphasis added.]

Respectfully submitted,

O'REILLY & MARK, P.C.

Dated: February 14, 2008         By: *Jeffrey M. Hamberger*
    11200 Rockville Pike
    Suite 301
    N. Bethesda, MD 20852
    301-231-6330
    *jmh@oreillymark.com*
    Attorneys for Sergio Zambrana00

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Opposition to Motion of La Ruche, Inc. and Jean Claude Cauderlier for Summary Judgment, and accompanying Memorandum of Points and Authorities in Opposition, were filed electronically through the Court's ECF system, and was emailed this 14th day of February, 2008, to:

    Robert L. Green, Jr., Esquire
    James B. Boles, Esquire
    HOWREY, LLP
    1299 Pennsylvania Avenue, N.W.
    Washington, D.C. 20004
    *greenr@howrey.com*
    *bolesj@howrey.com*

    *Jeffrey M. Hamberger*
    Jeffrey M. Hamberger

H:\-JEFFREY-\My Files\7246 Zambrana\Opposition to La R JCC Mot for Summary J and Memorandum.wpd