## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CAUDERLIER & ASSOCIATES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 05-1653 (JMF) |
| SERGIO ZAMBRANA, | ) |
| | ) |
| Defendant/Third-Party | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| JEAN CLAUDE CAUDERLIER | ) |
| | ) |
| And | ) |
| | ) |
| LA RUCHE, INC. | ) |
| | ) |
| Third-Party Defendants | ) |
| | ) |

### LA RUCHE, INC. AND JEAN CLAUDE CAUDERLIER REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

La Ruche, Inc. ("La Ruche") and Jean Claude Cauderlier respectfully submit this Reply in Support of their Motion for Summary Judgment.

### INTRODUCTION

Mr. Zambrana cannot obtain any relief unless he is at least a partial owner of La Ruche. By failing to contest this position, Mr. Zambrana concedes the issue.[1] Mr. Zambrana disclaims any interest in La Ruche based on the $25,000 check he wrote payable to La Ruche. As a result, Mr. Zambrana's only claim of an ownership interest in La Ruche rests on his "earn-in" theory. On this critical issue, Mr. Zambrana, not La Ruche or Mr. Cauderlier, bears the burden of proof.

---

[1] *See Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003); *see also* Memorandum of La Ruche, Inc. and Jean Claude Cauderlier in Support of Summary Judgment at 10-15.

La Ruche and Mr. Cauderlier deny that any "earn-in" arrangement existed and rely upon the La Ruche stock transfer records, Mr. Cauderlier's declaration, and Mr. Zambrana's deposition testimony. Faced with this evidence, Mr. Zambrana now claims, without any apparent sense of contradiction, that his La Ruche ownership interest was granted pursuant to a 1996 earn-in arrangement and that his interest in La Ruche dates to a May 1992 transaction with the prior La Ruche stockholders. Neither position has any basis in fact.

Mr. Zambrana responds to a fully-supported motion for summary judgment by ignoring key arguments, presenting an unsupported[2] conclusion that the motion should be denied, and reflexively suggesting that the pending motion is "frivolous", "unjustifiable", and deserving of sanctions.[3] Mr. Zambrana again "misses the point."[4] Mr. Zambrana's claims of La Ruche ownership depend on a wholly unsubstantiated, out of time, oral, "earn-in" arrangement lacking any indicia of "meeting of the minds" that this Court previously determined must exist for an agreement or contract to be formed. Because Mr. Zambrana presents no actual proof of his "earn-in" theory and ignores the Court's prior conclusions regarding the statute of limitations, he cannot avoid summary judgment.[5]

---

[2] As the Court observed regarding Mr. Zambrana's opposition to the CAI summary judgment motion, "Zambrana fail[ed] to cite a single case in his nineteen-page opposition." December 28, 2007 Memorandum Opinion at 12 n.5. This time, Mr. Zambrana cites only one case – the Delaware Chancery Court decision attached to the pending motion for summary judgment. Zambrana Opposition to Motion for Summary Judgment of La Ruche, Inc. and Jean Claude Cauderlier ("Zambrana Opposition") at 8 n.4. However, Mr. Zambrana cites the case only to flatly assert that it "has no probative value" and is "wholly inapposite ...." *Id.* No citations of law accompany that assertion.

[3] Zambrana Opposition at 12. In response to the Cauderlier & Associates, Inc. ("CAI") motion for summary judgment, Mr. Zambrana filed a list of allegedly disputed facts, ignored key CAI arguments, and closed with the unsupported conclusion that "[t]he [CAI] Motion for Summary Judgment must be dismissed, on the grounds that it lacks undisputed material facts ...." Zambrana Opposition to Motion for Summary Judgment of CAI (document 58) at 12. Mr. Zambrana also characterized the motion as "frivolous" (*id.*) and that he "should be awarded costs and expenses associated" with his prior opposition. *Id.* at 19.

[4] December 28, 2007 Memorandum Opinion at 15.

[5] Although Mr. Zambrana contends the CAI complaint allegation that Mr. Zambrana owns 10 percent of La Ruche is binding as a "judicial admission[ ]" (Zambrana Opp. at 4, n. 3), this is incorrect. This Court has previously rejected the argument that a complaint allegation regarding a contested issue can be a judicial admission:

> Judicial admissions are "formal concessions ... or stipulations" by the parties
> intended to act as concessions that the alleged fact at issue is true, thereby

I.    MR. ZAMBRANA'S CLAIMS OF PRE-2000 LA RUCHE
      OWNERSHIP ARE CONTRADICTED BY UNCONTROVERTED
      EVIDENCE

"Zambrana, as 'the party asserting the existence of a[n oral] contract[,] has the burden" of

demonstrating completeness."[6]  "[A]fter the moving party makes a *prima facie* showing that no

genuine issue of fact is in dispute and as a matter of law he is entitled to judgment, the burden

shifts to the opposing party to rebut that *prima facie* showing with specific evidence

demonstrating contested facts."[7]  Mr. Zambrana must present "concrete evidence" of his

La Ruche ownership that goes beyond his mere subjective beliefs and allegations.[8]

Mr. Zambrana now asserts that he received his La Ruche ownership interest directly from

the Levensons and that "Mr. Cauderlier never owned 100% of the shares of La Ruche, Inc."

Zambrana Opposition at 5-6.  However, this contention is demonstrably false – the

uncontroverted evidence establishes that Mr. Zambrana's purported ownership is not based on a

transfer of shares by the Levensons to Mr. Zambrana.  The Levensons were exclusive La Ruche

owners until February 21, 1987, when La Ruche issued:  (1) Bruce Levenson certificate No. 4 for

68 shares in exchange for certificate No. 1 for 88 shares; and (2) Mr. Cauderlier certificate No. 5

---

eliminating the need to debate the veracity of that fact. Accordingly, it is plain
to see that judicial admissions … connote a semblance of agreement between the
parties as to the existence of that fact. It stands to reason, then, that if there is a
no such agreement between the parties as to the existence of that fact because it
is contradicted or denied, then the fact averred cannot be established as a judicial
admission.

*United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.,* 2007 U.S. Dist. LEXIS 21854 at *6 (D.D.C. Mar. 27,
2007) (citations omitted). Mr. Zambrana alleges that he owned at least 10 percent of La Ruche since approximately
1997 and that the $25,000 check was not payment for any interest in La Ruche. Zambrana Third Party Complaint at
4, ¶¶ 17, 26. La Ruche and Mr. Cauderlier denied these allegations. *See* La Ruche's Answer at 5-6; Mr.
Cauderlier's Answer at 5-6. CAI answered Mr. Zambrana's allegations with a statement that La Ruche issued the 10
shares in exchange for the $25,000 check. CAI Answer to Counterclaims at 4. Further, CAI may "move … to
amend the pleadings to conform them to the evidence" and thereby account for Mr. Zambrana's deposition
testimony. *See* Fed. R. Civ. P. 15(b)(2).

[6] Memorandum Opinion at 12 (quoting *Jack Baker, Inc. v. Office Space Dev. Corp.,* 664 A.2d 1236, 1238 (D.C.
1995)).

[7] *Id.* (quoting *Giles v. Ware,* 615 A.2d 533, 550 (D.C. 1992)).

[8] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Simard v. Resolution Trust Corp.,* 639 A.2d 540, 553
(D.C. 1994).

for 20 shares.  *See* Cauderlier Declaration, Exhibit A; Zambrana Opposition, Exhibit 4.[9]  On June

26, 1987, Mr. Levenson's shares were again reduced by 20 and Mr. Cauderlier was issued an

additional 20 shares.  *Id.*  On May 1, 1992, La Ruche purchased the Levensons' remaining 60

shares for $150,000 and Mr. Cauderlier personally guaranteed the related promissory note.

Cauderlier Decl., Ex. A at 6-16.  After that purchase, Mr. Cauderlier was left as the sole La

Ruche shareholder.  The stock transactions were as follows:

---

[9] Please note that La Ruche is only authorized to issue 100 shares of stock.  *See, e.g.,* Cauderlier Decl., Ex. A at 3.

| January 14, 1982 | La Ruche issues Bruce Levenson **cert. No. 1** for **88 shares** of La Ruche stock. *See* Zambrana Opp. to CAI Mot. for Sum. Judg. ("Zambrana Opp.") Ex. 4 (stock ledger) |



| | La Ruche issues Bruce Levenson **cert. No. 2** for **6 shares** of La Ruche stock. *See* Zambrana Opp. Ex. 4 |

**Levenson Shares: 100**
Cauderlier Shares: 0
Zambrana Shares: 0

| | La Ruche issues Randy Levenson **cert. No. 3** for **6 shares** of La Ruche stock. *See* Zambrana Opp. Ex. 4 |

| February 20, 1987 | La Ruche Directors sign Informal Written Actions in Lieu of Special Meeting of Board of Directors authorizing Bruce Levenson to enter into an agreement with Jean-Claude Cauderlier allowing Mr. Cauderlier to purchase options for La Ruche stock. *See* Cauderlier Decl., Ex. A at 1-2 |

**Levenson Shares: 100**
Cauderlier Shares: 0
Zambrana Shares: 0

| February 21, 1987 | La Ruche Directors sign Informal Written Action in Lieu of Special Meeting of the Board of Directors and Shareholders of La Ruche, Inc. establishing Jean Claude Cauderlier as President of La Ruche.  Cauderlier Decl., Ex. A at 4. |



| | La Ruche issues Bruce Levenson **cert. No. 4** for **68 shares in exchange for cert. No. 1 for 88 shares** – a net <u>reduction</u> of 20 shares. *See* Zambrana Opp. Ex. 4 |

**Levenson Shares: 80**
**Cauderlier Shares: 20**
Zambrana Shares: 0

| | La Ruche issues Jean Claude Cauderlier **cert. No. 5** for **20 shares** (certificate notes 20-share transfer from cert. No. 1).  MSJ, Cauderlier Decl., Ex. A at 3; *see also* Zambrana Opp. Ex. 4 |

| June 26, 1987 | La Ruche issues Bruce Levenson **cert. No. 6** for **48 shares in exchange for cert. No. 4 for 68 shares** – a net <u>reduction</u> of 20 shares. *See* Zambrana Opp. Ex. 4 |

**Levenson Shares: 60**
**Cauderlier Shares: 40**
Zambrana Shares: 0

| | La Ruche issues Jean Claude Cauderlier **cert. No. 7** for **20 shares** (certificate notes 20-share transfer from cert. No. 4). *See* Zambrana Opp. Ex. 4 |



| May 1, 1992 |
|---|

La Ruche and its Directors sign an agreement establishing that:
- On February 20, 1987, Bruce Levenson and Mr. Cauderlier entered into an Agreement (effective June 1, 1986) allowing Mr. Cauderlier to acquire the Levenson shares in units of 20 shares for a total price of $225,000
- "Cauderlier has [since] obtained forty percent (40%) of the outstanding shares of stock in the Corporation under the Sales Agreement."
- "The parties hereto wish to enter into this Agreement to terminate the Sales Agreement … and provide for the sale of all of the remaining stock in the Corporation to the Corporation upon the terms and conditions set forth herein."
- The Levensons agreed to sell 60 shares of stock to La Ruche for a total price of $150,000. MSJ, Cauderlier Decl. Ex. A at 6-11.

Jean Claude Cauderlier signs a Commercial Promissory Note on behalf of La Ruche (and signs a personal guarantee of that note) to the Levensons for $150,000. MSJ, Cauderlier Decl. Ex. A at 12-16.

Jean Claude Cauderlier thereby becomes the sole La Ruche shareholder.

Levenson Shares: 0
**Cauderlier Shares: 40**
Zambrana Shares: 0

| No Date |
|---|

Levenson Shares: 0
**Cauderlier Shares: 90**
Zambrana Shares: 0

La Ruche issues Jean Claude Cauderlier cert. No. 8 for **50 shares.** Certificate referenced cert. Nos. 2 (6 shares) and 6 (48 shares). *See* Zambrana Opp. Ex. 4.

| January 2000 |
|---|



Levenson Shares: 0
**Cauderlier Shares: 90**
**Zambrana Shares: 10**

Mr. Zambrana writes La Ruche a check for $25,000. While Mr. Cauderlier believes the check is payment for interest in La Ruche, Mr. Zambrana believes that it is for interest in CAI/the Property.

La Ruche issues Sergio Zambrana cert. No. 9 for **10 shares.** Certificate later voided and described as lost. *See* Zambrana Opp. Ex. 4; MSJ, Cauderlier Decl. Ex. K.

| June 23, 2004 |
|---|

Levenson Shares: 0
**Cauderlier Shares: 90**
**Zambrana Shares: 10**

Sergio Zambrana and Jean Claude Cauderlier sign a Consent to Action in Lieu of a Special Meeting of the Shareholders of La Ruche, Inc. directing issue cert. No. 10 as a replacement for cert. No. 9.

There is simply nothing in the La Ruche corporate files that supports, suggests, or even hints that Mr. Zambrana received certificate No. 9 from the Levensons or at their direction. In addition to the stock transfers themselves, these records also show that the Levensons required Mr. Cauderlier to personally guarantee the note financing the stock buyback. Cauderlier Decl., Ex. A at 12-16. Mr. Zambrana's absence as a guarantor is notable. The Agreement setting the stock buyback terms noted that Mr. Cauderlier "has obtained forty percent (40%) of the outstanding shares of stock in the Corporation" and that the Levensons were selling 60 shares of stock to La Ruche. *Id.* at 7. Once again, there is no mention of Mr. Zambrana in this transaction. Nor is there any mention that he had received or was slated to receive a ten percent interest in La Ruche as he now claims.

At his deposition, Mr. Zambrana testified that Mr. Cauderlier offered him "an incentive to be a partner of La Ruche .... for the ten years of excellent employ-wise" in either 1995 or 1996. Zambrana Transcript at 52-54. There is no mention of the Levensons in his testimony. The transaction between Mr. Cauderlier and the Levensons began in 1987 and concluded May 1992. Apparently, Mr. Zambrana now argues that he was awarded La Ruche shares at least three years before he claims to have actually discussed his alleged "earn-in" arrangement with Mr. Cauderlier and La Ruche. Mr. Zambrana's new theory is inherently incredible – he is clearly "grasping at straws."

Mr. Zambrana personally acknowledged – in writing – that his La Ruche shares were first issued in January 2000. As noted in the Memorandum in Support, the handwritten Consent to Action in Lieu of a Special Meeting of the Shareholders of La Ruche, Inc. on June 23, 2004, which Mr. Zambrana signed, contained the following statement:

> In January 2000, certificate #9 for 10 shares was issued to Sergio Zambrana, but was never received by Mr. Zambrana and is lost. Therefore, the President is authorized to issue certificate #10 to Mr. Zambrana for 10 shares.

Cauderlier Decl., Ex. K. In advancing his latest theory of ownership, Mr. Zambrana simply

ignores the clear import of this corporate record – that certificate No. 9 was issued in January

2000.

"The devil is always in the details …. an oral contract may only exist where there is an

intent to be bound *and* an agreement as to all material terms." Memorandum Opinion at 11. By

Mr. Zambrana's own deposition testimony, there was no agreement on the "earn-in" salary

reduction, the amount of shares, or the ultimate partnership percentage:

> Q.   And how much were you to pay?
>
> A.   I -- you know, I -- for me, I – I assume it's, you know, I cut
> my salary starting '96. I never had a raise. You know, I stay – I
> had a better investments. I mean, somebody offered me to go with
> -- the other manager offered me to go with her when this new
> restaurant opened. And JC told me to stay with him. And that was
> an exchange of. So that for me is value.
>
> Q.   And what were you to get for that value, sir?
>
> A.   A partnership. A partnership.
>
> Q.   How much?
>
> [Interjection from Mr. Zambrana's counsel]
>
> THE WITNESS: I guess it was a 10 percent of -- he give me on
> the certificate – my guess is that the certificate I have from La
> Ruche. We never discussed percentage. When I saw that
> document.

Zambrana Tr. at 66-68. Mr. Zambrana now claims that he received the La Ruche stock from his

"earn-in" arrangement years before Mr. Zambrana allegedly made the arrangement with

Mr. Cauderlier and La Ruche.[10] This claim contradicts Mr. Zambrana's deposition testimony

and his pleadings. *See* Zambrana Tr. at 66-68; Zambrana Complaint at 4, ¶ 17. This wholly

---

[10] Mr. Zambrana attempts to piece together his claims using gaps in La Ruche records from over twelve-years ago.
The fact that Mr. Zambrana's piecemeal claims are vague, self-contradictory, and do not match the evidence speak to
the very purpose of the limitations statutes – to "protect defendants and the courts from having to deal with cases in
which the search for truth may be seriously impaired by the loss of evidence … fading memories, disappearance of
documents, or otherwise." *United States v. Kubrick,* 444 U.S. 111, 117 (1979).

unsupported claim does not establish a dispute of material fact that allows Mr. Zambrana to avoid summary judgment.[11]

## II.    MR. ZAMBRANA'S PRESENTATION OF AN INADMISSIBLE LETTER LENDS NO SUPPORT TO HIS CLAIMS

Mr. Zambrana's new "earn-in" theory appears to be based on his interpretation of a September 25, 2001 letter from James M. Hoffman (then counsel for La Ruche) to Mr. Cauderlier. However, this attempt is as misguided as it is impermissible.[12] Mr. Zambrana's opposition states that "[his prior ownership of La Ruche] is confirmed by a letter from La Ruche's then-attorney ... who wrote to Mr. Cauderlier ... asking for confirmation that 'Messrs. Rudy and Bruce Levenson both transferred all of their stock over to you and Mr. Zambrana, so that you own 90 shares and Mr. Zambrana owns 10 shares." Zambrana Opposition at 5. Mr. Zambrana's creative quotation of the Hoffman letter is misleading. This unfortunate fact is made plain when the entire paragraph is reviewed:

> The Consent was drafted to reflect the ownership **as we believe it currently exists. Please confirm that this information is correct. We understand** that Messrs. Rudy and Bruce Levenson both transferred all of their stock over to you and Mr. Zambrana, so that you own 90 shares and Mr. Zambrana owns 10 shares. **However, the records do not reflect how this was accomplished and we can only speculate.** We recommend that you cancel the existing certificates and issue new one, which we can do for you.

Zambrana Opposition Ex. A at 2 (emphasis added). The phrase "we understand" demonstrates that Mr. Hoffman had no personal knowledge of the Levenson/Cauderlier stock transactions. The letter states that the paragraph reflects the attorney's unqualified belief and that he "can only

---

[11] *See, e.g., Georgetown Entertainment Corp. v. District of Columbia*, 496 A.2d 587, 590 (D.C. 1985); *Hollywood Credit Clothing Co., Inc. v. Gibson*, 188 A.2d 348, 349 (D.C. 1963); *Anderco, Inc. v. Buildex Design, Inc.*, 538 F. Supp. 1139, 1142 (D.D.C. 1982).

[12] This letter is privileged. It is therefore inappropriate for Mr. Zambrana to include this letter in his opposition to summary judgment. However, as established above, the letter has no probative value and cannot establish a material dispute of fact.

speculate" as to how the transfers were actually accomplished. The only thing "confirmed" is that this letter is hearsay – by its very terms, it is an out of court statement Mr. Zambrana presents for the truth of the matter presented therein, with none of the indicia suggesting an evidentiary exception. There is no indication that this privileged, hearsay letter is "capable of being converted into admissible evidence" and thus "counts for nothing."[13]

### III.    THE STATUTE OF LIMITATIONS HAS EXTINGUISHED MR. ZAMBRANA'S CLAIMS

Mr. Zambrana refutes neither the applicability of D.C. Code § 12-301 nor precedent that establishes notice as to one defendant – CAI – puts the plaintiff on notice as to co-defendants. *E.g., Berkow v. Hayes,* 841 A.2d 776, 781 (D.C. 2004). Nor has Mr. Zambrana attempted to argue that the Court's findings regarding notice as to Mr. Zambrana's claims against CAI (Memorandum Opinion at 7) are somehow inapplicable to his claims against La Ruche and Mr. Cauderlier. Thus Mr. Zambrana has conceded that he was on notice as to his claims against La Ruche and Mr. Cauderlier as of January 21, 2000.[14]

Mr. Zambrana's declaration that his "earn-in" arrangement has "already been perfected by the issuance of La Ruche stock certificate No. 10" (Zambrana Opposition at 9) is a non-sequitur that has no bearing on whether the statute of limitations extinguished his claims. The unsupported, oral "earn-in" arrangement is inseparable from Mr. Zambrana's argument that the $25,000 check was for another purpose – otherwise he would have no other explanation as to why La Ruche issued Mr. Zambrana stock in January 2000. Because Mr. Zambrana is denying the only reason that La Ruche issued the stock, "the contracting parties entertained a material mistake of fact that went to the heart of their bargain."[15] Mr. Zambrana's perfection argument is

---

[13] *Gleklen v. Democratic Congr. Campaign Comm., Inc.,* 199 F.3d 1365, 1369 (D.C. Cir. 2000).

[14] *Buggs,* 293 F. Supp. 2d at 141; *see also* Memorandum of La Ruche, Inc. and Jean Claude Cauderlier in Support of Summary Judgment at 17-19.

[15] *Bituminous Coal Operators' Assoc. v. Connors,* 867 F.2d 625, 635 (D.D.C. 1989).

a "specious" (Zambrana Opposition at 9) attempt to obtain a refund while retaining the value of the mistaken bargain.

## CONCLUSION

For the foregoing reasons and those reasons described in the Memorandum in Support of Summary Judgment, this Court should enter judgment for La Ruche, Inc. and Jean Claude Cauderlier on Sergio Zambrana's Third-Party Complaint and hold that: (1) Mr. Zambrana holds no ownership interest in La Ruche; and (2) Mr. Zambrana's accounting, usurpation of corporate opportunity, constructive trust, and unjust enrichment claims fail because they are dependent on his being an owner of La Ruche or, in the alternative, have been extinguished by the District of Columbia's applicable statute of limitations. The appropriate resolution of this case is for La Ruche to return to Mr. Zambrana the $25,000, plus six percent interest, and for Mr. Zambrana to return the 10 shares of La Ruche he was issued.

Dated: February 21, 2008                         Respectfully submitted,

Robert L. Green, Jr. (D.C. Bar No. 935775)
James B. Boles (D.C. Bar No. 471818)
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 783-0800
(202) 383-6610 – facsimile
greenr@howrey.com
bolesj@howrey.com

Attorneys for Cauderlier & Associates, Inc.,
Jean Claude Cauderlier, and La Ruche, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing La Ruche, Inc. and Jean Claude Cauderlier Reply in Support of Motion for Summary Judgment was served by operation of the Court's electronic filing system upon all attorneys of record registered with the Court's ECF system, and a true and accurate copy of the foregoing instrument was forwarded by overnight delivery to those attorneys not registered with the Court's ECF system, this 21st day of February 2008, as indicated below, to:

> Jeffrey M. Hamberger, Esq.
> O'REILLY & MARK, PC
> 11200 Rockville Pike, Suite 301
> N. Bethesda, Maryland  20852
> jmh@oreillymark.com
> (301) 231-6330

James B. Boles